UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN RE: LIGHT CIGARETTES MARKETING ) <br> LITIGATION AND SALES PRACTICES    ) <br> ) <br> **This Pleading Relates to:**                ) <br> ) <br> Stephanie Good, Lori A. Spellman, and Allain L. ) <br> Thibodeau, v. Philip Morris, Inc., et al.     ) <br> District of Maine                             ) <br> Case No. 1:05-cv-127 JAW                      ) | MDL DOCKET NO.: 1:09-MD-2068 <br><br> Judge John A. Woodcock, Jr. |

<u>**SECOND AMENDED COMPLAINT**</u>
<u>**JURY TRIAL DEMANDED**</u>

Plaintiffs, Stephanie Good, Lori A. Spellman, and Allain L. Thibodeau, by their attorneys, and for their Class Action Complaint and Jury Demand, state as follows:

<u>**INTRODUCTION**</u>

1. Plaintiffs, Stephanie Good, Lori A. Spellman, and Allain L. Thibodeau, individually and on behalf of the class of all consumers in Maine similarly situated, (collectively "Plaintiffs"), bring this action pursuant to 5 M.R.S.A. § 213, which provides a private right of action under Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 205-A *et seq*., against Defendants Altria Group, Inc. and Philip Morris USA, Inc. (collectively "Defendants"). Plaintiffs also state a claim against Defendants for Unjust Enrichment.

2. This case arises out of the unfair and deceptive practices employed by Defendants to induce cigarette smokers to continue smoking in spite of the growing public awareness of a connection between cigarette smoking and serious health problems including cancer, by designing, manufacturing, promoting, marketing and selling Marlboro Lights and other "Light"

1

and "Ultra Light" cigarettes ("Light Cigarettes") purporting to be "light" and having "lowered tar and nicotine," all while Defendants knew those cigarettes would not deliver less tar or nicotine to the consumer.

3.   Plaintiffs and the proposed Class, purchasers of Light Cigarettes in the State of Maine, suffered a loss of money because the cigarettes they purchased were misrepresented by Defendants to be "light" and lower in tar and nicotine, when in reality the cigarettes were not lower in tar or nicotine than regular cigarettes.

4.   Plaintiffs and the proposed Class expressly disclaim any claim for damages for personal injuries.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) in that this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which any member of a class is a citizen of a State different from any defendant.

6.   Venue in the District of Maine at Bangor is appropriate pursuant to 28 U.S.C. § 1391(a) and Rule 3(b) of the Rules of the United States District Court for the District of Maine. Defendants transact business in Maine, and at all relevant times designed and manufactured cigarettes, including Marlboro Lights, which they promoted, marketed, distributed and/or sold in Maine.  Defendants have significant contacts with Maine and the activities complained of herein occurred, in whole or in part, in Maine.   Two of the plaintiffs reside in Penobscot County, Maine.

**PARTIES**

7.     Plaintiff Stephanie Good is a resident of Brunswick, Maine.  At all times relevant herein she smoked Marlboro Lights cigarettes, one of Defendants' Light Cigarette brands.

8.     Plaintiff Lori A. Spellman is a resident of Levant, Maine.  At all times relevant herein she smoked Marlboro Lights cigarettes, one of Defendants' Light Cigarette brands.

9.     Plaintiff Allain L. Thibodeau is a resident of Bangor, Maine.  At all times relevant herein he smoked Marlboro Lights cigarettes, one of Defendants' Light Cigarette brands.

10.    Defendant Altria, Group, Inc. ("Altria") is a Virginia corporation with its principal place of business at 120 Park Avenue, New York, New York.  At all times relevant hereto, Altria, through its wholly owned subsidiary Philip Morris USA, Inc., engaged in the business of designing, manufacturing, promoting, marketing, distributing and selling cigarette brands known as Accord, Alpine, Basic, Benson & Hedges, Bristol, Cambridge, Chesterfield, Collector's Choice, Commander, Daves, English Ovals, L&M, Lark, Marlboro, Merit, Parliament, Players, Saratoga, and Virginia Slims cigarettes, including "light," ultralight" and/or "low tar" versions of certain of these brands.

