UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

_____
                                    )
IN RE: LIGHT CIGARETTES MARKETING   )   MDL DOCKET No.: 1:09-2068
AND SALES PRACTICES LITIGATION      )
_____ )
                                    )
This Filing Relates To:             )
                                    )   N.D. Illinois
LEONARDO BIUNDO,                    )
individually and on behalf of all others )
similarly situated,                 )   Case No. 09-cv-118
                                    )
        Plaintiff,                  )
                                    )   JURY TRIAL DEMANDED
v.                                  )
                                    )
PHILIP MORRIS USA, INC., a Virginia )
corporation, and ALTRIA GROUP, INC., )
a Virginia corporation,             )
                                    )
        Defendants.                 )

## SECOND AMENDED CLASS ACTION COMPLAINT

NOW COMES Plaintiff, Leonardo Biundo ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, Larry D. Drury, Ltd., and Barnow and Associates, P.C., and for his Second Amended Class Action Complaint against defendants Philip Morris USA, Inc., and Altria Group, Inc. (collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This consumer class action concerns Defendants' manufacturing, marketing, advertising, promotion, distribution and sale of cigarettes labeled and represented as "Light" or "Ultra-Light" (collectively "light cigarettes") as delivering less nicotine to consumers and as being less harmful to consumers than regular cigarettes of the same brand, despite Defendants' knowledge that these representations were false, deceptive, misleading, and unfair.

## JURISDICTION

2. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because it is a class action filed pursuant to Fed R. Civ. P. 23, Plaintiff and the Class members are of diverse citizenship from Defendants, there are more than 100 Class members, and the aggregate amount in controversy, excluding interest and costs, exceeds $5,000,000.

3. Venue is proper within this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's and the other Class members' claims occurred within this District.

## PARTIES

4. Plaintiff is a resident of Cook County, Illinois, and is a citizen of the State of Illinois.

5. Philip Morris USA, Inc. ("Philip Morris"), is a Virginia corporation with its principle place of business located in Richmond, Virginia. Philip Morris is a wholly-owned subsidiary of Altria Group Inc., and is in the business of manufacturing, distributing, marketing and selling light cigarettes. During the relevant time period,[1] Philip Morris distributed, marketed, and sold light cigarettes in Illinois.

6. Altria Group, Inc. ("Altria"), is a Virginia corporation with its principle place of business located in Richmond, Virginia. Altria owns, controls, and manages Philip Morris.

## CLASS ACTION ALLEGATIONS

7. Plaintiff brings this consumer class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and a Class composed of:

---

[1] Unless otherwise specified, all allegations relate to conduct or practices occurring from January 1, 2005, to the date of class certification in this action (the "Class period").

>All Illinois residents who, from January 1, 2005, to the date of class certification, purchased, not for resale, Defendants' cigarettes labeled as "Light," or "Ultra-Light". The Class excludes all federal, state, and local governmental entities, and Philip Morris USA, Inc.'s, and Altria Group, Inc.'s, directors, officers, parent corporations, subsidiaries, and affiliates.

The Class seeks economic damages stemming from their purchases of Defendants' light cigarettes. The Class does not seek recovery in this case for any past, current, or future personal injury or healthcare claims. Plaintiff reasonably did not discovery Defendants' unlawful conduct described herein until shortly before the filing of his original complaint in this matter.

8. The joinder of all members of the Class is impracticable as the Class is believed to include thousands of individuals.

9. Plaintiff's claims are typical of those of the other Class members, as they arise from the same course of conduct as the claims of the other Class members.

10. Plaintiff and his counsel will adequately represent and protect the interests of the Class. Plaintiff and the Class have a common interest in this matter and the remedy sought. Plaintiff has no interest antagonistic to that of the Class. Plaintiff has retained counsel who are competent and experienced in class action litigation and who will prosecute this action vigorously on behalf of Plaintiff and the Class.

11. Questions of law and fact common to all Class members are present and predominate over any potential individual issues in this matter, and include, *inter alia*:

    a. whether Defendants misrepresented that consumers of their light cigarettes would be exposed to less tar or nicotine than users of non-light cigarettes of the same brand;

    b. whether Defendants designed their light cigarettes to register lower levels of tar and nicotine when tested through the Cambridge Filter Method (the method used by the tobacco industry) than actually delivered to consumers;

      c.      whether Defendants intentionally manipulated the design and content of their light cigarettes through, *inter alia*: modifying the tobacco blend, weight, rod length and circumference; using reconstituted tobacco sheets and expanded tobacco; and by increasing the smoke PH levels of the cigarettes through chemical processing and the use of additives, such as ammonia, resulting in the delivery of greater amounts of tar and nicotine;

      d.      whether Defendants' conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

      e.      whether Defendants' conduct breached their express and implied warranties with the Class; and

      f.      whether Defendants were unjustly enriched to the detriment of the Class;

12.    A class action is superior to other available mechanisms for the fair and efficient adjudication of this controversy because the burden and expense of litigation would likely make it impossible for the members of the Class to seek redress for the conduct complained of herein on an individual basis.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  Plaintiff anticipates that there will be no difficulty in the management of this action as a class action.

