UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| IN RE:  LIGHT CIGARETTES MARKETING | ) | MDL DOCKET NO. 1-09-MD-2068 |
| SALES PRACTICES LITIGATION | ) | ALL CASES |

**REPLY TO PHILIP MORRIS USA INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR APPLICATION OF THE COLLATERAL ESTOPPEL DOCTRINE**

Table of Contents

I.     FAIRNESS AND EFFICIENCY SUPPORT THE APPLICATION OF
       COLLATERAL ESTOPPEL IN THIS LITIGATION ........................................................2

       A. No Decisions are Inconsistent with the Opinion of the *DOJ* Court ....................................2

       B. Applying Collateral Estoppel to the Findings Will Conserve Significant Judicial
          Resources and is Fair to Defendants ....................................................................................6

       C. The Absence of a Jury Determination is a Neutral Consideration...................................11

II.    PLAINTIFFS HAVE SATISFIED THE TRADITIONAL ELEMENTS OF
       COLLATERAL ESTOPPEL ........................................................................................12

       A. The Findings Were Necessary to the Court's Judgment in the *DOJ* Case ......................12

       B. Each Finding Was Litigated in the *DOJ* Case .................................................................14

            1.  Plaintiffs seek to preclude Defendants from relitigating matters determined
                by the *DOJ* court ....................................................................................................14

            2.  The *DOJ* Court did not apply materially different legal standards than
                those at issue in this litigation..................................................................................15

       C. The Findings are Relevant to this Matter..........................................................................16

III.   NO "NEW EVIDENCE" SINCE THE *DOJ* TRIAL PRECLUDES
       APPLICATION OF THE COLLATERAL ESTOPPEL DOCTRINE HERE .................16

       A. The Affidavits Defendants Have Submitted Do Not Cast Doubt on
          the *DOJ* Court's Findings .................................................................................................17

       B. Defendants Fail To Demonstrate That There is a Material Change
          in Circumstances That Renders Application of Collateral Estoppel
          here Inappropriate ..............................................................................................................19

       C. The Case Law Defendants Rely Upon Is Inapposite ........................................................20

       D. Many of the *DOJ* Court's Findings of Fact Defendants Challenge
          Are About Defendants' Historic Conduct, Which Cannot Be Altered
          by Any Purported New Scientific Discoveries ..................................................................23

i

Table of Authorities

<u>Cases</u>

*Arbegast v. Bd. of Educ.*, 65 N.Y.2d 161 (N.Y. 1985) ..................................................9

*Acevedo-Garcia v. Monroig*, 351 F.3d 547 (1st Cir. 2003) ..........................................10

*Blue Cross & Blue Shield of New Jersey Inc. v. Philip Morris, Inc.*,
No. 98 CV 3287 (E.D.N.Y.) ......................................................................................2, 3

*Bobby v. Bies*, 129 S. Ct. 2145 (2009) .................................................................12, 13

*Brown v. Colegio de Abogados de Puerto Rico*, 579 F. Supp. 2d 211 (1st Cir. 2008)....................2

*Clark v. Smithkline Beecham*, No. 7:06-cv-30,
2006 WL 3329141 (M.D. Ga., Nov. 13, 2006)..........................................................22

*Coburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d 1235 (D. Utah 2001) ......................10, 22

*Commercial Assocs. v. Tilcon Gammino, Inc.,* 998 F.2d 1092 (1st Cir. 1993) ..........................12

*Comm'r of Dept. of Employment & Training v. Dugan*, 697 N.E.2d 533 (Mass. 1998) .............14

*Curtis v. Altria Group Inc.,* No. 27-cv-01-18042 (Minn. Dist. Ct., Oct. 14, 2009)............3, 10, 11

*Duvall v. Attorney Gen. of the U.S.*, 436 F.3d 382 (3d Cir. 2006)...................................1

*Exagui v. Dow Chem. Corp.*, 598 F.2d 727 (2d Cir. 1979) ........................................20

*Grisham v. Philip Morris, Inc.*, No. CV 02-7930,
2009 WL 4019366 (C.D. Cal., Oct. 7, 2009)...................................................3, 5, 10

*Haglund v. Philip Morris, Inc.*, No. 012367C,
2009 WL 3839004 (Mass. Super. Ct., Oct. 20, 2009) ................................................ 5

*Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258 (1992)................................................3

*Hoult v. Hoult*, 157 F.3d 29 (1st Cir. 1998)...........................................................12

*In re Air Crash Disaster*, 720 F. Supp. 1505 (D. Colo. 1989).......................................10

*In re Sonus Networks, Inc, Shareholder Derivative Litig.*, 499 F.3d 47 (1st Cir. 2007) ...............14

*In re Tobacco Cases II,* No. JCCP 4042
2004 WL 2445337 (Cal. Super., Ct. Aug. 4, 2004) ........................................................6

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.,*
No. 1:97-cv-1422 (N.D. Ohio, Mar. 18, 1999) ........................................................2, 3

*Kobrin v. Bd. of Registration in Med.,* 832 N.E.2d 628 (Mass. 2005) .........................................14

*LaBelle v. Philip Morris, Inc.,* 243 F. Supp. 2d 508 (D.S.C. 2001) ..................................................5

*Little v. Brown & Williamson Tobacco Corp.,* No. 2:98-1879-23 (D.S.C. Jan. 22, 2001) .............5

*McLaughlin v. Am. Tobacco Co*., 522 F.3d 215 (2d Cir. 2008) .......................................................3

*Miller v. Johns-Manville Sales Corp.,* 538 F. Supp. 631 (D. Kan. 1982).......................................9

*Montana v. United States,* 440 U.S. 147 (1979) ...........................................................................14

*Neri v. R.J. Reynolds Tobacco Co.,* No. 98-cv-371,
2000 WL 33911224 (N.D.N.Y., Sept. 28, 2000)...........................................................5

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979)........................................................... *passim*

*Philip Morris USA Inc. v. Williams,* 549 U.S. 349 (2007) ..............................................................9

*Pignons S.A. de Mecanique v. Polaroid Corp*., 701 F.2d 1 (1st Cir. 1983)...................................19

*Ramallo Bros. Printing, Inc. v. El Día, Inc.,* 490 F.3d 86 (1st Cir. 2007)....................................19

*Rogers v. Ford Motor Co.,* 925 F. Supp. 1413 (N.D. Ind. 1996)...................................................20

*Schwab v. Philip Morris USA, Inc.,* 449 F. Supp. 2d 992 (E.D.N.Y. 2006)................................3, 5

*Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840 (3d Cir. 1974)...........................................19

*Setter v. A.H. Robbins Co.,* 748 F.2d 1328 (8th Cir. 1984) .......................................................9, 10

*United States v. Philip Morris USA, Inc*., 566 F.3d 1095 (D.C. Cir. 2009) ......................... *passim*

