UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IN RE:  LIGHT CIGARETTES MARKETING      )   MDL DOCKET NO. 1-09-MD-2068
SALES PRACTICES LITIGATION              )           ALL CASES

**ORDER ON PLAINTIFF'S MOTION FOR APPLICATION OF THE COLLATERAL ESTOPPEL DOCTRINE**

In her landmark 2006 opinion handing down a decisive victory to the Government over the tobacco company defendants, Judge Kessler described the litigation in *United States v. Philip Morris USA, Inc*. (*DOJ*):

> The seven-year history of this extraordinarily complex case involved the exchange of millions of documents, the entry of more than 1,000 Orders, and a trial which lasted approximately nine months with 84 witnesses testifying in open court.[1]

Judge Kessler's exhaustive August 17, 2006 ruling contains thousands of factual findings against the tobacco company defendants and in this ensuing multi-district litigation, individual smokers, who claim harm from smoking light cigarettes, are anxious to avoid proving before this Court what the United States so painstakingly proved to Judge Kessler. Relying on the doctrine of issue preclusion, they ask this Court to hold that Philip Morris USA, Inc. (PM) and its corporate parent Altria, Inc. (Altria) are bound by Judge Kessler's factual findings. From the standpoint of judicial efficiency, the Plaintiffs' argument has an undeniable attractiveness. However, upon analysis, the Court concludes the Plaintiffs have failed to meet their burden to establish the criteria for non-mutual issue preclusion, and the Court denies their motion.

**I.      STATEMENT OF FACTS**

---

[1] 449 F. Supp. 2d 1, 28 (D.D.C. 2006), *affirmed in part and vacated in part,* 566 F.3d 1095 (D.C. Cir. 2009), *petition for rehearing en banc denied* (Sept. 22, 2009), *petition for cert. filed* (Feb. 19, 2010).

The Plaintiffs in this consolidated action are smokers of light cigarettes[2] manufactured and marketed by PM. Under state law theories of consumer fraud and unjust enrichment, the Plaintiffs allege that PM and Altria fraudulently marketed and advertised light cigarettes as a healthier alternative to regular cigarettes and were unjustly enriched at Plaintiffs' expense. *Pls.' Mot. for Collateral Estoppel* at 17-19.

On November 20, 2009, the Plaintiffs moved to apply non-mutual offensive issue preclusion[3] to prevent the Defendants from relitigating issues they lost in *DOJ*. On December 21, 2009, PM and Altria responded. *PM's Opp'n to Pls.' Mot. for Application of Collateral Estoppel Doctrine* (Docket # 99) (*PM's Opp'n to Collateral Estoppel*); *Altria's Opp'n to Pls.' Mot. for Application of Collateral Estoppel Doctrine* (Docket # 98) (*Altria's Opp'n to Collateral Estoppel*). The Plaintiffs replied on January 15, 2010. *Pls.' Reply to PM's Opp'n to Pls.' Mot. for Application of Collateral Estoppel Doctrine* (Docket # 123) (*Pls.' Reply to PM's Opp'n*); *Pls.' Reply to Altria's Opp'n to Pls.' Mot. for Application of Collateral Estoppel Doctrine* (Docket # 122) (*Pls.' Reply to Altria's Opp'n*).

II.  DISCUSSION

    A.  **Legal Standard**

When a party "implores a federal court to give preclusive effect to a prior federal court adjudication, federal law governs." *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir. 1999). Under

---

[2] The Court refers to "light" cigarettes to include "low tar" cigarettes. The brands include Marlboro Lights, Virginia Slims Lights, Parliament Lights, Merit Lights, Ultra Lights, and Cambridge Lights. *Pls.' Mot. for Application of Collateral Estoppel Doctrine* at 1 n.2 (Docket # 59) (*Pls.' Mot. for Collateral Estoppel*).

