# EXHIBIT A

**to**

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# CERTIFIED TRANSCRIPT



UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| IN RE: LIGHT CIGARETTES MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1-09-MD-2068 |
| THIS DOCUMENT RELATES TO: | |
| MILES TYRER, as an idnividual and on behalf of all other similarly situated, Plaintiff, vs. PHILIP MORRIS USA INC., a Virginia corporation, and ALTRIA GROUP, INC., a Virginia corporation, Defendants. | CASE NO. 3:09-cv-00052-W-CAB |

Videotaped Deposition of MILES CONRAD TYRER, taken at 655 West Broadway, Suite 1900, San Diego, California, at 9:01 a.m., Wednesday, December 16, 2009, before Shuri Gray, CSR No. 3786.

A. Yes, sir.

Q. Okay. This deposition is being taken in connection with class certification proceedings, and as, I think plaintiffs' counsel knows, we reserve the right to take a further deposition of Mr. Tyrer with respect to the substantive allegations in the case.

Mr. Tyrer, you in this case are the representative of a class, correct?

A. Correct.

Q. And tell me a little bit about that class if you would. What do you know about it?

MR. KREGER: Objection. It's a vague and ambiguous question. You can answer if you understand it.

THE WITNESS: The class consists of people who have smoked now or have smoked in the past or are still smoking light cigarettes.

BY MR. STONE:

Q. Okay. How did you become the class representative?

MR. KREGER: Objection. That's an overbroad question. You can answer if you understand it.

THE WITNESS: I was associated with a lady who works with Mr. Hal Hewell, who is an attorney. She introduced me to him, and I met the criteria.

Q. Did she tell you it had to do with light cigarettes?
A. I do not recall.
Q. At the time you concluded your second conversation with her, did you feel that you had any claim against Philip Morris USA?
MR. KREGER: Objection. It calls for a legal conclusion. You can answer it if you understand it.
THE WITNESS: At that time I was not aware that I had a claim.
BY MR. STONE:
Q. Okay. Did she tell you anything that gave you any reason to think you had a claim?
A. She did not.
Q. You were smoking a brand of cigarettes at that time?
A. I was.
Q. What brand were you smoking at that time?
A. Marlboro 100 Lights.
Q. And are you still smoking cigarettes?
A. Unfortunately, yes.
Q. What brand are you smoking today?
A. The same.
Q. How long have you smoked Marlboro 100 Lights?
A. Approximately seven years.

Q. And before that did you smoke another brand?
A. I smoked Marlboro Regulars.
Q. So you switched from Marlboro Regulars to Marlboro Lights in around 2002?
A. That would be correct.
Q. And how long did you smoke Marlboro Regulars?
A. Between two and three years.
Q. And before that what did you smoke?
A. I didn't.
Q. So you started smoking then around 1999 or 2000?
A. Let me back up. I smoked briefly in my 20s, probably for a six-month period, dropped it then. In '92 I went through a divorce, started smoking again, stopped that after about three months and picked it up again around, yes, '99, 2000.
Q. What led you starting smoking again in 1999 or 2000?
A. A relationship with a lady who is a serial smoker.
Q. What's her name?
A. Kimberly Wood.
Q. Do you still have a relationship with her?
A. We do.
Q. What's that relationship?

particular manufacturer of cigarettes?

MR. KREGER: I am just going to object. It calls for a legal conclusion. You can answer if you know.

THE WITNESS: I don't know.

BY MR. STONE:

Q. Okay. What do you understand your responsibilities to be as a class representative?

A. To serve in the best interests of the members of the class.

Q. So what have you done so far in an effort to serve in the best interests of the members of the class?

A. I have agreed to act as the plaintiff in the case, and I am here for this deposition for that reason.

Q. Have you made any investigation to see if the class has any legitimate claims?

A. I have not.

Q. Do you believe you have a legitimate claim?

A. I believe the class has a legitimate claim.

Q. Okay.

A. But it's not based on any research I have done.

Q. Is it based on any facts that you know?

A. From reading the complaint, I would say yes.

Q. Other than reading the complaint, have you done anything to determine whether there is a claim here or

Flavor other than the use of the word mild in advertising, the less macho image, and the lack in the light cigarettes ads of a daring dude?

A. That was do, not dude, but -- well, certainly. I mean, they say they are lower in tar, lower in nicotine. You know, all that just goes right to the point of saying they are safer.

