# EXHIBIT E

to

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**CERTIFIED TRANSCRIPT**

1

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IN RE: LIGHT CIGARETTES MARKETING )
AND SALES PRACTICES LITIGATION   ) MDL DOCKET NO.
_____ ) 1-09-MD-2068
THIS DOCUMENT RELATES TO:         )
                                  )
STEPHANIE GOOD, LORI A. SPELLMAN, ) Case No.:
and ALLAIN L. THIBODEAU,          ) 05-00127-B-W
individually and on behalf of all )
others similarly situated,        )
                     Plaintiff,   )
v.                                )
                                  )
PHILIP MORRIS USA INC., a         )
Virginia corporation, and         )
ALTRIA GROUP, INC., a Virginia    )
corporation,                      )
                                  )
                     Defendants.  )

VIDEOTAPED DEPOSITION OF STEPHANIE GOOD

     Taken before Cheryl C. Pieske, Registered Merit
Reporter, Notary Public in and for the State of Maine,
on December 14, 2009, at the offices of Drummond
Woodsum, 84 Marginal Way, Portland, Maine, commencing at
9:08 a.m., pursuant to notice given.

APPEARANCES:

FOR THE PLAINTIFFS:        SAMUEL W. LANHAM, JR., ESQ.
                           Lanham Balckwell, P.A.
                           470 Evergreen Woods
                           Bangor, ME 04401

FOR THE DEFENDANTS:        JUDITH BERNSTEIN-GAETA, ESQ.
                           Arnold & Porter LLP
                           555 Twelfth Street, N.W.
                           Washington, D.C. 20004

Videographer:              Ms. Cindy Spencer

13

1        your deposition?

2   A.   Last week.

3   Q.   Did she also ask you what it was about?

4   A.   Yes.

5   Q.   And what did you tell Katie?

6   A.   The same.

7   Q.   Were they together at the time you told them that?

8   A.   No.

9   Q.   What's Katie's position at Beale Street Barbecue?

10  A.   Dining room manager.

11  Q.   And is Mr. Emery the owner?

12  A.   He is the general manager.

13  Q.   Is the barbecue good?

14  A.   It is.

15  Q.   When did you speak to Mr. Lanham about your

16       deposition?

17  A.   Friday.

18  Q.   For how long did you speak to Mr. Lanham?

19           MR. LANHAM:   Objection.   I instruct her not

20       to answer.

21  BY MS. BERNSTEIN-GAETA:

22  Q.   Are you going to follow your counsel's advice?

23  A.   Yes.

24  Q.   Okay.   How did you become involved in this lawsuit?

25  A.   My brother-in-law, Jeff Leadbetter, approached me.

14

1  Q.   And what did he tell you?

2  A.   Sam Lanham was representing -- what do I say?

3       Excuse me.  Basically Jeff Leadbetter told me about

4       the cigarettes being lower in tar and nicotine and

5       that if I was interested in discussing this to call

6       Sam Lanham.

7  Q.   Do you know how your brother-in-law learned about

8       the lawsuit?

9  A.   I'm not really sure.

10  Q.   Where does your brother-in-law work?

11  A.   Bangor.

12  Q.   Where --

13  A.   Bangor.  I'm sorry.  Leadbetter's Convenience Store.

14       He's the owner.

15  Q.   Has Mr. Leadbetter ever worked for Mr. Lanham, to

16       the best of your knowledge?

17  A.   No.

18  Q.   How soon after you spoke to Mr. Leadbetter did you

19       speak to Mr. Lanham?

20  A.   A week or two.

21  Q.   Prior to speaking to Mr. Lanham, did you speak to

22       anyone else about Marlboro Lights cigarettes?

23  A.   No.

24  Q.   At the time that you first spoke to Mr. Leadbetter,

25       was he a smoker?

15

1   A.   Yes.

2   Q.   Do you recall what brand he was smoking?

3   A.   Not quite sure.

4   Q.   Was it Marlboro Lights or Marlboro Ultralights, one

5        or the other?

