# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| IN RE:  LIGHT CIGARETTES MARKETING | ) | MDL DOCKET NO. 1-09-MD-2068 |
| SALES PRACTICES LITIGATION | ) | ALL CASES |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
PHILIP MORRIS USA INC.'S MOTION FOR SUMMARY JUDGMENT
<u>ON PLAINTIFFS' CLAIMS FOR PURCHASES AFTER DECEMBER 1, 2002</u>**

## Table of Contents

Introduction ................................................................................................................1

I.   Standard of Review ...........................................................................................2

II.  Genuine Issues of Material Fact Exist so as to Preclude Summary Judgment.................3

    1.  Defendant's Low Tar/Lights Onserts and the Language Contained
    Therein Create a Genuine Issue of Material Fact as to Whether
    Defendant Engaged in Deceptive or Unfair Conduct ....................................7

    2.  Defendant's Low Tar/Lights Onserts and the Language Contained
    Therein Create a Genuine Issue of Material Fact as to Whether
    Defendant Has Been Unjustly Enriched ......................................................12

    3.  The Insignificant Reach of Defendant's Low Tar/Lights Onserts
    Creates a Genuine Issue of Material Fact as to Whether Consumers
    Ever Saw or Read the Low Tar/Lights Onserts ...........................................15

    4.  Defendant's Authorities Are Distinguishable and Inapposite to the
    Facts and Circumstances Present Here ........................................................19

    5.  Defendant's Arguments in Support of its Motion Have Already
    Been Rejected by Another Court Addressing the Very Same Issue ...........24

Conclusion ...............................................................................................................25

Table of Authorities

Cases

*A.F.A.B., Inc. v. Town of Old Orchard Beach*, 610 A.2d 747 (Me. 1992) ....................................13

*Abrams v. Toyota Motor Credit Corp.*,
No. 071049, 2001 WL 1807357, at *1 (Pa. Com. Pl. Dec. 5, 2001) .......................................13, 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................................................9

*B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674 (Tenn. App. Ct. 1995) ...................12

*Ballas v. Virgin Media, Inc.*,
No. 600014-2007, 2007 WL 4532509, at *1 (N.Y. Supr. Ct. Dec. 6, 2007).........................19, 21

*Beach v. Ingram & Assocs., Inc.*, 927 F. Supp. 255 (M.D. Tenn. 1996) ........................................9

*Binette v. Dyer Library Ass'n*, 688 A.2d 898 (Me. 1996) ...........................................................2, 3

*Burdzel v. Sobus*, 2000 ME 84, 750 A.2d 573 ...........................................................................5, 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................2

*City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) ......................................................................................19, 23, 24

*DePriest v. AstraZeneca Pharm., L.P.*,
No. 08-1257, 2009 WL 3681868, at *1 (Ark. Nov. 5, 2009) .......................................................14

*Dew v. Tchula Grain Co.*, 812 So. 2d 1014 (Miss. App. Ct. 2001)..................................................6

*Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 953 P.2d 722 (N.M. App. 1997).....................23

*Evans v. Chase Manhattan Bank USA*,
No. 05-3968, 2006 WL 213740, at *1 (N.D. Cal. Jan. 27, 2006)...........................................19, 20

*First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253 (1968)..............................................................9

*First Nat'l Bank of DeWitt v. Cruthis*, 203 S.W.3d 88 (Ark. 2005) .......................................14, 15

*Garfinkel v. Bayer Corp.*, 8 A.D.3d 162 (N.Y.A.D 2004)............................................................10

*Graduate Cardiology Consultants, P.C. v. Vivra, Inc.*,
No. 080518, 2000 WL 33711050, at *1 (Pa. Com. Pl. Oct. 20, 2000)..........................................14

*Griggs-Ryan v. Smith*, 904 F.2d 112 (1st Cir. 1990) ........................................................2

*Gurevitch v. Philip Morris USA*,
2009 WL 3848422, at *1 (Cal. Sup. Ct. 2009) ...............................................19, 22

*Hakki v. Zima Co.*,
No. 03-9183, 2006 WL 852126, at *1 (D.C. Super. Mar. 28, 2006).......................19, 21

*Hernandez v. Vickery Chevrolet-Oldsmobile Co.*, 652 So. 2d 179 (Miss. 1995) ..........................22

*In re AIG Advisor Group Secs. Litig.*, 309 Fed. Appx. 495 (2d Cir. 2009) ...................................19

*In re Estate of Roark*, 829 S.W.2d 688 (Tenn. App. Ct. 1992) .........................................19, 21, 22

*In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953 (N.D. Cal. 2007).................19, 20

*June Roberts Agency v. Venture Props.*, 676 A.2d 46 (Me. 1996)................................................13

*Lewis v. Hertz Corp.*, 181 A.D.2d 493 (N.Y. App. Ct. 1992) .......................................................21

*MacCormack v. Brower*, 2008 ME 86, 948 A.2d 1259 ................................................................23

*Martin v. Hacker*, 628 N.E.2d 1308 (N.Y. App. Ct. 1993) ..........................................................10

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313 (1st Cir. 1995)................................................2

*McCoy v. Manhattan Bank USA*, 559 F.3d 963 (9th Cir. 2009)..............................................19, 20

*McGrath v. Hilding*, 363 N.E.2d 328 (N.Y. 1977) .......................................................................13

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) ...................................................24

*Michael v. Warner/Chilcott*, 579 P.2d 183 (N.M. App. Ct. 1978) ...............................................11

*Navarro v. Pfizer Corp.*, 261 F. 3d 90 (1st Cir. 2001)...................................................................2

*News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218 (D.C. 2005) ......................................14

*Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453 (2009)............................12

*Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326 (D. Me. 2003)..................................2

*Peart v. Dist. of Columbia Housing Auth.*, 972 A.2d 810 (D.C. 2009) ........................................14

*Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859 (Ill. App. Ct. 1997)...........................5, 19, 21

iii

*Platz Assocs. v. Finley*, 2009 ME 55, 973 A.2d 743...................................................12, 13

*Powell v. Campbell*, 912 So. 2d 978 (Miss. 2005) ...................................................14

*Prism Marketing Co., Inc. v. Casino Factory Shoppes, LLC*,
No. 08cv163, 2009 WL 4348952, at *1 (N.D. Miss. Nov. 30, 2009)...........................14

*Rodi v. S. New England Sch. Of Law*, 532 F.3d 11 (1st Cir. 2008) ...........................19, 20

*Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687 (N.Y. App. Ct. 1994)...........................21

*Santullo v. Pfizer, Inc.*,
No. D-0101-CV-200301377, 2005 WL 4255513, at *1 (D.N.M. Dec. 9, 2005)...........................14

*Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992 (E.D.N.Y 2006)...........................24, 25

*Simonds v. Simonds*, 380 N.E.2d 189 (N.Y. 1978) ...................................................13

*Speyer v. Avis Rent A Car Sys., Inc.*, 415 F. Supp. 2d 1090 (S.D. Cal. 2005)...........................19, 20

*Spickler v. Greenberg*, 586 A.2d 1232 (Me. 1991) ...................................................3

*St. Paul Indus. Park, Inc. v. New York State Urban Dev. Corp.*,
63 A.D.2d 822 (N.Y.A.D. 1978)...........................................................9

*Standard Life & Accident Ins. Co. v. Dewberry & Davis, LLC*,
210 Fed. Appx. 330 (4th Cir. 2006)...........................................................19

