UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| IN RE:  LIGHTS CIGARETTES MARKETING | ) | MDL Docket No. 1:09-MD-2068 |
| SALES PRACTICES LITIGATION | ) | ALL CASES |
|  | ) |  |

**PHILIP MORRIS USA INC.'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS'
<u>CLAIMS FOR PURCHASES AFTER DECEMBER 1, 2002</u>**

## INTRODUCTION

In November 2002, and continuing each year thereafter, PM USA expressly disclaimed the representation that forms the basis of the claims here by stating: "[y]ou should not assume that cigarette brands using descriptors like 'Ultra Lights,' 'Lights,' 'Medium,' or 'Mild' are less harmful than other cigarettes." In 2002 alone, PM USA included this disclaimer in an "onsert" attached to more than 130 million light cigarette packages manufactured over a one to two week period -- approximately 5.6 onserts for every adult smoker of PM USA's cigarettes.[1] Through 2008, PM USA placed onserts on more than *one billion* packs. In addition, PM USA provided similar disclaimers in 16.7 million newspapers inserts in November 2002, and in nationally-broadcast TV and radio commercials in 2003 and 2004. All of these statements also referred smokers to PM USA's website, which contained additional information and informed the public that "Philip Morris does not imply in its marketing, and smokers should not assume, that lower-yielding brands are 'safe,' or are 'safer' than full-flavor brands."

Plaintiffs' effort to manufacture a genuine issue of material fact in the face of these undisputed facts is entirely meritless. There can be no dispute that PM USA's disclosures disclaimed the alleged fraudulent representations and were extensive. This Court should grant summary judgment against plaintiffs' claims based on purchases after December 1, 2002.

## ARGUMENT

Plaintiffs do not dispute that PM USA is entitled to summary judgment if (1) its disclosures on their face disclaimed the alleged misrepresentation that forms the basis of plaintiffs' deception claim; and (2) the distribution of the disclosures was extensive enough to

---

[1]   CDC, *Cigarette Smoking Among Adults -- United States* 2002, 53 Morbidity and Mortality Weekly Report 427, 428 (May 28, 2004) (Ex. 10) (45.8 million adult smokers in United States); Expert Report of Jeffrey E. Harris at 11, Table 1 (Dec. 6, 2009) (estimating that PM USA had a 50 percent market share in 2005) (Ex. 11).

eliminate any fact issue that the disclaimer was genuine. *See*, *e.g.*, *AIG Advisor Group Secs. Litig.*, 309 Fed. App'x 495, 498 (2d Cir. 2009) (affirming dismissal where the defendants' website "disclosed the existence of the very 'conflict of interest'" alleged to be undisclosed); *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 676 (6th Cir. 2005) (stating that where allegedly withheld information that contradicted public statements was in fact disclosed, a claim for misrepresentation is non-actionable).[2]

### I. As A Matter of Law, PM USA Was Required Only To Disclaim The Material Substance Of The Alleged Misrepresentation

In striving to create a fact issue concerning the adequacy of PM USA's disclosures, plaintiffs misstate the applicable legal standard and claim without any basis that additional technical details should have been disclosed. *See* Pls. Br. at 8-9.

Plaintiffs complain that PM USA's disclosures did not include statements about certain specific highly technical and scientific details -- such as plaintiffs' allegations with respect to certain additives in tobacco and the scores of light cigarette smoke on certain mutagenicity tests. Pls. Br. at 8. But a disclosure is adequate to defeat any claim of deception so long as it disclaims the ultimate fact that is alleged to have been falsely represented. *See*, *e.g.*, *Tagliente v. Himmer*, 949 F.2d 1, 7-8 (1st Cir. 1991) (disclosure indicating presence of wetlands on property was sufficient; additional information about the regulation and extent of the wetlands was not required). "[O]nly the essence of a point need be disclosed, not the minute details." *Mittendorf v. J.R. Williston & Beane, Inc.*, 372 F. Supp. 821, 828 (S.D.N.Y. 1974) (citation omitted); *see*

---

[2] Plaintiffs seek to distinguish the authorities cited by PM USA on the basis that many of those cases were decided on a "motion to dismiss," whereas this motion is for summary judgment. Pls. Br. at 19 n.6. This distinction makes no sense -- if courts are willing to determine that disclaimers defeat liability as matter of a law in the context of a motion to dismiss, in which all of the plaintiffs' allegations must be deemed true, surely it is appropriate to grant summary judgment where the movant has shown the absence in fact of any genuine issue of material fact.

