# Exhibit 1

**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE COMMITTEE ON OPINIONS**

| | |
|---|---|
| Plaintiff(s) | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| SIDNEY STERN, THERESA STERN, | MIDDLESEX COUNTY |
| NICK COMMISSO & STEFANY GESSER | DOCKET NO.:  MID-L-2584-03 |
| on behalf of themselves and all others | |
| similarly situated | **CIVIL ACTION** |
| | |
| vs. | **OPINION** |
| | |
| Defendant(s) | |
| | |
| PHILIP MORRIS USA, INC. | |

Decided:      November 16, 2007

Donna Siegal Moffa and Nicole M. Acchione, Esqs., (*Trujillo Rodriguez & Richards, LLC*, attorneys), and Esther Berezofsky, Esq., (*Williams Cuker Berezofsky*, attorneys), for Putative Class Representatives, Plaintiffs Sidney Stern, Theresa Stern, Nick Commisso, Stefany Gesser

Ezra D. Rosenberg, Christopher Michie, and Regan Crotty, Esqs., (*Dechert LLP*, attorneys) for Defendant Philip Morris

HAPPAS, J.S.C.

This case is before the Court on the motion filed by plaintiffs, Sidney Stern and Theresa Stern, Nick Commisso and Stefany Gesser for class certification.  The Court heard oral argument on November 7, 2007.

## I.    PROCEDURAL HISTORY

This action was initially filed on April 4, 2003 in the Superior Court of New Jersey.  On or about May 27, 2003 defendant Philip Morris removed this matter to the United States District Court for the District of New Jersey.  On or about November 3, 2003 the federal court remanded this matter to state court.  On November 15, 2004 a case management order was entered

1

requesting that discovery focus exclusively on class certification issues. While discovery was ongoing, plaintiffs added an additional plaintiff, Stefany Gesser, by unopposed motion to amend filed May 18, 2005. Defendant answered the amended complaint on July 20, 2005. Approximately one month prior to that date, on June 29, 2005, plaintiffs filed their motion for class certification. On or about July 21, 2005, defendant filed a motion to strike evidence submitted in support of plaintiffs' motion for class certification objecting to the admissibility of certain exhibits under *R.* 1:6-6 and/or because they lacked sponsoring experts. Prior to the resolution of the motion to strike, and prior to the filing of any opposition to the motion for class certification, plaintiffs withdrew their pending motion for class certification on or about September 29, 2005. Plaintiffs re-filed their motion for class certification, supported by the affidavit of K. Michael Cummings, on October 7, 2005. Defendant renewed its motion to strike on January 6, 2006 and the Court granted defendant's motion on March 17, 2006. Plaintiff filed a motion for clarification and/or reconsideration on May 4, 2006. On June 19, 2006, the Court denied reconsideration entering an order striking six (6) of plaintiffs exhibits including, *Monograph 13: Risks Associated with Smoking Cigarettes With Low Machine Measured Yields of Tar and Nicotine.* The Court directed that plaintiff re-file their motion for class certification without reference to the stricken exhibits within thirty (30) days. Plaintiffs filed a renewed motion for class certification on August 2, 2006. On November 16, 2006 defendant filed its opposition to plaintiffs' motion for class certification. In addition, defendant filed a motion to strike references in plaintiffs' class certification brief to *Monograph 13* and to portions of the trial court's decision in *Price v. Philip Morris Inc.*, No. 00-L-112 (Madison Cty., Ill., March 21, 2003) that noted the Court's reliance on damages expert Jeffrey Harris. Defendant also filed two motions for partial summary judgment.

Pursuant to the case management order entered on January 11, 2007 plaintiffs were permitted to depose the experts and/or witnesses of defendant. On or about April 10, 2007 plaintiffs filed an omnibus motion to strike dealing with all or portions of the expert reports submitted by defendant and deposition testimony from other proceedings relied upon by defendant in its opposition to class certification. On July 30, 2007 the Court granted plaintiffs' motion to strike as to three of defendant's experts and the deposition testimony from other proceedings. Defendant's motion to strike was also granted and the Court directed the parties to submit their amended papers for the class certification motion setting forth a return date of October 12, 2007. Thereafter, the parties re-submitted their papers to conform with the Court's July 30, 2007 ruling.[1]

## II.      PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs, Sidney Stern and Theresa Stern, Nick Commisso and Stefany Gesser all of whom smoked defendant, Philip Morris' Marlboro Lights cigarettes, seek to certify and recover economic damages for a class consisting of persons who purchased Marlboro Lights cigarettes in New Jersey between 1971 and 2003, under New Jersey's Consumer Fraud Act. *N.J.S.A.* 56:8-2 *et seq.* (hereinafter referred to as "CFA"). Plaintiffs are not seeking damages for any health-related claims. Plaintiffs allege that through a course of conduct spanning three (3) decades, Philip Morris designed and marketed Marlboro Lights using the designation "lights" and description "lowered tar and nicotine" to convey that the cigarettes were safer than full flavored cigarettes when they were not. Plaintiffs assert that defendant acted unconscionably, using misrepresentations and omissions of material facts to deceive and mislead plaintiff and members

---

[1] On September 1, 2007 this matter was assigned to me for total handling. Both counsel requested that oral argument be carried to November 7, 2007.

of the class in violation of the CFA. Plaintiffs seek economic damages which include a refund of

all moneys acquired by the means of unlawful practice pursuant to *N.J.S.A.* 56:8-2.11 and 2.12.