11.    Defendant Philip Morris USA, Inc. ("Philip Morris") is a Virginia corporation with its principal place of business at 6601 West Broad Street, Richmond, Virginia.  Philip Morris is a wholly owned subsidiary of Altria.  At all times relevant hereto, Philip Morris engaged in the business of designing, manufacturing, promoting, distributing, and selling cigarette brands known as Accord, Alpine, Basic, Benson & Hedges, Bristol, Cambridge, Chesterfield, Collector's Choice, Commander, Daves, English Ovals, L&M, Lark, Marlboro, Merit, Parliament, Players, Saratoga, and Virginia Slims cigarettes, including "light," ultralight" and/or

"low tar" versions of certain of these brands.

## FACTS

12. Defendants, and/or their predecessors in name, have been in the business of designing, manufacturing, promoting, marketing, distributing, and selling tobacco products, including cigarettes, in the United States for over one hundred (100) years.

13. Beginning in the 1950s, Defendants were aware that smokers had become increasingly concerned about health issues related to smoking.

14. Since the 1970s, Philip Morris has used brand descriptors such as "light" and "ultra light" to communicate that certain brands of cigarettes are low in tar and nicotine. Defendants have promoted, marketed, distributed, and sold their Light Cigarettes throughout the United States, including Maine. Each pack of Light Cigarettes bore, in addition to the descriptor "Lights" in the brand name, the phrase "Lowered Tar and Nicotine" on the packaging.

15. Defendants intentionally marketed Light Cigarettes in this manner with the intention of communicating to consumers that Light Cigarettes were less harmful or safer than regular cigarettes.

16. Defendants introduced Light Cigarettes into the market with the intent to provide smokers who were concerned about their health with a product that could reduce their concerns about the negative health implications of smoking and thereby allow them to continue to smoke cigarettes.

17. At all relevant times, Defendants sold and packaged Light Cigarettes as "light" and as having decreased tar and nicotine.

18. Nicotine is the addictive ingredient in tobacco. Tar is the toxic ingredient in tobacco

that causes most health problems related to smoking.

19. Evidence shows that consumers buying Light Cigarettes understood that tar and nicotine were the "bad" components in cigarettes and, therefore, lower levels of these components would reduce the negative health affects of the cigarette product.

20. The primary design distinction between Light Cigarettes as compared to their regular counterparts is increased ventilation. Defendants increased the ventilation in Light Cigarettes by strategically placing rings of vent holes in the filter of each cigarette, such that air is mixed with and dilutes the smoke drawn through the filter.

21. This design distinction of ventilation provides for a lower measurement of tar and nicotine for Light Cigarettes as compared to regular cigarettes when undergoing standardized testing by the Federal Trade Commission ("FTC") testing apparatus – automated smoking machines used by the tobacco industry to measure tar and nicotine levels in cigarettes.

22. Defendants controlled the tar and nicotine delivery of Light Cigarettes under machine testing conditions to achieve apparent support for their representations that their Light Cigarettes are "light" and contain decreased tar and nicotine.

23. At all relevant times, Defendants knew that although the increased ventilation of the "light" cigarettes would result in lower machine test values of tar and nicotine, the consumer would receive the same delivery of tar and nicotine from the Light Cigarettes as from regular cigarettes.

24. Scientific research has shown that smokers of Light Cigarettes, such as Marlboro Lights, engage in compensatory smoking behavior due to the addictive nature of nicotine, so as to receive 100% of the tar and nicotine that would be received by the smoker from the regular

cigarette. This is known as 100% compensation.

25. Compensatory smoking behavior consists of unconscious acts including, but not limited to: inhaling deeper; taking more frequent puffs and/or larger puffs; holding the smoke in the lungs for a longer period of time; covering the ventilation holes in the filter with the lips or fingers; and/or smoking more cigarettes, thereby enabling the smoker to unconsciously regulate the amount of nicotine and tar received.