## ALLEGATIONS COMMON TO ALL COUNTS

13.    Defendants marketed, distributed and sold light cigarettes in Illinois and throughout the United States under the brand names Ashford, Basic, Bond Street, Chesterfield, F6, Lark, Longbeach, Marlboro, Merit, Next, Parliament, and Virginia Slims.

14.    Defendants distributed, marketed and sold light cigarettes in Illinois, including Marlboro Lights.

15. In the late 1960's, scientific studies began correlating higher tar and nicotine levels with an increased risk of developing a smoking-related disease, such as lung cancer. This information led to a growing demand for cigarettes with less tar and nicotine.

16. In response, Defendants developed, manufactured, marketed, and sold light cigarettes that purported to deliver less tar and nicotine than regular cigarettes. Defendants intended for consumers to perceive their light cigarettes as delivering less tar and nicotine and as being less harmful than regular full-flavored cigarettes of the same brand.

17. Defendants attempted to ease consumers' minds regarding the dangers of smoking by offering their light cigarettes under an umbrella of less tar and nicotine.

18. Defendants implemented their "lights" advertising campaign throughout the Class period, utilizing the "Lights," "Ultra-Lights," and "Low-Tar" descriptors in connection with their light cigarettes, including on the packaging.

19. Defendants intended for consumers to interpret the "Light" label on their cigarettes as signifying that their light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand.

20. Defendants were aware that the Cambridge Filter Method, a test used by the tobacco industry to test the tar and nicotine content of cigarettes, reflected that less tar and nicotine were ingested by smokers of cigarettes than was actually the case.

21. Defendants designed their light cigarettes to register lower levels of tar and nicotine when tested through the Cambridge Filter Method than were actually delivered to consumers of their light cigarettes.

22. An article published by the National Cancer Institute states that "light cigarettes trick the smoking machine" as follows:

   a. Tobacco companies designed light cigarettes with tiny pinholes on the filters. These "filter vents" dilute cigarette smoke with air when light cigarettes are "puffed" on by smoking machines, causing the machines to measure artificially low tar and nicotine levels.

   b. Many smokers do not know that their cigarette filters have vent holes. The filter vents are uncovered when cigarettes are smoked on smoking machines. However, filter vents are placed just millimeters from where smokers put their lips or fingers when smoking. As a result, many smokers block the vent – which actually turns the light cigarette into a regular cigarette.

   c. Some cigarette makers increased the length of the paper wrap covering the outside of the cigarette filter, which decreases the number of puffs that occur during the machine test. Although tobacco under the wrap is still available to the smoker, this tobacco is not burned during the machine test. The result is that the machine test measures less tar and nicotine levels than is available to the smoker.

   d. Because smokers, unlike machines, crave nicotine, they may inhale more deeply; take larger, more rapid, or more frequent puffs; or smoke a few extra cigarettes each day to get enough nicotine to satisfy their craving. This is called "compensating," and it means that smokers end up inhaling far more tar, nicotine, and other harmful chemicals than the machine-based numbers suggest.

*The Truth About "Light" Cigarettes: Questions and Answers, National Cancer Institute*, available at http://www.cancer.gov/cancertopics/factsheet/Tobacco/light-cigarettes (last visited April 23, 2009) [Hereinafter "*The Truth About 'Light' Cigarettes*"].

23.   Defendants intentionally manipulated the design and content of their light cigarettes through, *inter alia*, modifying the tobacco blend, weight, rod length and circumference; using reconstituted tobacco sheets and expanded tobacco; and through intentionally increasing smoke PH levels through chemical processing and the use of additives, such as ammonia, resulting in the delivery of greater amounts of tar and nicotine to consumers.

24.   The design of Defendants' light cigarettes increases ventilation, producing smoke that is more mutagenic per milligram of tar than the smoke of non-light cigarettes.

25. Defendants intentionally concealed that smoking their light cigarettes was not healthier than, and could result in a consumer inhaling as much or more tar and nicotine than smoking regular cigarettes of the same brand.