*United States v. Philip Morris USA, Inc*., 396 F.3d 1190 (D.C. Cir. 2005) ....................................3

*United States v. Philip Morris USA, Inc.,* 449 F. Supp. 2d 1 (D.D.C. 2006) ....................... *passim*

*Vincent v. Thompson,* 50 A.D.2d 211 (N.Y. App. Div. 1975).................................................20, 21

*Whelan v. Abell,* 953 F.2d 663 (D.C. Cir. 1992).........................................................................10

iii

*Zweig v. E.R. Squibb & Sons*, 536 A.2d 1280 (Sup. Ct. N.J. 1988) ...............................................20

Statutes

18 U.S.C. § 1964(a) ...............................................................................................................3

18 U.S.C. § 1964(c) ...............................................................................................................3

Restatements and Treatises

Restatement (Second) of Judgments, § 27 cmt. o. ........................................................13

18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
Federal Practice & Procedure § 4421 (2009)...............................................................13

18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
 Federal Practice & Procedure § 4465.2 (2009)...........................................................11

18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
 Federal Practice & Procedure § 4468 (2009)...............................................................11

Contrary to the position taken in Philip Morris USA Inc.'s Opposition to Plaintiffs' Motion for Application of the Collateral Estoppel Doctrine ("Def. Mem."), Defendants are not entitled to a rematch regarding the Findings rendered by the court in *United States v. Phillip Morris USA,* 449 F. Supp. 2d 1 (D.D.C. 2006) ("*DOJ*"). As noted in *Duvall v. Attorney Gen. of the U.S.,* 436 F.3d 382, 387 (3d Cir. 2006) (citation omitted).

> [A] losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.

Application of the collateral estoppel doctrine to the Findings will preserve significant judicial resources and is fair to Defendants. None of "the considerations that would justify a refusal to allow the use of offensive collateral estoppel" outlined by the Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), support a determination that the application of offensive collateral estoppel in this matter would be unfair to Defendants. Additionally, applying the doctrine will preserve significant judicial resources, as it will allow the Court to avoid relitigating much of one of the largest civil cases in history.

Defendants' claim that they did not receive a full and fair opportunity to litigate the Findings in the *DOJ* case is also incorrect. Each Finding was central to the route that the *DOJ* court took in rendering its decision. Plaintiffs seek to preclude Defendants from relitigating Findings copied verbatim from the *DOJ* court's opinion. Thus, Defendants' claim that Plaintiffs seek to preclude them from litigating matters that were not at issue in the *DOJ* case is wrong, and the identity of issues element is satisfied.

Finally, Defendants' argument that the emergence of allegedly "new evidence" forecloses the application of collateral estoppel to the Findings is likewise misplaced.

Thus, respectfully, the Court should grant Plaintiffs' Motion in its entirety, and preclude Defendants from relitigating the Findings.

## I.   FAIRNESS AND EFFICIENCY SUPPORT THE APPLICATION OF COLLATERAL ESTOPPEL IN THIS LITIGATION.

The Court has broad discretion in determining whether the application of collateral estoppel to the Findings is fair to Defendants. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-327 (1979); *Brown v. Colegio de Abogados de Puerto Rico*, 579 F. Supp. 2d 211, 217-18 (1st Cir. 2008). The fairness considerations outlined by the *Parklane* Court support that precluding Defendants from contesting the Findings is fair.

### A.   No Decisions are Inconsistent with the Opinion of the *DOJ* Court.

Defendants' argument that there have been a number of decisions that are inconsistent with the judgment rendered by the *DOJ* court is incorrect, and relies upon decisions regarding different causes of action and elements than those at issue in the *DOJ* case.

*Blue Cross & Blue Shield of New Jersey Inc. v. Philip Morris, Inc.*, No. 98-cv-3287 (E.D.N.Y. June 4, 2001), and *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, No. 1:97-cv-1422 (N.D. Ohio Mar. 18, 1999), the principle cases Defendants rely upon in support of their inconsistent judgments argument, are not inconsistent with the judgment of the *DOJ* court. To prevail on their RICO claims, the plaintiffs in those actions, as private parties, needed to prove that the defendants' wrongful conduct was the "proximate cause" and the "but for cause" of the injuries they suffered.[1] *See, e..g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d

---

[1] 18 U.S.C. § 1964(c) gives private citizens a cause of action under RICO by providing that "[a]ny person injured in his business or property by reason of a violation of [RICO substantive provisions] may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." To fulfill the requirement that the injury occur "by reason of" a defendant's action, a plaintiff

215, 222 (2d Cir. 2008); *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992). In contrast, to prevail on its RICO claims, the plaintiff in the *DOJ* case, the U.S. government, was not required to establish these elements.[2] *See* 18 U.S.C. § 1964(a). Thus, the RICO claims at issue in *Blue Cross* and *Iron Workers* included two elements not at issue in the *DOJ* case. The fact-finders in these cases may well have rejected the plaintiffs' RICO claims solely after finding that the plaintiffs in those actions failed to establish the causation element of said claims—an element not at issue in the *DOJ* case. Thus, neither decision is inconsistent with the judgment of the *DOJ* court.

Neither *Schwab v. Philip Morris USA, Inc.,* 449 F. Supp. 2d 992, 439 (E.D.N.Y. 2006),[3] nor *Curtis v. Altria Group Inc.,* No. 27-CV-01-18042 (Minn. Dist. Ct. Oct. 14, 2009), addresses this important distinction. Moreover, *Schwab*, which the *Curtis* decision relies upon, includes no inquiry into whether any judgment existed which was inconsistent with that entered in the *DOJ* case. *Schwab*, 449 F. Supp. 2d at 1079. Instead, *Schwab* simply references the sheer number of tobacco cases in which the defendants in that action had prevailed. *Schwab*, 449 F. Supp. 2d at 1079. This number, however, has no bearing on whether a judgment exists that is inconsistent with that entered by the *DOJ* court. *See Grisham v. Philip Morris, Inc.*, 2009 WL 4019366, at *16 (C.D. Cal. Oct. 7, 2009) (holding that "many of Defendants' purportedly 'inconsistent' prior cases involved completely different legal claims."). Defendants' pointing to a number of cases

---

must show "that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992).

[2] *See U.S. v. Philip Morris USA, Inc*., 396 F.3d 1190, 1200 (D.C. Cir. 2005) ("In a civil case the Government may request limited equitable relief under § 1964(a). Individual plaintiffs are made whole and defendants punished through treble damages under 18 U.S.C. § 1964(c).").