[3] In *Taylor v. Sturgell*, the Supreme Court explained that "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" 553 U.S. 880, 128 S.Ct. 2161, 2171 (2008). The terms "claim preclusion" and "issue preclusion" have replaced "a more confusing lexicon" that referred to "claim preclusion" under the rules of "merger" or "bar" and issue preclusion under the doctrines of "collateral estoppel" and "direct estoppel." *Id.* n.5. The parties have used the older term collateral estoppel. In keeping with *Taylor*, the Court uses "issue preclusion." However, the Court has avoided anachronistically altering references in earlier cases to collateral estoppel to reflect our current linguistic preferences and has not edited the parties' language when quoted.

federal common law, a party seeking to preclude the litigation of an issue by reference to a previous adjudication between the parties must establish:

> (1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was essential to the final judgment or order).

*González-Piña v. Rodríguez*, 407 F.3d 425, 430 (1st Cir. 2005) (quoting *Faigin*, 184 F.3d. at 78).[4] The burden to prove each element is on "the party invoking collateral estoppel." *Hoult v. Hoult*, 157 F.3d 29, 31-32 (1st Cir. 1998).

For non-mutual offensive issue preclusion, however, these traditional elements are necessary but not sufficient. In *Parklane Hosiery Co., Inc. v. Shore*, the Supreme Court explained that offensive issue preclusion raises additional policy concerns. 439 U.S. 329 (1979). First, offensive issue preclusion does not necessarily promote judicial economy; plaintiffs are incentivized to "wait and see" because they can "rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins." *Id*. at 330. Second, if a defendant in the first action is sued for small or nominal damages, the party "may have little incentive to defend vigorously, particularly if future suits are not foreseeable." *Id*. Third, offensive issue preclusion may be unfair to a defendant "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id*. Finally,

---

[4] PM argues that "D.C. Circuit precedent should be dispositive because the law of the jurisdiction in which the judgment was rendered controls." *PM's Opp'n to Collateral Estoppel* at 7 n.2. However, PM cites no case law and the practice is not followed elsewhere. *See Grisham v. Philip Morris, Inc*., No. CV 02-7930 SVW (RCx), 2009 WL 4019366, at *13 (C.D. Cal. Oct. 7, 2009) (assessing the application of issue preclusion under Ninth Circuit, not D.C. Circuit, law). The Court does not reach this issue because the Court agrees with PM that "there is no material difference" between the First and D.C. Circuit standards. *PM's Opp'n to Collateral Estoppel* at 7 n.2. Even applying the D.C. Circuits' issue preclusion standard, the result is the same.

offensive issue preclusion may be unfair where "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Id*. at 331. In allowing issue preclusion in *Parklane*, the majority stated that the "presence or absence of a jury as factfinder is basically neutral," *id*. at 332 n.19, and concluded that the Seventh Amendment did not prevent use of issue preclusion even when the practical effect would be no jury determination on an issue. *Id*. at 335-37.

Rather than precluding offensive issue preclusion altogether, the *Parklane* majority granted trial courts "broad discretion to determine when it should be applied." *Id*. at 331. The general rule after *Parklane* is that offensive issue preclusion is not appropriate "where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant." *Id*.

### A.     The *DOJ* Case

In *DOJ*, the United States brought a civil RICO action against PM, Altria, six other American tobacco companies, and two industry groups. *DOJ*, 449 F. Supp. 2d at 31 n.4.[5] The lawsuit alleged that the defendants had participated in a decades-long enterprise to deceive the American public about the health effects and addictiveness of cigarettes, including light cigarettes. *Id*. at 26-27. The Government initially sought damages as well as an injunction against future RICO violations; however, the D.C. Circuit dismissed the damages claim and the district court subsequently denied defendants' request for a jury trial. *Id*. at 33-34, 920-21.

Following seven years of litigation and a nine-month bench trial, Judge Gladys Kessler issued a ruling with 4,088 separate factual findings, including 1) that an enterprise existed; 2) that each defendant was associated with the enterprise; 3) that the enterprise had defrauded the

---

[5] B.A.T. Industries p.l.c., a foreign tobacco company and the eleventh defendant, was dismissed for lack of personal jurisdiction. *Id*.

public in six different areas, one of which was the marketing of light cigarettes; and 4) that each of the defendants had engaged in a pattern of racketeering activity in furtherance of the enterprise. *Id*. at 903-06.