Q. And it wasn't dude. What was the word?

A. I'm sorry. It was an old expression, daring do.

Q. Do?

A. Yes. Never mind. We should probably --

Q. Okay. So in addition, then, to the ads that you used the word mild and the less macho image and the lack of daring do, you are also claiming that the statement that the light cigarettes are lower in tar and nicotine --

A. Yes.

Q. -- led you to think that they were less risky and less harmful?

A. Correct.

Q. When was that last time Philip Morris ever said Marlboro Lights were lower in tar and nicotine?

A. I can't specifically recall, but I haven't seen that claim in several years. I'd say three or four

Q. Have you had any other health conditions at any time that you attribute to smoking?

A. Other than a sore throat, no, sir.

Q. And have you had any other health conditions at any time that any doctor has told you might be associated in any way with smoking?

A. I have to think about that for a minute.

MR. KREGER: Just --

THE WITNESS: I have to say no.

BY MR. STONE:

Q. Okay. Other than the statement on the pack of cigarettes, lowered tar and nicotine, the ads that refer to Marlboro Lights as mild, the less macho image of Marlboro Lights in the advertising and the lack of daring do, was there anything else about any Philip Morris statements, promotions or advertising that led you to think that Marlboro Lights were less harmful or less risky than Marlboro Full Flavor?

MR. KREGER: I am going to object that it misstates his previous testimony. You can answer, if you know.

THE WITNESS: The whole point of that advertising was that you were producing a safer cigarette, lower in nicotine, lower in tar, mild.

BY MR. STONE:

more smoke. It took more effort to get it.

BY MR. STONE:

Q. So let me rephrase because of the compound objection, just so we are clear.

A. Yes, sir.

Q. When you switched from smoking Marlboro Reds to Marlboro Lights, was the amount of smoke that you took in each puff the same or different?

A. I'd say it was the same.

Q. But in order to get the same amount of smoke, you experienced that it took a stronger draw or more vacuum?

A. Yes, sir.

Q. Okay. Is there anything that Philip Morris did, in terms of the information on the packet or advertising campaigns or promotional campaigns, that led you to believe that Marlboro Lights were less harmful or less risky than Marlboro Full Flavor that you haven't already told me about today?

A. Well, again the less tar, the less nicotine, the light, it all suggests healthier or less harmful.

Q. Okay. Other than that, is there anything else?

A. Not that I can recall.

Q. Okay. If you got less tar from your Marlboro Lights as compared to your Marlboro Full Flavor, would

that you were a member of that class?

A. I am not aware of that.

Q. Until I just mentioned it, were you aware that a lights class action had been brought in California?

A. No, sir.

Q. In the first amended complaint, Exhibit 2, turn, if you would, to Paragraph 95, which is on Page 27. It says here that in the first sentence: "Plaintiff would not have purchased and begun smoking Marlboro Light Cigarettes but for Defendants' misrepresentations and omissions." Do you see that?

A. I do.

Q. Okay. And does this refer to you would not have purchased and begun smoking Marlboro Light cigarettes in 2002 or to some other time?

A. I would say 2002.

Q. And in 2002 you began smoking Marlboro Light cigarettes because of information you received from Ms. Johnson?

A. Uh-huh.

Q. Because of the ads that you have described earlier, and because the packs said lower tar and nicotine; is that right?

A. That's correct.

Q. Okay.

MR. KREGER: Late objection. Misstates testimony.

BY MR. STONE:

Q. And what about --

A. Sorry.

Q. And you have here both a claim that there were defendants' misrepresentations. Let me ask you just about that first.

Is that a claim that what was misrepresented was that they were, in fact, lower tar compared to Marlboro Full Flavor?

A. Yes.

Q. Is there any other misrepresentation that is referred to here?

A. Well, the obvious thought that they would be healthier or less harmful.

Q. Okay. Anything else?

A. I think that paragraph covers it.

Q. And then it says, the very last phrase of that first sentence: "Plaintiff would not have purchased and begun smoking Marlboro Light Cigarettes but for Defendants' misrepresentations and omissions." Do you see the words "and omissions"?

A. Yes, I do.

Q. What are the things that you claim defendants

omitted to tell you?

A. That this wasn't going to be healthier for me.

Q. Okay. It then goes on to say --

And is there anything else besides that that they omitted to tell you other than it wouldn't be healthier for you?

A. At that point or at that time, no.

Q. And when you say "healthier for you," you certainly knew in 2002 it wasn't at all healthy to be smoking?

A. Of course.

Q. So what you really mean is they didn't tell you that it might not be less harmful or less risky?

A. That, yes.

Q. Okay. And it says then that: "Plaintiff typically purchases approximately one pack each per day at locations near his home." Do you see that sentence?