6   A.   One or the other, yes.

7   Q.   Did, to the best of your knowledge, Mr. --

8        withdrawn.  Mr. Leadbetter at some point, you

9        believe, smoked Marlboro Light cigarettes?

10  A.   Yes.

11  Q.   Okay.  Do you know why he didn't want to be a class

12       representative in this lawsuit?

13  A.   I do not.

14  Q.   Was when you contacted Mr. Lanham the first time you

15       had attempted to obtain legal advice regarding

16       smoking issues?

17  A.   I'm sorry.  Could you repeat that?

18  Q.   Sure.  When you contacted Mr. Lanham about this

19       lawsuit --

20  A.   Uh-hmm.

21  Q.   -- was that the first time you had sought legal

22       counsel about smoking -- a smoking lawsuit?

23  A.   Yes.

24  Q.   Had you ever in your head wanted to sue Philip

25       Morris or any other tobacco company prior to

1          your dep -- for your deposition today?

2     A.   Yes.

3     Q.   What did you review?

4     A.   Documents from Sam Lanham.

5     Q.   Do you remember what those documents were?

6     A.   In regards to this case?

7     Q.   Yeah.

8     A.   I guess I don't know --

9     Q.   Let me see if I can help you a little bit.

10    A.   Okay.

11    Q.   Did he send you what's known as the complaint that

12         was filed in this case?

13    A.   Yes.

14    Q.   Did he send you more than one complaint?

15              MR. LANHAM:  Objection to the form.  Go

16         ahead.

17    A.   Yes.

18    BY MS. BERNSTEIN-GAETA:

19    Q.   Was one of the complaints called the First Amended

20         Complaint?

21    A.   Yes.

22    Q.   Was the other one the Second Amended Complaint?

23    A.   Yes.

24    Q.   Did you see the original complaint that was filed in

25         this case in the papers Mr. Lanham sent you?

19

1    A.    Yes.

2    Q.    Other than the complaints that were sent to you, did

3          Mr. Lanham send you any other documents?

4                MR. LANHAM:   In preparation for the

5          deposition?

6                MS. BERNSTEIN-GAETA:   Yes, sir.

7    Q.    You can answer.

8    A.    Yes.

9    Q.    What else were you sent?

10   A.    I have been sent several things.   I can't --

11   Q.    Were any of them -- were any of the documents Mr.

12         Lanham sent you in preparation for your deposition

13         cigarette advertisements?

14   A.    No.

15   Q.    Newspaper articles?

16   A.    No.

17   Q.    Did they relate to the subject matter of the

18         lawsuit, the documents that Mr. Lanham sent you in

19         preparation for your deposition?

20   A.    No.   Just stating the date of the deposition.

21   Q.    Oh, the deposition notice?

22   A.    Yes.   Just the date --

23   Q.    Okay.

24   A.    -- and where.

25   Q.    Other than the documents that we've discussed, has

1          Mr. Lanham sent you any other documents in

2      preparation for your deposition?

3   A.  No.

4   Q.  Prior to being sent documents for your deposition by

5      Mr. Lanham, has he sent you other documents?

6   A.  Can you repeat that, please?

7   Q.  Sure.  Prior to the documents Mr. Lanham sent you in

8      preparation of this deposition, have you ever at any

9      other time received documents from Mr. Lanham?

10  A.  Yes.

11  Q.  Do you recall what you received?

12  A.  I do not.

13  Q.  Were any of the documents you received

14      advertisements?

15  A.  No.

16  Q.  Were any of them related to information put out or

17      published by Philip Morris USA, Inc.?

18  A.  No.

19  Q.  Do you currently smoke?

20  A.  Yes.

21  Q.  What do you smoke?

22  A.  Marlboro Lights.

23  Q.  When did you have your last cigarette?

24  A.  30 minutes ago.

25  Q.  Was that in the car on your way down here?

21

1  A.   Correct.

2  Q.   Now, you told me what this -- your understanding is

3       of this lawsuit.  Do you think that there is

4       information that Philip Morris USA should have

5       provided to you?