*Strychalski v. Mekus*, 54 A.D.2d 1068 (N.Y.A.D. 1976)...........................................9

*Thomas v. Olson*, 220 S.W.3d 627 (Ark. 2005)...........................................22, 23

*Triangle Trading Co. v. Robroy Indus.*, 200 F.3d 1 (1st Cir. 1999) ...........................7

*Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935 (N.D. Ill. 2008)...........................20

*Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791 (W.D. Wis. 2006) ...............19, 21

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
179 A.D.2d 592 (N.Y.A.D 1992)...........................................................13

*United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006) ...........................1

*Watts v. Watts*, 405 N.W.2d 303 (Wis. 1987)...........................................................14

*Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466 (2006)...........................................20, 21

iv

*Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 Supp. 2d 371 (E.D. Pa. 1998) ................................23

*Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616 (Pa. Super. Ct. 1999) ..............................14

*Zuckerman v. BMG Direct Mktg.*, 290 A.D. 330 (N.Y. App. Ct. 2002)................................19, 21

*Zwiercan v. Gen. Motors Corp.*,
No. 3235, 2002 WL 31053838, at *1 (Pa. Com. Pl. Sept. 11, 2002)...............................................6

## Rules

Fed. R. Civ. P. 56................................................................................................................................2

## Restatements and Treatises

Restatement of Restitution § 1 (1937) ...........................................................................................13

66 Am. Jur. 2d *Restitution and Implied Contracts* § 12 (2000)....................................................13

**Introduction**

Defendant Philip Morris USA Inc.'s ("Defendant") Motion for Summary Judgment on

Plaintiffs' Claims for Purchases After December 1, 2002 ("Motion") [D.E. #130] should be

denied for the reasons stated herein and in Plaintiffs' Response to Defendant Philip Morris USA

Inc's Statement of Material Undisputed Facts in Support of Defendant's Motion for Summary

Judgment on Plaintiffs' Claims for Purchases After December 1, 2002, and Plaintiffs' Statement

of Additional Material Facts ("Plaintiffs' Statement of Additional Facts") (filed concurrently

herewith), which illustrates that a trier of fact has already found—by and through its findings of

fact, conclusions of law, and Judgment—that Defendant's communications to the public did not

lead to exculpation, and were no more than half-truths and inadequate disclosures that were

further designed to mislead and continue to keep addicted the victims of its conduct to date.  *See*

*generally United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006) (the "*DOJ*

*action*").  Judge Kessler's Findings of Fact and Conclusions of Law, and their affirmance by the

D.C. Circuit Court of Appeals, establish, at a minimum, that a genuine issue of material fact

exists on the issue presented by Defendant's Motion.

Additionally, the purported "information" conveyed by Defendant's periodic low tar/lights

onserts—"a folded leaflet placed under the cellophane packaging on packs of [Light] cigarettes"

(Def. Facts at ¶12)—amounts to nothing more than a mere sliver of the truth about Defendant's

Light and Ultra-Light cigarettes (hereinafter collectively referred to as "Light cigarettes") and

their harmful effects.  Such "information" is anything but an express or full disclosure of facts, as

the entirety of the case law relied upon by Defendant demands.  Astonishingly, these low

tar/lights onserts were just *one* of numerous informational onserts that Defendant included with

1

its Light cigarettes, and were at times included in as few as.88% of the total packs of Light

cigarettes distributed by Defendant in one of the MDL jurisdictions during a given year.

The essence of this case is Defendant's misleading, unfair, and unjust conduct, all of which

creates numerous issues of material fact, and thereby constitutes trial-worthy issues.

Accordingly, the Court should deny Defendant's Motion in its entirety.

## I.   Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is only appropriate if the moving party

sufficiently demonstrates "that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Here, "'material' means that a

contested fact has the potential to change the outcome of the suit under the governing law if the

dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that the

evidence about the fact is such that a reasonable jury could resolve the point in favor of the

nonmoving party." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir. 2001) (quoting

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).  "The party moving for

summary judgment must demonstrate an absence of evidence to support the nonmoving party's

case." *Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 332 (D. Me. 2003) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  When reviewing a motion for summary

judgment, a court should review the record "in the light most hospitable to the party opposing

summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v.

Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

"[S]ummary judgment is an extreme remedy and should be granted in favor of a defendant

only when the facts before the court so conclusively preclude recovery by the plaintiff that a

judgment in favor of the defendant is the only possible result as a matter of law." *Binette v. Dyer*

*Library Ass'n*, 688 A.2d 898, 901 (Me. 1996) (citing *Spickler v. Greenberg*, 586 A.2d 1232,

1234 (Me. 1991)).

## II. Genuine Issues of Material Fact Exist so as to Preclude Summary Judgment.

Plaintiffs' claims under the various consumer fraud statutes[1] and for unjust enrichment focus

on Defendant's deceptive, unfair, and unjust conduct, which was carried out through myriad

misrepresentations and omissions regarding, *inter alia*, the health and safety of Defendant's

Light cigarettes, and the truth behind Defendant's manufacturing, marketing, and distribution of

its Light cigarettes.[2]

Defendant claims to have made "exact" disclosures to Plaintiffs and other members of the

proposed Classes during the respective Class periods.  Def. Mot. at 14.  But Defendant's

---

[1] Plaintiffs in *Good, et al. v. Philip Morris USA, Inc., et al.*, alleged a claim for violation of Maine's Unfair Trade Practices Act, but are no longer pursuing this cause of action on a class-wide basis.

[2] *Biundo v. Philip Morris USA, Inc., et al.* (Illinois Class—Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act based on Fraudulent, Deceptive, and Misleading Misrepresentations; Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act based on Material Omissions; Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act based on Unfair Business Practices; and Unjust Enrichment); *Corse v. Philip Morris USA, Inc., et al.* (Tennessee Class—Unjust Enrichment); *Domaingue v. Philip Morris USA, Inc., et al.* (New York Class—Deceptive Acts and Practices in Violation of New York State General Business Law; and False and Misleading Advertising in Violation of New York State General Business Law); *Good, et al. v. Philip Morris USA, Inc., et al.* (Maine Class—Unjust Enrichment); *Haubrich v. Philip Morris USA, Inc.* (Pennsylvania Class—Unjust Enrichment); *Mirick v. Philip Morris USA, Inc., et al.* (Mississippi Class—Unjust Enrichment); *Mulford v. Altria Group, Inc., et al.* (New Mexico Class—Violation of the New Mexico Unfair Practices Act; and Unjust Enrichment); *Parsons v. Philip Morris USA, Inc., et al.* (D.C. Class— Violations of the District of Columbia Consumer Protection and Procedures Act; and Unjust Enrichment); *Slater v. Philip Morris USA, Inc., et al.* (D.C. Class—Violations of the District of Columbia Consumer Protection and Procedures Act; and Unjust Enrichment); *Tang v. Philip Morris USA, Inc.* (New York Class—Violation of New York General Business Law §§ 349 and 350; and Unjust Enrichment); *Tyrer v. Philip Morris USA, Inc., et al.* (California Class—Violation of Cal. Bus. & Prof. Code § 17200 *et seq.* with respect to: (1) the unlawful prong of the Unfair Competition Act, (2) the unfair prong of the Unfair Competition Act, and (3) the fraudulent prong of the Unfair Competition Act; Violation of Cal. Bus. & Prof. Code § 17500 *et seq.*; and Violation of Cal. Civil Code § 1750 *et seq.*); *Williams v. Philip Morris USA, Inc., et al.* (Arkansas Class—Violations of the Arkansas Deceptive Trade Practices Act; and Unjust Enrichment); *Wyatt v. Philip Morris USA, Inc., et al.* (Wisconsin Class—Fraudulent Representations and Deceptive Trade Practices in Violation of Wis. Stats. § 100.18(1); Unfair Methods of Competition and Trade Practices in Business in Violation of Wis. Stats. § 100.20(1); Punitive Damages under Wis. Stats. § 895.043; and Unjust Enrichment).