*also*, *e.g.*, *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 535 (S.D.N.Y. 2008) ("[T]he Court rejects Plaintiffs' assertion that disclosing the possibility of the . . . arrangements but not the details of the specific arrangements violates a duty to speak truthfully."); *Johnson v. Pozen Inc,* 2009 WL 426235, at *19 (M.D.N.C. 2009) ("Defendants did not have a duty to disclose every detail of its FDA correspondence or to use any specific words in their disclosures."); *Pagano v. Krohn*, 70 Cal. Rptr. 2d 1, 6 (Cal. Ct. App. 1997) (disclosure of "general problem" was sufficient to warrant summary judgment even in the absence of particular details).

Here, the alleged misrepresentation is that PM USA told smokers that light cigarettes "would result in [plaintiffs] receiving less tar and nicotine than full-flavored cigarettes," and thus a "healthier" cigarette. Pls. Class Cert. Br. at 8; *see also*, *e.g.*, *Good v. Altria Group, Inc.*, 129 S. Ct. 538, 541 (2008) (plaintiffs allege that defendants "convey[ed] to consumers that [light cigarettes] deliver less tar and nicotine and are therefore less harmful than regular cigarettes"); *Domaingue* Compl. ¶ 71 ("Philip Morris has made . . . . assertions that low-tar cigarettes deliver 'low,' 'lower,' or 'less' tar and nicotine than conventional, full-flavor cigarettes . . . [and used] brand names with descriptors such as 'light' and 'ultra light.' These claims were made with the full knowledge that consumers interpret such claims and descriptors as meaning a reduced risk of harm.").[3]

PM USA disclaimed this alleged misrepresentation by informing smokers on its onserts that (1) they "should not assume" that light cigarettes "are less harmful than full flavor cigarette[s]," (2) "depend[ing] on how [they] smoke," they "may not inhale less tar and nicotine," and (3) terms such as "light" are "used as descriptors of strength of taste and flavor."

---

[3]  *See also Biundo* Compl. ¶ 31; *Corse* Compl. ¶ 12; *Good* Compl. ¶ 32; *Haubrich* Compl. ¶ 29; *Mirick* Compl. ¶ 12; *Mulford* Compl. ¶¶ 11, 12, 29; *Nikolic* Compl. ¶¶ 72, 108; *Parsons* Compl. ¶¶ 12, 36, 42; *Slater* Compl. ¶¶ 12, 36, 42; *Tang* Compl. ¶¶ 9, 22, 26; *Tyrer* Compl. ¶¶ 3, 72; *Williams* Compl. ¶¶ 12, 38.

McCormick Aff. ¶¶ 9, 20 & Ex. B (Jan. 21, 2010).  And PM USA further disclaimed the alleged misrepresentation by stating on its website that it "does not imply in its marketing, and smokers should not assume, that lower-yielding brands are 'safe,' or are 'safer' than full-flavor brands." *Id.* & Ex. A at 8.  There is no disputed issue of fact for a jury to decide here; on their face, these statements tell consumers that they should not interpret descriptors such as "light" to mean that those cigarettes will deliver less tar and nicotine or that they are safer than any other brands.  That is precisely the type of disclaimer of the "essence" of an alleged misrepresentation that defeats any claim of deception.  *See Mittendorf*, 372 F. Supp. at 829.

Indeed, PM USA's disclosures went far beyond what was necessary.  Contrary to plaintiffs' contention that PM USA "never explained the phenomenon of 'compensation,'" Pls. Br. at 8, PM USA did precisely that in its onsert.  Plaintiffs even quoted the language in their brief, although they did not highlight it:

> The tar and nicotine yield numbers are not meant to communicate the amount of tar and nicotine actually inhaled by any smoker, as individuals do not smoke like the machine used in the government test method.  The amount of tar and nicotine you inhale will be higher than the stated tar and nicotine yield numbers if, for example, you block ventilation holes, inhale more deeply, take more puffs or smoke more cigarettes.