This Court must determine whether plaintiffs' claims asserting that Philip Morris

deceptively and misleadingly marketed Marlboro Lights are appropriate for class treatment.

Philip Morris argues that class certification is inappropriate for several reasons. Most notably,

they assert that class certification should be denied because plaintiffs have failed to satisfy the

requirements of *R.* 4:32-1(a)(b) and *R.* 4:32-2(g).

### A.    Plaintiffs' Proposed Class

Plaintiffs' proposed class is described as:

> All persons who purchased defendant's Marlboro Lights cigarettes in New Jersey for
> personal consumption from the first date that defendant sold Marlboro Lights in New
> Jersey through April 4, 2003.

> Excluded from the class are defendant, any parent, subsidiary, affiliate, or controlled
> person of defendant, as well as the officers, directors, agents, servants, or employees of
> defendant, and the immediate family members of such persons.
> Plaintiffs seek to prove that defendant designed, promoted and marketed their "Marlboro
> Lights" cigarettes in a way that deceptively conveyed that they delivered lowered tar and
> nicotine.

The standards that govern class action certification have recently been addressed by the New

Jersey Supreme Court in *Intern. Un. Loc. 68 Welf. Fund v. Merck*, 192 *N.J.* 372 (2007) and

*Iliadis v. Wal-Mart Stores, Inc.*, 191 *N.J.* 88 (2007). Class action certification in New Jersey is

governed by *R.* 4:32-1. That Rule includes both general, *see R.* 4:32-1(a), and specific, *see R.*

4:32-1(b) requirements. *Intern. Un. Loc. 68 Welf. Fund, supra*, 192 *N.J.* at 382; *Iliadis, supra*,

191 *N.J.* at 106.

Class actions are "an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only". *Iliadis, supra*, 191 *N.J.* at 103 (*quoting* Califano v.

*Yamasaki*, 442 *U.S.* 682, 700-01 (1979)). Plaintiffs must satisfy all of *R.* 4:32-1(a)'s

prerequisites – numerosity, commonality, typicality and adequacy of representation – and at least one of the three alternative types of class actions described in *R.* 4:32-1(b). *Iliadis, supra,* 191 *N.J.* at 106. Plaintiffs bear both the burden of persuasion and the burden of proof on class certifications. *Muise v. GPU, Inc.*, 371 *N.J. Super.* 13, 32 (App. Div. 2004). There is no dispute that evidence offered in support of class certification must be admissible under the Rules of Evidence.

**B.    *R.* 4:32-1(a) Requirements**

*R.* 4:32-1(a) provides four prerequisites for class certification. Class certification is appropriate only if:

> (1) the class is so numerous that joiner of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Iliadis, supra,* 191 *N.J.* at 106 (citing *R.* 4:32-1(a)). The Court will address separately each of these four requirements, *i.e.*, numerosity, commonality, typicality and adequacy of representation.

**i.    Numerosity**

*R.* 4:32-1(a)(1) requires the proposed class to be so numerous that joinder of all members would be impracticable. Plaintiffs have not yet ascertained the precise number of class members, but the class is estimated to be in the tens, perhaps hundreds of thousands, of persons. Defendant does not specifically contest the numerosity requirement. Nonetheless, this Court opines that a class of this potential size is so numerous that joinder would be impracticable.

**ii.    Commonality**

*R.* 4:32-1(a)(2) requires that there be questions of law or fact common to the class although not all questions of law or fact raised need be in common. *Delgozzo v. Kenny*, 266 *N.J. Super.* 169, 185-186 (App. Div. 1993).

The threshold for commonality appears to be low in New Jersey. There is often times confusion associated with *R.* 4:32-1(b)(3)'s predominance requirement and *R.* 4:32-1(a)'s "commonality" requirement. The parties' argument focus more on whether common issues predominate over individual issues than whether any common issues are present. Nonetheless, the Court finds plaintiffs' assertions that defendant's conduct in designing and marketing light cigarettes present questions common to the class.

### iii.    Typicality

*R.* 4:32-1(a)(3) requires the claims of the representative parties to be typical of the claims of the class. Plaintiffs assert that defendant designed and marketed its Marlboro Lights cigarettes through the exploitation of known flaws in the Cambridge Filter Test and deception, misrepresentation, concealment and omissions concerning Marlboro Lights. Plaintiffs argue that defendant has employed uniform practices and that these practices violate the CFA.

The claims of the representative "must have the essential characteristics common to the claims of the class". *In re Cadillac V8-6-4 Class Action*, 93 *N.J.* 412, 425 (1983)(quoting 3B James W. Moore, *et al.*, *Moore's Federal Practice* § 23.06-2 (1982)). The court in *Laufer v. U.S. Life Insurance Co.*, also noted that "since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding". 385 *N.J. Super.* 172, 180 (App. Div. 2006)(quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.24 [4] (1997)).

There is no dispute that defendant's alleged false representation regarding Marlboro Lights were made in the identical manner to plaintiffs and the other members of the proposed class of Marlboro Lights purchasers. The Court is satisfied that the claims in this suit are based on the same legal theory and the same allegedly deceptive conduct of the defendant with regard to the design and marketing of their light cigarettes. Plaintiffs, therefore, have met the requirements of *R.* 4:32-1(a)(3).

### iv. Adequacy of Representation

The fourth requirement of *R.* 4:32-1(a) requires that the representative parties must fairly and adequately protect the interest of the class. The prerequisite is presumed to be met in New Jersey and the defendant bears the burden of demonstrating that the proposed representative will be inadequate. *Delgozzo*, *supra*, 266 *N.J. Super.* at 188.