26. Defendants had conducted extensive research prior to launching Light Cigarettes into the market, and knew smokers would unconsciously adjust their behavior to ensure they receive the same level of tar and nicotine from the Light Cigarettes as they would receive from their regular counterparts.

27. Defendants knew that Light Cigarettes did not reduce the delivery of tar or nicotine to the consumer, and that these cigarettes were not designed to reduce actual delivery to smokers.

28. Defendants' representations that Light Cigarettes are "light" or have "lower tar and nicotine" than regular cigarettes are deceptive and misleading.

29. Not only do consumers receive higher levels of tar and nicotine than the testing apparatus registers, but the smoke produced by Light Cigarettes is more mutagenic (causing genetic and chromosomal damage) per milligram of tar than the smoke of regular cigarettes due to the increased ventilation.

30. Defendants knew, as a result of tests conducted by Philip Morris more than twenty-five years ago, that increased ventilation – the primary design distinction between Light Cigarettes and their regular counterparts – increases the specific mutagenicity of cigarette smoke.

31. Defendants also knew, from tests they conducted, that a smoker of Light Cigarettes

32. Defendants engaged in a course of unfair and/or deceptive business practices in connection with the design, manufacture, distribution, promotion, marketing and sale of Light Cigarettes by:

   a. Falsely and/or misleadingly representing that their product is "light" and/or delivers lowered tar and nicotine in comparison to regular cigarettes;

   b. Describing the product as light when the so-called lowered tar and nicotine deliveries depended on deceptive changes in cigarette design and composition that dilute the tar and nicotine content of smoke per puff as measured by the industry standard testing apparatus, but not when used by the consumer;

   c. Intentionally manipulating the design and content of Light Cigarettes in order to maximize nicotine delivery while falsely and/or deceptively claiming lowered tar and nicotine. These manipulations include, but are not limited to, the modification of tobacco blend, weight, rod length, and circumference; the use of reconstituted tobacco sheets and/or expanded tobacco; and the increase of smoke pH levels by chemical processing and additives, such as ammonia, which resulted in the delivery of greater amounts of tar and nicotine when smoked under actual conditions than Defendants represent by use of the "light" description; and

   d. Employing techniques that purportedly reduce machine-measured levels of tar and nicotine in Light Cigarettes, while actually increasing the harmful biological effects, including mutagenicity (genetic and chromosomal damage) caused by the tar ingested by the consumer per milligram of nicotine.

### FRAUDULENT CONCEALMENT

33. Throughout the Class Period, Defendants effectively, affirmatively, and fraudulently concealed from consumers of their products, including Plaintiffs, their knowing misrepresentations about the nature and effect of their Light Cigarettes.

34.     Defendants' wrongful conduct was carried out in part through means and methods that were designed and intended to avoid detection, and which, in fact, successfully precluded detection.

35.     Defendants publicly admitted that there is no such thing as a safe cigarette, including its Light Cigarettes, and launched an advertisement campaign to educate the public about the risks of smoking through information placed on their website, newspaper inserts, and "onserts" placed in their cigarette packages.

36.     Plaintiffs and members of the Class could not have discovered Defendants' misrepresentations, and were without knowledge of the conduct by Defendants alleged in this Complaint, or of any facts from which it might reasonably be concluded that Defendants were so acting, or which would have led to the discovery of such action.

37.     Plaintiffs could not have discovered their cause of action against Defendants, because Defendants' fraudulent concealment of their deceptive conduct was effective.

## CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this action against Defendants, pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the following Class.

39.     The Class is defined as:

> All persons residing in the State of Maine who purchased for personal use Defendants' cigarettes labeled as "Light," or "Ultra-Light" ("Light Cigarettes"), during the Class Period, through the present.
>
> Excluded from the Class are Defendants, their subsidiaries and affiliates.  Also excluded is any judge who may preside over this case.

40. The Class Period extends six (6) years prior to the filing of the Complaint on August 12, 2005.

41. Plaintiffs reserve the right to expand, modify or alter the class definition, including the time period, in response to information learned during discovery.