26. The Federal Government's National Cancer Institute (NCI) has concluded that smoking light cigarettes rather than regular cigarettes provides no benefit to smokers' health. *See The Truth About "Light" Cigarettes*.

27. An article published by the NCI states that "researchers also found that the strategies used by the tobacco industry to advertise and promote light cigarettes are intended to reassure smokers, to discourage them from quitting, and to lead consumers to perceive filtered and light cigarettes as safer alternatives to regular cigarettes." *Id.*

28. Defendants were aware that consumers of their light cigarettes often inhale as much or more nicotine and tar than consumers of their non-light cigarettes through unconsciously covering filter ventilation holes with their lips or fingers, taking larger or more frequent puffs, and through holding smoke in their lungs longer than smokers of non-light cigarettes.

29. Defendants failed to disclose to Plaintiff and the Class that consumers of their light cigarettes would not be exposed to less tar or nicotine than consumers of non-light cigarettes of the same brand.

30. Plaintiff started purchasing cigarette products approximately fifteen (15) years ago. During this time period and until 2005, Plaintiff smoked non-light cigarettes. In 2005, as a result of seeing the "Lights" descriptor on Defendants' light cigarettes, believing that Defendants' light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand, Plaintiff switched to Marlboro Lights to ingest less tar and nicotine.

In 2005 and thereafter, Plaintiff regularly purchased packs of Marlboro Lights cigarettes on a weekly basis at local gas stations or retail stores in the State of Illinois. In 2009, shortly before filing a complaint in this matter, Plaintiff learned that Defendants' light cigarettes were not healthier to smoke than regular cigarettes of the same brand and that smoking them does not result in a person receiving less tar or nicotine than smoking regular cigarettes.

<u>**COUNT I**</u>

**VIOLATION OF THE ILLINIOS CONSUMER**
<u>**FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505**</u>

<u>**(Fraudulent, Deceptive and Misleading Misrepresentations)**</u>

1-30.   Plaintiff realleges and incorporates Paragraphs 1 through 30 as if fully set forth herein in this Count I.

31.   Through advertisements and marketing representations featured on their light cigarette products, including, *inter alia*, the terms "Light" and "Ultra-light," Defendants intended to and did misrepresent at all relevant times that smokers of their light cigarettes would receive less nicotine and tar, and a less harmful product, than smokers of regular full-flavored cigarettes of the same brand.

32.   After and due to seeing Defendants' advertisements and marketing representations, Plaintiff reasonably believed that smoking Defendants' light cigarettes was less harmful and resulted in the inhalation of less nicotine and tar than regular full-flavored cigarettes of the same brand.

33.   Plaintiff did not get what he paid for—a healthier cigarette that contained less tar and nicotine than regular cigarettes of the same brand—when purchasing Defendants' light cigarettes.

34. Plaintiff would not have purchased Defendants' light cigarettes altogether or would only have paid less for these products had he known that Defendants' light cigarettes did not deliver less nicotine and tar and were not less harmful than regular cigarettes of the same brand.

35. As a result of Defendants' conduct, Plaintiff and the other members of the putative Class suffered damage in the amount of the purchase price of Defendants' light cigarettes or a portion thereof, plus interest.

## COUNT II

### VIOLATION OF THE ILLINIOS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505

#### (Material Omissions)

1-30. Plaintiff realleges and incorporates Paragraphs 1-30 as if fully set forth herein this Count II.

36. At all relevant times, Defendants were aware that reasonable consumers interpreted Defendants' representations that its cigarettes were "light" to mean that they were healthier and that smoking them would result in the inhalation of less tar and nicotine than smoking regular cigarettes.

37. Defendants failed to disclose that their light cigarettes did not deliver less nicotine and tar than non-light cigarettes of the same brand.

38. Defendants failed to disclose to Plaintiff and the Class that smoking their light cigarettes does not result in a consumer being exposed to less tar and nicotine and is not less harmful than smoking regular cigarettes of the same brand.

39. That smoking Defendants' light cigarettes does not result in a consumer inhaling or being exposed to less tar and nicotine than smoking Defendants' regular cigarettes of the same brand, and is not less harmful than smoking Defendants' regular cigarettes of the same brand, are material facts, in that buyers of Defendants' light cigarettes would be expected to rely upon such information in making a decision whether to purchase Defendants' light cigarettes.

40. Plaintiff would not have purchased Defendants' light cigarettes, or would have paid less for these products, had he known that the light cigarettes did not deliver less nicotine and tar and were not less harmful than regular cigarettes of the same brand.

41. Plaintiff did not get what he paid for—a healthier cigarette that contained less tar and nicotine than regular cigarettes of the same brand—when purchasing Defendants' light cigarettes.