[3] The *Schwab* court denied the plaintiffs' motion for collateral estoppel in that matter, in part, because the matter included claims against Liggette, a party that had prevailed in the *DOJ* action, and the "[a]pplication of estoppel to all but one of many defendants would confuse the jury, making administration of the case more difficult." *Schwab*, 449 F. Supp. 2d at 1079.

where they allegedly prevailed does not demonstrate that any judgment is inconsistent with the *DOJ* court's judgment.[4]

Defendants are wrong in asserting that the plaintiffs in actions prior to the *DOJ* case had access to the "full panoply" of evidence relating to their wrongful acts. Discovery in the *DOJ* case involved: (1) the parties engaging in more than two years of discovery, with a special master overseeing disputes and issuing 172 Reports and Recommendations, the majority of which were appealed to the district court; (2) the parties exchanging over 4,000 requests for production of documents; (3) Defendants' producing over 26 million pages of documents; and (4) the parties each taking over 1,000 hours of depositions. 449 F. Supp. 2d at 28, 33. After this process, the Court held that the defendants, including Philip Morris and Altria, had:

> suppressed, concealed, and terminated scientific research; they destroyed documents including scientific reports and studies; and they repeatedly and intentionally improperly asserted the attorney-client and work product privileges over many thousands of documents (not just pages) to thwart disclosure to plaintiffs in smoking and health related litigation and to federal regulatory agencies, and to shield those documents from the harsh light of day.

449 F. Supp. 2d at 839 (FOF 4034); *see also Id.* at 810 (FOF 3907) ("Defendant Philip Morris suppressed and concealed many scientific research documents, even going so far as to send them to a foreign affiliate in order to prevent the disclosure of documents in litigation and in federal regulatory proceedings."). Thus, even if an inconsistent judgment did exist, it would have to be afforded substantially less weight.

The *DOJ* court's decision was not grounded in large part upon expert testimony not consistently found to be reliable, as Defendants argue. Defendants attack the testimony of Dr. William Farone, Ph.D., who is one of over two hundred witnesses whose testimony was

---

[4] Decisions that Defendants' claim are inconsistent with arguments that Plaintiffs may make in this litigation, which may, or may not be, based in part on the findings of the *DOJ* court, are not relevant to any preclusion analysis. *See* Def. Mem. at 13.

4

considered by the *DOJ* court. The *DOJ* court's opinion was not based "in large part" upon the testimony of *any* one expert or person. Thus, Defendants' attack on a single expert does not support the notion that the opinion rendered by the *DOJ* court was based in large part upon testimony not consistently found to be reliable.

In any event, Defendants' attacks on Dr. Farone's testimony are unfounded. Courts have consistently found Dr. Farone's testimony to be reliable. Dr. Farone, a former Director of Applied Research at Philip Morris, was offered as a fact witness and an expert witness in the *DOJ* case. When addressing the qualifications of Dr. Farone, the *DOJ* court stated that:

> Dr. Farone is an expert in the chemistry and biochemistry of alkaloids and addictive drugs, the chemistry of physics and cigarette smoke, cigarette design and technology, and the chemistry and biochemistry of toxic substances and their interactions with living systems; he has a Ph.D. in chemistry and physical chemistry, and is specifically trained, both through formal education and long employment as Director of Applied Research at Philip Morris, in the study of colloidal systems (i.e., chemical aerosols and smoke).

449 F. Supp. 2d at 352 (FOF 1595). Several other courts have likewise accepted the testimony of Dr. Farone. *See, e.g., Grisham v. Philip Morris, Inc.*, --- F. Supp. 2d ----, 2009 WL 4019366, at *21 (C.D. Cal. Oct. 7, 2009); *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1288 (E.D.N.Y. 2006); *Haglund v. Philip Morris, Inc.*, 2009 WL 3839004, *5 (Mass. Super. Ct., Oct. 20, 2009).

Defendants' attempt to discredit Dr. Farone's testimony is without merit. Defendants cite to cases where courts declined to admit Dr. Farone's statement that Philip Morris could have developed a cigarette that would have reduced the risks of smoking cigarettes. *See Little v. Brown & Williamson Tobacco Corp.*, No. 2:98-1879-23 (D.S.C. Jan. 22, 2001); *LaBelle v. Philip Morris, Inc.*, 243 F. Supp. 2d 508, 519 (D.S.C. 2001); *Neri v. R.J. Reynolds Tobacco Co.*, 2000 WL 33911224, at *14 (N.D.N.Y. 2000). Yet, none of the Findings at issue here relate to

Defendants' ability to develop such a product. Additionally, *In re Tobacco Cases II,* 2004 WL 2445337, at *7-8 (Cal. Super. Ct. 2004), addresses whether statements made by Dr. Farone in a declaration should be admitted as fact, and not whether he was qualified to offer expert testimony.

**B.     Applying Collateral Estoppel to the Findings Will Conserve Significant Judicial Resources and is Fair to Defendants**

Precluding relitigation of the Findings will preserve significant judicial resources. The *DOJ* case involved: (1) the parties' engaging in more than two years of discovery, with a special master overseeing disputes and issuing 172 Reports and Recommendations, the majority of which were appealed to the district court; (2) the parties' exchanging over 4,000 requests for production of documents; (3) Defendants' producing over 26 million pages of documents; (4) the parties each taking over 1,000 hours of depositions; (5) eighteen summary judgment motions; (6) "countless motions in limine"; and (7) a nine-month trial at which the parties presented eighty four (84) witnesses and tens of thousands of exhibits. 449 F. Supp. 2d at 28, 33. Defendants' argument that repeating much or all of this process would be more efficient than applying collateral estoppel to the Findings is incorrect, and fails to take into consideration the facts and size of this litigation. It will not be more efficient for the parties to engage in years of factual discovery related to issues fully and fairly litigated, vigorously contested, and previously determined by the *DOJ* court.

Many of the Findings relate to historical information. For example, Defendants have already voiced their intention to argue that the "Lights," "Ultra-Lights," and similar descriptors on Defendants' light cigarettes mean lighter in taste, not that the cigarettes are healthier. However, as the *DOJ* court found, Defendants' own internal documents demonstrate that the lights descriptor was placed on their light cigarettes to convey to consumers that they are

6

healthier to smoke than regular cigarettes. 449 U.S. at 513 (FOF 2401) ("James Morgan[5], who was Brand Manager of Marlboro from 1969 to 1972, during the time when Philip Morris introduced Marlboro Lights, its first 'light' cigarette, explained the intended meaning of the 'lights' descriptor. Morgan stated that, from the very beginning, the 'lights' descriptor was intended to communicate that the brand was low in tar-as opposed to a brand that was lighter in taste"). Certainly, it is inefficient for the parties to find, identify, interview, and/or depose multiple lay witnesses and experts, and for the Court to order briefing on, hear motions regarding, and issue reports and recommendations relating to disputes that arise regarding said discovery, given that this very fact was already fully and fairly litigated in the *DOJ* action.