### D. THE PARTIES' POSITIONS

#### 1. The Plaintiffs

The Plaintiffs seek to use offensive issue preclusion to apply 1,083 findings from *DOJ* against the Defendants.[6] They contend that offensive issue preclusion is justified under *Parklane*: they "likely could not have joined in the earlier government's action," *Pls.' Mot. for Collateral Estoppel* at 29, and "it was foreseeable to Defendants that private actions relating to their false advertising and marketing of Light cigarettes would be brought against them should the government prevail on their claims, as such actions typically follow a successful government judgment." *Id*. at 30.[7] The Plaintiffs point to the protracted *DOJ* litigation as evidence of PM and Altria's vigorous defense, *id*. at 29-30, and argue that it "will not be more efficient for the parties to engage in years of factual discovery related to issues fully and fairly litigated, vigorously contested, and previously determined by the *DOJ* court." *Pls.' Reply to PM's Opp'n*

---

[6] In particular, the Plaintiffs seek to apply issue preclusion to findings relevant to the following areas:
  (1) Defendants' engaging in a scheme to defraud smokers and potential smokers by falsely representing, advertising and marketing that their Light cigarettes delivered less nicotine and tar than regular cigarettes; falsely denying the addictive nature of nicotine; engaging in nicotine manipulation; suppressing documents, information and research; and establishing and participating in a scheme with the common purpose of defrauding smokers and potential smokers.
  (2) Defendants having acted with the specific intent to defraud and deceive smokers and potential smokers.
*Pls.' Mot. for Collateral Estoppel* at 15.
[7] Both parties describe the *Parklane* considerations as "threshold questions," analyzing them before reaching the traditional issue preclusion requirements. Although the Court recognizes that this analysis order is followed by some district courts, the Court first determines whether the traditional issue preclusion requirements are met before analyzing discretionary considerations. *Compare Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992 (E.D.N.Y. 2006), *rev'd on other grounds McLaughlin v. Amer. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) (first analyzing the four necessary elements of issue preclusion before turning to fairness considerations), *with Brown v. Colegio de Abogados de Puerto Rico*, 579 F. Supp. 2d 211, 218 (D.P.R. 2008) (assessing the *Parklane* fairness considerations before turning to the four-part issue preclusion test).

at 6.  In response to the Defendants' argument that even if the Court applied preclusive effect to some of the *DOJ* Court's findings, litigating the relevant issues in these consolidated cases would still require presentation of much of the same evidence that would be precluded by the *DOJ* Court findings, the Plaintiffs contend that "[t]he majority of Plaintiffs need only establish loss causation—that they suffered a loss as the result of Defendants' fraudulent and unjust conduct—not reliance and deception, as Defendants assert." *Id*. at 8.

In addition, the Plaintiffs argue that no procedural opportunities are available in the current litigation that were unavailable in *DOJ*: new theories and evidence do not justify granting the Defendants a "second chance" on already litigated issues and *Parklane* forecloses arguments based on the absence of a jury.  *Pls.' Mot. for Collateral Estoppel* at 31-32 (citing *Parklane Hosiery*, 439 U.S. at 337).  Finally, the Plaintiffs contend that past judgments for the Defendants are not inconsistent because they did not specifically address the issues in *DOJ* and plaintiffs in prior actions did not have the "full panoply" of evidence because of the Defendants' concealment.  *Pls.' Reply to PM's Opp'n* at 3-4.

Turning to the traditional issue preclusion requirements, the Plaintiffs argue that there is an identity of issues because, despite the differences in causes of action, there is an "overwhelming overlap" in substantive issues.  *Pls.' Mot. for Collateral Estoppel* at 34.  Because the "Defendants did their best to litigate each and every factual allegation," the Plaintiffs claim all Judge Kessler's findings were actually litigated.  *Id*. at 35.  The Plaintiffs contend that finality turns on "the nature of the decision (ie., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review," not a party's taking of an appeal.  *Id.* (quoting *O'Reilley v. Malon*, 747 F.2d 820, 823 (1st Cir. 1984)); "[i]t is irrelevant that the defendants in the *DOJ* action are in the process of seeking further review from the U.S. Supreme Court." *Id*. at 36.