A. I do.

Q. And so is that a true statement that you purchased approximately one pack of cigarettes per day?

A. That's a true statement, yes.

Q. What are the places you usually purchase?

A. CVS Pharmacy, because they are the cheapest. El Norte Liquor, because that's the closest to my house. 7-Eleven. Those would be the three locations.

read the first pamphlet, correct?

A. The first paragraph I am very familiar with. The others I simply don't recall them that well. The first one is clear.

Q. Let's look at the third paragraph.

A. Sure, please.

Q. It says: "You should not assume that cigarette brands using descriptors like Ultra Light, Light, Medium or Mild are less harmful than full flavor cigarette brands or that smoking such cigarette brands will help you quit smoking." Do you see that sentence?

A. I do.

Q. Now, if you read this in 2002, would you have continued to assume that your Marlboro Lights were less risky or less harmful?

MR. KREGER: Objection. Calls for speculation and misstates testimony. You can answer, if you know.

THE WITNESS: Yes.

BY MR. STONE:

Q. Why would you have assumed it after reading this statement?

A. Because they say right on them less tar, less nicotine, light. That's almost a given. If you are advertising in that way, you are purporting them to be healthier --

Q. And when somebody said --
A. -- or less harmful.
Q. I'm sorry. I didn't mean to interrupt.
A. No, my fault.
Q. And when you read the statement in 2002 that you should not assume that cigarette brands using descriptors like light are less harmful than full flavor cigarettes, did you disbelieve that statement?
MR. KREGER: Objection. Misstates testimony. I believe he said that he didn't know if he had read that. You can answer, if you know.
THE WITNESS: Well, that's -- it's a disclaimer. It's like a disclaimer on a hammer saying don't hit yourself on the head with it or something.
BY MR. STONE:
Q. So when you describe them as a disclaimer, what does that mean to you as -- what's a disclaimer mean to you?
A. It means that you knew there were problems coming down the road and you are looking for a way out by putting that in there a long time ago.
Q. And this is information that was being passed on to smokers, correct?
A. Yes, sir.
Q. And in your experience, you would understand

Q. And what monetary relief are you seeking on behalf of the class?

A. Possibly to get the money back that I spent on the cigarettes.

Q. And why would the class, in your mind, be entitled to get money back?

MR. KREGER: Objection. Calls for a legal conclusion. You can answer, if you know.

THE WITNESS: I believe they were misled by the advertising and the representations made by Philip Morris as with regard to the lower tar, less nicotine healthier, lighter, et cetera, and they should be reimbursed for that.

BY MR. STONE:

Q. And how would you calculate, in your mind, the amount they should be reimbursed?

MR. KREGER: Objection. It calls for a legal conclusion and possibly expert opinion. But you can answer, if you know.

THE WITNESS: Well, if you just throw out, let's say, a mean price of $4 a pack, and I have eight years of smoking, that would be roughly $1,700 a year times eight.

BY MR. STONE:

Q. So in your view they should get back the full

I mean, when I was trying to recuperate at home and not smoking, I was under an awful lot of stress. I held off smoking as long as I could now when I experience stress.

MR. KREGER: That wasn't the question. It was as to the past. So you have answered it.

MR. STONE: No, it wasn't, but --

MR. KREGER: Well, I guess it was incomplete as to time, so I assumed it was as to the past.

BY MR. STONE:

Q. It covered all times. What's the effect of stress on the amount you smoke or whether you smoke?

MR. KREGER: So it's vague and ambiguous as to time. You can answer.

THE WITNESS: Stress does make me want to have a cigarette, yes, sir.

BY MR. STONE:

Q. Okay. What did you do to prepare for your deposition?

A. I read the amended complaint.

Q. Okay. Did you read any other materials besides that?

A. No, not to prepare for the deposition.

Q. Okay. And then in connection with this lawsuit, have you read anything other than the original complaint, Exhibit 1, and the amended complaint,

Exhibit 2?

A. I saw the request for admissions and the general list of questions and interrogatories.

Q. Okay. And have you started working on preparing answers to those?

MR. KREGER: Objection. Potentially violates the attorney work product privilege. Just answer as to anything you have done on your own.

THE WITNESS: No.

BY MR. STONE:

Q. Okay. And other than reading the discovery requests and the original complaint, Exhibit 1, and the amended complaint, Exhibit 2, have you read any other materials in connection with this case?

A. No, I have not.

Q. Okay. And did you meet with anyone in preparation for your deposition?

A. Yes.

Q. Who did you meet with?

A. My three attorneys here.

Q. Okay. And when did that occur?

A. Yesterday.

Q. And how long did that last?

MR. KREGER: Objection. I believe that violates the attorney-client privilege. I instruct him