6            MR. LANHAM:   Objection to form.

7  BY MS. BERNSTEIN-GAETA:

8  Q.   You can answer.

9  A.   Yes.

10  Q.   What information would that be?

11  A.   That Marlboro Lights are not lower in tar and

12       nicotine.

13  Q.   Anything else?

14  A.   And they are just as addictive.

15  Q.   Just as addictive as what?

16  A.   As regular cigarettes.

17  Q.   Anything else?

18  A.   And they're just as unhealthy as regular cigarettes.

19  Q.   Anything else?

20  A.   I don't think so.  I don't think.

21  Q.   How do you think Philip Morris USA should have

22       provided that information to you?  Go ahead.

23  A.   I'm really not -- basically, I believe stating the

24       truth about the cigarettes.  Basically that.

25  Q.   That's, if I understand, what Philip Morris should

24

1   Q.   Other than smoking Marlboro Lights, have you smoked

2        other brands of cigarettes?  And let me qualify that

3        which may make it a little easier.  Have you

4        regularly smoked any other brands of cigarettes, not

5        one or two that you may have tried?

6   A.   No.

7   Q.   So when you became a regular smoker, was Marlboro

8        Lights the brand you chose?

9   A.   Yes.

10  Q.   Thank you.  Prior to becoming a regular smoker, did

11       you ever try other brands of cigarettes?

12  A.   No.

13  Q.   Have you ever -- and pardon me for the use of this

14       word because I don't know a better word for it.

15       Have you ever bummed a cigarette from your boss?

16  A.   Yes.

17  Q.   And is Keith -- have you ever bummed a cigarette

18       from Keith Emery?

19  A.   Yes.

20  Q.   He smokes Camel Lights, correct?

21  A.   Yes.

22  Q.   Is that the brand of cigarette you bummed from

23       Mr. Emery?

24  A.   Yes.

25  Q.   Have you ever -- have you ever tried an ultralight

47

1    A.    '90, uh-hmm.

2    Q.    And you graduated from high school in 1998, correct?

3    A.    '88.

4    Q.    I meant '88.  I'm sorry.  It was a test to see if

5          you were listening.  So sometime between 1988 and

6          1990 you began smoking?

7    A.    Correct.

8    Q.    When you began smoking regularly -- and by began

9          smoking, I meant began smoking regularly.  When you

10         began smoking regularly, did you purchase packages

11         of cigarettes?

12   A.    Yes.

13   Q.    And I take it that was always Marlboro Light

14         cigarettes that you purchased?

15   A.    Yes.

16   Q.    Why did you decide to become a regular smoker?

17   A.    Addicted.

18   Q.    Before you became a regular smoker, you were

19         addicted to cigarettes?

20   A.    I don't know.

21   Q.    In between the time in high school when you tried

22         your first cigarette with your friends --

23   A.    Uh-hmm.

24   Q.    -- until the time you purchased your first pack of

25         Marlboro Lights, did you occasionally smoke a

72

1     because you thought Marlboro Lights were lower in

2     tar and nicotine and they're not, in your opinion,

3     or in your allegations lower in tar and nicotine.

4     When you were using the word "lower tar and

5     nicotine", what were you comparing the Marlboro

6     Lights to?  Lower in tar and nicotine than what?

7  A.   Than regular cigarettes.

8  Q.   How much lower did you think they were?

9        MR. LANHAM:  Objection to foundation.

10  BY MS. BERNSTEIN-GAETA:

11  Q.   Did you ever stop to think about how much lower in

12     tar and nicotine the cigarettes were?

13  A.   I just assumed when it said lower, it meant lower.

14     I didn't think about how much.

15  Q.   So you never tried to quantify it?

16        MR. LANHAM:  Objection.  Asked and answered,

17     foundation.

18  BY MS. BERNSTEIN-GAETA:

19  Q.   You can answer.

20  A.   No.

21  Q.   Marlboro Ultralights used to say low tar and

22     nicotine; is that correct?