3

disclosures were far from exact, as they excluded material information, and can best be characterized as "waffling" or "intentionally vague" on crucial issues regarding the purported health and safety benefits of Defendant's Light cigarettes.  This becomes clear when one looks to the following language that was included in Defendant's low tar/lights onserts:

> There is no such thing as a safe cigarette, including this one.

> The terms "Ultra Light," "Light," "Medium" and "Mild" are used as descriptors of strength of taste and flavor. These terms also serve as a relative indication of the average tar and nicotine yield as measured by a standard government test method.

> The tar and nicotine yield numbers are not meant to communicate the amount of tar and nicotine actually inhaled by any smoker, as individuals do not smoke like the machine used in the government test method. The amount of tar and nicotine you inhale will be higher than the stated tar and nicotine yield numbers if, for example, you block ventilation holes, inhale more deeply, take more puffs or smoke more cigarettes.

> Similarly, if you smoke brands with descriptors such as "Ultra Light", "Light," "Medium," or "Mild," *you may not* inhale less tar and nicotine than you would from other brands. It depends on how you smoke.

> *You should not assume* that cigarette brands using descriptors like "Ultra Light," "Light," "Medium" or "Mild" are less harmful than full flavor cigarette brands or that smoking such cigarette brands will help you quit smoking.

> If you are concerned about the health effects of smoking, you should quit.

Def. Facts at ¶13 (emphasis added).

Defendant could have stated in its low tar/lights onserts that its Light cigarettes were not safer than its regular cigarettes; it did not, despite its long-standing knowledge of this fact. Plaintiffs' Statement of Additional Facts (hereinafter "Plaintiffs' SAF") at ¶129.  Defendant could have stated in its low tar/lights onserts that consumers would not inhale less tar and nicotine from its Light cigarettes than from its regular cigarettes; it did not, despite its knowledge of this fact.  Plaintiffs' SAF at ¶4.[3]  Defendant could have stated in its low tar/lights onserts that

---

[3] All citations to Plaintiffs' Statement of Additional Facts that reference one of Defendant's facts is intended to refer to Plaintiffs' response to said facts.

it had intentionally designed its Light cigarettes to register artificially low levels of tar and nicotine when tested by the FTC method; it did not, even though at least one of its competitors did.  Plaintiffs' SAF at ¶¶4, 119–21 (Advance's onserts stated: "By adding filters and putting tiny ventilation holes in the filters, cigarette makers developed many brands which tested as having reduced tar and nicotine, even though the tobacco itself was relatively unchanged."), 139. Defendant could have fully and expressly explained the phenomenon known as "compensation" in its low tar/lights onserts, and what compensation meant; it did not, despite having full and detailed knowledge of compensation for many years, and despite the fact that at least one of its competitors did so.  Plaintiffs' SAF at ¶¶122–23 (███████████████████████████ ████████████████████████████████████████████████████████ ████████████), 141.  Defendant could have disclosed in its low tar/lights onserts that it added certain chemicals and additives to its Light cigarettes, thereby making them more mutagenic and harmful to smoke than its regular cigarettes; but, again, Defendant did not, despite having acute knowledge of these facts.  Plaintiffs' SAF at ¶¶146–149 (Defendant's Light cigarettes "are, as designed, more mutagenic than" its regular cigarettes).

A genuine issue of material fact indeed arises when evaluating the statements made in (and those omitted from) Defendant's low tar/lights onserts—none of which is full, complete, or the entire truth of the matter concerning Defendant's Light cigarettes being sold to consumers—and whether they were deceptive, unfair, or unjust.  "An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 866 (Ill. App. Ct. 1997).  "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be expected to rely in making a decision, whether to purchase the product." *Id.* "A

genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." *Burdzel v. Sobus*, 2000 ME 84, ¶6, 750 A.2d 573, 575.  "[I]n a motion for summary judgment a genuine issue of material fact is obviously present where one party testifies to one account of the matter in interest and the other party swears otherwise." *Dew v. Tchula Grain Co.*, 812 So. 2d 1014, 1019 (Miss. App. Ct. 2001).

Much like the plaintiff in *Zwiercan v. Gen. Motors Corp.*, No. 3235, 2002 WL 31053838, at *1 (Pa. Com. Pl. Sept. 11, 2002), Plaintiffs here have "alleged facts that, if true, establish that Defendant knew of the alleged defect and that knowledge of such a defect would have been material to the Plaintiff[s'] decision to purchase [Light cigarettes]."  Thus, it would be "disingenuous for the Defendant to argue that knowledge of" certain matters pertaining to one's health and the omission of the facts alleged herein by Defendant "would not be material to a consumer." *Id.*

A plain reading of what the low tar/lights onserts say—and do not say—illustrates the pervasiveness and depth of Defendant's deception, fraud, and unjust enrichment.  Furthermore, the unrelenting deceptive and fraudulent conduct engaged in by Defendant prior to December 1, 2002, amounted to an impenetrable message embedded into the minds of its victims, whereby its practice of "saying less" at a later point in time had no effect on the unstoppable inertia of its past conduct.  Contrary to Defendant's representations, one of its former brand managers, who later became the CEO of Philip Morris, admitted that the "Lights" descriptor was never intended to refer to taste; rather, "Lights" was, from the very beginning and for more than thirty (30) years, a means of conveying the message to consumers that Defendant's Light cigarettes had "lower tar and nicotine" than its regular cigarettes.  Plaintiffs' SAF at ¶6; *DOJ* at 514 (¶ 2403).

6

Defendant fails to come even close to the threshold of establishing that no genuine issue of material fact exists, which would then require Plaintiffs to "establish the presence of a trialworthy issue."  Def. Mot. at 12 (citing *Triangle Trading Co. v. Robroy Indus.*, 200 F.3d 1, 2 (1st Cir. 1999).  Trial-worthy issues do exist, in any event, as illustrated by the evasive language contained in Defendant's low tar/lights onserts and the indisputable information contained in Plaintiffs' Statement of Additional Facts in opposition to Defendant's Motion.  Additionally, at least one trier of fact—Judge Kessler—has already found that Defendant engaged in a decades-long campaign of deceptive conduct, irrespective of Defendant's onserts.  *See, e.g.*, Plaintiffs' SAF at ¶150 ("James Morgan, former President and CEO of Philip Morris, conceded in 2002 that, in his opinion, lower tar cigarettes are not any safer than higher tar cigarettes.").  Thus, there are clearly trial-worthy issues present here—including the presence of a multitude of disputed facts—and any suggestion to the contrary is belied by the facts before the Court.