Pls. Br. at 4.  PM USA's website also contained a description of compensation, as well as an image of a cigarette illustrating the precise location of the ventilation holes in the filter, which plaintiffs allege are blocked by smokers' fingers or lips.  *See* PM USA Main Br. at 9.

Nor is there any merit to plaintiffs' other criticisms of the language used in the disclaimers.  Plaintiffs contend that PM USA should have disclosed that it intentionally engaged in fraudulent activity.  Pls. Br. at 8.  But plaintiffs do not -- and cannot -- cite any authority requiring a defendant to confess to fraud to effectively disclaim an alleged misrepresentation.  *See Goldberger v. Baker*, 442 F. Supp. 659, 666 (S.D.N.Y. 1977) (failure to disclose allegedly

4

fraudulent activities of directors in proxy solicitations was not actionable because it had nothing to do with the harm alleged).

Finally, plaintiffs assert that PM USA's use of words like "assume" and "may" in the onset are too vague or waffling.  Pls. Br. at 4.  But courts have repeatedly held that similar disclaimers are sufficient as a matter of law.  For example, in *Rodi v. Southern New England School of Law*, 532 F.3d 11 (1st Cir. 2008), the First Circuit held sufficient a disclosure that "[t]he Law School *makes no representation* to any applicant or student that it will be approved by the American Bar Association." *Id.* at 17-18 (emphasis added).  The court did not hold the law school to a standard of issuing a disclosure that affirmatively stated that the school would *not* be accredited.  Rather, the critical fact was that disclosure conveyed to applicants what message they should *not* take away from the alleged misrepresentations.  *See id*.  By telling consumers that they may not receive less tar and nicotine and that they should not assume that these cigarettes are safer, PM USA was telling consumers what they should not interpret the alleged representations to mean.

Similarly, the court in *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935 (N.D. Ill. 2008), held that a "small print" disclosure that stated that there "*might*" be future expense to consumers was sufficient to defeat any claim of deception.  *Id*. at 937-98; *see also* Pls. Br. at 20 (acknowledging that the disclosure stated that the battery "*may* need to be replaced") (emphasis added); *see also*, *e.g.*, *Hoffman*, 591 F. Supp. 2d at 535 ("disclosing the *possibility*" was sufficient) (emphasis added).

## II.    As A Matter of Law, PM USA's Disclosures Were Sufficient In Reach To Preclude Any Claim Of Deception

Although plaintiffs also attempt to manufacture a disputed issue of fact with respect to the reach of the disclosures, all that is required to grant summary judgment in favor of PM USA

5

on the element of deception is a finding that the disclosures were extensive.  Courts have repeatedly held disclaimers to be sufficient even though those disclosures -- *unlike* the disclosures at issue here -- were not even communicated directly to the consumers.  *See*, *e.g.*, *AIG Advisor Secs. Litig.*, 309 Fed. App'x at 498 (barring securities fraud claim based on disclosures on website); *LC Capital Partners, LP v. Frontier Ins. Group*, 318 F.3d 148, 155 (2d Cir. 2003) (disclosure through public documents, a newsletter article, and in a lawsuit filed raising same allegations was sufficient to defeat claim of fraud, without individual disclosure to investor); *Perona v. Volkswagen of America,* 684 N.E.2d 859, 866-67 (Ill. App. Ct. 1997) (disclosure of alleged problem of unintended acceleration of Audi 500 automobiles in two press releases was sufficient to defeat consumer fraud claims with respect to automobiles purchased after the company disclosed the problem).

      Plaintiffs' arguments as to the reach of the disclosures fundamentally misconstrue the focus of PM USA's motion.  PM USA's motion addresses only the deception element of plaintiffs' claims and argues that where, as here, PM USA has issued a disclaimer reasonably calculated to reach a wide audience, there can be no claim of deception.  By contrast, plaintiffs' reach arguments all go to causation:  whether, and to what extent, certain class members read or remembered or believed PM USA's disclosures.  *See*, *e.g.*, *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) (under Illinois' consumer protection statute, at issue in *Biundo*, "plaintiff must actually be deceived by a statement or omission").  PM USA agrees with plaintiffs that there are individual fact issues with respect to whether putative class members can satisfy the causation element of their claims in light of these disclosures.  Those issues, however, are not before the Court and cannot alter the fact that the content and reach of PM USA's disclosures --

6

which are the subject of this motion -- are sufficient as a matter of law to defeat any claim of deception.