This Rule is satisfied when the plaintiff does not have interests antagonistic to those of the class. *Id.* at 188 (quoting *In re Asbestos School Litigation*, 104 *F.R.D.* 422, 430 (E.D. Pa. 1984), *aff'd in part and vacated in part sub nom, In re School Litigation*, 789 *F.*2d. 996 (3d Cir. 1985), *cert. denied*, 479 *U.S.* 852 (1986)). There is no reason to believe that Stefany Gesser, Nick Commisso and/or Sidney and Theresa Stern will not adequately protect the interests of the class they represent. None of the class representatives have interests that are antagonistic to those of the class they propose to represent, and they are committed to vigorously prosecuting this action. Plaintiffs' claims that defendant engaged in false and misleading practices in the design, promotion and/or sale of Marlboro Lights cigarettes are identical for all class members. Defendant has failed to meet its burden to prove that the interests of the class will not be protected by the representative plaintiffs.

The adequacy requirement of *R.* 4:32-1(a)(4) which requires "representative parties" to fairly and adequately protect the interests of the class also applies to their counsel under *R.* 4:32-2 (g)(1)(B). *See also Rebish v. Great Gorge*, 224 *N.J. Super.* 619, 623-24 (App. Div. 1988). Although defendant asserts that counsel in this matter have compromised the interests of the class members and thus are inadequate to represent the class, the Court opines that at this juncture, the defendant has failed to demonstrate that counsel will not fairly and adequately represent the interests of the class. Plaintiffs have obtained counsel who are highly experienced in both state and federal consumer class action litigation to prosecute their rights and those of the class. There is no reason to dispute the evidence presented by the plaintiffs that counsel for plaintiffs are qualified, experienced, and able to conduct this litigation.

The Court finds that the requirements of *R.* 4:32-1(a)(4) and *R.* 4:32-2(g)(1)(B) have been satisfied.

### C.   *R.* 4:32-1(b) Requirements

Since this Court has determined that the general requirements of *R.* 4:32-1(a) have been met, the Court next must analyze whether the class applicants satisfy the requirements of one of the three alternative types of class actions described in *R.* 4:32-1(b). *Iliadis*, *supra*, 88 *N.J.* at 106.

Plaintiffs assert that class certification pursuant to *R.* 4:32-1(b)(3) is appropriate. In order for the Court to certify this class action, it must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy". *R.* 4:32 (1)(b)(3). The New Jersey Supreme Court has recently addressed the

requirements of R. 4:32-1(b)(3) in *Intern. Un. Loc. 68 Welf. Fund*, *supra*, and *Iliadis v. Wal-Mart Stores, Inc.*, *supra*.

In making the predominance and superiority assessments, a certifying court must undertake a "rigorous analysis" to determine if the Rule's requirements have been satisfied. *Carroll v. Cellco Partnership*, 313 *N.J. Super.* 488 (App. Div. 1998) (quoting *Gen. Tele. Co. of the SW v. Falcon*, 457 *U.S.* 147, 161 (1982)). The Court's review includes searching "beyond the pleadings [to gain an]… understand[ing of] the claims, defenses, relevant facts, and applicable substantive law." *Iliadis*, *supra*, 191 *N.J.* at 107 (quoting *Carroll*, *supra*, 313 *N.J. Super.* at 495).

An examination of the predominance and superiority requirements must include consideration of the following factors:

(A)     the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C)     the desirability or undesirability in concentrating the litigation of the claims in the particular forum;

(D)     the difficulties likely to be encountered in the management of a class action.

[*R.* 4:32-1(b)(3)]; *Iliadis*, *supra*, 191 *N.J.* at 107.

### i.     Predominance

The predominance requirement is similar to, but "far more demanding" than, the commonality requirements of *R.* 4:32-1(a)(2). *Amchem Prods., Inc. v. Windsor*, 521 *U.S.* 591 (1997). The court in *Iliadis* opined that in determining whether the predominance requirement is met, the number and significance of common questions must be considered. 191 *N.J.* at 108. In addition, the Court must decide whether the "benefit from the determination in a class action [of

common questions] outweighs the problems of individual actions". *Id.* (*quoting In re Cadillac*, 93 *N.J.* 412, 430 (1983)).  Lastly, predominance requires at minimum, a "common nucleus of operative facts." *Id.* (quoting *In re Cadillac*, *supra*, 93 *N.J.* at 431)).

Our courts are also in agreement that there is no requirement that individual issues be absent. *Id.* (citing *Varacallo v. Mass. Mut. Life Ins. Co.*, 332 *N.J. Super.* 31, 45 (App. Div. 2000), or "that the common issues dispose of the entire dispute". *Id.* (*citing Strawn v. Canuso*, 140 *N.J.* 43, 67 (1995), *superseded on other grounds by N.J.S.A.* 46:3C-10)).  R. 4:32-1 was modeled after the Fed. R. Civ. P. 23.  Our courts have consistently looked for guidance to federal court interpretations of the class action rule. *Delgozzo*, *supra*, 266 *N.J. Super.* at 188 *as recognized in Norbrega v. Edison Glen Assocs.*, 167 *N.J.* 520 (2001).  Predominance does not require that all issues be identical among class members or that each class member be affected in precisely the same manner. *Fiore v. Hudson County Employees Pension Comm'n*, 151 *N.J. Super.* 524, 528 (App. Div. 1977).  This Court's analysis requires the Court to consider, in light of the requirements of our CFA, what questions of law or fact are common and whether those questions predominate in the sense required for certification of a class.