42. Plaintiffs do not presently possess information identifying the exact size of the Class. Based upon the nature of the trade and commerce involved, Plaintiffs believe the total number of class members is sufficiently numerous such that joinder of all Class Members would be impracticable. Fed. R. Civ. P. 23(a)(1).

43. Common questions of law or fact predominate over any questions affecting only individual members of the Class. Fed. R. Civ. P. 23(a)(2) and 23(b)(3). Common questions include, but are not limited to, the following:

    a. Whether Defendants misrepresented the actual tar and nicotine delivered to consumers of Light Cigarettes they manufactured, marketed, and/or distributed;

    b. Whether Defendants intentionally designed Light Cigarettes to register misleading tar and nicotine measurements on the testing apparatus utilized by the tobacco industry while delivering significantly higher quantities of tar and nicotine to human smokers;

    c. Whether the Defendants violated Maine's Unfair Trade Practices Act through their course of unfair and/or deceptive conduct as alleged herein;

    d. Whether the Defendants were unjustly enriched at the expense of the Class members; and

    e. Whether the Class has been damaged and, if so, the extent of such damages.

44. Plaintiffs in this proposed class action assert claims typical of those of the individual

45. Plaintiffs are members of the Class and will fairly and adequately assert and protect the interests of the Class. Plaintiffs have retained attorneys who are experienced in class action litigation. Fed. R. Civ. P. 23(a)(4).

46. The prosecution of separate actions by individual members of the Class would create risk of:

    a. Inconsistent or varying adjudications with respect to individual members of the Class; and

    b. Adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interest.

47. The claims of Plaintiffs, and the anticipated defenses raised by Defendants, are typical of the claims or defenses of the Class, and the class action method is appropriate for the fair and adequate prosecution of this action.

48. Individual litigation of all claims which might be assessed by all Class Members would produce a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of Defendants.

49. The certification of a Class would allow litigation of claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions.

## COUNT I
## VIOLATION OF MAINE'S UNFAIR TRADE PRACTICES ACT

50. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 49 as if set forth more fully herein.

51. Plaintiffs bring this action pursuant to the Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq*. This act, among other things, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

52. Beginning the first date that Defendants placed their Light Cigarettes into the stream of commerce and continuing through the present, Defendants, individually and/or jointly, by and through their employees, agents and/or brokers, engaged in misrepresentations, unlawful schemes and courses of conduct intended to induce the Plaintiffs and members of the Class to purchase Defendants' Light Cigarettes through one or more of the following deceptive acts and practices:

   a. Falsely and/or misleadingly representing that their product is "light" and/or delivers "lowered tar and nicotine" in comparison to regular cigarettes;

   b. Designing cigarettes to register lowered tar and nicotine levels under machine testing conditions while actually delivering higher levels of these compounds when smoked by consumers, thereby rendering the "light" product descriptor deceptive and misleading;

   c. Placing ventilation holes on the filter of Light Cigarettes that are covered blocked by the smoker's lips or fingers under normal use, thereby negating the represented effects of the light brand;

   d. Manipulating the nicotine levels in their Light Cigarettes;

   e. Employing techniques that purportedly reduce machine-measured levels of tar in their Light Cigarettes, including increased air dilution through the use of ventilation holes in or near the filter, but which actually increase the

        mutagenicity (genetic and chromosomal damage) of tar delivered to the consumer and thereby increase the level of harmful toxins per milligram of nicotine delivered to the consumer; and

    f.    Manipulating the design of their Light Cigarettes, including but not limited to, modifying the tobacco blend, weight, rod length and circumference; using reconstituted tobacco sheets and/or expanded tobacco; increasing smoke pH levels by chemical processing and additives, such as ammonia, in such a way that resulted in delivery of greater amounts of tar and nicotine when smoked under actual conditions than Defendants represent by use of the "light" product descriptor.

53.    The facts which Defendants misrepresented as alleged in the preceding paragraph were material in that they concerned facts that would have been important to a reasonable consumer in making a decision whether to purchase Light Cigarettes.