42. As a result of Defendants' material omissions, Plaintiff and the other members of the putative Class suffered damage in the amount of the purchase price of Defendants' light cigarettes or portion thereof, plus interest.

## COUNT III

### VIOLATION OF THE ILLINIOS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505

### (Unfair Business Practices)

1-30. Plaintiff realleges and incorporates paragraphs 1-30 as if fully set forth herein this Count III.

43. Defendants' practice of concealing from Plaintiff and the Class that light cigarettes did not deliver less tar and nicotine and were not less harmful than regular cigarettes of the same brand is an unfair trade practice because it violates the public policy of Illinois, is

immoral, unethical, and unscrupulous, and caused and continues to cause substantial injury to consumers in Illinois, including Plaintiff and the other members of the Class.

44. Defendants' practice of representing their light cigarettes as "Light" or "Ultra-Light," while fully aware that such representations reasonably convey that Defendants' light cigarettes deliver less tar and nicotine and are less harmful than regular cigarettes of the same brand, constitutes an unfair trade practice because it violates the public policy of Illinois, is immoral, unethical and unscrupulous, and caused and continues to cause substantial injury to consumers in Illinois, including Plaintiff and the other members of the Class.

45. Plaintiff would not have purchased Defendants' light cigarettes, or would have paid less for these products, had he known that the light cigarettes did not deliver less nicotine and tar and were not less harmful than regular cigarettes of the same brand.

46. Plaintiff did not get what he paid for—a healthier cigarette that contained less tar and nicotine than regular cigarettes of the same brand—when purchasing Defendants' light cigarettes.

47. As a result of Defendants' unfair acts and practices, Plaintiff and the other members of the putative Class suffered damage in the amount of the purchase price of Defendants' light cigarettes or a portion thereof, plus interest.

## COUNT IV

## UNJUST ENRICHMENT

1-30 Plaintiff realleges and incorporates Paragraphs 1-30 as if fully set forth herein this Count IV.

48. After and due to seeing Defendants' advertisements and marketing representations, Plaintiff reasonably believed, and Plaintiff and the Class were reasonably likely

to believe, that smoking Defendants' light cigarettes was less harmful and resulted in the inhalation of less nicotine and tar than regular full-flavored cigarettes of the same brand.

49. To the detriment of the Plaintiff and the Class, Defendants benefited from and were unjustly enriched by Defendants' receipt of monies as a result of Plaintiff's and the other Class members' purchases of Defendants' light cigarettes, due to Defendants' concealment and failure to disclose that their light cigarettes did not deliver less tar and nicotine and were not less harmful than regular cigarettes of the same brand.

50. To the detriment of the Plaintiff and the Class, Defendants benefited from and were unjustly enriched by Defendants' receipt of monies as a result of Plaintiff's and the other Class members' purchases of Defendants' light cigarettes, due to Defendants' misrepresentation that their light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand.

51. Defendants had knowledge of, voluntarily accepted, and retained these benefits.

52. Defendants received these benefits to Plaintiff's detriment.

53. Plaintiff relied on Defendants' above-described misrepresentations in believing that Defendants' light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand.

54. It would be inequitable, unconscionable, unfair, unlawful, and unjust for Defendants to retain these ill-gotten benefits.

55. As a result of Defendants' unjust enrichment, Plaintiff and the Class are entitled to restitution in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court enter an Order:

    A.    Certifying the proposed Illinois Class under Federal Rule of Civil Procedure 23(a) and (b)(3) and appointing Plaintiff and Plaintiff's counsel of record to represent the Class;

    B.    Finding that Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act and were unjustly enriched in violation of applicable law;

    C.    Awarding actual, compensatory, and consequential damages;

    D.    Awarding restitution of monies or portions thereof that Plaintiff and the Class paid at retail for Defendants' light cigarettes, and disgorgement of profits Defendants received from their sale of light cigarettes to Plaintiff and the Class, as provided by applicable law;

    E.    Awarding punitive damages as provided under applicable law;

    F.    Awarding reasonable attorneys' fees, costs, and expenses; and

    G.    Granting any such other relief as it deems appropriate.

LEONDARDO BIUNDO, on behalf of himself and all others similarly situated,

By: /s/      Ben Barnow
        One of Plaintiff's Counsel

Larry D. Drury
James Rowe
Larry D. Drury, Ltd.
205 West Randolph, Suite 1430
Chicago, Illinois 60606
312/346-7950

Ben Barnow
Barnow and Associates, P.C.
One North LaSalle Street
Suite 4600
Chicago, IL 60602
312/621-2000