Applying collateral estoppel to the Findings is also fair to Defendants. The *Parklane* Court held that courts should consider the following fairness factors when determining whether applying offensive non-mutual collateral estoppel is appropriate: (1) whether the plaintiff had the opportunity to join the previous action; (2) whether the party sought to be precluded had the incentive to fully and vigorously litigate the issue in the previous action; (3) whether the judgment in the previous action was inconsistent with any prior decision; and (4) whether procedural opportunities were available in that action to the party sought to be precluded that were not available in the prior action and that were likely to cause a different result. *Parklane*, 439 U.S. at 332. None of these considerations support that the application of collateral estoppel to the Findings would be unfair to Defendants. Defendants do not contest that Plaintiffs likely could not have joined the *DOJ* action or that Defendants had every incentive to vigorously litigate the *DOJ* action. As noted *infra*, no judgment inconsistent with that of the *DOJ* court

---

[5] James Morgan was President and CEO of Philip Morris from 1994 until 1997.

exists. Additionally, as noted *supra*, no procedural opportunities are available to Defendants in this litigation that would be likely to produce a different result.

Applying collateral estoppel to the Findings and then proceeding with litigation of issues such as causation or any other relevant and unresolved issue is fair to Defendants. In *Parklane*, the plaintiffs sought to preclude the defendant from contesting that one of its proxy solicitations was false and misleading. *Id.* at 325. Like in this litigation, the application of collateral estoppel alone did not entitle the plaintiffs to relief. *Id.* at 325 n.2. The *Parklane* plaintiffs needed to show that they suffered injury and prove damages to prevail on their claims, and acknowledged that the defendants were entitled to a jury on these contested issues. *Id.* The *Parklane* Court outlined the "the considerations that would justify a refusal to allow the use of offensive collateral estoppel." 439 U.S. at 332. The language of *Parklane* supports that this list is exhaustive, particularly the Court's reference to the factors as "*the* considerations." *Id.* Defendants' argument that the Court should now adopt an additional consideration—whether precluding Defendants from contesting some issues while allowing them to litigate others was fair—is incorrect. The *Parklane* Court did not consider this argument as a fairness factor when faced with similar facts, and thus, the Court should not adopt and consider this additional fairness factor at this time.

Moreover, litigating the relevant issues not precluded by the Findings will not require presentation of much the same evidence Plaintiffs would present if the Findings were litigated in this matter. The majority of Plaintiffs need only establish loss causation—that they suffered a loss as the result of Defendants' fraudulent and unjust conduct—not reliance and deception, as Defendants assert. Plaintiffs will rely heavily upon expert testimony in establishing these issues. Apart from generalized statements, Defendants fail to identify any evidence bearing on a

8

precluded finding that Plaintiffs will need to present to establish "open" issues. Thus, their arguments in this regard lack merit.

The potential availability of certain affirmative defenses likewise does not support Defendants' argument that applying preclusion in this matter would not preserve judicial resources.[6] Plaintiffs will not need to present much of the DOJ case to any fact-finder to respond to affirmative defenses raised by Defendants, as they suggest. Moreover, Defendants' argument in this regard focuses entirely upon what will be presented at trial to any fact-finder. The issue here, however, is whether it will be more efficient to relitigate the Findings from start to finish, a process that will likely involve extensive fact and expert discovery and pretrial motion practice in addition to any trial. The answer is no.

Likewise, the availability of punitive damages does not foreclose application of collateral estoppel in this litigation. No Plaintiff requests that the Court award punitive damages to punish Defendants for injuries that they inflicted upon persons who are neither Plaintiffs nor putative Class members in this litigation. Thus, Defendants' reliance on *Philip Morris USA Inc. v. Williams*, 549 U.S. 349, 353 (2007), which holds that plaintiffs may not seek punitive damages for injuries caused to non-parties or strangers to a litigation, is not appropriate. Additionally, Defendants rely solely upon tort cases involving plaintiffs who sought damages for personal injuries suffered and punitive damages. *See Setter v. A.H. Robbins Co.*, 748 F.2d 1328 (8th Cir.

---

[6] The actions at issue do not seek to recover damages for personal injury, injury to property, or wrongful death, and, thus, the affirmative defense of comparative fault is not available to Defendants in this matter. *See* Def. Mem. at 24 (quoting *Arbegast v. Bd. of Educ.*, 65 N.Y.2d 161, 166-67 (N.Y. 1985) (noting that New York's comparative fault statute, the only comparative fault statute referenced by Defendants, only applies to actions brought to recover "damages for personal injury, injury to property or wrongful death.")). Similarly, Defendants' reliance upon *Miller v. Johns-Manville Sales Corp.*, 538 F. Supp. 631, 348 (D. Kan. 1982) and Wright & Miller, which state that precluding a Defendant from contesting fault in an action where comparative fault will be at issue could prejudice a jury, are not applicable to this matter.

1984) (involving allegations that the plaintiff was injured from wearing the defendant's Dalkon Shield); *In Re Air Crash Disaster*, 720 F. Supp. 1505, 1524 (D. Colo. 1989) (involving allegations of personal injury and wrongful death arising from the crash of a commercial airplane); *Grisham*, 2009 WL 4019366 (involving allegations of personal injuries caused by harmful chemicals in cigarettes). Plaintiffs do not seek damages for personal injuries suffered, and thus, these cases are not relevant to this matter.

Defendants' unfairness arguments are not supported by the authorities Defendants cite, as each of the decisions Defendants cite was premised on facts specific to that case that are not present here. *See Acevedo-Garcia v. Monroig*, 351 F.3d 547, 556 (1st Cir. 2003) (declining to apply collateral estoppel to plaintiff-specific findings made in a prior action involving different plaintiffs); *Whelan v. Abell*, 953 F.2d 663, 669 (D.C. Cir. 1992) (declining to apply collateral estoppel because the burden of proof relating to a specific finding shifted, and concerns related to whether the shifting burden could confuse a jury); *Coburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d 1235, 1237-38 (D. Utah 2001) (declining to apply collateral estoppel because it was unsure as to exactly what the jury in the prior action had decided).

Defendants are wrong that *Curtis* precludes the application of collateral estoppel here as to certain Plaintiffs. The plaintiffs in *Curtis* sought to recover as private attorney generals under Minnesota's consumer fraud action. *Curtis v. Altria Group Inc.,* No. 27-CV-01-18042 (Minn. Dist. Ct. Oct. 14, 2009). A Minnesota state district court exercised its "sound discretion" in denying the plaintiffs' motion for partial summary judgment based upon collateral estoppel. *Id.* The decision was based upon the court's conclusion that the issues in *Curtis* were not identical to the issues in the *DOJ* case, and its determination that judgments inconsistent with that entered in

10

the *DOJ* case existed.[7] *Id.* Thus, the *Curtis* decision was based upon facts unique to that case, and has no bearing on this motion.