Finally, finding support in Judge Kessler's statement that "the evidentiary picture must be viewed in its totality," the Plaintiffs contend that all findings were central to *DOJ*'s outcome. *Id*. at 38.

Although recognizing that fewer findings "expressly specify[] [Altria] by name," the Plaintiffs argue that issue preclusion is nonetheless appropriate because the "*DOJ* court's opinion includes Altria within the defined term 'Defendants.'" *Pls.' Reply to Altria's Opp'n* at 1. Furthermore, the Plaintiffs argue that Altria is also liable for the actions of PM based on its "substantial control" over its subsidiary. *Id*. at 3 (citing *Philip Morris*, 556 F.3d at 1135).

### 2. PM

PM takes the opposite position, responding that neither the *Parklane* considerations nor the traditional issue preclusion requirements are met. PM argues that precluding issues based on the *DOJ* litigation alone would be unfair because "PM USA has routinely won verdicts in cases involving low tar allegations and the other allegations for which plaintiffs seek preclusion." *PM's Opp'n to Mot. for Collateral Estoppel* at 2. In addition, PM argues that issue preclusion yields little, if any, efficiency gains because Plaintiff-specific issues, such as causation, reliance, injury, affirmative defenses, and punitive damages, require presentation of "much of the same evidence as in *DOJ*." *Id*. at 20. Finally, PM contends it is unfair to "prevent PM USA from *ever* having a jury determine the issues addressed in [the *DOJ*'s] findings." *Id*. at 3.

Turning to the traditional issue preclusion requirements, PM focuses its argument on whether the findings were necessary and whether there is an identity of issues.[8] Beginning with

---

[8] Although warning in the introduction "care should be taken in dealing with judgments that are final, but still subject to direct review," PM acknowledges that plaintiffs arguably meet this requirement. *Id*. at 3 (quoting *Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C. Cir. 1987). PM does not press the issue further.
 PM also initially argues that Plaintiffs cannot "establish the *actuality* and *identicality* requirements." *Id*. at 4. However, PM does not offer a separate argument for why the actuality requirement is not met and does not discuss the requirement in its argument section.

necessity, PM argues that the "sheer volume" of findings that the Plaintiffs identify suggests that not all of them are truly necessary. *Id*. at 33 (internal quotations omitted). In support, PM points to the inclusion of findings it describes as "subsidiary" on their face and the Plaintiffs' lack of explanation "as to why each finding was outcome determinative, other than summary labels . . . ." *Id*. Because liability in *DOJ* was premised on "multiple different schemes to defraud," PM argues, "there is no way to tell whether the low tar [scheme]—or its underlying findings—was essential for the *DOJ* court to reach its judgment." *Id*. at 35.

PM also contends that there is no identity of issues because the current issues are not "identical *in all respects*" to those litigated in *DOJ*. *Id*. at 36 (quoting *Faigin*, 184 F.3d at 78) (emphasis added by PM). PM emphasizes how the *DOJ* litigation "focused primarily on events occurring decades ago" whereas many of the proposed class periods in the pending actions "*do not even begin until 2005—at the close of evidence in DOJ*." *Id*. at 4. This difference in time periods is particularly significant, PM argues, because the company's conduct, such as "including periodic onserts on all low tar packages," has changed over time. *Id*. at 38-39. PM also argues a lack of identity based on a difference in the liability standard: *DOJ* found fraudulent marketing of light cigarettes based, in part, on smokers compensating for the lower tar by either inhaling more deeply or smoking more cigarettes per day. *Id*. at 41. In contrast, PM contends the Plaintiffs can only prevail if they "show complete compensation on a *per cigarette basis*," rather than compensation by smoking more cigarettes. *Id*. Finally, PM argues that "[m]any of the findings [are] . . . entirely *irrelevant* to the issues here" because they relate to other schemes to defraud or non-parties. *Id*. at 43. PM concludes by arguing that issue preclusion is inappropriate because of new scientific evidence and warns that granting issue

preclusion would effectively "freeze science in place." *Id*. at 49 (quoting *Clark v. Smithkline Beecham*, No. 7:06-cv-30 (HL), 2006 WL 3329141, at * 3 (M.D. Ga. Nov. 15, 2006).