23        MR. LANHAM:  Objection, foundation.

24  A.   I don't know.

25  BY MS. BERNSTEIN-GAETA:

1   and then I'm going to hand it to her.

2   A.   Well, there's not less, more tar -- there's --

3        according to that, the Marlboro Lights do not have

4        less tar and nicotine, and also there's a part in

5        there that says there is also more damage done to

6        chromosomes and genetics.

7   Q.   Okay.  Thank you very much.

8            MS. BERNSTEIN-GAETA:  I'm going to have this

9        marked as Good Exhibit 4 and Good Exhibit 5, Ms.

10       Reporter.   4 is the first and 5 is the second.   I

11       don't know that I handed them to you in the right

12       order.

13           MR. LANHAM:  I've got them.  Thank you.

14           (Good Deposition Exhibits 4 and 5 marked.)

15  BY MS. BERNSTEIN-GAETA:

16  Q.   Ms. Good, I'm handing you what has been marked as

17       Good Exhibit 4 and Good Exhibit 5.   Good Exhibit 4

18       is the First Amended Complaint which you told me you

19       had reviewed, or you told me Mr. Lanham had sent

20       you.   That complaint was filed September 21st, 2005.

21       I then handed you a Second Amended Complaint which

22       was filed last week on December 11th.

23  A.   Yes.

24  Q.   And you told me earlier Mr. Lanham had sent you

25       these complaints.  Did you review them in

1        preparation for your deposition?

2    A.   Yes.

3    Q.   Would you on the First Amended Complaint turn to

4        paragraph 31 and in the Second Amended Complaint

5        turn to paragraph 29.  I'm going to read paragraph

6        31 into the record.  Please let me know if I've read

7        it correctly.  "Not only do consumers receive higher

8        levels in tar and nicotine than the testing

9        apparatus registers, but the smoke produced by

10       Marlboro Lights and Cambridge Lights is more

11       mutagenic, causing genetic and chromosomal damage,

12       per milligram of tar than the smoke of regular

13       cigarettes due to the increased inhalation."  Did I

14       read that correctly?

15   A.   Yes.

16   Q.   Are you aware whether the Second Amended Complaint

17       on paragraph 29 says the same thing as paragraph 31?

18       Would you like me to read it into the record?  Would

19       that be easier?

20           MR. LANHAM:  Just give her a chance to look

21       at it so she can answer the question.

22           MS. BERNSTEIN-GAETA:  Sure.

23   A.   Can you ask the question again, please?

24   BY MS. BERNSTEIN-GAETA:

25   Q.   Is paragraph 29 of the Second Amended Complaint --

108

1    Q.   Anything else?

2    A.   No.

3    Q.   Using your definition, are there products other than

4         cigarettes to which you think you're addicted?

5              MR. LANHAM:   Objection.

6    BY MS. BERNSTEIN-GAETA:

7    Q.   You can answer.

8    A.   No.

9    Q.   Now, I don't have with me the first complaint that

10        was filed in this case, but it was filed in 2005.   I

11        will show you the date.   Did you review that

12        complaint before it was filed?   And that complaint I

13        mean the original complaint that was filed in this

14        suit.

15   A.   Yes.

16   Q.   And that was back in --

17             MR. LANHAM:   You need the date?

18             MS. BERNSTEIN-GAETA:   Yeah.

19             MR. LANHAM:   It was in September.

20             MS. BERNSTEIN-GAETA:   Thank you.

21   Q.   September of 2005.

22   A.   Yes.

23   Q.   And we've already established that you reviewed the

24        First Amended Complaint and the Second Amended

25        Complaint, correct?

109

1   A.   Yes.

2   Q.   What are you asking for in this lawsuit?

3   A.   All of the money that I have spent on cigarettes, on

4       Marlboro Lights.

5   Q.   Since you began smoking them?

6   A.   Yes.

7   Q.   Are you seeking a refund of the price of Marlboro

8       Lights you purchased in other states?

9   A.   No.

10   Q.   Just those Marlboro Lights you purchased in the

11       State of Maine?

12   A.   Correct.

13   Q.   Have you ever purchased Marlboro Lights in a

14       duty-free store?