1. **Defendant's Low Tar/Lights Onserts and the Language Contained Therein Create a Genuine Issue of Material Fact as to Whether Defendant Engaged in Deceptive or Unfair Conduct.**

Contrary to Defendant's assertion, the purported "plethora" of information on its low tar/lights onserts—which were, by Defendant's own admission, only *periodically* included with sales of its Light cigarettes—is deceptive itself.  Def. Mot. at 14.  After December 1, 2002, the date after which Defendant seeks summary judgment in its favor regarding Plaintiffs' claims, Defendant's use of the term "Light" on its Light cigarettes indeed continued to be deceptive and unfair.  As noted above, and explained further below, Defendant omitted a "plethora" (Def. Mot. at 14) of material information from its low tar/lights onserts.  This directly contradicts—and thereby creates a genuine issue of material fact—regarding Defendant's assertion, and reliance

thereon, that it "expressly disclaimed the alleged misrepresentation or disclosed the allegedly concealed information."  Def. Mot. at 15.

Defendant's low tar/lights onserts omit crucial and material information.  For example, Defendant's low tar/lights onserts make no mention of, *inter alia*, the following facts, as alleged in Plaintiffs' various Complaints:[4]

1) that Defendant intentionally designed its Light cigarettes in a manner that would cause the results of the Cambridge Filter Method to register artificially low tar and nicotine levels; *see, e.g., Biundo* Compl. at ¶22.a; *Domaingue* Compl. at ¶35; *Good* Compl. at ¶¶22, 32.c; *Haubrich* Compl. at ¶¶15, 16.a; *Mulford* Compl. at ¶¶10, 20, 29.e, 29.f; *Parsons* Compl. at ¶¶ 22, 23.a; *Tang* Compl. at ¶¶16–17, 26.c; *Tyrer* Compl. at ¶¶28, 36; *Williams* Compl. at ¶22.a;

2) Defendant never explained the phenomenon of "compensation" to consumers, even though it has been aware of it for decades and had "superior knowledge" of the phenomenon; *see, e.g., Biundo* Compl. at ¶¶22.d, 31; *Mulford* Compl. at ¶16; *Tyrer* Compl. at ¶55; *Williams* Compl. at ¶¶22.d, 31;

3) Defendant never disclosed that it used additives in its Light cigarettes, such as ammonia, which altered the pH levels of the Light cigarettes and resulted in the delivery of greater tar and nicotine to consumers; *see, e.g., Biundo* Compl. at ¶23.a; *Domaingue* Compl. at ¶¶42–43, 49; *Good* Compl. at ¶32.c; *Haubrich* Compl. at ¶16; *Mulford* Compl. at ¶29.e; *Parsons* Compl. at ¶24; *Tang* Compl. at ¶26.c; *Williams* Compl. at ¶23; *Wyatt* Compl. at ¶¶43–44, 50;

4) Defendant never disclosed that the design of its Light cigarettes results in smoke that is more mutagenic than that of its regular cigarettes; *see, e.g., Biundo* Compl. at ¶24; *Good* Compl. at ¶¶29, 31, 32.d; *Haubrich* Compl. at ¶¶17, 19; *Mulford* Compl. at ¶¶14, 23–24, 28, 29.f; *Parsons* Compl. at ¶¶25, 27; *Tang* Compl. at ¶¶23–25, 26.d; *Williams* Compl. at ¶24;

5) Defendant never disclosed that consumers subconsciously—i.e., without knowledge that they are doing so—adjust their puff volume and frequency, and frequency of smoking, to achieve necessary levels of nicotine; *see, e.g., Biundo* Compl. at ¶30; *Tyrer* Compl. at ¶60; *Williams* Compl. at ¶30;

6) that Defendant has known for decades that consumers believe that Light cigarettes are healthier; *see, e.g., Domaingue* Compl. at ¶69; *Tyrer* Compl. at ¶¶70, 72; *Wyatt* Compl. at ¶70; and

---

[4] Although not every Complaint is cited, Plaintiffs' Complaints all contain allegations that are identical or substantially similar to those listed herein.

8

7)  that Defendant, from the time it began selling Light cigarettes, had intended for the "Light" descriptor to communicate that the cigarette was low in tar, and not lighter in taste; *see, e.g., Domaingue* Compl. at ¶76; *Tyrer* Compl. at ¶77.

There can be no full or express disclosure by way of Defendant's low tar/lights onserts where such material facts have been omitted and concealed from consumers.

In fact, it was not until 2009, nearly seven (7) years after Defendant began its low tar/lights onserts program, and after years of contentious litigation related to the conduct complained of herein, that Defendant began placing a tear tape on its Light cigarettes, and included language on some of its retail advertising signage, stating that "'Lights' does NOT mean safer."  Def. Facts at ¶¶15–16, 38–39.  Neither Defendant, nor its self-proclaimed expert on this issue, Brendan McCormick, have provided any reason as to why Defendant did not include such language on its low tar/lights onserts beginning in 2002, or in any other of its own advertising programs at any time prior to 2009.

"While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, 'sufficient evidence supporting the claimed factual dispute' must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge." *Beach v. Ingram & Assocs., Inc.*, 927 F. Supp. 255, 258 (M.D. Tenn. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  "'Where there is any significant doubt whether there is a material triable issue of fact or where the material issue of fact is 'arguable' summary judgment must be denied.'" *St. Paul Indus. Park, Inc. v. New York State Urban Dev. Corp.*, 63 A.D.2d 822, 822 (N.Y.A.D. 1978) (quoting *Strychalski v. Mekus*, 54 A.D.2d 1068, 1069 (N.Y.A.D. 1976)) (citations omitted)).  Such differing versions of the truth are present here, and Plaintiffs respectfully suggest that far more than a significant doubt has been raised as to whether genuine

9

issues of material fact exist, making such issues arguable and warranting the denial of summary judgment.

*Garfinkel v. Bayer Corp.*, 8 A.D.3d 162, 162–63 (N.Y.A.D. 2004), is instructive here:

> There are triable issues of fact as to whether the warning label for defendant Bayer's pharmaceutical product, known as CIPRO, was adequate at the time that CIPRO was prescribed for plaintiff. The evidence showed that Bayer was aware of the potential association between CIPRO use and ruptures of the achilles tendon for at least a year prior to October 1994, when the drug was prescribed for plaintiff, but did not during that time warn of the potential association. In light of this evidence, a factual issue was raised as to whether Bayer breached its duty to warn of all potential dangers in its prescription drugs of which it knew, or, in the exercise of reasonable care, should have known (*see Martin v. Hacker*, 628 N.E.2d 1308 (N.Y. App. Ct. 1993)).

>          *          *          *

> The record does not permit the conclusion that, had a warning respecting an association between CIPRO use and achilles tendon rupture been given, plaintiff's physician would nonetheless have prescribed the medication or that plaintiff, who evidently owned and consulted her own copy of the Physician's Desk Reference, would have agreed to take it.

Much like in *Garfinkel*, triable issues of fact exist here with respect to the language contained in Defendant's low tar/lights onserts and the allegations of Plaintiffs' Complaints. Defendant intentionally designed its Light cigarettes to register misleading data when tested by the FTC Method, possessed a far superior knowledge of the phenomenon of compensation, and marketed its Light cigarettes as being less harmful than its regular cigarettes (and in fact healthier) when they were in fact more mutagenic than regular cigarettes, but neither warned nor advised consumers of these facts. Plaintiffs' SAF at ¶¶4, 129–30, 138, 146–49. Thus, the record before the Court does not permit the conclusion that had Plaintiffs and consumers been apprised of these material facts, that Plaintiffs and consumers would have still purchased Defendant's Light cigarettes. A genuine issue of material fact therefore exists as to whether Plaintiffs and consumers were victims of Defendant's deceptive and unfair conduct.