The only shred of evidence plaintiffs present in their attempt to manufacture a genuine issue of fact is the rote mathematical calculation of their economist, Dr. Harris, that the onserts were included on 2.4 percent of lights packages distributed annually between 2002 and 2008.[4] This percentage, however, translates into more than one billion packs over that period and only confirms the extensiveness of PM USA's onsert disclosure.  Moreover, Dr. Harris's statistic is meaningless and creates no "genuine" issue of fact.  Cigarettes are not a one-time purchase.  Rather, as plaintiffs themselves acknowledge, smoking is a regular and repeated activity involving frequent -- if not daily -- purchases of cigarette packages.  *See*, *e.g.*, *Mulford* Compl. ¶ 34 (plaintiffs "purchased and consumed Marlboro Lights and/or Ultra Light cigarettes daily over a period of years"); *Tyrer* Compl. ¶ 95 (plaintiff "typically purchase[d] approximately one package per day"); *Biundo* Compl. ¶ 30 (plaintiff "regularly purchased packs of Marlboro Lights cigarettes on a weekly basis"); *Mirick* Compl. ¶ 34 (same); *see also Ludke v. Philip Morris Cos.*, 2001 WL 1673791, at *3 (D. Minn. Nov. 21, 2001) ("People who purchase cigarettes do so frequently and as a matter of course.").  As a result, including the onsert on one-to-two week supplies of cigarettes is more than sufficient.  Nor do plaintiffs' calculations even address the other forms of communications, such as the website and PM USA's TV and radio ads, which were communicated to consumers throughout the year.[5]

---

[4]  Dr. Harris is not an expert in media or marketing or other appropriate field and therefore is unqualified to opine on the issue of whether defendants' onserts and other disclosures actually reached plaintiffs, as he purports to do in paragraphs 16 and 17 of his affidavit.

[5]  Although not necessary to decide this motion, the onserts alone were designed to reach 86 percent of consumers of PM USA's light cigarettes.  *See* Pls. Ex. L, AC5001077121.  The television advertising was expected to reach 82 percent of the United States adult population. *See* McCormick Dep. at 147:4-11 (Ex. 12).  Even the evidence presented by plaintiffs shows that

Plaintiffs imply that the Court should disregard the fact that PM USA manufactured more than a billion cigarette packs containing onserts because *plaintiffs* might not have "bother[ed] to read" PM USA's health-related disclosures. Pls. Br. at 17. But that argument again goes to causation, not to whether PM USA's distribution of its disclosures were sufficiently extensive to disclaim the alleged misrepresentation. Moreover, PM USA cannot possibly be held responsible for plaintiffs' failure to read the information it repeatedly provided to them. Instead, responsibility lies on plaintiffs to at least read the disclosures that consumer protection statutes require. *See Wojcik v. Courtesy Auto Sales, Inc.*, 2002 WL 31663298, at *6 (D. Neb. 2002); *see also Rawls v. Friedman's Inc.*, 2003 WL 21728838, at *2 (S.D. Miss. 2003) (no deception because "information alleged to have been withheld from plaintiffs was . . . disclosed in the loan documents themselves, which were *readily available* to plaintiffs") (emphasis added); *Colorado ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 2009 WL 4981891, at *5 (Colo. Ct. App. 2009) (defendant not responsible for lack of knowledge of plaintiffs who did not read disclosure); *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 300 (Tex. Ct. App. 1996) (finding no liability under Texas Deceptive Trade Practices act for "alleged failures to disclose information *readily obtainable* from a reading of the [disclosures provided]") (emphasis added).