The CFA affords a private cause of action under limited circumstances.  To state a claim under the CFA, a private plaintiff must allege each of the three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiffs; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiffs' ascertainable loss. *Dabush v. Mercedes-Benz USA, LLC*, 378 *N.J. Super.*105, 115 (App. Div. 2005).  While the Attorney General does not have to prove that the victim was damaged by the unlawful conduct, a private plaintiff must show that he or she suffered an ascertainable loss as a result of the unlawful conduct. *Weinberg v. Sprint Corp.*, 173 *N.J.* 233, 237 (2002).  Additional proofs are

required for a private cause of action above those imposed on the Attorney General. *Thiedemann*

*v. Mercedes-Benz USA, LLC*, 183 *N.J.* 234, 246 (2005).

Plaintiffs assert that the predominance requirement is met because the defendant's

actions, as described in the complaint, are based on the same set of facts, and such common

questions of fact and law predominate.

Plaintiffs assert that such common issues include, but are not limited to:

- Whether defendant used the descriptor "lights" and "lowered tar and nicotine" to mislead consumers;

- Whether defendant designed Marlboro Lights to generate misleading tar and nicotine measurements on the Cambridge System;

- Whether defendant omitted information about features of Marlboro Lights that impacted the tar and nicotine delivery of Marlboro Lights;

- Whether defendant omitted that tar and nicotine delivery of Marlboro Lights was dependant on smoking the cigarettes in a particular manner;

- Whether defendant incorporated design and product features that potentially increased the risks of smoking Marlboro Lights and failed to disclose same; and

- Whether defendant intended that consumers rely on its omissions; and whether defendant's conduct violated the CFA.

(*See* Pls.' Br. at 33).  According to the plaintiffs, these overarching questions can be readily

decided on the basis of class-wide proofs.  In addition, plaintiffs contend that they intend to

quantify the amount of damages suffered per purchase through expert opinion that measures the

difference in value between the Marlboro Lights as marketed and the product as delivered.

In contrast, defendant contends that the proposed class cannot be certified under *R.* 4:32-

1(b)(3) because individual issues predominate plaintiffs' private CFA claims.  Defendant asserts

that the proofs needed to establish the CFA's essential elements interject individual inquiries that

overwhelm any allegedly common issues, and negate any supposed efficiencies that a class

action might otherwise offer.  The predominating individual issues set forth by defendant

include:

- Whether the Marlboro Lights purchases by putative class members were caused by Philip Morris' alleged misrepresentations and deception;

- Whether putative class members failed to receive what Philip Morris allegedly promised i.e., a cigarette that would deliver less tar and nicotine than a full-flavor cigarette when smoked by each person;

- Whether putative class members actually suffered any legally cognizable ascertainable loss in connection with their purchases of Marlboro Lights; and

- Whether the CFA claims of putative class members are subject to Philip Morris' various defenses to liability, including statute of limitations and comparative fault.

(*See* Def.'s Br. at 20).  Defendant contends that these individualized issues overwhelm any

common issues raised by defendant's alleged conduct.

The Court agrees with plaintiffs that whether defendant's actions of designing, promoting

and marketing their "Marlboro Lights" cigarettes in a way that deceptively conveyed that they

were something that they were not, in violation of the CFA, is a common question to the entire

class.  However, the issue of whether defendant committed "unlawful conduct" under the CFA

goes only to the first element necessary to prove consumer fraud. *Dabush*, 378 *N.J.* at 114.  It is

the other two essential elements, namely, causation and ascertainable loss, where the court must

analyze if individual issues predominate in a private consumer fraud action, precluding

certification under *R.* 4:32-1(b)(3).

Consequently, the Court must determine whether causation and ascertainable loss may be

proven with class-wide evidence.  Plaintiffs argue that individual motivation for smoking light

cigarettes and reliance on the description "lights" and "lowered tar and nicotine" is not at issue.

Moreover, plaintiffs are of the belief that smoking behavior of class members does not create

individual issues.  Plaintiffs also ask for a rebuttable presumption that all purchases of Marlboro Lights were caused by defendant's alleged deception.

Although reliance need not be proven in order to recover damages pursuant to the CFA, plaintiffs must prove a causal nexus between the alleged act of consumer fraud and the damages sustained.  *New Jersey Citizens Action v. Schering Plough Corp.*, 367 *N.J. Super.* 8, 15 (App. Div. 2003).  The reason why smokers begin or choose to continue smoking Marlboro Lights and the manner in which they smoke them is relevant to this Court's analysis in deciding whether class certification is appropriate.  The proofs presented to this Court reveal that smokers vary in their beliefs and reasons for purchasing light cigarettes.  Moreover, smoking behavior of class members varies.

### a.  The Issue Of A Putative Class Member's Motivation For Purchasing Marlboro Lights

Defendant's expert in marketing and consumer psychology, Dr. David Stewart explained that consumers have varying knowledge and beliefs about light cigarettes.  Some smokers understood "lights" to refer to taste or strength, others understood it to refer to levels of tar and nicotine, and still others interpreted it as referring to health benefits.  Plaintiffs acknowledge that some class members (a) "smoked Marlboro Lights because of the recommendation from a friend, family member, or physician and would have continued to smoke Marlboro Lights because of that recommendation even if they were aware of the allegations in… the complaint", (b) "continued to smoke Marlboro Lights after becoming aware of the allegations in… the complaint," (c) "would not have stopped smoking Marlboro Lights if they became aware of the allegations in… the complaint".  (*See* Pls.' Answers to First Set of Interrogatories, at ¶¶ 23-24, 26).