54.    Defendants' unfair and deceptive acts and practices directly and proximately caused damage to Plaintiffs and members of the Class in that Plaintiffs and members of the Class did not receive "light" or "lower tar and nicotine" cigarettes when they purchased Light Cigarettes.

55.    The conduct described above constitutes unfair and deceptive practices in the conduct of trade or commerce in violation of 5 M.R.S.A. § 207.

56.    Defendants' deceptive acts and practices, as alleged herein, were committed with either express or implied malice.

57.    Plaintiffs, in compliance with 5 M.R.S.A. § 213(1-A), sent letters of demand to Defendants at least thirty days prior to the filing of this Complaint.

<u>**COUNT II**</u><br><u>**UNJUST ENRICHMENT**</u>

58.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 57 as if set forth more fully herein.

59.     As stated with more particularity above, Defendants embarked on and carried out a common scheme of marketing and selling Light Cigarettes by falsely and deceptively representing that the cigarettes were "light" or contained "lowered tar and nicotine."

60.     Defendants' practices resulted in Plaintiffs and members of the Class purchasing Light Cigarettes in order to receive a low tar, low nicotine alternative to regular cigarettes, but not getting perceived benefits of less tar and nicotine than in regular cigarettes.

61.     Defendants' practices further resulted in Plaintiffs and members of the Class purchasing Light Cigarettes without understanding the true nature of Defendants' product or that Defendants manipulated their Light Cigarettes to increase their own ill-gotten profits.

62.     The monies paid by Plaintiffs and members of the Class to Defendants in the purchase of Light Cigarettes conferred substantial benefits upon Defendants.  Defendants knew of and appreciated the benefits conferred upon them by Plaintiffs and the Class and accepted and retained these benefits, which, in justice and fairness, should be refunded and paid over to Plaintiffs and members of the Class, in an amount to be proved at trial but not less than $5,000,000, not including interest or costs.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, and respectfully request the Court:

1. Certify this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint them as Class Representatives, and their counsel as Class Counsel, and direct that reasonable notice be given to members of the Class;

2. Adjudge and decree that Defendants engaged in unfair and deceptive practices in the

conduct of trade or commerce in violation of 10 M.R.S.A. § 207, and award Plaintiffs and the Class: (a) actual damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs; (b) punitive damages; (c) reasonable attorneys' fees and costs of this action; and (d) all other damages available under the laws of Maine, including pre-judgment and post-judgment interest;

3. Adjudge and decree that Defendants have been unjustly enriched and enter judgment on behalf of Plaintiffs and the Class in an amount to be proved at trial, plus interest and costs and all other damages available under the laws of Maine including pre-judgment and post-judgment interest; and

4. Grant such injunctive relief as may be appropriate in the circumstances.

## JURY DEMAND

Plaintiffs demand trial by jury on all claims for which they are entitled to a jury trial.

Dated: December 9, 2009          /s/ Samuel W. Lanham, Jr.,
                                 Samuel W. Lanham, Jr., Esq.
                                 LANHAM BLACKWELL, P.A.
                                 470 Evergreen Woods
                                 Bangor, Maine 04401
                                 207.942.2898


                                 MANTESE and ASSOCIATES, P.C.
                                 Gerard V. Mantese, Esq.
                                 Mark C. Rossman, Esq.
                                 1361 E. Big Beaver Road
                                 Troy, MI 48083
                                 248.457.9200

                                 Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

Service of the above Plaintiffs' Second Amended Complaint has been made through the Court's ECF system on all those registered to receive ECF service, and on all others, not registered but listed on the Court's Manual Notice List, by regular mail.

Date:   December 9, 2009                         */s/ Samuel W. Lanham, Jr.*
                                                 Samuel W. Lanham, Jr., Esq.
                                                 Lanham Blackwell, P.A.
                                                 470 Evergreen Woods
                                                 Bangor, ME  04401
                                                 Attorney for Plaintiffs