## C.    The Absence of a Jury Determination is a Neutral Consideration

The *Parklane* Court recognized that "the presence or absence of a jury as factfinder is basically neutral . . . ." 439 U.S. 322, at 332-33 n.19. Defendants ignore the Supreme Court's holding in this regard. Def. Mem. at 29-31. Thus, Defendants' argument that the potential availability of a jury weighs in favor of denying Plaintiffs' current motion is without merit.

Defendants' purported authorities in this regard do not support their position. Defendants quote Wright & Miller as explaining that, even where federal preclusion principles apply, courts should deny non-mutual offensive estoppel with respect to state-law claims "when a strong state policy such as the right to jury trial favors relitigation." Def. Mem. at 18 (quoting 18A Wright & Miler § 4468). Defendants, however, take this quote out of context:

> Federal courts allow nonmutual preclusion; although state courts probably should be compelled to honor this policy when it draws from substantive federal concerns, it is doubtful whether they should be compelled to do so when the policy aims simply at avoiding the burdens of retrial, or perhaps when a strong state policy such as the right to jury trial favors relitigation.

18A Wright & Miler § 4468 (citations omitted). Thus, the provision simply refers to whether *state courts* should be compelled to apply non-mutual preclusion. *Id.*

Defendants also quote 18A Wright & Miller § 4465.2 for the proposition that "courts 'may properly protect state jury-trial rights by denying nonmutual preclusion.'" Wright & Miller states that "a state court, moreover, may properly protect state jury-trial rights by denying nonmutual preclusion." *Id.* The inclusion of the qualifying term "[a] state court" makes clear that the provision Defendants rely upon does not support their argument. *Id.*

---

[7] As noted *supra*, the *Curtis* court was incorrect in holding that judgments inconsistent with that of the *DOJ* court existed.

11

Equally wrong is Defendants' contention that the court should consider state procedural rules and policies when deciding this motion. Federal rules, procedures, and preclusion principles apply in this matter. Thus, state rules or policies regarding the use of non-mutual preclusion are not relevant, and, thus, are inapplicable.

## II.   PLAINTIFFS HAVE SATISFIED THE TRADITIONAL ELEMENTS OF COLLATERAL ESTOPPEL

Defendants received a full and fair opportunity to litigate the Findings in the *DOJ* case, and each Finding was essential to the fact-finder's judgment. Also, the Findings were copied verbatim from the *DOJ* court's opinion, and thus, Defendants' argument that Plaintiffs seek to preclude Defendants from litigating issues not addressed in the *DOJ* case is without merit.

### A.   The Findings Were Necessary to the Court's Judgment in the *DOJ* Case.

A finding is "necessary" for collateral estoppel purposes if it is central to the route that led the fact-finder to the judgment reached, even if the result "could have been achieved by a different, shorter and more efficient route." *Hoult v. Hoult*, 157 F.3d 29 (1st Cir. 1998) (quoting *Commercial Assocs. v. Tilcon Gammino, Inc.,* 998 F.2d 1092, 1097 (1st Cir. 1993)). Each of the Findings was central to the court's judgment in the *DOJ* action. The Findings were fully, fairly, and vigorously litigated; carefully reviewed by the *DOJ* court; and were affirmed on appeal. Plaintiffs' prior Memorandum and the accompanying Appendix identify the elements to which each Finding was central to, on a Finding-by-Finding basis.[8]

The Court's decision in *Bobby v. Bies*, 129 S. Ct. 2145 (2009), is not applicable to this matter. *Bies* involved a party that had been sentenced to death after being convicted of the

---

[8] Defendants' painting of Plaintiffs' current motion as an all or nothing endeavor is without merit. Though Plaintiffs believe that each Finding satisfies the necessary elements for preclusion to apply, they acknowledge that the Court may apply preclusion to some findings and not others. Additionally, the number of Findings reinforces the extraordinary size of this litigation and supports that granting Plaintiffs' motion will preserve significant judicial resources.

aggravated murder, kidnapping and attempted rape of a child. The Court addressed whether the

Ohio Supreme Court's observation that "Bies' mild to borderline mental retardation merit[ed]

some weight" as a mitigating factor when determining whether he should be sentenced to the

death penalty, precluded the State of Ohio from litigating the fact of Bies' mental retardation in a

subsequent action. The Court held that:

> The doctrine bars relitigation of determinations necessary to the ultimate outcome
> of a prior proceeding. The Ohio courts' recognition of Bies' mental state as a
> mitigating factor was hardly essential to the death sentence he received. On the
> contrary, the retardation evidence cut against the final judgment. Issue preclusion,
> in short, does not transform final judgment losers, in civil or criminal
> proceedings, into partially prevailing parties.

129 S. Ct. at 2148-49, 2152-53; *see also* 18 Charles Alan Wright, Arthur R. Miller, & Edward H.

Cooper, Federal Practice & Procedure § 4421 (2009) ("findings contrary to the judgment are not

necessary and do not support issue preclusion."). Plaintiffs do not request that the Court apply

collateral estoppel to any Finding that "cut[s] against the final judgment" of the *DOJ* court, as

such a finding would favor the losers of the *DOJ* case.

Defendants are wrong in arguing that no Finding can be considered necessary based upon

the *DOJ* court's determination that the Defendants engaged in a massive single scheme to

defraud. As recognized by the Restatement (Second) of Judgments, "if the judgment of the court

of first instance was based on a determination of two issues, either of which standing

independently would be sufficient to support the result, and the appellate court upholds both of

these determinations as sufficient, and accordingly affirms the judgment, the judgment is

conclusive as to both determinations." Restatement (Second) of Judgments, § 27 cmt. o. Thus, if

a court enters a judgment based upon two findings, each of which alone would be sufficient to

support the result, and the appellate court affirms both findings, each is entitled to preclusive

effect. In this matter, Defendants had the right to, and did, appeal the district court's findings.

The Circuit Court of Appeals affirmed the district court's findings in their entirety with respect to Defendants' liability. *U.S. v. Philip Morris USA Inc*., 566 F.3d 1095, 1125-26 (D.C. Cir. 2009). Thus, the Findings were upheld on appeal and are entitled to preclusive effect.

**B.      Each Finding Was Litigated in the *DOJ* Case**

"[T]he application of collateral estoppel necessitates an inquiry into whether the 'issues presented . . . are in substance the same as those resolved' in the prior action." *Montana v. United States*, 440 U.S. 147, 155 (1979) (citations omitted); *In re Sonus Networks, Inc, Shareholder Derivative Litig.*, 499 F.3d 47, 62-63 (1st Cir. 2007) (citing *Kobrin,* 832 N.E.2d at 634; *Comm'r of Dept. of Employment & Training v. Dugan,* 697 N.E.2d 533, 537 (1998). The Findings were adopted verbatim from the *DOJ* court's opinion. Thus, Defendants' claim that Plaintiffs seek to preclude them from contesting issues not litigated in the *DOJ* case is incorrect, and the identity of issues element is satisfied.