### 3. Altria

Altria joins PMs's response and makes three additional points. First, Altria argues that it was found liable based on its association to the enterprise, rather than on the basis of "Altria's 'control' over PM USA." *Altria's Opp'n to Collateral Estoppel* at 2. Second, Altria argues the Altria-specific findings are not "related in any way to lights or low tar cigarettes." *Id*. at 3. Third, Altria argues issue preclusion cannot be applied against Altria for facts found in relation to other defendants or "against 'defendants' generally." *Id*. at 4.

## C. Prior Analysis of the Preclusive Effect of *DOJ*

Two district courts have addressed whether to apply non-mutual offensive issue preclusion to the *DOJ* findings: *Schwab v. Philip Morris USA Inc.* and *Grisham v. Philip Morris, Inc.*[9]

### 1. *Schwab v. Philip Morris USA Inc.*

In *Schwab*, private plaintiffs brought a RICO action against the same nine defendants sued by the United States in *DOJ*. 449 F. Supp. 2d at 1018, 1078. The plaintiffs alleged that the defendants had engaged in a scheme to deceive the public regarding the health risk associated with light cigarettes and that their false representations had induced the plaintiffs into buying light cigarettes. *Id*. at 1018.

---

[9] At least one state court has addressed the issue. *Curtis v. Altria Group, Inc*., No. 27-CV-01-1804, slip op, at 8 (Minn. Dist. Ct. Oct. 14, 2009). In *Curtis*, Minnesota smokers of light cigarettes brought a state fraudulent marketing claim, alleging that PM intended to deceive plaintiffs into believing that light cigarettes were less harmful than regular cigarettes in order to induce their purchase. *Id*. at 3. The Court declined to apply issue preclusion to the *DOJ* findings because the issues were not sufficiently identical: *DOJ* did not address whether any individual smoker was actually defrauded or injured by the misconduct nor did the Court reach the merits of the defendants' affirmative defenses. Furthermore, the Court found that even where there was overlap in individual findings, issue preclusion was inappropriate in light of prior inconsistent verdicts and the fact that *DOJ* was a bench trial. *Id*. at 10-11.

The district court found a strong argument for issue preclusion: the plaintiffs were making identical allegations against identical defendants, suggesting the parties were the same and the issues had been actually litigated; the extensive litigation meant defendants had had a full and fair opportunity to litigate; and many of the issues in *Schwab*—including existence of an enterprise and public deception—were necessary to support the *DOJ*'s verdict. *Id*. at 1078-79.[10]

Ultimately, however, the district court declined to apply issue preclusion based on minimal efficiency gains and high potential for prejudice to the defendants. First, because issue preclusion could not apply to the defendant, Liggett, who had prevailed in *DOJ*,[11] the district court concluded that "[a]pplication of estoppel to all but one of many defendants would confuse the jury, making administration of the case more difficult." *Id*. at 1079. Second, the Court stated, without discussion, that issue preclusion was inappropriate because the defendants had won several previous cases. *Id*. Third, the district court found that issue preclusion would not save judicial resources because the plaintiffs had to introduce the same evidence to prove reliance and damages. *Id*.