15   A.   No.

16   Q.   Have you ever purchased Marlboro Lights on the

17       internet?

18   A.   No.

19   Q.   Did you smoke all the Marlboro Lights for which you

20       would like your money back?

21   A.   I'm sorry?

22   Q.   Did you smoke all of the Marlboro Lights for which

23       you would like your money back?

24   A.   Yes.

25   Q.   Did you enjoy at least some of those Marlboro Lights

112

1   Q.   And why don't you know?

2        MR. LANHAM:   Objection to form.

3   Q.   Do you think someone who has not been fooled or has

4        not been deceived by Philip Morris is entitled to

5        their money back for all the Marlboro Light

6        cigarettes they've smoked?

7        MR. LANHAM:   Objection to form, foundation,

8        asked and answered I don't know, and seeks at least

9        in part a legal conclusion.

10  BY MS. BERNSTEIN-GAETA:

11  Q.   You can answer.

12  A.   I still don't know.

13  Q.   Okay.  Do you understand that you're named as a

14       class representative in this lawsuit?

15  A.   Yes.

16  Q.   Do you understand what a class representative is?

17  A.   Yes.

18  Q.   And what is your understanding of a class

19       representative?

20  A.   I am representing smokers in Maine.

21  Q.   That's it?  And I'm sorry, I didn't mean it the way

22       it sounded.  I --

23       MR. LANHAM:   I think she's thinking and

24       let -- just let her finish.  She'll tell you when

25       she's done.

1    BY MS. BERNSTEIN-GAETA:

2    Q.   Were you finished?

3    A.   Representing smokers in Maine for being lied to by

4         Philip Morris.

5    Q.   Were you -- are you finished?

6    A.   Yes.

7    Q.   All smokers in Maine?

8    A.   Light smokers.

9    Q.   All light smokers in Maine?

10   A.   Yes.

11   Q.   Including -- do you represent light smokers in Maine

12        who do not smoke a Philip Morris brand of

13        cigarettes?

14   A.   No.  I misunderstood that.  Philip Morris only.

15   Q.   That's fine.  That's fine.  What are your duties as

16        a class representative?

17   A.   Under supervision and coordinate with my lawyer.

18   Q.   Okay.  Have the pleasure of having your deposition

19        taken, correct?

20   A.   Yes.  And it is a pleasure.

21   Q.   Anything else?

22   A.   Understanding the procedures and the legalities of

23        the case.

24   Q.   If this case went to trial, do you understand you

25        may be called on to testify if Mr. Lanham so

114

1        chooses?

2    A.   Yes.

3    Q.   Are you willing to do that?

4    A.   Yes.

5    Q.   Do you think you're a good class representative?

6    A.   I could be better.

7    Q.   In what ways could you be better?

8    A.   I could do some more research.

9    Q.   And do more research regarding the safety of low-tar

10       cigarettes?

11   A.   Correct.

12   Q.   Is there anything else you could do?

13   A.   I don't know.

14   Q.   If you were going to do more research, how would you

15       do it?

16   A.   Go to a library.

17   Q.   Do you own a computer?

18   A.   No.

19   Q.   Do you have access to a computer?

20   A.   At the library.

21   Q.   Was that something you would do if you went to the

22       library is research on line?

23   A.   Yes.

24   Q.   And I take it you have never done that?

25   A.   Not yet.

121

1        Marlboro Lights -- and I'm not asking for the words,

2        but anything adhered to the package of Marlboro

3        Lights in all the years you smoked Marlboro Lights?

4              MR. LANHAM:  Objection to form.

5  A.   No.

6  BY MS. BERNSTEIN-GAETA:

7  Q.   Let's see if this refreshes your recollection.

8        Before I turn to this, have you noticed since

9        September of 2009 on the little cellophane tear on

10       cigarettes that there are some words written?