*Michael v. Warner/Chilcott*, 579 P.2d 183, 187 (N.M. App. Ct. 1978), further supports this position and, logically, the denial of summary judgment here:

> [W]e hold that an "adequate warning" in this case means a notice placed on a label of "Sinus Congestion Tablets," reasonably readable, that apprises a consumer exercising reasonable care under the circumstances, of the existence and seriousness of the danger, sufficient to enable the consumer to protect himself against it, and sufficient to accomplish the purpose intended by the seller in the light of present conditions.

> The "warning" given by defendants states that "This medication may damage the kidneys." It does not apprise the consumer of the fact that it will damage the kidneys. It states "when used in large amounts." The term "large" is vague and indefinite to a consumer. It does not state that "Phenacetin" is a dangerous drug. The lettering is so tiny it might require a consumer to read the words with a magnifying glass.

> As a result, we conclude that a genuine issue of material fact exists on the adequacy of the warning.

Similarly, here, Defendant failed to place adequate warnings or disclosures on its Light cigarettes packs or its low tar/lights onserts. Much like the *Warner/Chilcott* defendants, Defendant's low tar/lights onserts stated that "you *may* not inhale less tar and nicotine", and that "[y]ou *should not assume*" that Light cigarettes are less harmful than regular cigarettes. Def. Facts at ¶13 (emphasis added). Further, Defendant's low tar/lights onserts did not state that that its Light cigarettes were *not* healthier than its regular cigarettes, and Defendant's brand descriptors and communications to consumers suggested that its Light cigarettes were indeed healthier. Plaintiffs' SAF at ¶¶130, 153 ("Defendants' internal marketing documents establish that Defendants have known for decades that even though consumers prefer the taste of regular cigarettes to low tar cigarettes, they are willing to forgo them and smoke low tar cigarettes, which are less enjoyable and have a less appealing taste, because they believe low tar cigarettes are better for their health."). Defendant's own internal documents illustrate that promoting its Light cigarettes as being healthier than regular cigarettes has been its goal all along, all in an

11

effort to "trick" the public at large.  Plaintiffs' SAF at ¶¶139–40.  Again, a genuine issue of material fact exists here as to the adequacy of Defendant's representations and omissions.

> *Paduano v. American Honda Motor Co., Inc.*, demands a similar result:

> A UCL cause of action may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive . . . .  A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.  Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides . . . .

169 Cal. App. 4th 1453, 1469 (2009) (internal citations omitted).  The court found that the defendant's representations, much like Defendant's representations at issue herein, were ambiguous, and thus created a genuine issue of material fact.  *Id.* at 1469, 1470–71.

### 2. Defendant's Low Tar/Lights Onserts and the Language Contained Therein Create a Genuine Issue of Material Fact as to Whether Defendant Has Been Unjustly Enriched.

As Defendant notes, Plaintiffs in all states, except California, assert a claim for unjust enrichment against Defendant.  Def. Mem. at 13.  "The theory of unjust enrichment is founded on the principle that a party receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so."  *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. App. Ct. 1995) (citations omitted).  "[T]o escape summary judgment . . . there must be genuine issues of material fact as to whether 1) [plaintiff] conferred a benefit on [defendant]; 2) [defendant] appreciated the benefit; and 3) whether it would be inequitable for [defendant] to retain the benefit without paying for it."  *Id.* (citations omitted); *see also Platz Assocs. v. Finley*, 2009 ME 55, ¶27, 973 A.2d 743, 750 (a claim for unjust enrichment requires a showing that:  "(1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of

12

the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value").

Defendant, by way of its motion, does not dispute:  (1) that Plaintiffs conferred a benefit on Defendant by purchasing its Light cigarettes; or (2) that Defendant has appreciated or has knowledge of the benefit.  Rather, Defendant merely claims that Plaintiffs must show that Defendant "committed an illegal act or breached a legal duty."  Def. Mem. at 13.  Defendant's own authorities, however, only require that there be unjust conduct and that restitution is the appropriate remedy.  *Id.* (citing Restatement of Restitution § 1 (1937); 66 Am. Jur. 2d *Restitution and Implied Contracts* § 12 (2000)).  Contrary to Defendant's position, in most jurisdictions, "the doctrine of unjust enrichment does not require wrongful conduct by the one enriched, only that 'the enrichment be unjust'. Since the plaintiff maintains that Chase retained proceeds to which it was not entitled, a triable issue of fact exists as to whether it was unjustly enriched." *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 179 A.D.2d 592, 593 (N.Y.A.D. 1992) (citing *Simonds v. Simonds*, 380 N.E.2d 189 (N.Y. 1978), and quoting *McGrath v. Hilding,* 363 N.E.2d 328 (N.Y. 1977)); *see also June Roberts Agency v. Venture Props.*, 676 A.2d 46, 49 n.1 (Me. 1996) (recognizing existence of contract precludes recovery on unjust enrichment theory, but holding party "not precluded from pleading both theories because factfinder may find that no contract exists and may still award damages on the theory of unjust enrichment"); *Platz*, 2009 ME 55, ¶33, 973 A.2d at 751 (holding that an issue of material fact remained as to the plaintiff's unjust enrichment claim); *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 610 A.2d 747 (Me. 1992) (unjust enrichment was the only claim brought against defendant); *Abrams v. Toyota Motor Credit Corp.*, No. 071049, 2001 WL 1807357, at *11 (Pa. Com. Pl. Dec. 5, 2001) ("Unjust enrichment is a quasi-contractual doctrine based in equity which requires a plaintiff to

13

establish the following:  (1) benefits conferred on defendants by plaintiffs; (2) appreciation of
such benefits by defendants; and (3) acceptance and retention of such benefits under such
circumstances that it would be inequitable for defendants to retain the benefit without payment of
value.") (citing *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616, 622 (Pa. Super. Ct. 1999));
*Graduate Cardiology Consultants, P.C. v. Vivra, Inc.*, No. 080518, 2000 WL 33711050, at *6
(Pa. Com. Pl. Oct. 20, 2000) ("proximate causation is not an element of an unjust enrichment
claim under Pennsylvania law") (citations omitted); *Prism Marketing Co., Inc. v. Casino Factory
Shoppes, LLC*, No. 08cv163, 2009 WL 4348952, at *1 (N.D. Miss. Nov. 30, 2009) (holding that
the plaintiff's unjust enrichment claims survived the defendant's motion for summary judgment);
*Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005) ("Unjust enrichment only applies to
situations where there is no legal contract and "the person sought to be charged is in possession
of money or property which in good conscience and justice he should not retain but should
deliver to another.") (citations omitted); *Santullo v. Pfizer, Inc.*, No. D-0101-CV-200301377,
2005 WL 4255513, at *5 (D.N.M. Dec. 9, 2005) ("In order to prevail in a cause of action for
unjust enrichment, a party must show that (a) another has knowingly benefitted at party's
expense and (b) allowing the other party to retain the benefit would be unjust."); *Peart v. Dist. of
Columbia Housing Auth.*, 972 A.2d 810, 813–14 (D.C. 2009) ("Unjust enrichment occurs when:
(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3)
under the circumstances, the defendant's retention of the benefit is unjust.") (citing *News World
Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)); *Watts v. Watts*, 405 N.W.2d
303 (Wis. 1987) (analyzing unjust enrichment claim as an independent cause of action); *DePriest
v. AstraZeneca Pharm., L.P.*, No. 08-1257, 2009 WL 3681868, at *1 (Ark. Nov. 5, 2009)
(analyzing the plaintiff's unjust enrichment claim as an independent cause of action); *First Nat'l*

14

*Bank of DeWitt v. Cruthis*, 203 S.W.3d 88 (Ark. 2005) (recognizing that unjust enrichment may

be brought as an action at law).