Plaintiffs' complaints that consumers would be less likely to read PM USA's low tar onserts because PM USA used onserts to disclose other information as well throughout the year, Pls. Br. at 18-19, fails for the same reason. Plaintiffs' argument about what particular consumers would be more apt to read or not read takes nothing away from the critical point for purposes of this motion -- that PM USA effectively disclaimed the alleged misrepresentations. Indeed,

---

at least 51 to 63 percent of light smokers recalled either receiving an onsert or hearing a message on television or radio. *See* Pls. Exs. M, O (citing these statistics).

8

courts have repeatedly held disclosures sufficient as a matter of law to defeat liability even though the disclosures themselves included other information. *See*, *e.g.*, *Rodi*, 532 F.3d at 17-18 (law school catalogue).

Plaintiffs note that Judge Weinstein declined to grant a similar summary judgment motion in *Schwab. v. Philip Morris USA*, *Inc.*, 449 F. Supp. 2d 992, 1084-88 (E.D.N.Y. 2006), on the ground that whether PM USA's disclaimers were sufficient to defeat liability was a fact issue. Pls. Br. at 24-25. This decision is erroneous for the reasons stated above. Notably, some of the facts that Judge Weinstein noted were not in the record before him, including the geographic distribution of the disclosures, are provided in this record. *E.g.*, McCormick Aff. ¶ 4 (providing scope and distribution of 2002 insert disclosure). Moreover, the Second Circuit subsequently reversed the certification order in that case, based in part on a premise that light smokers were on notice after 2001 about the allegations in plaintiffs' complaint. *See McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 221, 226 (2d Cir. 2008) (publication of government report in 2001 put light smokers on notice).

Last, plaintiffs claim that Judge Kessler's opinion in *United States v. Philip Morris USA*, 449 F. Supp. 2d 1 (D.D.C. 2006), somehow demonstrates "a genuine issue of material fact" as to the adequacy of the disclosures. Pls. Br. at 1. But plaintiffs do not -- and cannot -- cite a single specific finding in which Judge Kessler considered -- let alone rejected -- the adequacy of any of the disclosures at issue here.[6]

---

[6] Plaintiffs cite Judge Kessler's decision as a record citation for many of the facts in their Statement of Additional Material Facts ("SAF"). Given this Court's denial of Plaintiffs' Motion for Application of Collateral Estoppel Doctrine, such citation is improper. PM USA addresses this issue in its Responses to Plaintiffs' SAF. Plaintiffs also cite Judge Kessler's decision in their responses to PM USA's Statement of Material Facts Nos. 4 and 6. Those citations are not proper for the same reason and, therefore, those facts should be deemed admitted.

9

## CONCLUSION

For the foregoing reasons, PM USA's motion for summary judgment should be granted.

Dated:  April 14, 2010

                                            Respectfully submitted,

                                            ___/s/H. Peter Del Bianco, Jr._____
                                            H. Peter Del Bianco, Jr.
                                            LAMBERT COFFIN
                                            P.O. Box 15215
                                            477 Congress Street
                                            Portland, Maine  04112-5215
                                            (207) 874-4000

                                            Philip H. Curtis
                                            Nancy G. Milburn
                                            ARNOLD & PORTER LLP
                                            399 Park Avenue
                                            New York, NY  10022
                                            (212) 715-1000

                                            Judith Bernstein-Gaeta
                                            James M. Rosenthal
                                            ARNOLD & PORTER LLP
                                            555 12th Street, N.W.
                                            Washington, D.C.  20004
                                            (202) 942-5000

                                            John H. Beisner
                                            SKADDEN, ARPS, SLATE, MEAGHER
                                            & FLOM & AFFILIATES
                                            1440 New York Avenue, N.W.
                                            Washington, D.C.  20005
                                            (203) 371-7000

                                            Counsel to Defendant Philip Morris USA Inc.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 14, 2010, I electronically filed the foregoing Reply in Support of Philip Morris USA's Motion for Summary Judgment on Plaintiffs' Claims for Purchases after December 1, 2002, using the EM/ECF system which will send notification of such filing to all counsel of record registered with the ECF system.

      /s/ H. Peter Del. Bianco, Jr., Esq.

      H. Peter Del Bianco, Jr., Esq.
      LAMBERT COFFIN
      P.O. Box 15215
      477 Congress Street
      Portland, Maine 04101
      Telephone:  (207) 874-4000
      pdelbianco@lambertcoffin.com