There is an issue as to whether all class members smoked Marlboro Lights because of any representation made by defendant. There exists many reasons why a class member may have chosen to smoke Marlboro Lights. That reason is not necessarily related to any representation made by defendant as to their ability to deliver lower amounts of tar and nicotine. Whether a class member decided to smoke Marlboro Lights due to a representation made to them by defendant, or decided to smoke them due to other reasons, is an individual issue unique to that class member. Determining that issue would require individual inquiries of each class member. Plaintiffs must prove a causal nexus between defendant's alleged misrepresentation and any ascertainable loss. Since there are many non-health related reasons why people purchased light cigarettes, defendant shall be permitted to individually inquire why that class member chose Marlboro Lights, *i.e.*, was the reason motivated by taste, habit, personal preference, peer influence or health related reasons?

Plaintiffs argue that they are entitled to a rebuttable presumption that all purchases of Marlboro Lights were caused by defendant's alleged deception. The record before this Court reveals that consumers have reasons other than the alleged deception or misrepresentation to choose Marlboro Lights. The court in *Varacallo* did in fact apply a presumption of causation and reliance; however, in doing so the court found that it was inconceivable that more than a very small number of class members would have purchased defendant's insurance policy rather than a competitor's policy if they had known the truth underlying defendant's alleged deception. *Varacallo v. Mass. Mut. Life Ins. Co.*, 332 *N.J. Super.* 31, 48 (App. Div. 2000). The *Varacallo* case differs from the situation involving consumers' reasons for purchasing Marlboro Lights. The evidence in this case has shown that many smokers choose light cigarettes, including Marlboro Lights, for reasons unrelated to any deception about comparative safety or tar and

nicotine deliveries.  The testimony of two of the five named plaintiffs confirms the evidence

produced by defendant.  Plaintiff Beth Hunt testified that she never believed Marlboro Lights

were safer than regular cigarettes, and construed the description to apply only to taste (*See*

Stewart Aff., Ex. 3, at 10, 19).  Plaintiffs agree that some consumers continue to smoke "light"

cigarettes despite believing they are just as dangerous as full flavor cigarettes. (*See* Pls.' Answers

to Interrogatories, at ¶¶ 23-24, 26).  For example, the husband of plaintiff Stefany Gesser

testified that he continues to smoke Marlboro Lights despite his wife's filing of this lawsuit and

his belief that Marlboro Lights are no safer. (Michie Cert., Ex. 12, at 20:3-7; 28:25-30:2.)

This Court opines that it would be erroneous, based upon the proofs before the Court, to

infer that each member of plaintiffs' proposed class bought defendant's "light" cigarettes for the

same reason.  Thus, plaintiffs are not entitled to a rebuttable presumption that all purchases of

Marlboro Lights were caused by defendant's alleged deception.  The court disagrees with

plaintiffs' argument that individual motivation for smoking light cigarettes and reliance on the

description "lights" and "lowered tar and nicotine" is not an issue.  For the aforementioned

reasons, an individual inquiry is necessary to determine why each class member purchased

Marlboro Lights.

### b.   The Issue Of A Putative Class Member's Smoking Behavior Including Compensation.

When analyzing whether class certification is appropriate, the Court is presented with the

argument that individual smoking habits raise individual issues.  Plaintiffs' argue that the manner

in which consumers smoke, *i.e.*, how they hold cigarettes, how deeply they inhale, how many

cigarettes they smoke, and how much tar and nicotine is actually delivered in connection with a

particular smoking experience, is not relevant to the question of whether this case is certifiable,

since such factors do not change the fact that the product was consistently or verifiably what is

was represented to be. (*See* Pls.' Br., at 39). Defendant contends that plaintiffs have failed to show how they could prove on a class-wide basis that each class member failed to receive what defendant allegedly represented Marlboro Lights to be, *i.e.*, a cigarette that delivered less tar and nicotine when smoked than a full flavor Marlboro. Defendants contend that this issue can only be resolved based on individual testimony obtained through cross examination of each class member concerning his or her smoking behavior and smoking history, including such questions as how much and how often they smoked, and whether they always smoked low tar cigarettes or instead switched from full-flavor cigarettes to lights. (*See* Def.'s Br., at 32).

The determination of whether any individual member of the putative class failed to receive what defendant allegedly represented Marlboro Lights to be, *i.e.*, a cigarette that delivered less tar and nicotine when smoked than a full flavor Marlboro, is dependent upon a number of issues unique to each individual class member. First and foremost, each class member would have to prove that he/she actually suffered an injury due to a misrepresentation made by defendant. If any member did in fact get less tar and nicotine from Marlboro Lights, then that person suffered no injury. Consequently, defendant's alleged misrepresentations would not have been false as to that person; thus the person could not have been deceived by defendant's alleged misrepresentation. Such a member would have received precisely what they bargained for at the agreed upon price. *See Thiedemann*, *supra*, 183 *N.J.* at 251-52; *Dabush*, *supra*, 378 *N.J. Super.* at 121-22.

It does not appear to be in dispute that Marlboro Lights, as measured by the FTC method, are lower in tar and nicotine than full-flavor Marlboros. The evidence presented by the defendant reveals that whether a person received less tar and nicotine from Marlboro Lights, as allegedly promised, depends upon the individual consumer's behavior in using the product. This

aspect of the case distinguishes it from other consumer fraud claims that may be more suitable for class-wide treatment.