**1.    Plaintiffs Seek to Preclude Defendants From Relitigating Matters Determined by the *DOJ* court**

The Findings of the *DOJ* court do not involve a "fundamentally different time period," as Defendants suggest. Def. Mem. at 37-41. The vast majority of time periods referred to in the Findings relate only to when Defendants knew certain information and/or performed certain actions. *See, e.g.,* 449 F. Supp. 2d at 465 (FOF 2146) (finding that in 1978 Philip Morris was aware that smoking light cigarettes could be more toxic than smoking regular cigarettes); (FOF 2180) (Since at least 1967, Philip Morris has been aware that smokers compensate when smoking light or low tar cigarettes); (FOF 2239) (Defendants' internal marketing documents establish that Defendants have known for decades that even though consumers prefer the taste of regular cigarettes to low tar cigarettes, they are willing to forgo them and smoke low tar cigarettes, which are less enjoyable and have a less appealing taste, because they believe low tar

14

cigarettes are better for their health). As such, they evidence Defendants' knowledge and/or conduct as of a specific date. Plaintiffs have not requested, as Defendants imply, that the Court take findings from certain time periods and adopt them as to later time periods. Thus, the findings do not involve a "fundamentally different time period."

Defendants' "changed circumstances" argument is misplaced, as the actions they have taken subsequent to the closing of evidence in the *DOJ* case are not relevant to whether Plaintiffs are seeking to preclude Defendants from contesting issues that were litigated in the *DOJ* case. Plaintiffs are seeking to preclude Defendants from contesting the exact issues litigated in the *DOJ* case, and thus, the identity of issues element is satisfied.

### 2. The *DOJ* Court did not apply materially different legal standards than those at issue in this litigation

The *DOJ* court did not apply materially different legal standards from those at issue in this litigation. In arguing to the contrary, Defendants identify no legal standard at issue in this case that is materially different from those at issue in the *DOJ* case.

Defendants' claims regarding what they believe Plaintiffs will argue with respect to compensation have no bearing on whether Plaintiffs seek to preclude Defendants from relitigating issues litigated in the *DOJ* case. Moreover, Defendants' claim that courts must consider compensation on a per-cigarette-basis was rejected by the D.C. Circuit Court of Appeals in *U.S. v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009). On appeal, Defendants argued that, like the public's awareness that "drinking many 'low caffeine' sodas can result in higher levels of caffeine consumption, and eating many 'low fat' cookies can result in higher levels of fat consumption," the term "light cigarettes" was not misleading because "it is obvious that smoking many 'light' cigarettes can result in higher levels of nicotine and tar consumption." 566 F.3d at 1125-26. In response, the Circuit Court of Appeals held that:

> Unlike drinking sodas and eating cookies, the factors behind compensation in "light" cigarettes are largely subconscious: "the smoker will subconsciously adjust his puff volume and frequency, and smoking frequency, so as to obtain and maintain his per hour and per day requirement for nicotine." Not only is smoker compensation subconscious, but factors such as puff volume and frequency are not even tied to the number of "light" cigarettes smoked. The analogy to sodas and cookies fails; the subconscious nature of smoker compensation enabled Defendants to mislead the public about the health effects of "light" cigarettes.

*Id.* (citation omitted). Thus, this litigation involves no legal standards that are materially different from those at issue in the *DOJ* case.

**C.     The Findings are Relevant to this Matter**

Defendants' relevance argument has nothing to do with whether Plaintiffs are seeking preclusion with respect to issues that were fully and fairly litigated in the *DOJ* action, and as such, should be rejected. Regardless, the Findings are relevant to matters at issue in this litigation.

**III.    NO "NEW EVIDENCE" SINCE THE *DOJ* TRIAL PRECLUDES APPLICATION OF THE COLLATERAL ESTOPPEL DOCTRINE HERE**

Defendants argue that the Court should decline to apply preclusion here because of purported "new evidence" that has supposedly emerged since the close of evidence in the *DOJ* trial that is allegedly inconsistent with some of the *DOJ* court's conclusions.[9] Aside from the fact that the supposed new evidence does *not* conflict with the *DOJ* court's findings (as discussed below), the notion that new scientific studies could alter the historic facts as determined by the *DOJ* court is, of course, baseless.

---

[9] Specifically, Defendants argue that new scientific developments "undermines confidence and casts doubt on" the following findings by the *DOJ* court: Appendix A, Findings of Fact 2026, 2062-78, 2104, 2148, and 2155.  *See* Def. Mem. at 45, 47.

16

A.    **The Affidavits Defendants Have Submitted Do Not Cast Doubt on the *DOJ* Court's Findings**

The affidavits submitted by Defendants supposedly demonstrating that "new data" contradicts the DOJ court's findings indicate no such thing. Instead, they set up a number of straw men and then proceed to try to knock them down through distorting the findings Plaintiffs seek to apply here in an attempt to create the appearance that there is a genuine contradiction that precludes collateral estoppel. But no such conflict exists.

For example, the *DOJ* court found that Defendants developed and marketed Light cigarettes precisely to lure smokers of regular cigarettes who were contemplating quitting for health reasons away from quitting and towards this purportedly healthier alternative. *See Philip Morris,* 449 F. Supp. 2d at 860. The *DOJ* court further found that the defendants there knew that, "*because of nicotine addiction,*" former smokers of regular cigarettes who switched to Light cigarettes in the belief that they were less harmful to their health would compensate for the reduced nicotine yield from such cigarettes through a variety of means, including taking more frequent puffs, inhaling smoke more deeply, holding smoke in their lungs longer, covering cigarette ventilation holes with their fingers or lips, and/or smoking more cigarettes. *Id.* at 860, 461-67 (emphasis added). Contrary to Defendants' assertions, the Affidavit of Peter A. Valberg, Ph.D., Exhibit 22 to Defendants' Memorandum ("Valberg Affidavit" or "Valberg Aff."), does not contradict these findings about addicted smokers who have switched from regular to Light cigarettes.

Instead, the Valberg Affidavit states that recent studies indicate that "there will be *some* smokers who compensate and some smokers who do not," and that the smokers who do not compensate include "those who *have smoked only lower FTC-yield cigarettes* and smokers *who are not addicted*." Valberg Aff. ¶ 5 (emphasis added). The Valberg Affidavit goes on to take

17

issue with supposed findings that "*all* smokers of lower FTC-yield cigarettes 'titrate,'" and that "compensation is *universal, complete or permanent*." *Id.* (emphasis added).  But again, this is a distortion of the findings at issue here. Indeed, rather than contradicting the DOJ court's findings, Dr. Valberg confirms that "[a] smoker who switches to a lower FTC-yield cigarette may compensate partially or completely" through the very compensation methods outlined by the DOJ court. *Id.* (acknowledging that addicted smokers compensate through such means, "as the DOJ Opinion finds."). Accordingly, Defendants' argument that new evidence contradicts the findings of the DOJ court regarding smoker compensation simply does not hold up to scrutiny.