### 2.     *Grisham v. Philip Morris, Inc.*

In *Grisham*, a smoker sued PM and Brown & Williamson for harm suffered as a result of smoking and sought to prevent the defendants from relitigating issues they lost in *DOJ*. 2009 WL 4019366, at *1. The district court found the traditional issue preclusion requirements not met: although easily finding that the defendants had a full and fair opportunity to litigate in *DOJ* and the findings had been actually litigated, the district court found the issues had not been

---

[10] The Second Circuit uses a slightly different issue preclusion test from the First Circuit:
> (1) the issues in the proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Id*. at 1078 (quoting *Faulkner v. Nat'l Geographic Enters., Inc*., 409 F.3d 26, 37 (2d Cir. 2005)).

[11] Although finding that Liggett had violated RICO by initially participating in the conspiracy, *DOJ* held that Liggett withdrew in the 1990s and no longer posed a threat of future RICO violations. *DOJ*, 449 F. Supp. 2d, at 918.

decided in a final judgment and the parties were not sufficiently in privity with a party to the prior action. *Id*. at *13-15.[12] Addressing the necessity of the findings to the final judgment, the district court concluded that the plaintiff had failed to establish, or even attempt to establish, that any of the 2,666 factual findings for which he sought preclusion were necessary, rather than incidental, to the *DOJ* judgment. The district court declined to make such a time-consuming determination on its own. *Id*. at *13. Assessing whether the defendants had been parties in *DOJ*, the Court expressed concern with applying issue preclusion to *DOJ* findings that referred generically to "Defendants": "[t]he Court cannot allow the collective wrongful acts of American tobacco companies to bind the specific Defendants involved in this case." *Id*. at *15.

The *Grisham* Court also raised several concerns about the fairness of applying offensive issue preclusion. First, the district court thought the absence of a jury in the initial action weighed against preclusion. *Id*. at *18. Second, the Court expressed doubts about the juries' ability to compartmentalize certain factual findings when determining punitive damages, in light of the prohibition against imposing punitive damages for injuries inflicted on nonparties. *Id*. at *18-19 (citing *Philip Morris USA v. Williams*, 549 U.S. 346 (2007)). Third, the Court found few efficiency benefits because proving punitive damages and loss causation would require the plaintiff to submit the same evidence. *Id*. at *19.

However, the *Grisham* Court disagreed with the *Schwab* Court's finding of inconsistent verdicts. Instead, the *Grisham* Court found that other tobacco cases had not litigated the question of fraud at issue in *DOJ*; the cases had been litigated before plaintiffs had access to the

---

[12] The Ninth Circuit requires parties moving for non-mutual offensive issue preclusion to prove:
> (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.

*Id*. at *11 (quoting *Syverson v. International Business Machines Corp*., 472 F.3d 1072, 1078 (9th Cir. 2007)).

full evidence of the defendants' bad acts; and no previous case had found that tobacco companies had *not engaged* in fraudulent activities—the favorable verdicts were based on standing, absence of harm or plaintiffs' non-reliance. *Id*. at *17.

### D. Whether Necessary Elements of Issue Preclusion Have Been Met

Two of the four necessary elements require little discussion. First, the findings for which the Plaintiffs seek preclusion were actually litigated in *DOJ*—Judge Kessler specifically found each of them. *See Grisham*, 2009 WL 4019366, at *13 (concluding without discussion that "[t]he relevant issues were in fact litigated in the DOJ case"). Second, *DOJ* is a final determination for purposes of issue preclusion despite the Defendants' pending petition for writ of certiorari. *See In re* Kane, 254 F.3d 325, 328 (1st Cir. 2001) (stating that a judgment is generally considered final for issue preclusion even if an appeal is pending);[13] Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18A *Federal Practice & Procedure*: Jurisdiction 2d. § 4433 (2002). The Court focuses its discussion on the identity of the issues and the centrality of the adjudication.