11  A.   Yes.

12  Q.   Can I call that little cellophane thing a tear tape

13       and you'll understand what I mean?

14  A.   Yes.

15  Q.   Do you recall what the words are that are written on

16       the tear tape?

17  A.   No.

18  Q.   Let's have this marked as Good Exhibit 6.  I

19       apologize for the quality of the writing here, but

20       it is the best picture I can take.

21         Ms. Good, I'm handing you what has been marked

22       as Good Exhibit 6.  It's a document entitled "Tear

23       Tape Examples", and I'm going to read the second

24       example and ask that you read along with me.  Okay?

25  A.   Okay.

1          addictive as regular cigarettes.

2    A.    Uh-hmm.

3    Q.    The words "Marlboro Lights are not safer" is

4          information from Philip Morris that, for lack of a

5          better word, that goes to those facts that you were

6          telling me about.  Correct?

7               MR. LANHAM:  Objection to form.

8    A.    No, it says it is not safer.  It doesn't say

9          anything about being lower in tar and lower in

10         nicotine.

11   BY MS. BERNSTEIN-GAETA:

12   Q.    Did you think when you started Marlboro Lights that

13         they were safer than full-flavored cigarettes?

14              MR. LANHAM:  Objection to form and

15         characterization of full flavored.

16   A.    I thought they were healthier, if there is such a

17         thing.

18   BY MS. BERNSTEIN-GAETA:

19   Q.    So telling you here that they're not safer is some

20         information you would have liked to have known?

21   A.    But I --

22              MR. LANHAM:  Objection to form.  Hold on.

23         It's argumentative.  Go ahead.

24   A.    I didn't see it.

25   BY MS. BERNSTEIN-GAETA:

141

1        want your money back for all the Marlboro Lights

2        that you've purchased since you have been a regular

3        smoker of Marlboro Lights?

4  A.    Yes.

5  Q.    Okay.  If you will give me one minute's indulgence,

6        I think we may be done with me.

7                (Brief pause)

8           MS. BERNSTEIN-GAETA:  Ms. Good, I for now am

9        finished.  If Mr. Lanham has questions, I may be

10       back.  If not, I'm finished for good.  I want to

11       thank you for your patience, your ability to answer

12       questions today, and your time.  Thank you very

13       much.

14           THE DEPONENT:  Thank you.

15               EXAMINATION

16  BY MR. LANHAM:

17  Q.    I have a few questions for you, Ms. Good.  What is

18       it again that you are claiming Philip Morris did not

19       do that it should have done with regard to its

20       advertising of Marlboro Lights cigarettes?

21  A.    The advertising, misinformation, basically stating

22       Marlboro Lights have lower tar and nicotine when

23       actually they don't, the deception of that.  I find

24       it fraudulent and I find it that they lied.

25  Q.    Was that a factor in your choosing to continue to

142

1          smoke Marlboro Lights after you became a regular

2          smoker as compared with switching to Marlboro Reds?

3              MS. BERNSTEIN-GAETA:  Object to form.  Lack

4          of foundation.

5     A.   I was addicted to Marlboro Lights.

6     BY MR. LANHAM:

7     Q.   And was the information that you have just described

8          in the advertising --

9     A.   Uh-huh.

10    Q.   -- a factor in your choosing to continue to smoke

11         Marlboro Lights?

12    A.   Yes.

13    Q.   When the class action complaint in Maine was first

14         filed in September of 2005, do you agree that you,

15         Lori Spellman, and Allain Thibodeau were all three

16         named class representatives?

17    A.   Yes.

18    Q.   At the very end of questioning by counsel for Philip

19         Morris, you were asked some questions about the

20         definition of what is called the class period, the

21         period of time for which the complaint seeks relief

22         in terms of a time frame.  Do you understand that

23         generally?

24    A.   Yes.

25    Q.   Do you understand that that time frame was changed