Here, Defendant has clearly and unequivocally engaged in unjust conduct.  *See, e.g.,*

Plaintiffs' SAF at ¶¶ 4, 6, 119–23, 129–30, 138–40, 146–49, 150, 153, 165 (Defendant engaged

in the following conduct:  "(1) falsely denying the adverse health effects of smoking; . . . (3)

falsely denying that they manipulated cigarette design and composition so as to assure nicotine

delivery levels that create and sustain addiction; (4) falsely representing that light and low tar

cigarettes deliver less nicotine and tar and therefore present fewer health risks than full flavor

cigarettes; . . . (6) falsely denying that secondhand smoking causes disease; and (7) suppressing

documents, information, and research to prevent the public from learning the truth about these

subjects and to avoid or limit liability in litigation.").  Thus, a genuine issue of material fact

exists as to whether Defendant's conduct was unjust.  Summary judgment would therefore be

improper at this stage of the litigation and Defendant's motion should be denied.

### 3.  The Insignificant Reach of Defendant's Low Tar/Lights Onserts Creates a Genuine Issue of Material Fact as to Whether Consumers Ever Saw or Read the Low Tar/Lights Onserts.

Even assuming that the language contained in Defendant's low tar/lights onserts was

sufficient (it was not, and was in fact woefully inadequate in terms of fully and expressly

informing consumers of all material facts that a reasonable consumer could be expected to

consider before purchasing Defendant's Light cigarettes), said onserts were included in an

extremely low percentage of the total packs of Light cigarettes distributed by Defendant during

the relevant time period, from 2002 to 2008.  Just 2.4% of all of Defendant's Light cigarettes

distributed for sale during this period contained these onserts.  *See* Affidavit of Jeffrey E. Harris,

M.D. Ph.D. at ¶17 [D.E. #186 at Exhibit I].  Additionally, even on a year-by-year, state-by-state

basis, this percentage is, on average, about the same, but in most cases even lower (as low as .88% of all packs of Light cigarettes) for the various MDL jurisdictions at issue in this litigation. Plaintiffs' SAF at ¶58, citing Affidavit of Jeffrey E. Harris, M.D. Ph.D. ("Harris Aff."), at ¶5, Table 1, which is attached hereto as Exhibit A.  Thus, the reach of Defendant's low tar/lights onserts was so infinitesimally small compared to the total number of Light cigarettes distributed for sale by Defendant that a genuine issue of material fact exists for the finder of fact as to whether Defendant's efforts were sufficient for purposes of negating the allegations set forth in Plaintiffs' Complaints.

This is illustrated further through the means by which Defendant implemented its low tar/lights onserts distribution program.  The number of low tar/lights onserts contained in packs of its Light cigarettes ████████████████████████████████████████████ ██████████████████████████████████████████████. Plaintiffs' SAF at ¶51. ██████████████████████████████████████████████████ ████████████████. *Id.*; *see also id.* at ¶53.

Defendant, of course, has its own estimates of the "reach" its low tar/lights onserts program was achieving—including its radio and television efforts—but has no empirical support whatsoever for these projected figures.  Nor has Defendant produced analyses in support of its Motion as to whether the messages contained in its efforts were actually read and understood by consumers.  Plaintiffs' SAF at ¶¶59–66, 70.  Nor were these efforts substantial, as Defendant's television advertisements were minimal and it ceased airing them in 2004.  Plaintiffs' SAF at ¶¶68–69.

In fact, what little non-expert research Defendant conducted suggests the opposite:  that not only were consumers not reading the low tar/lights onserts, but most were unaware that the low

16

tar/lights onserts even existed, much less the television advertisements Defendant touts.
Plaintiffs' SAF at ¶¶82–83 (39% awareness of low tar/lights onserts), 84–86 (Defendant's low
tar/lights onserts were "not relevant or a stand out statement"), 96–100 (53% had never seen the
low tar lights onserts before, 70% had never seen Defendant's television advertisements, and
49% had seen neither).

Additionally, as Defendant's own studies indicated, ███████████████████████

██████████████████████████████████████████████████████████████

███████████, strongly suggests that their effectiveness in conveying information about Light

cigarettes is questionable, at best.  Plaintiffs' SAF at ¶¶101–02 ████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████) (emphasis in original).  An internal PM

email exchange suggests ████████████████████████████████████

██████████████████████████████████████████████████

███████. Plaintiffs' SAF at ¶103 (████████████████████████████).

Other studies yielded similar results.  Plaintiffs' SAF at ¶¶105 ("Some said they read the outsert

on the first pack purchased, but felt no need to read outserts on other packs purchased, just

assuming they were all the same."), 106 ████████████████████████████

██████████████████████████████████████████████████████████████

███████████████) (emphasis in original).

Additionally, the figures relied up by Defendant, and taken from the McCormick Affidavit,

merely indicate the number of cigarette packs containing the low tar/lights onserts that were

*distributed* for sale; these numbers do not necessarily represent the number of packs actually

making it into consumers' hands, as the distributions might not have made it to retail outlets for anywhere from six (6) to ten (10) weeks from the date of distribution, and because the cigarettes in inventory must remain fresh.  Plaintiffs' SAF at ¶¶73–76.  Moreover, for certain years, such as 2003, a substantial number of Defendant's Light cigarette brands (130 out of approximately 194 unique brands) contained no low tar/lights onserts.  Plaintiffs' SAF at ¶¶12, 54–56.  Thus, those consumers who were not purchasers of Defendant's best selling Light cigarettes never even had the opportunity to view its low tar/lights onserts.  *Id.*

What Defendant fails to mention, for obvious reasons, is that its low tar/lights onserts were just one of many onserts that it included on its cigarettes.  Others included topics such as

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████. Plaintiffs' SAF at ¶¶113–16. Accordingly, even among the non-branded/marketing onserts, the low tar/lights onserts were just one of many messages that Defendant attempted to convey using onserts.[5]  When combined with the many branded/marketing messages Defendant also sought to convey using onserts, it is likely that the low tar/lights message lost some—if not most—of its efficacy, even among those who purchased one of the packs containing such onserts.  Plaintiffs' SAF at ¶¶101–03, 105–06.  In fact, █████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████.

Plaintiffs' SAF at ¶125.

---

[5] Additionally, Defendant did not want the total distribution of packs with all onserts of any description to be included on "greater than 25% of" the packages it distributed in a given year.  Plaintiffs' SAF at ¶117.

18

In sum, genuine issues of material fact exist as to whether Defendant's insufficient and incomplete disclosures contained in its low tar/lights onserts ever reached or were understood by consumers, and as to the efficacy of Defendant's low tar/lights onserts.  Defendant's Motion should be denied.