Both parties cite to the case of *Gordon v. Boden*, 586 *N.E.* 2d. 461 (1991) *appeal den.*, 591 *N.E.* 2d. 21 (1992) *cert. denied sub nom Bodine's Inc. v. Gordon*, 506 *U.S.* 907 (1992). In *Gordon*, plaintiff alleged that defendants had used misleading product containers that misrepresented that their orange juice was 100 percent orange juice when in fact, the juice was adulterated with other ingredients. The defendant in the *Gordon* case opposed certification of the class, arguing in part that the issue of whether each class member read and relied on defendant's allegedly false statements was an individual issue that could not be certified on a class-wide basis. *Id.* at 465. The *Gordon* court rejected defendant's position.

The *Gordon* case is distinguishable from this case. This Court agrees with defendant's argument that whether the product was pure orange juice, or adulterated with other ingredients, concerned the contents of what was contained in defendant's container, and could be determined by a single scientific test with the results uniformly applied to all class members. By contrast, whether each smoker received less tar and nicotine can only be determined by examining how each particular class member smoked, and how and to what extent that smoker may have compensated when smoking Marlboro Lights. Proof that any particular class member failed to receive less tar and nicotine would not prove whether any other class member failed to receive less tar and nicotine. This is an individual issue not amenable to class-wide proof.

In the case at bar, plaintiffs argue that defendant's deceptive practices with respect to the design, promotion and/or sale of Marlboro Lights cigarettes provide a single central issue predominating over any potential variations in reliance or causation. (*See* Pls.' Br., at 44). This Court disagrees with plaintiffs. The evidence presented in this case confirms a variance in

individual smoking behaviors among class members. For example, Theresa Stern smoked half a pack a day regardless of what brand she smoked (including Marlboro and Marlboro Lights), and smoked all the cigarettes the same way (Michie Cert., Ex. 16, at 31:16-20, 31:21-33:3). By contrast, Nicholas Commisso testified that he was not getting enough nicotine from Marlboro Lights and therefore began smoking more cigarettes. *Id.* (Ex. 10 at 56-60; 72-74). After switching to lights, he increased from about five to fifty cigarettes each day. *Id.* at 54-56. Class member George Mueller blocked the filter vent holes in Marlboro Lights – intentionally – so that he would get more tar and nicotine from each Marlboro Lights cigarette. *Id.* (Ex. 14 at 23-26). By contrast, Stefany Gesser testified that, after switching to Marlboro Lights, she smoked the same number of cigarettes, she "smoked consistently the same way", and there was no difference in the way she held and smoked the cigarettes, over her thirty-five year smoking history. *Id.* (Ex. 11, at 29:22-30:3, 63:20-22; 94:2-25; 99:4-21). Defendants assert that only smokers who can claim not to have received less tar and nicotine from Marlboro Lights are those who changed the way they smoked after switching to lights to such a great extent that they engaged in "complete" compensation. However, plaintiffs do not contend that every class member compensated completely and thus, failed to get less tar and nicotine from Marlboro Lights (*See* Pls.' Answers to Interrogatories, at ¶ 17).

In *Mulford v. Altria Group, Inc.*, the federal court held that the individual inquiry necessary to determine whether each class member in fact received lower tar and nicotine precluded certification:

> Plaintiffs, without providing any support, assert that no smokers received less tar and nicotine from Marlboro Lights cigarettes, i.e., that every smoker compensated completely, such that causation and loss can be proven on a class-wide basis. Defendant Philip Morris, in contrast, has provided substantial evidence, which plaintiffs do not dispute, that a significant percentage of smokers do not compensate at all or compensate incompletely.

&ast;    &ast;    &ast;

> Consequently, evidence regarding each purported class member's smoking habits must be submitted in order to demonstrate causation and loss. The need for individual evidence to determine if members of the proposed class suffered a loss strongly suggests that the proposed class is not sufficiently cohesive to warrant adjudication by representation.

242 *F.R.D.* 615, 626-27 (D.N.M. 2007). This Court opines that whether or not a class received the benefits of low tar and nicotine from Marlboro Lights, depends on the manner in which the class member smoked. The issue of whether an individual class member is injured is dependent upon the member's manner of smoking which is unique to that class member. Evidence regarding each purported class member's smoking habits must be submitted in order to demonstrate causation and loss.

### c.    Proof of Ascertainable Loss

To satisfy the CFA's "ascertainable loss" requirement, a private plaintiff must prove that he or she suffered an "actual loss" that is quantifiable or otherwise measurable. *Theidemann, supra,* 183 *N.J.* at 248. Any claim of loss in value must be supported by sufficient evidence and cannot be hypothetical. *Id.* at 252.

Plaintiffs have alleged that defendant misrepresented, deceived and concealed information concerning central features of its product – *i.e.,* the product's relative health risk and safety. Plaintiffs propose that one reasonable measure of damages in these circumstances is the difference in value between the Marlboro Lights that plaintiffs bargained for (*i.e.,* a safer cigarette that delivered the "lowered tar and nicotine" as represented) and the product as delivered. This measure of damages, *i.e.,* the difference in value between the product represented and the product delivered, has the required casual nexus with defendant's common course of unlawful conduct because it is based upon showing that the plaintiffs received

something less than, and different from, what they reasonably expected in light of defendant's presentations. (*See* Pls.' Br., at 34).