Defendants' argument that there is new evidence that contradicts the DOJ court's findings regarding extensive evidence of increased mutagenicity in Light cigarettes is also wrong.  Plaintiffs seek to give preclusive effect to the facts that Philip Morris had extensive evidence regarding the mutagenicity of lower yield, ventilated cigarettes that indicated that such cigarettes were no less hazardous than regular versions, which it concealed from the public and essentially disregarded in its design of Light cigarettes. For example, Plaintiffs seek to give preclusive effect to the following Findings of the *DOJ* court:

- o that *Philip Morris's former Director of Applied Research had concluded* that, because of their design, which allows increases in the mutagenicity of the tar, Light cigarettes "are not any less hazardous than their full flavor versions." (FOF 2104);

- o that, based upon Philip Morris's own testing over 25 years' time, *Philip Morris concluded* that Light cigarettes were more mutagenic than regular cigarettes, but did not change the design of its Light cigarettes in response to these studies and this knowledge. (FOF 2148);  and

- o that *Philip Morris's own testing* "*demonstrated* that, in every case, the mutagenicity of Marlboro Lights is higher than the mutagenicity of Marlboro full-flavor." (FOF 2155) (emphasis added).

18

The affidavit of Errol Zeiger, Ph.D. (the "Zeiger Affidavit"), does not contradict any of these findings. Instead, it notes, *inter alia,* that *some* tests have purportedly produced lower mutagenicity scores for low tar cigarettes or equivalent scores for light and regular cigarettes, and argues that "mutagenicity is not the same thing as carcinogenicity," and that mutagenicity cannot be extrapolated to indicate the degree of risk of cancer in humans, concluding that:

> In sum, since the *DOJ* Opinion, the scientific community has provided additional support for the proposition that a higher score on an Ames mutagenicity test does not permit the conclusion that lights cigarettes could increase the risk of cancer compared to full-flavored cigarettes.

Zeiger Aff. ¶ 5.  Even if this conclusion were taken at face value, this would in no way contradict the *DOJ* court's findings regarding Philip Morris's own conclusions regarding mutagenicity, and its response to that conclusion, which are set forth above.

**B.     Defendants Fail To Demonstrate That There Is a Material Change In Circumstances That Renders Application of Collateral Estoppel Here Inappropriate**

Defendants argue that the purported new evidence represents a changed circumstance that makes application of collateral estoppel inappropriate. But even in the face of purported changed circumstances, "collateral estoppel remains appropriate where the changed circumstances are not material." *Ramallo Bros. Printing, Inc. v. El Día, Inc.*, 490 F.3d 86, 90 (1st Cir. 2007); *see Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2 (1st Cir. 1983) (where purported factual differences between earlier action and current action were not "significant," collateral estoppel was applied to findings from earlier action). Any purported change in circumstances must be of "controlling legal significance" to render application of collateral estoppel inappropriate.  *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 850 (3d Cir. 1974) (where there was no evidence of "changed circumstances of controlling legal significance," collateral estoppel was properly applied to preclude relitigation of the availability of an exemption to

antitrust laws). Defendants' assertions, including the claim that a study *conducted by Philip Morris USA itself* may have suggested a slight reduction in nicotine delivery between higher and lower tar cigarettes, or that exposure from lower tar cigarettes "could possibly" reduce health risks for some smokers,[10] are hardly material changes in the scientific evidence, let alone a change that in any way casts doubt on the *DOJ* court's findings.

## C.    The Case Law Defendants Rely Upon Is Inapposite

Defendants rely upon inapposite cases in which the plaintiffs attempted to apply collateral estoppel to outdated scientific findings regarding alleged product defects whose causal link to plaintiffs' injuries had been *disproven* by subsequent studies. *See, e.g., Zweig v. E.R. Squibb & Sons*, 536 A.2d 1280 (Sup. Ct. N.J. 1988) (plaintiff could not overturn a jury verdict finding that the drug Delalutin did not cause birth defects of the sort the plaintiff suffered, *i.e.,* limb reductions, on the basis of a contrary verdict from six years earlier, when intervening studies that had absolved Delalutin of the harmful effects the plaintiff alleged); *Vincent v. Thompson*, 50 A.D. 2d 211, 221 (N.Y. App. Div. 1975) (overturning trial court's application of collateral estoppel where new scientific evidence conclusively negated finding in earlier case that vaccine could cause harm in humans); *Rogers v. Ford Motor Company*, 925 F. Supp. 1413, 1418-19 (N.D. Ind. 1996)  (collateral estoppel inappropriate in products liability action alleging defective design of seatbelts, where subsequent government study had exonerated that type of seatbelt since prior trial); *Exagui v. Dow Chem. Corp.*, 598 F.2d 727 (2d Cir. 1979) (in drug products liability suit plaintiff could not rely on findings from earlier trial where causation theory on which those findings was based had been thrown into doubt by new discovery).  The liability of the defendants in those cases turned on whether their products in fact caused the plaintiffs'

---

[10] *See* Valberg Affidavit ¶ 26.

injuries, and plaintiffs sought to preclude relitigation of causation.  That simply is not the case here.

Defendants fail to show, or even suggest, that any of the scientific evidence that existed at that time has been conclusively rebutted by subsequent studies.  Moreover, Plaintiffs here seek to preclude relitigation of certain historic facts demonstrating that Defendants conspired to deceive and did deceive the public about extensive evidence of the relative health risks and purported advantages of Light cigarettes, and that they concealed material information from the public regarding those risks and claimed advantages.  Those facts, which are central to this case, remain unchanged and unchallenged.

Defendants argue that application of collateral estoppel here would "deny the defendants 'a complete and fair opportunity to litigate,'' quoting *Vincent v. Thompson*, 50 A.D.2d 211, 221 (N.Y. App. Div. 1975). An examination of the facts of *Vincent* demonstrates that this and other cases cited by Defendants are utterly inapposite to the facts of this case.  In *Vincent*, the infant plaintiff alleged that the vaccine manufactured by the defendant drug manufacturer had caused her injuries, including transverse myelitis. The trial court applied collateral estoppel to the findings from an earlier case that the vaccine had caused certain other injuries to the plaintiff there.  Subsequent to the close of the earlier trial, a new scientific test had been developed that conclusively negated the earlier finding that the vaccine could cause an untoward reaction in humans. The appellate court in *Vincent* therefore concluded that:

> To allow the doctrine of collateral estoppel to be used to deny to a defendant in a case such as this an opportunity to introduce evidence clearly relevant to a key issue in the case, the absence or existence of a causal relationship between the claimed defect in the product produced by such defendant and used by the plaintiffs, and the injuries for which the plaintiffs are suing, is the use of that doctrine to deny such a defendant a complete and fair opportunity to litigate the very issue upon which its rights depend.