#### 1. Identity of Issues

The Plaintiffs ask the Court to apply issue preclusion to two types of findings: those related to actions undertaken by all *DOJ* defendants as part of the enterprise and those related to the specific actions of PM and Altria. In regards to the first category, PM and Altria cannot be held liable for "the collective wrongful acts of American tobacco companies." *Grisham*, 2009 WL 4019366, at *15. The identified findings that refer generically to actions taken by the "Defendants" or the enterprise as a whole cannot be used against these particular defendants. Further, light cigarette litigation is a distinct subset within tobacco litigation as a whole, and the

---

[13] *Kane* states that "[t]he general rule applies—in most jurisdictions—even where the first, or issue preclusive, judgment is still on appeal when the second action occurs." *Kane*, 254 F.3d at 328. *Kane* describes the view that a judgment is not final for preclusion purposes while an appeal is pending as the "minority view." *Id.* n.1.

extent to which Judge Kessler separately considered issues unique to light cigarettes is unclear.[14] Whether PM and Altria violated various state marketing and unjust enrichment statutes by fraudulently advertising light cigarettes is distinct from whether nine different cigarette companies and trade organizations participated in a decades-long enterprise to defraud consumers in six different ways. Liability in the pending actions must depend on the specific actions or inactions of the named defendants in relation to light cigarettes.

Similarly, liability in *DOJ* was based on fraudulent activity that took place "throughout the past fifty years." *DOJ*, 449 F. Supp. 2d at 866. Many of the proposed class periods for the pending cases, however, are limited to fraudulent activity occurring within a more circumscribed time.[15] The *DOJ* conclusions based on the consideration of a larger time period do not sufficiently overlap.[16]

Issue preclusion can nonetheless apply to findings related to the specific actions of the Defendants. *See Biggins v. Hazen Paper Co.*, 111 F.3d 205, 210-11 (1st Cir. 1997) (describing how issue preclusion is available to "necessary *intermediate* findings"). For example, the Plaintiffs identified *DOJ* findings relating to PM's, and to a lesser extent Altria's, knowledge about the health risks of light cigarettes and effort to conceal this information. However, there is no identity of issues for findings that are irrelevant to the pending action, such as actions taken in furtherance of non-light cigarette schemes to defraud.

Although the Plaintiffs have identified only a couple of relevant Altria-specific findings, the Plaintiffs contend that Altria's "substantial control over [PM]" makes it subject to issue

---

[14] *See Altria Group, Inc. v. Good*, 129 S. Ct. 538 (2008) (describing in detail the complex regulatory history of light cigarettes).
[15] *See*, *e.g.*, *Tyrer v. Philip Morris USA, Inc.*, No. 09-cv-427, *Compl.* at 22 (Docket #1) (defining the class period as extending four years prior to the filing date of the claim).
[16] The Court recognizes, however, that actions outside the time period may reflect on the Defendants' actions within the time period.

preclusion on findings entered against PM. *Pls.' Reply to Altria's Opp'n* at 2. Although speculating that Altria might be separately liable on the basis of control, *DOJ* imposed liability on the basis of Altria's own participation in the enterprise, 449 F. Supp. 2d at 907, and the D.C. Circuit affirmed that "Altria's liability in this case stands on its own." 566 F.3d at 1129. The D.C. Circuit specifically found "it unnecessary for us to consider Altria's objections to the findings that it participated through its control of [PM]." *Id*.

### 2.  Centrality of the Adjudication

Although certain specific findings are arguably relevant to liability in the current case, the Plaintiffs have not established how these findings were central to the *DOJ* decision. In their Appendix, the Plaintiffs organize these findings in relation to each of the Plaintiffs' four main arguments, but they do not attempt to explain *how* the findings were central. The volume of their request, 1,083 findings, belies this conclusion, as does the inclusion of findings that cannot plausibly be considered "central to the route that led the fact-finder to the judgment reached." *Pls.' Reply to PM's Opp'n* at 12.[17] Judge Kessler included the lengthy findings so that readers could "fully appreciate how massive the case is against the Defendants," not necessarily because the facts were critical to her conclusion. *DOJ*, 449 F. Supp. 2d at 31.