### 4.   Defendant's Authorities Are Distinguishable and Inapposite to the Facts and Circumstances Present Here.

Defendant relies on myriad authorities in support of its Motion.  Def. Mot. at 15–19.  These authorities have a central theme running throughout their core—full and express disclosure of material facts.[6]  *See, e.g., In re AIG Advisor Group Secs. Litig.*, 309 Fed. Appx. 495, 498 (2d Cir. 2009)[7] (website disclosures that explicitly detailed plaintiffs' alleged "conflict of interest" rendered their claims for misrepresentations or omissions inactionable); *Standard Life & Accident Ins. Co. v. Dewberry & Davis, LLC*, 210 Fed. Appx. 330, 333, 335 (4th Cir. 2006) (plaintiff's claims were based upon defendant's non-disclosure of information that "was quite plainly disclosed" to the plaintiff); *Rodi v. S. New England Sch. of Law*, 532 F.3d 11, 17–18 (1st Cir. 2008) (under *Massachusetts* law, court found that where defendant's website expressly

---

[6] Most of the cases relied upon by Defendant were decided on motions to dismiss or the like, *not* summary judgment, and are thus further inapplicable here.  *See, e.g., In re AIG Advisor Group Secs. Litig.*, 309 Fed. Appx. 495, 497 (2d Cir. 2009); *Standard Life & Accident Ins. Co. v. Dewberry & Davis, LLC*, 210 Fed. Appx. 330, 333, 330 (4th Cir. 2006); *City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651, 664–65 (6th Cir. 2005); *Gurevitch v. Philip Morris USA*, 2009 WL 3848422, at *1 (Cal. Sup. Ct. 2009); *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 957 (N.D. Cal. 2007); *Speyer v. Avis Rent A Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005); *Evans v. Chase Manhattan Bank USA*, No. 05-3968, 2006 WL 213740, at *1 (N.D. Cal. Jan. 27, 2006); *McCoy v. Manhattan Bank USA*, 559 F.3d 963, 964 (9th Cir. 2009); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 866 (Ill. App. Ct. 1997); *Zuckerman v. BMG Direct Mktg.*, 290 A.D. 330, 330 (N.Y. App. Ct. 2002); *Ballas v. Virgin Media, Inc.*, No. 600014-2007, 2007 WL 4532509, at *2 (N.Y. Supr. Ct. Dec. 6, 2007); *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 796 (W.D. Wis. 2006); *Hakki v. Zima Co.*, No. 2006 WL 852126, at *1 (D.C. Super. Mar. 28, 2006); *In re Estate of Roark*, 829 S.W.2d 688, 695 (Tenn. App. Ct. 1992).

[7] All of the authorities cited in this section were cited by Defendant in its memorandum.  The parentheticals and descriptions, however, come from Plaintiffs and fully explain the facts and/or holdings of each authority.

disclosed that it made no representation that it would be approved as an accredited law school, and where this determination was made by a third party and was out of defendant's control, plaintiff could not have reasonably relied on statements to the contrary that were nothing more than "lukewarm endorsement[s]"); *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 937–39 (N.D. Ill. 2008) (the product's packaging clearly stated that its battery had limited recharge cycles and may need to be replaced, dispelling any "serious contention that this information was hidden from buyers" and barring plaintiff's claim that defendants failed to disclose "the obvious"—that future out-of-pocket expenses may be incurred by consumers); *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 966 (N.D. Cal. 2007) (finding that defendants made express disclosures in their contracts with respect to charging late and over-limit fees); *Speyer v. Avis Rent A Car Sys., Inc.*, 415 F. Supp. 2d 1090 (S.D. Cal. 2005) (court held that defendant's practices were not unfair where consumers are informed of the very fees and total costs they complain of as being unfair at the time they reserve one of defendant's rental vehicles); *Evans v. Chase Manhattan Bank USA*, No. 05-3968, 2006 WL 213740, at *5–6 (N.D. Cal. Jan. 27, 2006), *declined to follow by McCoy v. Chase Manhattan Bank, USA*, 559 F.3d 963, (9th Cir. 2009) (defendant's practices not found to be deceptive where they were "acting under the fully-disclosed terms of the contract" at issue, and further noting that "Chase, from the beginning of the contractual relationship, notifies cardmembers of the actions it may take"); *McCoy v. Manhattan Bank USA*, 559 F.3d 963, 971 (9th Cir. 2009) (plaintiff failed to state a claim for consumer fraud where "Chase openly and expressly notifies cardholders of the actions it reserves the right to take"); *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 484 (2006) ("In light of Staples' clear disclosure of the actual price it would charge its customers . . . the trial court properly concluded any ambiguity in the[ir] order form . . . was not misleading or

20

deceptive."); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 867 (Ill. App. Ct. 1997)

(plaintiffs' claims of concealment of material facts regarding an unintended acceleration defect

in defendant's vehicle were dismissed for purchases made after defendant's press release was

issued, because the press release identified the defect and "the excessive number of unintended

acceleration incidents"); *Zuckerman v. BMG Direct Mktg.*, 290 A.D. 330, 330–31 (N.Y. App. Ct.

2002) (claim for deceptive act dismissed where "a disclosure that a specified amount will be

charged for shipping and handling cannot cause a reasonable consumer to believe that such

amount necessarily is equal to or less than the seller's actual shipping and handling costs");

*Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687, 687 (N.Y. App. Ct. 1994) (dismissing

plaintiff's claims of deceptive acts and practices where "the record shows that these practices are

*fully disclosed* prior to [the sale of tickets]") (emphasis in original) (internal quotation omitted);

*Lewis v. Hertz Corp.*, 181 A.D.2d 493, 494 (N.Y. App. Ct. 1992) (same); *Ballas v. Virgin Media,*

*Inc.*, No. 600014-2007, 2007 WL 4532509, at *4–5 (N.Y. Supr. Ct. Dec. 6, 2007) (plaintiff's

claims of deceptive acts and practices dismissed where defendant's allegedly deceptive activity

was "fully disclosed" and "fully revealed" in the booklet provided with its products at the time of

purchase, which "clearly explains the terms"); *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F.

Supp. 2d 791, 805 (W.D. Wis. 2006) (plaintiff's consumer fraud claims dismissed where

defendant's documents "stated explicitly" the very terms that plaintiff alleged were

misrepresented to her); *Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126, at *1 (D.C. Super.

Mar. 28, 2006) (plaintiff's consumer protection act claims dismissed where plaintiff, in an action

regarding alleged marketing of alcoholic beverages to minors, "has not alleged, and cannot

prove, any advertisement that was materially misleading under an objective standard"); *In re*

21

*Estate of Roark*, 829 S.W.2d 688, 695 (Tenn. App. Ct. 1992) (plaintiffs' claims were dismissed where the terms of the sale of property were fully disclosed to them).[8]

As noted above, though, Defendant omitted a "plethora" of material information from consumers, and the statements that it purports to rely on are not the full truth of the matter, and are anything but "plain language."  Defendant's conduct here, and the language contained in its low tar/lights onserts, does not amount to anything even resembling a full and express disclosure of material facts.

For instance, in *Gurevitch v. Philip Morris USA*, 2009 WL 3848422, at *1 (Cal. Sup. Ct. 2009), relied on by Defendant, the defendant's disclosures included express statements that "these cigarettes are not fire safe," "[d]o not handle or dispose of cigarettes . . . with any less care . . .", and "anything that burns . . . can cause a fire if handled carelessly."  There were no omissions, much less anything misleading, that would cause a consumer to believe that these cigarettes posed no danger of injury or property damage once they were lit.