Plaintiffs assert that they will establish what they paid for was less valuable than what they received. Plaintiffs intend to quantify the amount of damages suffered per purchase through expert opinion that measures the difference in value between the Marlboro Lights as marketed and the product as delivered. That difference in value per package of Marlboro Lights purchased would then be applied to state sales figures to obtain an aggregate class-wide damage claim. Plaintiffs failed to produce any type of detailed trial plan in support of their theory, other than the aforementioned proposed measure of damages they anticipate utilizing at the time of trial. Plaintiffs cite to the case of *Price v. Philip Morris, Inc.*, 848 *N.E.*2d (2006) in support of their theory. Unfortunately, plaintiffs fail to concede that the Illinois Supreme Court in *Price* expressed "grave reservations about the novel approach to damages that was offered by plaintiffs". *Id.* at 53.

Defendant asserts that plaintiffs would have to establish that every class member suffered a legally ascertainable loss in connection with their Marlboro Lights purchases. Defendant claims that it is undisputed that Marlboro Lights and full-flavor Marlboro have always cost the same price. Thus, the market has never recognized any premium for cigarettes labeled as lower in tar and nicotine. Consequently, plaintiffs' contentions that all class members suffered an ascertainable loss merely by purchasing the product are unfounded. (*See* Defs.' Br., at 41). Our Supreme Court has recently held:

> To the extent that the plaintiff intends to rely on a single expert to establish a price effect in place of a demonstration of an ascertainable loss or in place of proof of a causal nexus between defendant's acts and the claimed damages, however, plaintiff's proofs would fail. That proof theory would indeed be the equivalent of fraud on the market, a theory we have not extended to CFA claims.

The significance of plaintiff's planned approach to proof of ascertainable loss is clear. To the extent that plaintiff proposed, and the Appellate Division authorized, the use of a single expert to establish this critical CFA proof element so as to create a common question of fact or law that would bear on the predominance analysis, our rejection of the theoretical basis for that proof mechanism removes it as a potential common question entirely.

*Intern. Un. Loc. 68 Welf.*, *supra*, 192 *N.J.* at 392-393.

In the case at bar, those class members who did not believe Marlboro Lights were safer and made their purchases for reasons totally unrelated to defendant's alleged misrepresentation and deception, as well as those who did not compensate completely and thus got less tar and nicotine, have no viable CFA claim. The Court agrees with defendant that such persons were not deceived and received what they expected to get from Marlboro Lights at the price they paid.

The theory on which plaintiffs seek to rely would eliminate the requirement that there be a connection between the deception/misrepresentation complained of and the loss suffered. Plaintiff's version of causal nexus would effectively eliminate the distinction in the CFA itself respecting private rights of action created for consumers, *N.J.S.A.* 56:8-19, and the rights created to permit the Attorney General to pursue a remedy, even in the absence of harm to any participating individual, *N.J.S.A.* 56:8-2, a distinction that our Supreme Court has refused to obliterate. *New Jersey Citizen Action v. Schering-Plough*, *supra*, 367 *N.J. Super.* at 11. The court in *Thiedemann* noted that "when last we were asked to ignore the statutory distinction between CFA actions brought by the Attorney General and the actions a private plaintiff may bring, and to abrogate the requirement of an ascertainable loss for a private suit, we declined" 183 *N.J.* at 247 (citing *Weinberg*, 173 *N.J.* at 250-51). The CFA's ascertainable loss requirement raises individual issues that preclude class certification. The Court is not convinced that

damages caused by defendant's representations can be established under the CFA without individual inquiry.[2]

Our Supreme Court has rejected class certification of CFA claims due to the predominance of individual questions of causation.  In *International Union* the court held:

> [P]laintiff does not suggest that each of these proposed class members, receiving the same information from defendant, reacted in a uniform or even similar manner.  Rather, the record speaks loudly in its demonstration that each third party payor...made individualized decisions concerning the benefits that would be available to its members for whom Vioxx was prescribed.
>
> \*       \*       \*
>
> That evidence convinces us that the commonality of defendant's behavior is but a small piece of the required proofs.  Standing alone, that evidence suggests that the common fact questions surrounding what defendant knew and what it did would not predominate.

192 *N.J.* at 390-391.  Plaintiffs cite to the Supreme Court decision in *Iliadis* for the position that individual variations in experience do not preclude class certification.  In *Iliadis*, an employment case, the court was dealing with a readily identifiable class of 72,000 members all of whom worked in one of Wal-Mart's stores.  In contrast, this case involves hundreds of thousands of unidentified class members from New Jersey and beyond.  In *Iliadis*, Wal-Mart's own records permitted the court to determine which employees missed rest breaks.  In this case, there exists no evidence that reveals which individuals purchased Marlboro Lights, when they were purchased, why they purchased them, and how they were smoked and whether they received

---

[2] Plaintiffs have also brought a claim for refund pursuant to the provisions of *N.J.S.A.* 56-8-2.11 and 2.12.  Plaintiffs argue that there is no requirement in the refund provisions that the plaintiffs prove an ascertainable loss.

Plaintiffs contend that there is no issue of reliance or causation as it relates to plaintiffs' refund claim, making the propriety of certification of that claim readily apparent and indisputable.  The parties concede that there is limited case law addressing this statutory remedy.  It is not necessary for this court to address the merits of plaintiffs' claim for refunds pursuant to the aforementioned statutes at this juncture.  Assuming, *arguendo,* that the court accepts plaintiffs' argument, that would in no way change or influence this courts findings set forth in the opinion.

what was promised. Such issues are relevant to the resolutions of plaintiffs' claims as discussed above.