21

50 A.D. 2d at 221 (emphasis added). In contrast, here: (a) the key issue in this case is *not* the causal connection between defects in Light cigarettes and any personal injury to the Plaintiffs; (b) decades worth of scientific evidence supporting the *DOJ* court's findings has *not* been disproven; and (c) Plaintiffs seek to preclude relitigation of certain historic facts having nothing to do with causation of a personal injury.

In *Coburn v. Smithkline Beecham Corp.*, 174 F. Supp.2d 1235 (D. Utah 2001), also cited by Defendants, the issue was once again the causal link between a pharmaceutical product and the plaintiff's injury – in that case, the suicide of the plaintiff's family member, which was alleged to have been caused by his taking the antidepressant Paxil. As Defendants have pointed out, the court there noted that "it would be unjust to freeze in time the answers to these questions when the resolution of these questions is very time-dependent." *Id.* at 1240 (emphasis added). But the court went on to clarify: "For example, the issue of *general causation* will be decided upon the basis of scientific knowledge as it exists at the time of trial" – while noting that other issues would *not* turn on the status of scientific evidence at the time of trial – "the scope of a duty to warn is dependent on whether the drug manufacturer knew or should have known of the risks *at the time the drug was given to the patient.*" *Id.* at 1240-41 (emphasis added). Thus, Defendants' reliance on cases dealing with causation issues in personal injury cases, which inevitably turn on the scientific knowledge at the time of trial, is inappropriate here.[11]

---

[11] *Clark v. SmithKline Beecham*, 2006 WL 3329141 at *3 (M.D. Ga. 2006), also cited by Defendants, followed the *Coburn* court's decision not to apply collateral estoppel to earlier verdicts finding a *causal connection* between Paxil and suicide, on the basis of changes in scientific opinion on that question since the earlier verdicts.

22

**D.    Many of the *DOJ* Court's Findings of Fact Defendants Challenge Are About Defendants' Historic Conduct, Which Cannot Be Altered by Any Purported New Scientific Discoveries**

Many of the *DOJ* court's conclusions that Defendants challenge here have to do with Defendants' historic conduct, which cannot be altered by any purported new scientific evidence that has allegedly since emerged, even if it existed. Defendants cannot and do not suggest that their past conduct, in which they concealed overwhelming scientific evidence indicating the relative harmfulness of Light cigarettes as compared to regular cigarettes, could in any way have been informed by any purported discoveries since 2005 supposedly casting doubt on the voluminous evidence originally before them. Accordingly, any such supposed new developments, even if they existed (which, as set forth above, they do not), would be of no relevance to the findings of the *DOJ* court about Defendants' historic conduct.

For example, Defendants object to having preclusive effect applied to the DOJ court's findings that Defendants concealed their knowledge, as well as decades of extensive research indicating, that in order to obtain an amount of nicotine sufficient to satisfy a smoker's addiction, smokers of Light cigarettes who have switched from regular cigarettes often modify their smoking behavior to compensate for the reduced nicotine yields. *See, e.g.,* 449 F. Supp. 2d at 406 (FOF 2026), 437-39 (FOF 2066, 2068-2078). The evidence in the *DOJ* case showed, that for decades, Defendants were aware of extensive scientific evidence showing this to be true, and nevertheless marketed their light cigarettes as being less harmful than regular cigarettes. *Id.* at 437 (FOF 2067).  Even if there were any new evidence casting any doubt on the underlying scientific findings, which there is not, the fact that Defendants conducted themselves in this manner in the face of extensive scientific evidence would remain unaltered by any such new evidence.

23

Defendants also knew that the compensation techniques used by some nicotine-addicted smokers rendered the testing methods used by the FTC wholly inaccurate for establishing the amount of tar and nicotine a smoker would receive from smoking a purportedly low-tar, low-nicotine cigarette, and designed their Light cigarettes to maximize and capitalize on the resulting discrepancies between the amounts of tar measured by machine and those actually inhaled. *Id.* at 431 (FOF 2026), 436-39 (FOF 2062-2078). And further, the evidence from *DOJ* demonstrated that Defendants had extensive evidence about the increased mutagenicity of Light cigarettes, and concealed that as well. *Id.* at 444 (FOF 2104), 446-47 (FOF 2148), 458 (FOF 2155). Defendants challenge Plaintiffs' attempt to apply preclusive effect to all of these findings, but again, no new scientific evidence, even if it existed, could alter these historic facts.

Accordingly, Defendants' argument that new evidence prevents application of the collateral estoppel doctrine to the DOJ court findings described above must fail.

### CONCLUSION

As detailed herein and in Plaintiffs' Motion and Memorandum, the application of collateral estoppel to the Findings is appropriate in this matter. Thus, respectfully, the Court should grant Plaintiffs' motion.

Dated:  January 15, 2010                           Respectfully submitted,


                                      /s/ Samuel W. Lanham, Jr.
                                     Samuel W. Lanham, Jr.
                                     **LANHAM BLACKWELL, P.A.**
                                     470 Evergreen Woods
                                     Bangor, ME 04401

24

Ben Barnow
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602

Don Barrett
**BARRETT LAW OFFICE, P.A.**
404 Court Square
Lexington, MS 39095-0987

Kent Caperton
**BEN BARNES GROUP**
1215 19th Street, NW
Washington, DC 20036

Marian S. Rosen
**MARIAN S. ROSEN**
 **& ASSOCIATES**
5065 Westheimer, Suite 840
Houston, TX 77056

Howard Rubinstein
**LAW OFFICE OF**
**HOWARD WEIL RUBINSTEIN**
P.O. Box 4869
Aspen, CO 81611

Walter Umphrey
**PROVOST UMPHREY**
 **LAW FIRM, LLP**
P.O. Box 4905
Beaumont, TX 77704-4905

Joe R. Whatley, Jr.
**WHATLEY, DRAKE & KALLAS**
1540 Broadway, 37th Floor
New York, NY 1036

John Eddie Williams
**WILLIAMS, KHERKER, HART,**
 **BOUNDAS, LLP**
8441 Gulf Freeway, Suite 600
Houston, TX 77017

*Plaintiffs' Executive Committee*

25

## CERTIFICATE OF SERVICE

Service of Plaintiffs' Reply to Philip Morris USA Inc.'s Opposition to Plaintiffs' Motion for Application of the Collateral Estoppel Doctrine has been made through the Court's ECF system on all those registered to receive ECF service, and on all others not registered but listed on the Court's Manual Notice List by regular mail.

Date:   January 15, 2010

  _/s/ Samuel W. Lanham, Jr._____
Samuel W. Lanham, Jr.
**LANHAM BLACKWELL, P.A.**
470 Evergreen Woods
Bangor, ME 04401