The Plaintiffs implicitly invite the Court to pick out the necessary findings, acknowledging that "the Court may apply preclusion to some findings and not others." *Pls.' Reply to PM's Opp'n* at 12 n.8. With respect to Altria, the Court finds none of the findings was necessary. None of the predicate RICO actions alleged against Altria involved light cigarettes,

---

[17] Furthermore, the large number of findings also raises practical difficulties: how a jury would be able to absorb the raw volume of information contained in such lengthy findings. The Plaintiffs do not attempt an answer. Information presented without background and clarifying examination is more likely to be misunderstood, and to the extent background and clarifying examination is warranted, since issue preclusion is "a doctrine of judicial economy," one "might wonder" how such an objective would be served by allowing a trial in order to explain another Court's factual findings. *Biggins*, 111 F.3d at 210-11.

and Altria was held liable for light cigarette fraud based only on its participation in the enterprise. Furthermore, because of the small number of findings related to light cigarettes, the Court is not convinced that they were central to the *DOJ*'s conclusion of light cigarette fraud on the part of the enterprise. With respect to the lengthier findings against PM, the Court declines to "hunt and peck." *Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir. 2001). This time-consuming burden is properly on the Plaintiffs, the moving party, not the Court. *See Grishim*, 2009 WL 4019366, at *14 (declining to "engage in the lengthy and difficult process" of deciding which facts were essential).

      E.    **Whether Unfairness Counsels Against Preclusion**

The additional *Parklane* considerations underscore why issue preclusion is inappropriate in this case. First, the decision in *DOJ* was reached through a bench trial whereas the Defendants are entitled to a jury trial in the pending actions. Although *Parklane* found the lack of a jury in the initial action did not bar offensive issue preclusion and was "basically neutral," 439 U.S. at 332 n.19, *Parklane* also gave district courts "broad discretion" over the issue preclusion decision. *Id*. at 331. The Court follows the lead of other courts that have given weight to the deprivation of a jury trial. *See Grisham*, 2009 WL 4019366, at *18; *Whelan v. Abell*, 953 F.2d 663, 669 (D.C. Cir. 1992).

Second, the Court is concerned about the possibility for jury confusion and the lack of efficiency.[18] Punitive damages may not be used to "punish a defendant for *injury that it inflicts upon nonparties*." *Williams*, 549 U.S. at 353. If issue preclusion were imposed, however, much of the Defendants' underlying liability would be based in part on actions that inflicted injuries

---

[18] The Plaintiffs argue that considerations of efficiency and jury confusion are not one of the four considerations specifically mentioned in *Parklane*; a list the Plaintiffs describe as "exhaustive." *Pls.' Reply to PM's Opp'n* at 8. The Court disagrees. *Parklane* granted district courts "broad discretion" and expressly stated that "other reasons" might justify a finding of unfairness. 449 U.S. at 331.

upon nonparties. Despite instructions to compartmentalize certain factual findings, the jury could be confused about what facts may or may not be considered when determining punitive damages. *Grisham*, 2009 WL 4019366, at *19 (raising the same concern).

Furthermore, proving causation and reliance might also involve the introduction of evidence that duplicates *DOJ*'s basic findings, negating efficiency benefits. *See Schwab*, 449 F. Supp. 2d at 1079; *Grisham*, 2009 WL 4019366, at *19. The Plaintiffs contend that "the majority of plaintiffs" do not have to prove "reliance and deception." *Pls.' Reply to PM's Opp'n* at 8. However, they base this argument on statutes from only two of the states in which actions are pending, *Pls.' Mot. for Collateral Estoppel* at 17-19, and implicitly concede that some Plaintiffs will have to make both showings.

Finally, even if issue preclusion were appropriate against PM, there is a significant question as to whether it may be used against Altria. Applying issue preclusion to PM and not to Altria would yield few efficiency benefits and would likely confuse the jury. *See Schwab*, 449 F. Supp. 2d at 1079 (finding issue preclusion inappropriate when not applied to all defendants).

Because the Plaintiffs have failed to satisfy traditional issue preclusion requirements and additional fairness considerations weigh against its application, the Court declines to apply the doctrine of issue preclusion to the facts in these consolidated cases.

### III. CONCLUSION

The Court DENIES the Plaintiffs' Motion for Collateral Estoppel (Docket # 59).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 5th day of March, 2010