Oddly enough, some of the authorities relied on by Defendant involved judgments rendered after a full trial on the merits, and have no application in the summary judgment context; in fact, they support the denial of Defendant's Motion.  For example, in *Thomas v. Olson*, 220 S.W.3d 627, 450 (Ark. 2005), a case involving disclosures in the purchase of a home, the court found that "there [was] substantial evidence to support the jury's verdict.  The jury could have believed that by disclosing that the home had experienced foundation problems that caused defects, the Olsons were not liable under any of the five claims against them."  The glaring inference from this case is that genuine issues of material fact indeed existed there, and those facts were

---

[8] And in another case, *Hernandez v. Vickery Chevrolet-Oldsmobile Co.*, 652 So. 2d 179, 183 (Miss. 1995), the plaintiff's claim under Mississippi's Consumer Protection Act was based on the allegation that defendant's vehicle was represented as new when it was in fact used.  The issue of whether the vehicle was new or used, however, was not a question of fact, but rather a question of law. *Id.*  Thus, this case has no bearing here and fails to support Defendant's Motion.

weighed by a jury in reaching its verdict.  The circumstances here demand a similar result.  *See also MacCormack v. Brower*, 2008 ME 86, ¶5, 948 A.2d 1259, 1261 (after a *bench trial*, the court held that plaintiff had no claim under Unfair Trade Practices Act); *Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 953 P.2d 722, 725, 733 (N.M. App. 1997) (after the trial court *denied* defendant's motion for summary judgment, and after a *jury trial* on the merits, the appellate court found that plaintiff's false advertising claims were barred because she failed to present any evidence of false advertisement, and testified that she was satisfied with defendant's services).

In *Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 378–79 (E.D. Pa. 1998), the plaintiff's claims were dismissed because the literal terms of the insurance policy she purchased from an insurance agent were disclosed by the agent, and she knew the policy would be insufficient to cover her needs.  Additionally (and what makes this cases entirely inapplicable here), is the court's holding that the insurance agent had no duty to speak about certain omissions that were alleged by the plaintiff, and that Pennsylvania precludes "liability for omissions by insurers, even when a special duty exists."  *Id.* at 383.  No such liability for omissions is precluded here, however.

*City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005), also cited by Defendant, further supports the denial of its Motion.  The court there had before it claims brought under the Securities Exchange Act of 1934 and SEC Rule 10b-5, which involve a question of whether "the information, had it been presented accurately, have significantly altered the total mix of information made available." *Id.* at 668–69 (internal quotations omitted).  Additionally, said securities laws "require an actor to provide complete and non-misleading information with respect to the subjects on which he undertakes to speak," and

23

"[t]he context of the statements is often telling." *Id.* at 670, 672 (internal quotations omitted).

Under these standards—albeit inapplicable here, but which Defendant has invited the Court to

review with respect to its Motion—Defendants have clearly failed to provide complete and non-

misleading information to consumers regarding its Light cigarettes.

### 5. Defendant's Arguments in Support of its Motion Have Already Been Rejected by Another Court Addressing the Very Same Issue.

This is not Defendant's first attempt at obtaining summary judgment based on its low

tar/lights onserts.  In *Schwab v. Philip Morris USA, Inc.*, the court squarely dismissed the very

same arguments Defendant makes here:

> [P]laintiffs have provided ample support for their allegations of three decades of affirmative misrepresentations and concealment.  Whether the disclosures made after defendant's lengthy marketing campaign are sufficient to make clear the "truth" about "light" cigarettes presents several matters for jury resolution.
>
> For example, reasonable jurors might differ as to whether the number of copies of the pamphlets and onserts were sufficient to reach a critical mass of smokers, thus "clearing the air" of any lingering misrepresentations.  No evidence has been presented of the geographic breadth of distribution or the reaction of any smoker to the onsert.  Similarly, PM USA has provided no evidence of the readership of the newspapers in which its pamphlets were included-were they likely to be seen, or read, by smokers of "light" cigarettes[.]  A rational juror could also believe, as James Morgan, Brand Manager of Marlboro (including Marlboro Lights) from 1969 to 1972, has testified, that:
>
>> if you took the advertising, the point of sale, whatever may have been said on the racks or the cartons, the whole panoply of what the consumer saw about a cigarette brand would be more influential in that consumer's perception of the tar of that brand . . . than the fact that they may or may not have sat down and looked at a newspaper that had the latest Federal Trade Commission report.

449 F. Supp. 2d 992, 1086–87 (E.D.N.Y. 2006) (internal citations omitted), *rev'd on other*

*grounds*, *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, (2d Cir. 2008).  The *Schwab* court

further rejected Defendant's arguments with respect to the purported disclosures in

advertisements and on its website, which are strikingly similar in the context and form in which

24

they have been presented in connection with Defendant's Motion here as such disclosures relate to Defendant's low tar/lights onserts:

> By contrast, the disclosures PM USA provided through newspapers and on its website state:
>
>> A *smoker should not assume* that brand descriptors such as "light" or "ultra light" *indicate with precision* either the actual amount of tar and nicotine inhaled from any particular cigarette, or the relative amount as compared to competing cigarette brands. *Some researchers report* that smokers of "light" cigarettes inhale as much tar and nicotine as from full-flavor brands.
>
> These warnings are somewhat equivocal. Reasonable jurors could disagree about their import.

*Id.* at 1088 (internal citations omitted) (emphasis in original). As a result, the court held that "it would be improper to remove these substantial questions of fact about the scope or time limits of the class from jury consideration." *Id.* In conclusion, the court denied Defendant's motion for summary judgment, holding that "PM USA . . . will be free to put before the jury evidence of its disclosures in support of its argument that no scheme to defraud existed after November 2002 and that plaintiffs could not have reasonably relied on any implicit health claim in the 'lights' descriptor after that date." *Id.* at 1089.

### Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for summary judgment.

Dated:  March 31, 2010                              Respectfully submitted,


                                                      */s/ Samuel W. Lanham, Jr.*
                                                    Samuel W. Lanham, Jr.
                                                    **LANHAM BLACKWELL, P.A.**
                                                    470 Evergreen Woods
                                                    Bangor, ME 04401

25

Ben Barnow
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602

Don Barrett
**BARRETT LAW OFFICE, P.A.**
404 Court Square
Lexington, MS 39095-0987

Kent Caperton
**BEN BARNES GROUP**
1215 19th Street, NW
Washington, DC 20036

Marian S. Rosen
**MARIAN S. ROSEN**
  **& ASSOCIATES**
5065 Westheimer, Suite 840
Houston, TX 77056

Howard Rubinstein
**LAW OFFICE OF**
**HOWARD WEIL RUBINSTEIN**
P.O. Box 4869
Aspen, CO 81611

Walter Umphrey
**PROVOST UMPHREY**
  **LAW FIRM, LLP**
P.O. Box 4905
Beaumont, TX 77704-4905

Joe R. Whatley, Jr.
**WHATLEY, DRAKE & KALLAS**
1540 Broadway, 37th Floor
New York, NY 1036

John Eddie Williams
**WILLIAMS, KHERKER, HART,**
  **BOUNDAS, LLP**
8441 Gulf Freeway, Suite 600
Houston, TX 77017

*Plaintiffs' Executive Committee*

26

## CERTIFICATE OF SERVICE

Service of Plaintiffs' Response in Opposition to Philip Morris USA Inc's Motion for Summary Judgment on Plaintiffs' Claims for Purchases After December 1, 2002 has been made through the Court's ECF system on all those registered to receive ECF service, and on all others not registered but listed on the Court's Manual Notice List by regular mail.

Date:   March 31, 2010

_/s/ Samuel W. Lanham, Jr._

Samuel W. Lanham, Jr.
**LANHAM BLACKWELL, P.A.**
470 Evergreen Woods
Bangor, ME 04401