In *Iliadis*, the core of dispute was whether Wal-Mart had violated its policies by refusing to provide rest and meal breaks. In this case, the Court agrees with defendant that the core of the litigation is the proposed class members' reaction to the alleged misrepresentations and the individualized decisions they made concerning the defendant's product, issues which outweighed any common questions concerning defendant's conduct. *Intern. Un. Loc. 68 Welf.*, *supra*, 192 *N.J.* at 390. Lastly, the statute of limitations defense in *Iliadis* was not a serious issue since the complaint covered only a six year period. *Iliadis*, 191 *N.J.* at 96. In the case at bar, the complaint was filed in 2003 and the class period encompasses three decades.

Predominance is not determined by adding up the number of common and individual issues and determining which is greater. *Carroll*, 313 *N.J. Super.* at 499. A court must decide whether the benefit from the determination in a class action "[of common questions] outweighs the problems of individual actions". *Iliadis*, 191 *N.J.* at 108 (citing *In re Cadillacs*, 93 *N.J.* at 430). The critical issue in consideration is whether there is a common nucleus of operative facts. *Id.*

This Court opines that the liability issue that is common to the class is relatively simple compared to the time and effort it will take to resolve the individual issues, particularly the issues related to causation, loss and affirmative defenses. Thus, the Court finds that individual issues predominate such that a class action is not warranted.

Although there is no need to analyze whether the remaining elements of *R.* 4:32(1)(b)(3) have been satisfied, in the interest of completeness, the Court will consider same.

### ii       Superiority

*R.* 4:32(1)(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy". This involves a comparison of the fairness to all parties between such alternative methods and a class action. *Intern. Un. Loc. 68 Welf. Fund*, *supra*, 192 *N.J.* at 382. As mentioned earlier, the Rule lists four factors as being pertinent to a determination of whether a class action would be a superior method for adjudication of the controversy.

The first factor the court must consider is "the interest of members of the class in individually controlling the prosecution or defense of separate actions". *R.* 4:32(1)(b)(3). The court must consider whether potential class members may prefer to proceed with an individual lawsuit, rather than with a class action. Our courts have held that superiority is met where the small amount of each claim would effectively preclude "most suits" if the case was not certified as a class action. *Delgozzo*, *supra*, 266 *N.J.* at 193.

The proposed class in this case including all persons who purchased Marlboro Lights in New Jersey during the past 30 or so years. Assuming that many of these persons smoked one or more packs of cigarettes per day, the size of plaintiffs' individual damages is hardly nominal. For example, plaintiff Stern smoked a pack of Marlboro Lights each day for 30 years. (*See* Michie Cert., Ex. 15 (Dep. of Sidney Stern, at 29, 33, 46, 85)). Assuming a conservative average of $2.00 per pack, he would have a potential claim – before trebling damages – of $219,000. Even assuming that Marlboro Lights were smoked for only part of the 30 year period, the potential recovery per person would not be insignificant. Where, as here, some plaintiffs may receive more than a nominal award, they possess a substantial stake and motivation to make individual decisions such that a class action is not necessarily superior to individual litigation.

The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class". A class action may be superior if there is a threat of multiplicity and risk of inconsistent adjudications. Plaintiff has acknowledged that similar claims have been tried on an individual basis. (*See* Pls.' Br., at 3). If class certification is denied, multiple lawsuits may be filed. Methods other than class certification, however, may be utilized to effectively manage their cases. For example, the issue of whether defendant's use of the description "light" and "lower in tar and nicotine" are deceptive under the CFA is a single common issue of law or fact that may be adjudicated by way of a "test case" involving one or more plaintiffs. *Saldana v. The City of Camden*, 252 *N.J. Super.* 188, 200 (App. Div. 1991); *Carroll*, *supra*, 313 *N.J. Super.* at 510. The benefit of proceeding as individual actions under the CFA with the potential for collateral estoppel on a common issue is that its damage issues would be less complex and costly on an individual basis than as a class action that would require major compilation and analysis of thousands of claims. Of course, the application of offensive collateral estoppel is a discretionary matter for the court and should not be applied unless the court is satisfied with its forum fairness. *Kortenhaus v. Eli Lilly & Company*, 228 *N.J. Super.* 162 (App. Div. 1988).

The third factor is "the desirability or undesirability in concentrating the litigation of the claims in the particular forum". This factor concerns whether the forum chosen for the class action is an appropriate place to resolve the controversy. This Court finds that the forum for the class action is appropriate.

The fourth factor is "the difficulties likely to be encountered in the management of a class action". The Court recognizes that a class action is often more complex than a single individual action. Denial of class status due to manageability concerns is disfavored by our courts. *Iliadis*,

*supra*, 191 *N.J.* at 117.   However, individual questions related to causation, loss and affirmative defenses would severely complicate resolution of this action.   The difficulty in managing the numerous individual "mini-trials" will result in protracted litigation. *W. Morris Pediatrics v. Henry Schein*, 385 *N.J. Super.* 581, 610. (Law Div. 2004).

Given the predominance of individual issues over class issues, a class action is not superior to other available methods of adjudicating the issues in dispute.   For all of the above reasons, the Court does not find a class action to be superior to individual actions for the litigation of plaintiffs' claims.

**III.   CONCLUSION**

For all of the foregoing reasons, plaintiff's motion for a class certification is denied.