# Exhibit 40

Certified to be a true and correct copy
of the original and of the whole thereof.

Assistant Attorney General
of Attorneys for Plaintiff

1

2

3

4

5                    CIRCUIT COURT OF OREGON

6                    COUNTY OF MULTNOMAH

7   STATE OF OREGON,                    )
                                        )
8            Plaintiff,                 )     NO. 9706-04457
                                        )
9            v.                         )     PLAINTIFF'S COMPLAINT
                                        )
10  THE AMERICAN TOBACCO COMPANY;       )     (U.T.P.A., Antitrust,
    BROWN & WILLIAMSON TOBACCO          )     Negligence,
11  CORPORATION; LORILLARD TOBACCO      )     Unjust Enrichment,
    COMPANY; PHILIP MORRIS, INC.;       )     Conspiracy, Indemnity,
12  R.J. REYNOLDS TOBACCO COMPANY;      )     Misrepresentation,
    UNITED STATES TOBACCO COMPANY;      )     ORICO)
13  BRITISH AMERICAN TOBACCO COMPANY    )
    LIMITED; B.A.T. INDUSTRIES, P.L.C.; )     **CLAIM NOT SUBJECT TO**
14  HILL & KNOWLTON, INC.; THE COUNCIL  )     **MANDATORY ARBITRATION**
    FOR TOBACCO RESEARCH-U.S.A., INC.;  )
15  SMOKELESS TOBACCO COUNCIL, INC.;    )
    TOBACCO INSTITUTE, INC.; foreign    )
16  corporations; and unknown           )
    corporations; and JOHN DOE 1-100,   )
17  and JANE DOE 1-100, individuals,    )
                                        )
18           Defendants.                )

19

20

21

22

23

24

25

26

Page 1 - PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

Page

Table of Contents . . . . . . . . . . . . . . . . . . . . . 2, 3

**Allegations Common to all Claims for Relief** . . . . . . . . . 4

I.    INTRODUCTION AND OVERVIEW . . . . . . . . . . . . . . . 4

      A.   Parties and Conduct . . . . . . . . . . . . . . . 4
      B.   The Legal Theories . . . . . . . . . . . . . . . 7
      C.   Damages . . . . . . . . . . . . . . . . . . . . 7

II.   THE PARTIES . . . . . . . . . . . . . . . . . . . . . 8

      A.   Plaintiff . . . . . . . . . . . . . . . . . . . 8
      B.   Defendants . . . . . . . . . . . . . . . . . . . 8

III.  JURISDICTION AND VENUE . . . . . . . . . . . . . . . . 16

IV.   CONSPIRACY ALLEGATIONS . . . . . . . . . . . . . . . . 17

V.    NATURE OF TRADE AND COMMERCE . . . . . . . . . . . . . 17

VI.   FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . 18

VII.  FRAUDULENT CONCEALMENT . . . . . . . . . . . . . . . . 22

**Allegations for Particular Claims for Relief** . . . . . . . . 23

VIII. CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . 23

      FIRST CLAIM FOR RELIEF (U.T.P.A.) . . . . . . . . . . 23
      SECOND CLAIM FOR RELIEF (U.T.P.A.) . . . . . . . . . 25
      THIRD CLAIM FOR RELIEF (U.T.P.A.) . . . . . . . . . . 28
      FOURTH CLAIM FOR RELIEF (Antitrust) . . . . . . . . . 33
      FIFTH CLAIM FOR RELIEF (Antitrust) . . . . . . . . . 39
      SIXTH CLAIM FOR RELIEF (ORICO) . . . . . . . . . . . 42
      THE ENTERPRISE . . . . . . . . . . . . . . . . . . . 42
      THE PATTERN OF RACKETEERING ACTIVITY . . . . . . . . 42
      SCHEME OR ARTIFICE TO DEFRAUD . . . . . . . . . . . . 43
      INTENT TO DEFRAUD . . . . . . . . . . . . . . . . . 44
      INTERSTATE MAIL AND WIRE COMMUNICATIONS . . . . . . . 45
      ACTS OF MAIL FRAUD . . . . . . . . . . . . . . . . . 45
      COUNT ONE: UNLAWFUL PARTICIPATION IN AN ILLEGAL
           ENTERPRISE . . . . . . . . . . . . . . . . . . 54
      COUNT TWO: UNLAWFUL INVESTMENT OF FRUITS OF
           ILLEGAL PARTICIPATION . . . . . . . . . . . . . 55
      COUNT THREE; CONSPIRACY TO UNLAWFULLY PARTICIPATE
           AND TO UNLAWFULLY INVEST . . . . . . . . . . . . 55

Page 2 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1

SEVENTH CLAIM FOR RELIEF (Fraudulent
    Misrepresentation)  . . . . . . . . . . . . . .  56

2

EIGHTH CLAIM FOR RELIEF (Negligence)  . . . . . . . . .  58
NINTH CLAIM FOR RELIEF (Unjust Enrichment)  . . . . . .  59

3

TENTH CLAIM FOR RELIEF (Civil Conspiracy)  . . . . . .  61
ELEVENTH CLAIM FOR RELIEF (Indemnity)  . . . . . . . .  64

4

5

IX.   PRAYER FOR RELIEF  . . . . . . . . . . . . . . . . . .  65

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 3 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1   **Allegations Common to all Claims for Relief**

2                 **I.   INTRODUCTION AND OVERVIEW**

3   **A.   PARTIES AND CONDUCT**

4                              1.

5        This action is brought by the State of Oregon against the

6   manufacturers and sellers of approximately 98% of the tobacco

7   products sold in the United States.  Many of their parent or

8   affiliated corporations are also named as defendants.  The only

9   significant tobacco purveyors not named as defendants are Liggett

10  & Myers, Inc. and its affiliates (hereafter "Liggett") which

11  control the other 2% of the United States tobacco market and with

12  whom the plaintiff has, or expects shortly, to enter into a

13  settlement agreement.  In this Complaint, the tobacco

14  manufacturers and their affiliates, including Liggett, will be

15  referred to as the "Tobacco Companies."  When intending to

16  exclude Liggett, the reference will be to the "defendant Tobacco

17  Companies."

18                              2.

19       Also named as defendants are Hill & Knowlton, Inc.

20  (hereafter "Hill & Knowlton"), which is the public relations firm

21  for the Tobacco Companies, and three organizations created by the

22  Tobacco Companies which perform public relations services for the

23  Tobacco Companies or purport to do or sponsor scientific

24  research, primarily regarding tobacco and health.  All of the

25  parties are described with greater particularity later in this

26  Complaint.

Page 4 - PLAINTIFF'S COMPLAINT

3.

The defendants' conduct may be fairly summarized as follows:

a.   The Tobacco Companies and their predecessors in interest sold tobacco to Oregon consumers knowing it to be addictive, to cause cancer, heart disease, emphysema and other diseases, and to result in premature death for approximately one-third of their Oregon customers.  They also artificially manipulated the amount of nicotine in the tobacco in order to maintain its addictive quality.

b.   The Tobacco Companies, starting in 1953 and continuing to the present, represented to the general public, including Oregon consumers, that they would undertake, sponsor, and promote objective scientific research regarding the health effects of tobacco, and that they would make known the results of that research.  The Tobacco Companies, together with Hill & Knowlton, formed the other three named defendants or their predecessors (hereafter the Tobacco Researchers), representing to the general public, including Oregon consumers, that the Tobacco Researchers would perform the functions described in this subparagraph b.

c.   The Tobacco Companies and the Tobacco Researchers, with the assistance or under the direction of Hill & Knowlton, actually frustrated any effort to undertake or sponsor such scientific research.  They undertook and promoted scientific research which was not designed and performed according to the accepted scientific standards of the day; they systematically

///

Page 5 - PLAINTIFF'S COMPLAINT

1    suppressed, by firing researchers and destroying or hiding

2    research results (with the assistance of their counsel),

3    scientific research and studies that tended to show that tobacco

4    had adverse health effects; they publicly denigrated and cast

5    aspersions on legitimate scientific research that tended to prove

6    tobacco's adverse health effects, knowing the research to be of

7    high quality; they publicly declared that tobacco had no adverse

8    health effects when they knew that it did; and they publicly

9    declared that there was legitimate scientific dispute concerning

10   tobacco's adverse health effects when, in fact, they knew there

11   was no such legitimate scientific dispute.

12        d.   The Tobacco Companies, with the assistance of Hill &

13   Knowlton and the Tobacco Researchers, acted in concert to prevent

14   the development of a "safer" cigarette, i.e, a cigarette that was

15   less addictive and had less deleterious effects on human health.

16        e.   The Tobacco Companies, with the assistance of Hill &

17   Knowlton and the Tobacco Researchers, acted in concert to make

18   sure that none of the Tobacco Companies promoted the products of

19   any Tobacco Company over the products of another on the basis of

20   superior health effects.

21        f.   The Tobacco Companies, since at least the mid-1980s,

22   have intentionally placed advertisements designed to lure minors

23   to purchase tobacco products, notwithstanding that Oregon law

24   provides that it is a criminal violation for a minor to possess

25   tobacco and for anyone to sell tobacco to a minor.  The Tobacco

26   Companies' advertisements have been successful, enticing

Page 6 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1  approximately 11,000 Oregon teenagers to start smoking each year,

2  one-third of whom will die premature deaths, 11.3 years

3  premature, as a result of tobacco addiction.

4      **B.   THE LEGAL THEORIES**

5                              4.

6      The conduct of the defendants and Liggett, as summarized

7  above, constitutes violations of Oregon's Unlawful Trade

8  Practices Act, antitrust statutes, and Racketeer Influenced and

9  Corrupt Organizations Act.  The conduct also gives rise to

10 remedies under the common law for civil conspiracy, negligence,

11 unjust enrichment, fraudulent misrepresentation, and indemnity.

12     **C. DAMAGES**

13                             5.

14     Many of the Oregon residents afflicted with tobacco-related

15 diseases are or were poor and financially unable to provide for

16 their own medical care.  Pursuant to plaintiff's Medicaid

17 program, plaintiff has provided and paid for such medical care,

18 either directly or through "capitation" payments under the Oregon

19 Health Plan.  These payments place an extraordinary burden on

20 Oregon taxpayers and are significantly higher because of

21 defendants' unlawful sales and advertising.  Plaintiff also pays

22 for such medical care for its employees.  The amount expended by

23 plaintiff to pay the medical costs caused by defendants' conduct

24 has been increasing each year and, although the precise amount is

25 unknown and will be determined at trial, it is estimated to be

26 ///

Page 7 - PLAINTIFF'S COMPLAINT

1   approximately $60 million annually in the current budget

2   biennium.

3                              6.

4       In addition to actual damages described immediately above,

5   plaintiff is also entitled to additional statutory damages and

6   relief as follows:

7       a.   A civil penalty of up to $25,000 for each violation of

8   the Unlawful Trade Practices Act, consisting of each sale of a

9   tobacco product within the State of Oregon and each day that the

10  defendants falsely advertised their products within the State of

11  Oregon;

12      b.   Treble plaintiff's actual damages under Oregon's

13  antitrust laws;

14      c.   Forfeiture of all the defendants' property and a

15  penalty of $250,000 pursuant to Oregon's Racketeer Influenced and

16  Corrupt Organizations Act (ORICO); and

17      d.   Other legal and equitable relief as set forth in the

18  prayer of this Complaint.

19                      II.   THE PARTIES

20      **A. PLAINTIFF**

21                             7.

22      Plaintiff is the State of Oregon.

23      **B.   DEFENDANTS**

24                             8.

25      Defendant The American Tobacco Company (hereafter "American

26  Tobacco") is a Delaware corporation whose principal place of

Page 8 - PLAINTIFF'S COMPLAINT

1  business is Connecticut.  At all times relevant to this

2  Complaint, American Tobacco manufactured, advertised and sold

3  Lucky Strike, Pall Mall, Tareyton, American, Malibu, Montclair,

4  Newport, Misty, Iceberg, Silk Cut, Silva Thins, Sobrania, Bull

5  Durham, and Carlton cigarettes and other tobacco products in

6  Oregon and throughout the United States.  In 1994, American

7  Tobacco was sold to British-American Tobacco Co., parent of

8  defendant Brown & Williamson.

9                              9.

10     Defendant Brown & Williamson Tobacco Corporation (hereafter

11  "Brown & Williamson") is a Delaware corporation whose principal

12  place of business is Kentucky.  At all times relevant to this

13  Complaint, Brown & Williamson manufactured, advertised, and sold

14  Kool, Raleigh, Barclay, BelAir, Capri, Richland, Laredo, Eli

15  Cutter and Viceroy cigarettes and other tobacco products in

16  Oregon and throughout the United States.

17                              10.

18     Defendant Lorillard Tobacco Company (hereafter "Lorillard")

19  is a Delaware corporation whose principal place of business is

20  New York.  At all times relevant to this Complaint, Lorillard

21  manufactured, advertised and sold Old Gold, Kent, Triumph, Satin,

22  Max, Spring, Newport, and True cigarettes and other tobacco

23  products in Oregon and throughout the United States.

24                              11.

25     Defendant Philip Morris, Inc. (hereafter "Philip Morris") is

26  a Virginia corporation whose principal place of business is New

Page 9 - PLAINTIFF'S COMPLAINT

1    York.  At all times relevant to this Complaint, Philip Morris

2    manufactured, advertised and sold Philip Morris, Merit,

3    Cambridge, Marlboro, Benson & Hedges, Virginia Slims, Alpine,

4    Dunhill, English Ovals, Galaxy, Players, Saratoga, and Parliament

5    cigarettes and other tobacco products in Oregon and throughout

6    the United States.

7                                12.

8         Defendant R.J. Reynolds Tobacco Company (hereafter

9    "Reynolds") is a New Jersey corporation whose principal place of

10   business is North Carolina.  At all times relevant to this

11   Complaint, Reynolds manufactured, advertised and sold Camel,

12   Vantage, Now, Doral, Winston, Sterling, Magna, More, Century,

13   Bright Rite and Salem cigarettes and other tobacco products in

14   Oregon and throughout the United States.

15                               13.

16        Defendant United States Tobacco Company (hereafter "U.S.

17   Tobacco") is a Delaware corporation whose principal place of

18   business is Connecticut.  At all times relevant to this

19   Complaint, U.S. Tobacco manufactured, advertised and sold Sano

20   cigarettes and smokeless tobacco (snuff and chewing tobacco)

21   under various brand names including Happy Days, Skoal and

22   Copenhagen in Oregon and throughout the United States .

23                               14.

24        Defendant British American Tobacco Company, Ltd. (hereafter

25   "BATCO") is a British Corporation whose registered office is in

26   Middelsex, England.  BATCO is or was a related corporation of

Page 10 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1  defendant Brown & Williamson.  Both are owned by BAT Industries,

2  p.l.c.  At all times relevant to this Complaint, BATCO,

3  individually or through its affiliate, agent, alter ego,

4  subsidiary and/or division Brown & Williamson,  advertised,

5  promoted and sold its own tobacco products such as "555 Express"

6  cigarettes in Oregon.  BATCO, individually, or through its

7  associated companies, agents, or subsidiaries has also conducted

8  significant research for Brown & Williamson on the topics of

9  smoking, disease, and addiction.  On information and belief,

10  Brown & Williamson also sent to England research conducted in the

11  United States on the topics of smoking, disease, and addiction to

12  remove sensitive and inculpatory documents from United States

13  jurisdiction.  BATCO is a participant in the conspiracy described

14  herein and has caused harm and affected commerce in the State of

15  Oregon.

16                              15.

17      Defendant B.A.T. Industries p.l.c. (hereafter "B.A.T.

18  Industries" or "BAT-II") is a British corporation whose principal

19  place of business is in London, England.  Through a succession of

20  intermediary corporations and holding companies, B.A.T.

21  Industries is the sole shareholder of Brown & Williamson.

22  Through Brown & Williamson, B.A.T. Industries has placed

23  cigarettes into the stream of commerce with the expectation that

24  substantial sales of cigarettes would be made in the United

25  States and in the State of Oregon.  B.A.T. Industries has also

26  conducted, or through its agents, subsidiaries, associated

Page 11 - PLAINTIFF'S COMPLAINT

1  companies and/or co-conspirators has conducted, significant

2  research for Brown & Williamson on the topics of smoking, disease

3  and addiction.  On information and belief, Brown & Williamson

4  also sent to England research conducted in the United States on

5  the topics of smoking, disease and addiction to remove sensitive

6  and inculpatory documents from American jurisdictions, and such

7  documents are and were subject to B.A.T. Industries' control.

8  B.A.T. Industries is a participant in the conspiracy described

9  herein and has caused harm and affected commerce in Oregon.

10                              16.

11       Liggett is a Delaware corporation with its principal place

12  of business in North Carolina.  At all times relevant to this

13  complaint, Liggett manufactured, advertised and sold various

14  tobacco products, including Chesterfield, Decade, L&M, Pyramid,

15  Dorado, Eve, Stride, Generic and Lark cigarettes in Oregon and

16  throughout the United States.  Liggett is not a defendant because

17  it has, or is shortly expected to, enter into a settlement

18  agreement with plaintiff.

19                              17.

20       Defendant Hill & Knowlton is a New Jersey corporation with

21  its principal place of business in New York.  Hill & Knowlton

22  played an active and knowing role in the conspiracy complained

23  of, and aided circulation and/or publication of the false

24  statements of the Tobacco Companies and the Council for Tobacco

25  Research.  Hill & Knowlton has been the primary advertising

26  agency responsible for dissemination of the false and misleading

Page 12 - PLAINTIFF'S COMPLAINT

1  information in question in its role as the advertising and public

2  relations agency for The Tobacco Institute, Inc. (hereafter

3  "Tobacco Institute"), The Council for Tobacco Research-U.S.A.,

4  Inc. (hereafter "CTR") and its predecessor Tobacco Institute

5  Research Committee (hereafter "TIRC"), and several members of the

6  tobacco industry, including Liggett, Philip Morris, Reynolds,

7  American Tobacco and Lorillard.  In the course of such

8  representation, Hill & Knowlton aided these defendants in

9  creating and issuing false information and concealing the truth

10  about the link between tobacco and cancer or other health

11  hazards, the addictive nature of nicotine, and the true nature of

12  the activities of the TIRC/CTR and its relationship to the

13  industry.  Hill & Knowlton has been involved in the wrongful

14  conduct and conspiracy since its creation.

15                                18.

16       Defendant CTR is the successor in interest to TIRC, and is a

17  New York nonprofit corporation with its principal place of

18  business in New York.  At all times relevant to this Complaint,

19  CTR and TIRC operated as public relations and lobbying arms of

20  the Tobacco Companies and as agents and employees of the Tobacco

21  Companies.  They also acted as facilitating agencies in

22  furtherance of defendants' combination and conspiracy as

23  described in this complaint.  In doing the things alleged, CTR

24  and TIRC acted within the course and scope of their agency and

25  employment, and acted either at the direction or with the

26  consent, permission, and authorization of each of the Tobacco

Page 13 - PLAINTIFF'S COMPLAINT

1  Companies.  All actions of the CTR and TIRC alleged were ratified
2  and approved by the officers or managing agents of the Tobacco
3  Companies.  CTR and TIRC have been involved continuously in the
4  conspiracy described and the actions of CTR and TIRC have
5  affected commerce and caused harm in Oregon.
6                                  19.
7        Defendant Smokeless Tobacco Council, Inc. (hereafter "STC")
8  is a New York non-profit corporation whose principal place of
9  business is Washington, D.C.  STC ostensibly was formed for
10  reasons of supporting objective research into the biologic
11  consequences of the use of smokeless tobacco.  Like CTR, it was
12  used to further the goals of the conspiracy.  Dominated by U.S.
13  Tobacco, STC also included as members several small producers of
14  smokeless tobacco and was financially supported by several of the
15  Tobacco Companies, including Brown & Williamson, Lorillard and
16  Reynolds.  Personnel from the Tobacco Companies actively
17  participated, as agents of the Tobacco Companies, in STC
18  activities.  At all relevant times, STC operated as a public
19  relations and lobbying arm of the Tobacco Companies and as agent
20  and employee of the Tobacco Companies.  It also acted as a
21  facilitating agency in the furtherance of defendants' combination
22  and conspiracy as described in this complaint.  In doing the
23  things alleged, STC acted within the course and scope of its
24  agency and employment, and acted with the consent, permission and
25  authorization of each of the Tobacco Companies.  All actions of
26  STC alleged were ratified and approved by the officers or

Page 14 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1  managing agents of the Tobacco Companies.  STC has been involved

2  continuously in the conspiracy described and its actions have

3  affected commerce and caused harm in Oregon.

4                                20.

5      Defendant Tobacco Institute is a New York nonprofit

6  corporation with its principal place of business in Washington,

7  D.C.  At all relevant times, Tobacco Institute operated as a

8  public relations and lobbying arm of the Tobacco Companies and

9  was an agent and employee of the Tobacco Companies.  It also

10  acted as a facilitating agency in furtherance of the combination

11  and conspiracy of the defendants described in this Complaint.  In

12  doing the things alleged, Tobacco Institute acted within the

13  course and scope of its agency and employment, and acted with the

14  consent, permission, and authorization of each of the Tobacco

15  Companies.  All actions of the Tobacco Institute alleged were

16  ratified and approved by the officers or managing agents of the

17  Tobacco Companies.  Tobacco Institute has been involved in the

18  conspiracy described in this Complaint and the actions of Tobacco

19  Institute have affected commerce and caused harm in Oregon.

20                                21.

21      The above named defendants are sometimes herein collectively

22  referred to as "defendants" (excluding Liggett) or the "Tobacco

23  Industry."

24  ///

25  ///

26  ///

Page 15 - PLAINTIFF'S COMPLAINT

III.   JURISDICTION AND VENUE

22.

This Complaint is filed under provisions of the Oregon Unlawful Trade Practices Act, ORS 646.605 et seq., the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO), ORS 166.715 to ORS 166.735, the Oregon Antitrust Act, ORS 646.705 et seq., ORS 30.310, and the common law of the State of Oregon.

23.

The Governor of the State of Oregon is the chief executive officer of Oregon.  The Governor has authorized the Attorney General to appear, commence and prosecute this action.  Hersh Crawford is the Director of the Office of Medical Assistance Programs of the Oregon Department of Human Resources, and is the state official with primary responsibility for state and federal programs providing medical assistance to financially needy Oregonians.  Mr. Crawford has authorized the Attorney General to bring this action.  Having concluded that this action is necessary and advisable to protect the interests of the state, the Attorney General is authorized by ORS 180.060(1)(d) to bring this action.

24.

Further authority for the Attorney General to commence this action is conferred by ORS 646.605 to 646.552; ORS 646.705 to 646.805; ORS 180.060; and ORS 180.520.

///

///

Page 16 - PLAINTIFF'S COMPLAINT

1                              25.

2        The violations alleged herein have been and are being

3   committed in whole or in part, and affect commerce in, and

4   defendants do business in Multnomah County and elsewhere

5   throughout the State of Oregon.

6                    IV.   CONSPIRACY ALLEGATIONS

7                              26.

8        In committing the wrongful acts alleged, defendants and

9   Liggett, often with the assistance and knowledge of their

10  counsel, have pursued a common course of conduct, acted in

11  concert with, aided and abetted and conspired with one another,

12  in furtherance of their common plan and scheme outlined herein.

13                             27.

14       Various other persons, firms, and corporations, who have

15  been named as Unknown Corporations and John Does 1-100 and Jane

16  Does 1-100, participated as co-conspirators in the illegal acts

17  alleged and performed acts and made statements in furtherance of

18  the combination and conspiracy alleged in this complaint.

19                  V.   NATURE OF TRADE AND COMMERCE

20                             28.

21       Cigarette manufacturing has been one of the most

22  concentrated industries in the United States throughout this

23  century.  Philip Morris, Reynolds, Brown & Williamson, Lorillard,

24  American Tobacco, and Liggett comprise the "Big Six" cigarette

25  manufacturers who control almost 100% of the market in the United

26  States and in Oregon.  Philip Morris and Reynolds are the

Page 17 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4712

1  industry leaders with national market shares of approximately 46%

2  and 25% respectively.  The approximate cigarette market shares of

3  the remaining Big Six manufacturers are: Brown & Williamson, 12%

4  (19% if American Tobacco is included); Lorillard, 8%; American

5  Tobacco, 7%; and Liggett, 2%.  The smokeless tobacco market is

6  dominated by U.S. Tobacco and is even more concentrated.

7                              29.

8      In part because of its concentration, the tobacco industry

9  has long been one of America's most profitable businesses, with

10  profit margins estimated to be at least 30%.  The industry earns

11  billions of dollars in profits each year from domestic sales.

12  The exact amount of gross sales and profits derived from Oregon

13  is unknown.

14              VI.   FACTUAL ALLEGATIONS

15                              30.

16      At all material times the cigarettes and other tobacco

17  products sold, manufactured or promoted by the defendants have

18  the following characteristics:

19      a.    They are physically addictive;

20      b.    They cause death and debilitating disease, including

21  cancer, heart disease, stroke, and emphysema to those who smoke

22  them or chew tobacco and, in some cases, to those who are non-

23  smokers but who are exposed to smoke in the environment.

24                              31.

25      Defendants have known since no later than 1974 that tobacco

26  has the characteristics described in the immediately preceding

Page 18 - PLAINTIFF'S COMPLAINT

1  paragraph.  All defendants have had reason to know of those

2  characteristics since at least 1946, and at least one of the

3  defendants (Brown & Williamson) has known since at least 1963

4  that tobacco has those characteristics.

5                                    32.

6       Beginning on December 15, 1953, and continuing to the

7  present time, defendants and their predecessors in interest

8  entered into a joint agreement to engage in a public relations

9  campaign to counteract the growing public perception that smoking

10 cigarettes and consumption of their tobacco products was

11 injurious to human health.  Pursuant to the joint agreement, the

12 defendants engaged in the following activities:

13      a.   They ceased developing and marketing a "safer"

14 cigarette, i.e., a cigarette with health effects less injurious

15 than those on the market at that time, even though Liggett had

16 developed such a cigarette by 1978, and Philip Morris and Brown &

17 Williamson and BATCO undertook research and development they

18 abandoned by 1980.  Reynolds also undertook and abandoned such

19 research and development.

20      b.   They ceased advertising that claimed the tobacco

21 products of one of the Tobacco Companies was less harmful to

22 health than the products of any competitor.

23      c.   They proclaimed, primarily through the "Frank

24 Statement" published in newspapers throughout the United States,

25 including *The Oregonian* on January 4, 1954, and through other

26 public announcements and public statements of employees and

Page 19 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1  officials, that they would seek to promote, by the creation of

2  the TIRC (which later became defendant CTR), reliable scientific

3  research into the actual health effects of tobacco consumption,

4  and that they would make the results of such research known to

5  the general public.  Other such public statements were made by

6  Dr. Clarence Cook Little, Chairman of the "science advisory

7  board" of TIRC in July, 1957; by Bowman Gray, Chairman of the

8  Board of R.J. Reynolds on behalf of the Tobacco Companies in

9  testimony before a committee of the United States House of

10  Representatives on June 25, 1964; by Horace Kornegay, president

11  of defendant Tobacco Institute, on February 13, 1978; and by

12  other statements too numerous to list but which are known to

13  defendants.

14       d.    They suppressed reliable scientific research tending to

15  show that tobacco was addictive and had ill health effects;

16  promoted and publicized flawed research that either minimized or

17  raised bogus questions as to nicotine's addictive qualities and

18  tobacco's adverse health effects; and sought to denigrate

19  independent research that found nicotine was addictive and

20  tobacco had ill health effects.  All instances of defendants'

21  conduct as alleged in this sub-paragraph are not known to

22  plaintiff but include:  concealment of a 1974 study funded by

23  defendant Council for Tobacco Research that found "reduced tar"

24  cigarettes do not eliminate risks to health like lung cancer; a

25  project sponsored by defendant CTR on "sick building syndrome"

26  that relied on homes chosen by defendant Tobacco Institute and

Page 20 - PLAINTIFF'S COMPLAINT

1    that relied on another industry-sponsored study that contained

2    falsified data; and placement of advertisements by defendant

3    Tobacco Institute attacking a 1981 Japanese study finding a

4    connection between lung cancer and exposure to tobacco smoke from

5    another person's cigarettes.

6                                   33.

7           Beginning at least as early as the mid-1980s, the Tobacco

8    Companies have intentionally encouraged consumption of tobacco

9    products by minors by marketing and advertising their products to

10   minors, notwithstanding that possession of tobacco by minors and

11   sale of tobacco to minors are violations of the criminal laws of

12   the State of Oregon.  Defendant Tobacco Companies' conduct in

13   this regard continues to the present.  Plaintiff has not yet

14   determined all advertising campaigns and placements of the

15   defendants that are and were directed toward minors, but examples

16   are:

17          a.    Philip Morris' campaign for Marlboro using the

18   "Marlboro Man;"

19          b.    R.J. Reynolds' campaign for Camel beginning in

20   approximately 1988, including its payment for promotion of Camel

21   in movies such as "Who Framed Roger Rabbit," and "Honey, I Shrunk

22   the Kids;"

23          c.    Brown & Williamson's payment of $500,000 to the actor

24   Sylvester Stallone to place its product in five of his feature

25   films;

26   ///


Page 21 - PLAINTIFF'S COMPLAINT

1   d. Philip Morris' payment for the promotion of Marlboro in

2 "Superman II," "Risky Business," and "Crocodile Dundee;"

3   e. American Tobacco's payment for the promotion of Lucky

4 Strike in "Beverly Hills Cop;" and

5   f. Lorillard's campaign for Salem starting in the 1980s.

6 Concurrently, the defendant Tobacco Companies have publicly

7 denied that they are intentionally marketing their products to

8 minors.

9       VII. FRAUDULENT CONCEALMENT

10         34.

11   Plaintiff was without knowledge of defendants' combination

12 or conspiracy, or of any facts from which it might reasonably be

13 concluded that defendants were illegally conspiring, or which

14 would have led to the discovery thereof until 1996.  Plaintiff

15 could not have discovered such facts or the alleged violations at

16 an earlier time because defendants fraudulently concealed their

17 course of conduct.

18         35.

19   Plaintiff is not aware of all the methods used by defendants

20 and Liggett to conceal their activities, but believes that the

21 methods used in furtherance of their combination and conspiracy

22 were by nature self-concealing and not of a type which could have

23 reasonably been apparent to plaintiff.  For example, defendants'

24 suppression of scientific research was done covertly.  Defendants

25 also concealed their activities by hiding relevant documents.

26 ///

Page 22 - PLAINTIFF'S COMPLAINT

36.

Defendants' conspiracy and illegal conduct is ongoing and continues to the present.

**Allegations for Particular Claims for Relief**

**VIII.   CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF--UNLAWFUL TRADE PRACTICES ACT**

**ORS 646.605-646.652**

**(Unconscionable Tactics: Unlawful Marketing and Targeting Minors)**

37.

Plaintiff realleges and incorporates herein the foregoing allegations of this Complaint.

38.

More than 10 days prior to the filing of this Complaint, each defendant was given notice of these violations pursuant to ORS 646.632 and in conformance with ORS 646.622, but each has failed to execute and deliver an Assurance of Voluntary Compliance in conformity with ORS 646.632.

39.

The Oregon Legislature has declared that it is the public policy of Oregon to prohibit minors' access to tobacco products. Pursuant to ORS 163.575 it is a criminal violation to give or sell tobacco products to minors, and such action constitutes endangering the welfare of a minor; pursuant to ORS 167.400, it is a criminal violation for a minor to possess tobacco products.

///

Page 23 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1                              40.

2        Defendants have engaged in a course of conduct and have

3   suppressed information with the intent that others rely on such

4   suppression in an effort to unconscionably and unlawfully

5   encourage minors to violate ORS 167.400 and to encourage adults

6   to violate ORS 163.575

7                              41.

8        More specifically, and as set forth above, defendants have

9   caused the Tobacco Companies' products to be sold to minors, in

10  part, by (a) concealing that their marketing is designed to

11  encourage minors to smoke in violation of Oregon law; (b)

12  concealing that their products are addictive and harmful and

13  suppressing and omitting information on these subjects, while at

14  the same time portraying tobacco use as glamorous and in a

15  fashion that is designed to minimize the risks associated with

16  tobacco use; (c) designing their marketing campaigns with the

17  intent that minors rely on the Tobacco Companies' advertisements;

18  (d) engaging in conduct with the purpose of causing minors to

19  smoke in violation of Oregon law, while publicly, falsely and

20  hypocritically claiming that they are against encouraging minors

21  to smoke, and while they have acted precisely to encourage minors

22  to smoke.

23                             42.

24       Each day the defendant Tobacco Companies targeted minors in

25  Oregon in their advertising as described above, they violated the

26  expressed public policy of the State of Oregon, and encouraged

Page 24 - PLAINTIFF'S COMPLAINT

1   others to violate the criminal law of this State and, so doing,

2   they engaged in an unconscionable tactic in the sale of goods in

3   violation of ORS 646.607.

4                                43.

5       The exact dates on which each defendant Tobacco Company

6   began engaging in, and continued to engage in, the unconscionable

7   tactics described above is unknown to plaintiff but will be

8   determined prior to, and proven at, trial.

9                                44.

10      Defendants' violations of ORS 646.607(1) were done wilfully,

11  in that they knew or should have known that their conduct was in

12  violation of law.

13                   SECOND CLAIM FOR RELIEF

14           (Unlawful Trade Practice - ORS 646.607(1))

15                               45.

16      Plaintiff realleges and incorporates herein the foregoing

17  allegations of this Complaint.

18                               46.

19      Each sale of a tobacco product in Oregon manufactured or

20  distributed by defendant Tobacco Companies was a sale that

21  resulted from those defendants' willful employment of

22  unconscionable tactics in connection with the sale or other

23  disposition of goods or services to Oregon consumers,

24  constituting a violation of the Oregon Unlawful Trade Practices

25  Act, ORS 646.607(1), by:

26  ///

Page 25 - PLAINTIFF'S COMPLAINT

1    a.    Making false and misleading oral and written statements

2    that had, and have, the capacity, tendency, or effect of

3    deceiving or misleading Oregon consumers, including but not

4    limited to statements concerning the defendants' knowledge of the

5    harmful effects of smoking and the addictive properties of

6    nicotine;

7    b.    Promoting and selling tobacco products that addict

8    Oregon consumers, while misleading the public as to defendants'

9    concern and knowledge about the harmful and addictive nature of

10   tobacco, the information available to them regarding the health

11   effects and addictive nature of tobacco, and the purpose and

12   independence of the TIRC/CTR;

13   c.    Taking unfair advantage of Oregon consumers' ignorance

14   of the true harmful and addictive nature of tobacco products,

15   while perpetuating and fostering that ignorance through a

16   campaign of misleading and deceptive advertisements some of which

17   were conducted under the guise of scientific research and

18   findings;

19   d.    Repeatedly and systematically misleading the public

20   about the extent to which there was a genuine controversy and

21   uncertainty among scientists and health officials regarding

22   whether smoking cigarettes is addictive;

23   e.    Repeatedly and systematically misleading the public

24   about the extent to which there was genuine controversy and

25   uncertainty among scientists and health officials regarding

26   ///

Page 26 - PLAINTIFF'S COMPLAINT

1  whether smoking cigarettes is the cause of serious and life

2  threatening disease;

3      f.  Falsely claiming the defendants were conscientiously

4  undertaking joint and individual research efforts involving

5  disinterested, independent researchers, intending to discover the

6  truth regarding the health consequences of smoking;

7      g.  Suppressing research projects that "threatened" to

8  result in important discoveries regarding smoking and health,

9  which might jeopardize the profitability of cigarette sales or

10 the tobacco industry's position in litigation;

11     h.  Actively concealing scientific findings of vital

12 interest to health officials and others concerned with the health

13 effects of smoking because disclosure would disadvantage the

14 tobacco industry;

15     i.  Manipulating nicotine levels in order to ensure

16 delivery of that drug to smokers in quantities which ensured

17 physiological impact and promoted continuing dependency, and

18 failing to disclose and denying such manipulation; and

19     j.  Manufacturing and marketing a defective product

20 (cigarettes) which is addictive and carcinogenic.

21                               47.

22     Defendants' violations of ORS 646.607 were done wilfully, in

23 that they knew or should have known that their conduct was in

24 violation of law.

25 ///

26 ///

Page 27 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 373-4732

1                           48.

2       The number of sales of each of the defendant Tobacco

3  Companies' products in the State of Oregon is unknown to

4  plaintiff but will be determined prior to, and proven at, trial.

5                    **THIRD CLAIM FOR RELIEF**

6            **(Unlawful Trade Practice - ORS 646.608(1)(g)**

7                    **and ORS 646.608(1)(e))**

8                           49.

9       Plaintiff realleges and incorporates herein the foregoing

10  allegations of this Complaint.

11                          50.

12      Each sale of a tobacco product in Oregon manufactured or

13  distributed by defendant Tobacco Companies was a sale that

14  resulted from those defendants' willful misrepresentation that

15  their tobacco products were  of a particular standard, quality or

16  grade when they were not, in violation of the Oregon Unlawful

17  Trade Practices Act, ORS 646.608(1)(g), by:

18      a.   Making false and misleading oral and written statements

19  that had, and have, the capacity, tendency, or effect of

20  deceiving or misleading Oregon consumers, including but not

21  limited to statements concerning the defendants' knowledge of the

22  harmful effects of smoking and the addictive properties of

23  nicotine;

24      b.   Promoting and selling tobacco products that addict

25  Oregon consumers, while misleading the public as to defendants'

26  concern and knowledge about the harmful and addictive nature of

Page 28 - PLAINTIFF'S COMPLAINT

1 tobacco, the information available to them regarding the health

2 effects and addictive nature of tobacco, and the purpose and

3 independence of the TIRC/CTR;

4      c. Taking unfair advantage of Oregon consumers' ignorance

5 of the true harmful and addictive nature of tobacco products,

6 while perpetuating and fostering that ignorance through a

7 campaign of misleading and deceptive advertisements some of which

8 were conducted under the guise of scientific research and

9 findings;

10      d. Repeatedly and systematically misleading the public

11 about the extent to which there was a genuine controversy and

12 uncertainty among scientists and health officials regarding

13 whether smoking cigarettes is addictive;

14      e. Repeatedly and systematically misleading the public

15 about the extent to which there was genuine controversy and

16 uncertainty among scientists and health officials regarding

17 whether smoking cigarettes is the cause of serious and life

18 threatening disease;

19      f. Falsely claiming the defendants were conscientiously

20 undertaking joint and individual research efforts involving

21 disinterested, independent researchers, intending to discover the

22 truth regarding the health consequences of smoking;

23      g. Suppressing research projects that "threatened" to

24 result in important discoveries regarding smoking and health,

25 which might jeopardize the profitability of cigarette sales or

26 the tobacco industry's position in litigation;

Page 29 - PLAINTIFF'S COMPLAINT

1      h.    Actively concealing scientific findings of vital

2  interest to health officials and others concerned with the health

3  effects of smoking because disclosure would disadvantage the

4  tobacco industry; and

5      i.    Manipulating nicotine levels in order to ensure

6  delivery of that drug to smokers in quantities which ensured

7  physiological impact and promoted continuing dependency, and

8  failing to disclose and denying such manipulation.

9                                    51.

10     Each sale of a tobacco product in Oregon manufactured or

11  distributed by defendant Tobacco Companies was a sale that

12  resulted from those defendants' willful misrepresentation that

13  their tobacco products had sponsorship, approval,

14  characteristics, ingredients, uses, benefits, quantities or

15  qualities that they do not have, or that a person has

16  sponsorship, approval, status, qualification, affiliation, or

17  connection that the person does not have, in violation of

18  ORS 646.608(1)(e), by:

19     a.    Asserting that the TIRC/CTR would be run by a scientist

20  of unimpeachable integrity and advised by a board of

21  distinguished scientists disinterested in the tobacco industry

22  when, in fact, TIRC was controlled by defendants and used to

23  promote the sale of their tobacco products;

24     b.    Making false and misleading oral and written statements

25  that had, and have, the capacity, tendency, or effect of

26  deceiving or misleading Oregon consumers, including but not

Page 30 - PLAINTIFF'S COMPLAINT

1   limited to statements concerning the defendants' knowledge of the

2   harmful effects of smoking and the addictive properties of

3   nicotine;

4        c.   Promoting and selling tobacco products that addict

5   Oregon consumers, while misleading the public as to defendants'

6   concern and knowledge about the harmful and addictive nature of

7   tobacco, the information available to them regarding the health

8   effects and addictive nature of tobacco, and the purpose and

9   independence of the TIRC/CTR;

10       d.   Taking unfair advantage of Oregon consumers' ignorance

11  of the true harmful and addictive nature of tobacco products,

12  while perpetuating and fostering that ignorance through a

13  campaign of misleading and deceptive advertisements some of which

14  were conducted under the guise of scientific research and

15  findings;

16       e.   Repeatedly and systematically misleading the public

17  about the extent to which there was a genuine controversy and

18  uncertainty among scientists and health officials regarding

19  whether smoking cigarettes is addictive;

20       f.   Repeatedly and systematically misleading the public

21  about the extent to which there was genuine controversy and

22  uncertainty among scientists and health officials regarding

23  whether smoking cigarettes is the cause of serious and life

24  threatening disease;

25       g.   Falsely claiming the defendants were conscientiously

26  undertaking joint and individual research efforts involving

Page 31 - PLAINTIFF'S COMPLAINT

1  disinterested, independent researchers, intending to discover the

2  truth regarding the health consequences of smoking;

3       h.   Suppressing research projects that "threatened" to

4  result in important discoveries regarding smoking and health,

5  which might jeopardize the profitability of cigarette sales or

6  the tobacco industry's position in litigation;

7       i.   Actively concealing scientific findings of vital

8  interest to health officials and others concerned with the health

9  effects of smoking because disclosure would disadvantage the

10  tobacco industry; and

11       j.   Manipulating nicotine levels in order to ensure

12  delivery of that drug to smokers in quantities which ensured

13  physiological impact and promoted continuing dependency, and

14  failing to disclose and denying such manipulation.

15                            52.

16       Defendants' violations of ORS 646.608(1)(g) and

17  646.608(1)(e) were done wilfully, in that they knew or should

18  have known that their conduct was in violation of law.

19                            53.

20       The number of sales of each of the defendant Tobacco

21  Companies' products in the State of Oregon is unknown to

22  plaintiff but will be determined prior to, and proven at, trial.

23  ///

24  ///

25  ///

26  ///

Page 32 - PLAINTIFF'S COMPLAINT

1          FOURTH CLAIM FOR RELIEF

2          (Antitrust - Restraint of Trade)

3                    54.

4      Plaintiff realleges and incorporates herein the foregoing

5  allegations of this Complaint.

6                    55.

7      Plaintiff, acting through its Attorney General, brings this

8  claim under ORS 646.770 and 646.780 for equitable relief and to

9  recover economic damages sustained by plaintiff in its business

10  or property.

11                    56.

12     As described more fully below, defendants, Liggett, and

13  other unnamed co-conspirators have engaged in illegal conduct

14  involving interstate trade or commerce which is primarily of an

15  intrastate nature and over which federal jurisdiction has not

16  been exercised by the Federal Trade Commission and the United

17  States Department of Justice.

18                    57.

19     Beginning as early as the 1950s, and continuing until the

20  present date, defendants, Liggett, and other unnamed co-

21  conspirators entered into a contract, combination or conspiracy

22  in unreasonable restraint of trade and commerce in the market for

23  tobacco products in Oregon.

24                    58.

25     This contract, combination or conspiracy had the purpose and

26  effect of:

Page 33 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1      a.   Restraining competition in the marketing and sale of

2 tobacco products in the State of Oregon;

3      b.   Restraining competition among defendants on the basis

4 of the safety and health characteristics and/or risks of

5 defendants' tobacco products;

6      c.   Restraining competition among tobacco product

7 manufacturers for the research, development, production, sales

8 and marketing of product innovations relating to the health

9 effects of tobacco use, including "safer" cigarettes; and

10     d.   Shifting the costs of health care associated with

11 tobacco product use from the Tobacco Companies to the health care

12 markets and to third parties, including plaintiff, within the

13 health care markets.

14                           59.

15     As part of the contract, combination or conspiracy,

16 defendants, among other things, expressly and impliedly agreed

17 to:

18      a.   Restrain and suppress competition on health claims and

19 the health and safety characteristics of  tobacco products in the

20 United States and in the State of Oregon;

21      b.   Restrain and suppress research on the harmful health

22 effects of tobacco product use and the addictive nature of

23 ˙ nicotine;

24      c.   Restrain and suppress the dissemination of information

25 on the harmful health effects of tobacco product use and the

26 addictive nature of nicotine;

Page 34 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1      d.    Restrain and suppress the research, development,

2  production, sales and marketing of product innovations relating

3  to the health effects of tobacco product use, including "safer"

4  cigarettes, in the State of Oregon; and

5      e.    Restrict output by not competing on the basis of

6  product innovations, including the development and marketing of

7  "safer" cigarettes.

8                              60.

9      The contract, combination or conspiracy was advanced,

10  facilitated, and enforced through agreements, understandings or

11  concerted actions by and among defendants, Liggett and unnamed

12  co-conspirators to:

13      a.    Withhold information that was in the possession and/or

14  knowledge of the defendants and Liggett about the harmful health

15  effects of tobacco product use and the addictive nature of

16  nicotine;

17      b.    Disseminate false information, through advertising and

18  other means, of the true causal relationship between tobacco

19  product use and the harmful health effects of such use, and

20  falsely discrediting reports by others regarding the health

21  effects of tobacco product use;

22      c.    Destroy, suppress and/or conceal documents, research,

23  independent research, and information relating to the causal

24  relationship between tobacco product use and harmful health

25  effects, and the addictive nature of nicotine;

26  ///


Page 35 - PLAINTIFF'S COMPLAINT

1      d.  Deceive the public, public officials, and public

2  entities about the health risks of tobacco product use, the true

3  causal relationship between tobacco use and tobacco-related

4  diseases, and the addictive nature of nicotine;

5      e.  Halt, limit, suppress and/or terminate the research,

6  development, sales and marketing of product innovations related

7  to the health risks associated with tobacco product use,

8  including "safer" cigarettes; and

9      f.  Shift the direct and foreseeable health care costs

10  associated with the use of cigarettes and tobacco products to

11  third party payors including plaintiff.

12                          61.

13     Defendants' conduct constitutes a contract, combination or

14  conspiracy in restraint of trade or commerce in violation of

15  ORS 646.725.

16                          62.

17     As a result of defendants' unlawful contract, combination or

18  conspiracy:

19      a.  Competition in the tobacco product market in the State

20  of Oregon has been restrained;

21      b.  Competition in research, development, marketing and

22  sales of product innovations related to the health risks

23  associated with tobacco use, including "safer" cigarettes, in the

24  State of Oregon has been restrained and output has been

25  restricted;

26  ///

Page 36 - PLAINTIFF'S COMPLAINT

1    c.    Oregon consumers have been deprived of the availability

2    and choice of "safer" cigarettes;

3    d.    The volume of tobacco product sales to the Oregon

4    public and the prices charged by the Tobacco Companies for their

5    tobacco products have been maintained at artificial levels;

6    e.    Oregon consumers have been deprived of the availability

7    of accurate information material to their decision about the

8    purchase and use of tobacco products;

9    f.    Oregon consumers have been misinformed and misled

10   concerning the nature and health consequences of use of tobacco

11   products;

12   g.    The Tobacco Companies prevented loss of sales revenues

13   and loss of profits that would have resulted if the information

14   on the harmful effects of tobacco products and the addictive

15   effects of nicotine had been made public;

16   h.    The Tobacco Companies prevented the assumption of

17   health care costs associated with the use of tobacco products

18   that they would have incurred if the information on the harmful

19   health effects of tobacco product use and the addictive effects

20   of nicotine had been made public;

21   i.    The Tobacco Companies shifted the cost of health care

22   associated with tobacco product use to the health care markets

23   and to third parties within the health care markets, including

24   Oregon, which costs would otherwise have been borne by defendant

25   Tobacco Companies as a cost in the tobacco product market; and

26   ///

Page 37 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1      j.  The allocation of resources within Oregon's economy has
2  been adversely affected.

3                    63.

4      Plaintiff has suffered injury to its business or property
5  because:

6      a.  Residents of the State of Oregon have used and continue
7  to use more dangerous tobacco products than they otherwise would
8  have;

9      b.  Residents of the State of Oregon have been deprived of
10  a choice of less dangerous alternatives to the tobacco products
11  that were available to them;

12      c.  Residents of the State of Oregon have suffered higher
13  rates of tobacco-related illnesses and premature deaths than they
14  otherwise would have but for defendants' unlawful conduct;

15      d.  Plaintiff has assumed a burden of the costs, including
16  medical costs, of tobacco-related diseases that were shifted from
17  defendants to third parties, including plaintiff, that would
18  otherwise have been assumed by defendants but for defendants'
19  unlawful conduct; and

20      e.  Plaintiff has incurred higher health care costs in
21  paying for the treatment of the tobacco-related
22  illnesses and diseases than it otherwise would have but for
23  defendants' conduct.

24                    64.

25      Plaintiff was in the target area of defendants' unlawful
26  contract, combination or conspiracy; defendants' unlawful conduct

Page 38 - PLAINTIFF'S COMPLAINT

1  has had and continues to have a direct and foreseeable effect on

2  plaintiff's medical costs; and defendants have reaped and

3  continue to reap enormous profits without paying health care

4  costs that they should incur by shifting the health care costs of

5  tobacco-related illnesses and diseases to third parties,

6  including plaintiff.

7                              65.

8       The market for tobacco products and the market for health

9  care are inextricably intertwined.

10                             66.

11      The injury to plaintiff's business or property is a direct

12  and foreseeable result of defendants' unlawful conduct and is

13  inextricably intertwined with and a necessary step in effecting

14  the ends of defendants' unlawful conduct.

15                             67.

16      The unlawful contract, combination or conspiracy and the

17  effects thereof are continuing, and plaintiff has suffered

18  irreparable injury to its business or property and will continue

19  to suffer irreparable injury unless the equitable relief sought

20  by plaintiff is granted.

21                    **FIFTH CLAIM FOR RELIEF**

22               **(Antitrust - Conspiracy to Monopolize)**

23                             68.

24      Plaintiff realleges and incorporates herein the allegations

25  contained in the Fourth Claim for Relief.

26  ///


Page 39 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1                          69.

2      At all times material herein, the Tobacco Companies jo..ntly

3  possessed 100% of the cigarette market in the State of Oregon,

4  hereafter referred to as a joint monopoly.

5                          70.

6      Defendants entered into the unlawful contract, combination

7  or conspiracy alleged in the Fourth Claim for Relief which

8  necessarily and directly resulted in defendants' preserving,

9  maintaining, expanding and exercising the Tobacco Companies'

10  joint monopoly in the cigarette market in the State of Oregon in

11  violation of ORS 646.730.

12                          71.

13      As part of the unlawful contract, combination or conspiracy

14  alleged in the Fourth Claim for Relief, defendants, among other

15  things, agreed to and engaged in the conduct alleged therein

16  which was specifically intended to preserve, maintain, expand,

17  and exercise the Tobacco Companies' joint monopoly in the

18  cigarette market in the State of Oregon.

19                          72.

20      Defendants' unlawful conduct resulted in:

21      a.    Restraining and stifling entry into the cigarette

22  market by new competitors to compete with the Tobacco Companies;

23      b.    Stifling and suppressing the creation of new products

24  and/or new product markets that would have competed  with the

25  Tobacco Companies but for defendants' unlawful conduct;

26  ///


Page 40 - PLAINTIFF'S COMPLAINT

1    c.   Restricting output  in product innovations, including
2 the development and marketing of "safer" cigarettes; and
3    d.   Artificially maintaining the Tobacco Companies' joint
4 market shares and sales of more addictive cigarettes to the
5 public.

6                              73.

7    As a result of defendants' unlawful contract, combination or
8 conspiracy, plaintiff has suffered the injuries to its business
9 or property as alleged in the Fourth Claim for Relief and will
10 continue to suffer irreparable injury unless the equitable relief
11 sought by plaintiff is granted.

12                             74.

13    Plaintiff was in the target area of defendants' unlawful
14 contract, combination or conspiracy; defendants' unlawful conduct
15 has had and continues to have a direct and foreseeable effect on
16 plaintiff's medical costs; and defendants have reaped and
17 continue to reap enormous profits without paying health care
18 costs that they should incur by shifting the health care costs of
19 tobacco-related illnesses and diseases to third parties,
20 including plaintiff.

21                             75.

22    The market for cigarettes and the market for health care are
23 inextricably intertwined.

24 ///

25 ///

26 ///

Page 41 - PLAINTIFF'S COMPLAINT

1    SIXTH CLAIM FOR RELIEF

2    (Oregon Racketeer Influenced & Corrupt Organizations Act.)

3    76.

4    Plaintiff realleges and incorporates in this claim

5    allegations of every other paragraph alleged in this Complaint.

6    The Attorney General is authorized by ORS 166.725(5) and

7    ORS 166.725(8) to bring the counts stated in this claim for

8    relief.

9    **THE ENTERPRISE**

10    77.

11    Beginning on January 1, 1953 and continuously at all times

12    since, an "enterprise" as defined in ORS 166.715(2) existed.  The

13    enterprise consisted of an association in fact between and among

14    all defendants named in this Complaint; non-defendants American

15    Brands, Inc., RJR Nabisco, Inc., Batus Corporation, Philip Morris

16    Companies, Inc., Liggett Group, Inc., Liggett, Brooke Group LTD.,

17    Inc., Brooke Group, Limited, UST, Inc.; and other persons and

18    entities as yet unknown to plaintiff.

19    **THE PATTERN OF RACKETEERING ACTIVITY**

20    78.

21    Between January 1, 1953 and continuously through the

22    present, the enterprise has engaged in a pattern of racketeering

23    activity as defined in ORS 166.715(4) consisting of two or more

24    incidents of racketeering conduct, each of which constituted

25    conduct defined as racketeering activity under 18 USC

26    § 1961(1)(B).  These acts are interrelated by their connection to

Page 42 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1  the enterprise, including having the same results, accomplices,

2  and victims, and by the fact that they are all intended to

3  increase or maintain profits from the manufacture, distribution

4  and sale of tobacco products.  These incidents of racketeering

5  activity are more particularly alleged in Paragraphs 79-83.

6                    **SCHEME OR ARTIFICE TO DEFRAUD**

7                                79.

8       Each of the incidents of racketeering conduct more

9  particularly alleged in paragraphs 80 - 83 were committed by

10 defendants as part of a scheme or artifice to defraud current and

11 would-be consumers of tobacco products, the public, and plaintiff

12 by false and misleading statements, telling half-truths, and by

13 deceitfully failing to state material facts necessary to correct

14 otherwise misleading statements.  The schemes and artifices to

15 defraud formed by defendants and carried out through the

16 activities of the enterprise constituted schemes or artifices to

17 defraud in violation of 18 USC § 1341 and 18 USC § 1343.  Schemes

18 and artifices to defraud committed by defendants as a group and

19 as individuals included:

20      a.   Creating and encouraging false and misleading

21 controversies regarding the addictive qualities of tobacco

22 products containing nicotine;

23      b.   Creating and encouraging false and misleading

24 controversies regarding the fact that tobacco causes injurious

25 health effects including death; and concealing and

26 misrepresenting defendants' individual and collective knowledge

Page 43 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1 of the addictive qualities of tobacco products containing

2 nicotine;

3    c.    Concealing and misrepresenting defendants' collective

4 and individual knowledge of the fact that tobacco causes

5 injurious health effects including death;

6    d.    Concealing and misrepresenting defendants' collective

7 and individual knowledge and capacity to manufacture, distribute

8 and sell less dangerous tobacco products;

9    e.    Concealing and misrepresenting defendants' capacity and

10 practice of manipulating the amount of nicotine contained in

11 their tobacco products;

12    f.    Falsely representing to current and would-be consumers,

13 the public, and plaintiff that defendants would fulfil their

14 voluntarily assumed duty to honestly and completely disclose

15 their collective and individual knowledge of all of the

16 foregoing; and,

17    g.    Falsely denying defendants knew their marketing and

18 promotional activities had the effect and intent of causing

19 children under the age of 18 to become addicted to defendants'

20 deadly products.

21                    **INTENT TO DEFRAUD**

22                          80.

23    The schemes and artifices to defraud, and each of the

24 incidents of racketeering conduct more particularly alleged in

25 paragraphs 79 - 83, were committed by defendants with the intent

26 to defraud current and would-be consumers of tobacco products,

Page 44 - PLAINTIFF'S COMPLAINT

1  the public, and plaintiff.  Defendants acted at all times with a

2  conscious objective to mislead and confuse consumers, the public,

3  and plaintiff.

4               INTERSTATE MAIL AND WIRE COMMUNICATIONS

5                                 81.

6       As is more particularly alleged in paragraphs 82 and 83,

7  defendants used the United States mails and interstate and

8  international wire communications for the purpose and in

9  furtherance of their schemes and artifices to defraud.

10                      ACTS OF MAIL FRAUD

11                                82.

12      All of the defendants used the United States mails to

13  disseminate advertising which was part of the schemes and

14  artifices to defraud.  All of the defendants also used the United

15  States mails and wire communication to communicate among

16  themselves with the purpose and effect of fostering the scheme

17  and artifices to defraud.  Virtually every advertisement placed

18  by the defendants or one of them since the beginning of the joint

19  action in 1953 constituted a use of the U.S. mails or wire

20  communication as a part of the schemes and artifices to defraud.

21      a.   On or about February 10, 1958, Benson & Hedges,

22  predecessor in interest to defendant Philip Morris, caused to be

23  published in *Life* magazine an advertisement which promoted its

24  cigarette product "Parliament."  That advertisement was

25  disseminated throughout the State of Oregon, and contained, in

26  ///

Page 45 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1  part, the written statement: "THE *FIRST* FILTER CIGARETTE IN THE

2  WORLD THAT MEETS THE STANDARDS OF THE UNITED STATES TESTING CO."

3       b.   On or about February 21, 1964, defendant Reynolds

4  caused to be published in *Life* magazine an advertisement which

5  promoted its cigarette product "Winston."  That advertisement was

6  disseminated throughout the State of Oregon, and contained, in

7  part, the written statement: "Flavor that goes with fun," and the

8  statement: "Pure white, modern filter."

9       c.   On or about February 28, 1964, defendant Lorillard

10  caused to be published in *Life* magazine an advertisement which

11  promoted its cigarette product "Kent."  That advertisement was

12  disseminated throughout the State of Oregon, and contained, in

13  part, the written statement: "When pleasure is important," and

14  the statement: "Kent with the MICRONITE filter gives you the best

15  combination of filter-action and satisfying taste."

16       d.   On or about June 30, 1972, defendant Lorillard caused

17  to be published in *Life* magazine an advertisement which promoted

18  its cigarette product "True."  That advertisement was

19  disseminated throughout the State of Oregon, and contained, in

20  part, the written statement: "Latest U.S. Government tests of all

21  leading cigarettes show True lowest in both tar and nicotine of

22  the 20 best-selling brands."

23       e.   On or about November 24, 1972, defendant American

24  Tobacco caused to be published in *Life* magazine an advertisement

25  which promoted its cigarette product "Tareyton 100's."  That

26  advertisement was disseminated throughout the State of Oregon,

Page 46 - PLAINTIFF'S COMPLAINT

1 and contained, in part, the written statement: "Filter for better
2 taste the Tareyton way with activated charcoal."  The
3 advertisement continued: "Enjoy the mild taste of Tareyton with
4 the Activated Charcoal Filter."

5    f.   On or about June 9, 1980, defendant Philip Morris
6 caused to be published in *Sports Illustrated* magazine an
7 advertisement which promoted its cigarette product "Marlboro
8 Lights."  That advertisement was disseminated throughout the
9 State of Oregon, and contained, in part, the written statement:
10 "The spirit of Marlboro in a low tar cigarette."

11    g.   On or about August 25, 1980, defendant American Tobacco
12 caused to be published in *Time* magazine an advertisement which
13 promoted its cigarette product "Tareyton lights."  That
14 advertisement was disseminated throughout the State of Oregon,
15 and contained, in part, the written statement: "Only Tareyton has
16 the *best filter!*"  The statement continues underneath a depiction
17 of a man and a woman: "We'd rather light than fight!"

18    h.   On or about August 25, 1980, defendant Philip Morris
19 caused to be published in *Time* magazine an advertisement which
20 promoted its cigarette product "Merit."  That advertisement was
21 disseminated throughout the State of Oregon, and contained, in
22 part, the written statement: "Low tar/good taste combination
23 scores impressive 3-to-1 victory over leading high tar brands."

24    i.   On or about August 25, 1980, defendant American Tobacco
25 caused to be published in *Time* magazine an advertisement which
26 promoted its cigarette product "Carlton."  That advertisement was

Page 47 - PLAINTIFF'S COMPLAINT

1  disseminated throughout the State of Oregon, and contained, in
2  part, the written statement: "10 packs of Carlton have less tar
3  than 1 pack of [eleven (11) other cigarette brands]."
4      j.   On or about September 1, 1980, defendant Brown &
5  Williamson Tobacco caused to be published in *U. S. News & World
6  Report* magazine an advertisement which promoted cigarette product
7  "Kool SUPER LIGHTS."  That advertisement was disseminated
8  throughout the State of Oregon, and contained, in part, the
9  written statement: "the coolest taste around," and the statement:
10 "Long famous for coolness in smoking."
11     k.   On or about February 1, 1983, defendant Tobacco
12 Institute caused to be published in *Time* magazine an
13 advertisement which discounted the effects of cigarette
14 advertising as a major reason why kids smoke.  That advertisement
15 was disseminated throughout the State of Oregon, and contained,
16 in part, the written statement: "Answers to the most asked
17 questions about cigarettes.  IS CIGARETTE Advertising A MAJOR
18 REASON WHY KIDS SMOKE? NO."  The advertisement contains text and
19 a bar graph, purporting to support the position that advertising
20 does not impact youth smoking and discussing a decrease in
21 teenage smokers between 1974 and 1979.  The advertisement
22 concludes with the statement: "WEIGH BOTH SIDES BEFORE YOU TAKE
23 SIDES."
24     l.   On or about August 1, 1987, defendant Reynolds caused
25 to be published in *Family Circle* magazine an advertisement which
26 promoted defendant's "Now 100's."  That advertisement was

Page 48 - PLAINTIFF'S COMPLAINT

1   disseminated throughout the State of Oregon and contained, in

2   part, the written statement: *"NOW IS LOWEST BY* U.S. Gov't testing

3   method" in comparison to the tar and nicotine contained in three

4   other listed brands of cigarettes with their respectively higher

5   listed amounts of tar and nicotine to the tar and nicotine

6   amounts contained in defendant's subject cigarette.

7        m.   On or about July 11, 1991, defendant Reynolds caused to

8   be published in *Rolling Stone* magazine an advertisement which

9   promoted its cigarette product "Camel."  That advertisement was

10  disseminated throughout the State of Oregon, and contained, in

11  part, the written statement: "The Hard Pack" accompanying an

12  artist's rendering of four Joe Camel look-alikes as musicians

13  with instruments, and showing the words "Smooth Taste Low Tar" on

14  a large pack of Camel cigarettes.

15       n.   On or about August 19, 1991, defendant American Tobacco

16  caused to be published in *Sports Illustrated* magazine an

17  advertisement which promoted its cigarette product "Carlton."

18  That advertisement was disseminated throughout the State of

19  Oregon, and contained, in part, the written statement: "U.S.

20  Gov't Test Method confirms of all king soft packs: *Carlton is*

21  *lowest* [in tar]."

22                              83.

23       Plaintiff does not certify the evidentiary basis for the

24  remaining allegations of this paragraph, but plaintiff reasonably

25  believes further investigation and discovery will sustain the

26  allegations of each subparagraph below.

Page 49 - PLAINTIFF'S COMPLAINT

1        a.    During June and July, 1963, letters were exchanged

2   through the mails and wire communications were made in which

3   representatives of British American Tobacco and Brown &

4   Williamson discussed nicotine research being done by Battelle,

5   agreed to withhold research from the Surgeon General of the

6   United States, and forwarded research to attempt to protect their

7   position.

8        b.    In 1971, an advertisement, "The Question about Smoking

9   and Health is still a Question," was sent through the mails from

10  the Tobacco Institute.

11       c.    In December, 1977, a letter was sent through the mails

12  from Addison Yeaman, President of defendant CTR to Thomas

13  Ahrensfeld, Joseph Greer, Arnold Henson, Ernest Pepples and H.C.

14  Roemer; and, on or about December 28, 1977, a second letter was

15  sent through the mails from W. Hoyt to American Brands Inc., and

16  defendants Brown & Williamson, Philip Morris, and Reynolds.  Both

17  letters detailed the billing of the Tobacco Companies to fund the

18  1978 budget of CTR based upon market share.

19       d.    In 1978, a letter was sent through the mails from

20  William Shinn of Shook, Hardy & Bacon to, *inter alia*, Thomas

21  Ahrensfeld, Ernest Pepples and Arthur Sevens, insisting that

22  future activities of the Research Liaison Committee should first

23  be reviewed by the Committee of Counsel for the Tobacco

24  Companies.

25       e.    In early 1980, a letter was sent through the mails from

26  the President of the Tobacco Institute to various insurance

Page 50 - PLAINTIFF'S COMPLAINT

1    companies to protest discounts being offered to non-smokers and

2    to falsely attack the credibility of any scientific research

3    showing the hazards of smoking.

4       f.   On or about March 31, 1980, a letter was sent through

5    the mails from Bob Seligman of defendant Philip Morris to Alex

6    Spears of defendant Lorillard, specifying certain subjects which

7    should be avoided for tobacco industry research, including *inter*

8    *alia,* "attempt[s] to relate human disease to smoking," although

9    the defendants previously represented that they would cooperate

10   with public health officials.

11      g.   On or about May 7, 1982, letters were exchanged through

12   the mails between Daniel Milway of the Tobacco Institute and

13   various presidents of the Tobacco Companies regarding the level

14   of funding to support independent biomedical research in order to

15   support the pretense of commitment to independent research as

16   communicated to public officials and others.

17      h.   In 1984, the CTR Annual Report was distributed using

18   the mails to persons throughout the country based upon a

19   distribution list drafted by Leonard Zahn and Associates, the

20   public relations consultant for CTR.  The report does not

21   disclose that lawyers for CTR and the Tobacco Companies had been

22   involved in the design of the research program.

23      i.   On or about October 25, 1984, a letter was sent through

24   the mails from J. Kendrick Wells, III, corporate counsel for

25   defendant Brown & Williamson to H. A. Morini of defendant BATCO,

26   setting out Mr. Wells' "comments" and suggested changes to a

Page 51 - PLAINTIFF'S COMPLAINT

1 paper written by Dr. L.C.F. Blackman entitled "The Controversy on

2 Smoking and Health: Some Facts and Anomalies."  Wells' letter

3 states:

4         "Recent developments have reaffirmed the need
        for the attention we customarily have given

5         to proposed BAT publications.  The smoking
        and health litigation in the U.S. has

6         demonstrated that plaintiffs' lawyers are
        aggressive in questioning tobacco CEOs about

7         published company statements, as we had
        predicted they would be.  Peter Taylor's

8         *Smoke Ring* demonstrated that BAT publications
        which may be intended for limited

9         distribution can be obtained and scrutinized
        by our most articulate adversaries."

10

11     The purpose of this editing was to protect the tobacco

12 companies cigarette market and to further the tobacco industry's

13 continuing conspiracy to create and maintain the false

14 controversy regarding cigarette smoking and disease.

15     j.   In November, 1984, defendants distributed a study

16 entitled "Chronic Exposure of Mice to Cigarette Smoke" using the

17 mails.  This study was earlier described in the February, 1984

18 Tobacco Institute journal, *The Tobacco Observer*, and in press

19 releases issued by CTR and carried by the wire services, as a

20 determined effort to develop a suitable animal model to learn if

21 tobacco caused cancer.  However, CTR knew the study was flawed in

22 design and execution.

23     k.   In 1989, Gary Miller, a spokesperson for the Tobacco

24 Institute, appeared on various radio programs throughout the

25 country to promote the false controversy of science promulgated

26 by the Racketeering Enterprise.  There, Miller asserted the

Page 52 - PLAINTIFF'S COMPLAINT

1  Tobacco Institute had no knowledge that smoking cigarettes is

2  harmful or that it was aware of any proof of cancer causing

3  effects from smoking cigarettes.

4      1.   On or about January 11, 1990, Jo Spach of defendant

5  Reynolds sent a letter through the mails to the principal of

6  Willow-Ridge School in Amherst, New York, asserting that the

7  tobacco industry had made "a sincere attempt to determine what

8  harmful effects ... smoking might have on human health" by

9  establishing defendant CTR.  Defendant Reynolds failed to

10 disclose that CTR was organized by the Tobacco Companies as part

11 of their public relations efforts to promote the false

12 controversy about smoking and disease to children.  Spach asked

13 that the information in the letter be distributed to fifth grade

14 school students.

15     m.   On or about February 15, 1995, James Glenn, President

16 of CTR, sent a letter through the mails to James Todd, Executive

17 Vice-President of the American Medical Association, and all deans

18 of United States medical schools.  Glenn's letter failed to

19 disclose that CTR was conceived as a public relations effort to

20 solely support the sale and marketing of cigarettes, failed to

21 disclose that the Special Projects funded through CTR were, in

22 part, used to develop witnesses to defend the Tobacco Companies;

23 and failed to disclose that the Tobacco Companies' lawyers helped

24 in the design, funding and public discussions relating to

25 research by scientists funded by CTR.

26 ///


Page 53 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1      n.   On or about March 27, 1994, Brennan Dawson, Vice-

2 President of the Tobacco Institute, appeared on the "Face the

3 Nation" television program and stated, inter *alia*, "that

4 cigarettes are not addictive," that "[n]ot only do they [the

5 tobacco industry] not add nicotine, but that they don't

6 manipulate nicotine," and that "[t]here is no process that adds

7 nicotine to the cigarette ... Nicotine is not added during the

8 manufacturing process.  It's that simple."

9      o.   On or about April 1, 1994, Brennan Dawson, Vice-

10 President of the Tobacco Institute, appeared on the

11 "MacNeil/Lehrer News Hour" television program and stated, *inter*

12 *alia*, that the Tobacco Companies "do not add nicotine," that

13 "[t]here's no manipulation done by the manufacturers" concerning

14 production of cigarettes, that nicotine is not an addictive drug

15 and that tobacco manufacturers are not targeting and marketing

16 the sale of cigarettes to minors.

17      p.   On or about April 8, 1994, Brennan Dawson, Vice-

18 President of the Tobacco Institute, appeared on the "CBS Evening

19 News" program and stated, *inter alia*, that there is nothing in

20 cigarettes to worry about, "In the amounts that are used, the

21 ingredients that are used to make cigarettes are safe for

22 smokers."

23    **COUNT ONE:   UNLAWFUL PARTICIPATION IN AN ILLEGAL ENTERPRISE**

24                   84.

25    Between January 1, 1953 and continuing to the present,

26 defendants participated directly or indirectly in the enterprise

Page 54 - PLAINTIFF'S COMPLAINT

1  alleged in paragraph 77 through the pattern of racketeering
2  activity alleged in paragraphs 78 - 83.

3              COUNT TWO:  UNLAWFUL INVESTMENT OF FRUITS
4                    OF ILLEGAL PARTICIPATION
5                            85.

6       Between January 1, 1953 and continuing to the present,
7  defendants used and invested the proceeds of the racketeering
8  activity alleged in paragraphs 77 - 83.  Defendants used and
9  invested the original proceeds, and used and invested fruits of
10  the use and investment of those proceeds, to acquire title to and
11  rights, interests, and equity in real property and in the
12  establishment and operation of business entities.

13                           86.

14      Plaintiff is at present unaware of the exact description and
15  nature of the property interests acquired as alleged in
16  paragraph 85.  Plaintiff reasonably believes further
17  investigation and discovery will identify the exact description
18  and nature of the property interests acquired as alleged in
19  paragraph 85.

20            COUNT THREE:  CONSPIRACY TO UNLAWFULLY
21               PARTICIPATE AND TO UNLAWFULLY INVEST
22                           87.

23      Between January 1, 1953 and continuing to the present,
24  defendants agreed with one another, with the other participants
25  in the enterprise, and with persons whose identity is as yet
26  unknown to plaintiff, to engage in and cause the performance of

Page 55 - PLAINTIFF'S COMPLAINT

1   the racketeering activity alleged in paragraphs 77 - 83.  Between
2   January 1, 1953 and continuing to the present, defendants agreed
3   with one another, with the other participants in the enterprise,
4   and with persons whose identities are as yet unknown to
5   plaintiff, to use and to invest the proceeds of the racketeering
6   activity alleged in paragraphs 78 - 83.

7                     SEVENTH CLAIM FOR RELIEF
8               (Fraudulent Misrepresentation and Omission)
9                               88.

10       Plaintiff realleges and incorporates herein the foregoing
11  allegations of this Complaint.

12                              89.

13       Defendants, through their public pronouncements and
14  communications, made material representations intended to be
15  received and actually received by state regulators and citizens
16  of the State of Oregon that cigarettes are not addictive,
17  carcinogenic and pathologic, and that there is and was legitimate
18  scientific dispute regarding those issues, that defendants were
19  undertaking independent scientific research to determine the true
20  health effects of tobacco and that the results of such research
21  would be made known to the public, including Oregonians.  Such
22  statements are referenced in Paragraph 32c.; paragraph 83, at
23  subparagraphs b, e, h, u, l, m, n, o, p, and q.; and were also
24  made by defendant Reynolds in a 1984 statement to *The New York*
25  *Times*, and in a 1979 public statement by Dr. Sheldon Sommers, and
26  in other statements not yet identified by plaintiff.

Page 56 - PLAINTIFF'S COMPLAINT

1          90.

2          Defendants knew that these material representations to state

3     regulators and citizens of the State of Oregon were false when

4     made, and plaintiffs were ignorant of the falsity of the material

5     representations when made.

6          91.

7          Defendants intended that state regulators and citizens of

8     the State of Oregon rely upon these material representations, and

9     state regulators and citizens of the State of Oregon had a right

10    to rely on these material representations, and actually did rely

11    upon the truthfulness of these material representations.

12         92.

13         Defendants' acts constitute fraudulent misrepresentations

14    and omissions.

15         93.

16         As a direct result of defendants' fraudulent

17    misrepresentations and omissions, plaintiff's regulators did not

18    undertake appropriate regulatory action and citizens of the State

19    of Oregon have suffered injuries in the form of addiction, cancer

20    and other illness and disease.  Many of these citizens of Oregon

21    are Medicaid or publicly-funded health care recipients.

22    Plaintiff thus has borne the massive costs of these illnesses and

23    diseases by providing necessary medical care, facilities and

24    services for certain of those aforementioned citizens of the

25    State of Oregon injured by the Tobacco Companies' cigarettes and

26    ///

Page 57 - PLAINTIFF'S COMPLAINT

1  unable to afford and otherwise obtain such necessary medical
2  care, facilities and services.
3                              94.
4      As a result of defendants' conduct, plaintiff has suffered
5  and will continue to suffer substantial injuries and damages for
6  which plaintiff is entitled to relief.
7                    **EIGHTH CLAIM FOR RELIEF**
8                         (Negligence)
9                              95.
10     Plaintiff realleges and incorporates herein the foregoing
11  allegations of this Complaint.
12                              96.
13     Defendant Tobacco Companies and their trade organizations
14  voluntarily assumed the duty and responsibility to conduct and
15  report objective medical research regarding cigarette smoking and
16  health via their public pronouncements referenced above.
17                              97.
18     Defendants breached this duty by failing to exercise
19  reasonable care in conducting and reporting that research.
20                              98.
21     Defendants further breached this duty by suppressing
22  negative research data regarding cigarettes and health, and by
23  publishing only those materials that cast doubt on tobacco's
24  adverse health effects.
25  ///
26  ///

Page 58 - PLAINTIFF'S COMPLAINT

1                                   99.

2      Defendants knew or should have known that smokers,

3   plaintiff, government regulators and others would rely on their

4   pronouncements.

5                                  100.

6      Defendants knew or should have known that such reliance

7   would result in injury, and that such injury was foreseeable.

8                                  101.

9      As a direct and foreseeable result of defendants' negligent

10  breach of assumed duty, plaintiff suffered and continues to

11  suffer substantial injuries and damages.

12                       **NINTH CLAIM FOR RELIEF**

13                          (Unjust Enrichment)

14                                 102.

15     Plaintiff realleges and incorporates herein the foregoing

16  allegations of this Complaint.

17                                 103.

18     Use of defendant Tobacco Companies' tobacco products as

19  intended causes disease.

20                                 104.

21     At all times relevant to this Complaint, defendants had

22  knowledge of the benefit conferred on them by plaintiff's payment

23  of health care costs for diseases resulting from use of tobacco

24  products sold in the State of Oregon by defendant Tobacco

25  Companies, which payments were foreseeable given defendants'

26  knowledge of the health risks of their tobacco products.


Page 59 - PLAINTIFF'S COMPLAINT

105.

2      While plaintiff pays the health care costs that result from
3 the use of tobacco products as intended, defendants continue to
4 reap profits from the sale of their tobacco products, without
5 paying their share of the health care costs.  Plaintiff is
6 unaware of the exact amount of defendants' profits but believes
7 them to be in the billions of dollars.

106.

9      Defendant Tobacco Companies have avoided regulations and the
10 costs of disease, injuries and deaths resulting from the normal
11 use of their tobacco products.  Defendants have been and are able
12 legally to promote the sale of tobacco products to the residents
13 of the State of Oregon by continuing to misinform federal and
14 Oregon authorities about the true carcinogenic, pathologic and
15 addictive qualities of their tobacco products.

107.

17      In direct contradiction to and in spite of plaintiff's
18 specific statutory prohibitions, defendants have spent millions
19 of dollars on targeted marketing programs designed to encourage
20 minors to purchase and use their tobacco products.

108.

22      In equity and fairness, defendants and their agents, aiders
23 and abettors and co-conspirators, not plaintiff, should bear the
24 costs of tobacco-related diseases.  By avoiding their own duties
25 to stand financially responsible for the harm done by their
26 tobacco products, defendant Tobacco Companies wrongfully have

Page 60 - PLAINTIFF'S COMPLAINT

1  forced plaintiff to perform such duties and to pay the health

2  care costs of tobacco-related disease.  As a result, defendants

3  have been unjustly enriched to the extent that taxpayers of the

4  State of Oregon have had to pay these costs which rightfully

5  should be borne by defendants.

6                              109.

7      As a direct result of defendants' conduct, plaintiff has

8  suffered and will continue to suffer substantial injuries and

9  damages for which it is entitled to relief.

10                  TENTH CLAIM FOR RELIEF

11                     (Civil Conspiracy)

12                           110.

13     Plaintiff realleges and incorporates herein the foregoing

14  allegations of this Complaint.

15                           111.

16     Defendants entered into a conspiracy to violate the statutes

17  set forth in Claims for Relief 1 - 6; and the common law as set

18  forth in the balance of the Claims for Relief.  As part of the

19  conspiracy, defendants agreed to: (1) suppress information

20  concerning the adverse effects of tobacco use and the addictive

21  effect of nicotine; (2) create doubt about the scientific studies

22  linking tobacco use to adverse health consequences and/or the

23  addictive nature of nicotine; (3) conceal their manipulation of

24  the level of nicotine in tobacco products; and (4) unreasonably

25  restrain trade based on health claims and "safer" cigarettes.

26  ///

Page 61 - PLAINTIFF'S COMPLAINT

1                                   112.

2       A part of this conspiracy was a plan to cause governmental

3  officials to believe that immediate action on their part to curb

4  tobacco use was not needed.  As the evidence mounted as to the

5  hazards of smoking, governmental entities considered and/or began

6  to legislate various controls on tobacco use and advertising.

7  Defendants' resistance to these efforts was an integral part of

8  the conspiracy, and was designed to lull plaintiff, among others,

9  into avoiding the implementation and/or passage of such

10  regulations.

11                                  113.

12      Defendants' conspiracy not only served to forestall

13  increased government regulation but contributed to plaintiff's

14  increased health care costs because the conspiracy caused tobacco

15  users, including Medicaid recipients and minors in the State of

16  Oregon, to take up or continue smoking.

17                                  114.

18      Defendants combined to use unlawful means to deceive the

19  plaintiff and its citizens as to the true nature of defendants'

20  products, and to shift health costs associated with tobacco

21  products to others.

22                                  115.

23      By combining to use unlawful means, including without

24  limitation misrepresentation, deception, and fraud to maintain

25  their markets and profits, defendants engaged in a conspiracy in

26  violation of the common law of Oregon.


Page 62 - PLAINTIFF'S COMPLAINT

1                                     116.

2          Defendants' overt acts in furtherance of the conspiracy

3    include without limitation:

4          a.    Engaging in deceptive acts and practices in the course

5    of business in violation of Oregon's Unlawful Trade Practices

6    Act;

7          b.    Fraudulently misrepresenting and omitting material

8    information regarding the human health dangers of smoking;

9          c.    Restraining and suppressing research and information

10   concerning the adverse effects of tobacco product use and the

11   addictive effect of nicotine;

12         d.    Creating doubt about the scientific studies linking

13   tobacco product use to adverse health consequences and/or

14   addictive nature of nicotine;

15         e.    Affirmatively misrepresenting the addictive effects of

16   nicotine and the harmful effects of tobacco product use;

17         f.    Concealing their manipulation of the level of nicotine

18   in tobacco products;

19         g.    Restraining the development, production, and marketing

20   of a safer cigarette;

21         h.    Avoiding competition based on health claims and safer

22   cigarettes;

23         i.    Passing on health care costs associated with tobacco

24   products to others;

25         j.    Designing, testing, manufacturing, marketing, supplying

26   and selling defective cigarettes;

Page 63 - PLAINTIFF'S COMPLAINT

1    k.   Targeting minors for the marketing, supply, sale and

2  use of their cigarettes; and

3    l.   Suppressing the design, test, manufacture, marketing

4  and/or sale of non- or less-addictive, carcinogenic and

5  pathologic cigarettes.

6                              117.

7    As a direct result of defendants' conspiracy, plaintiffs

8  suffered and will continue to suffer substantial injuries and

9  damages.

10               ELEVENTH CLAIM FOR RELIEF

11                    (Indemnity)

12                         118.

13    Plaintiff realleges and incorporates herein the foregoing

14  allegations of this Complaint.

15                         119.

16    As a direct result of defendants' violations of law and

17  breaches of duty and omissions alleged above, plaintiff has paid

18  millions of dollars to provide necessary medical care, facilities

19  and services for certain of the aforementioned Oregon residents

20  injured by defendant Tobacco Companies' tobacco products and

21  unable to afford and otherwise obtain such necessary medical

22  care, facilities and services.

23                         120.

24    Defendants were liable to pay the medical expenses for the

25  aforementioned Oregon residents injured by defendants' tobacco

26  products.

Page 64 - PLAINTIFF'S COMPLAINT

1                                    121.

2       Plaintiff was legally obligated to pay the aforementioned

3  sums and did not conduct itself in any wrongful manner in being

4  so obligated to pay and in paying these sums.

5                                    122.

6       The conduct of defendants was willful and in reckless

7  disregard of the rights of plaintiff and its citizens.

8                                    123.

9       Defendants are legally obligated to indemnify plaintiff for

10  the provision of necessary medical care, facilities and services

11  for those aforementioned Oregon residents injured by defendants'

12  tobacco products.

13                      **IX. PRAYER FOR RELIEF**

14       WHEREFORE, plaintiff prays for judgment against defendants,

15  jointly and severally, as follows:

16  **With respect to all claims for relief:**

17       a.   For an Order enjoining and restraining defendants and

18  their officers, agents, servants and employees, and those in

19  active concert or participation with them, from continuing or

20  engaging in the conduct alleged above or other conduct having

21  similar purpose or effect;

22       b.   For an Order compelling defendants to publicly

23  disclose, disseminate, and publish all research previously

24  conducted directly or indirectly by themselves and their

25  respective agents, affiliates, servants, officers, directors,

26  ///


Page 65 - PLAINTIFF'S COMPLAINT

1  employees, and all persons acting in concert with them, that

2  relates to the issue of smoking and health;

3       c.   For an Order compelling defendants to fund corrective

4  public education campaigns relating to the issue of smoking and

5  health, administered and controlled by an independent third

6  party;

7       d.   For an Order compelling defendants to take reasonable

8  and necessary steps to prevent the distribution and sale of

9  tobacco products to minors in violation of Oregon law;

10       e.   For an Order compelling defendants to fund clinical

11  smoking cessation programs in the State of Oregon;

12       f.   Except as to Claims for Relief 1, 2 and 3, that

13  plaintiff be awarded damages in an amount not yet determined but

14  estimated to range up to $60 million per year for each year of

15  defendants' unlawful conduct;

16       g.   For such other and further relief as the Court deems

17  just, necessary, and appropriate; and

18       h.   For plaintiff's costs and disbursements incurred

19  herein.

20  **In addition, with respect to the First, Second and Third Claims**

21  **for Relief under the Oregon Unlawful Trade Practices Act (ORS**

22  **646.605-646.652):**

23       a.   That pursuant to ORS 646.642, the Court assess civil

24  penalties against each defendant of $2,000 for each violation

25  committed by that defendant or its predecessor between

26  September 8, 1971 and September 11, 1975, inclusive, and of

Page 66 - PLAINTIFF'S COMPLAINT

1   $25,000 for each violation committed by that defendant or its

2   predecessor from September 12, 1975 to the date of trial;

3        b.    That pursuant to ORS 646.632 and ORS 646.636, the Court

4   issue an Order permanently enjoining, barring, restraining and

5   prohibiting defendants from engaging directly or indirectly in

6   any violation of the Unlawful Trade Practices Act, or

7   alternatively, in any business in Oregon; and

8        c.    That pursuant to ORS 646.632, the Court award plaintiff

9   its reasonable attorney fees.

10  **In addition, with respect to the Fourth and Fifth Claims for**

11  **Relief under Oregon's antitrust statutes (ORS 646.705 et seq):**

12        a.    For an Order in which the Court adjudges and decrees

13   that defendants have engaged in the conduct alleged herein and

14   that such conduct is unlawful in violation of ORS 646.725; and

15        b.    That pursuant to ORS 646.780, the Court award plaintiff

16   treble damages in a total amount unknown but estimated to range

17   up to $180 million per year from the beginning of the unlawful

18   activity.

19  **In addition, with respect to the Sixth Claim for Relief under the**

20  **Oregon Racketeer Influenced & Corrupt Organizations Act**

21  **(ORS 166.715-.735):**

22        a.    Pursuant to ORS 166.725(1) and ORS 166.725(1)(a),

23  ordering defendants immediately to divest themselves of all

24   right, title and interest in any business entity or association

25   in which any of the other defendants also hold any right, title

26   ///

Page 67 - PLAINTIFF'S COMPLAINT

1  or interest, including but not limited to CTR, Hill & Knowlton,

2  and the Tobacco Institute;

3       b.    Pursuant to ORS 166.725(1) and ORS 166.725(1)(b),

4  imposing reasonable restrictions on defendants' collective and

5  future activities and investments, including but not limited to:

6       (1)  Prohibiting defendants from claiming that a scientific

7  controversy exists concerning the addictive character of tobacco

8  products containing nicotine;

9       (2)  Prohibiting defendants from claiming that a scientific

10  controversy exists concerning the fact that consumption of

11  tobacco products causes adverse health consequences, including

12  death;

13       (3)  Requiring defendants to honestly and fully disclose to

14  the public defendants' collective and individual knowledge of the

15  addictive qualities of tobacco products containing nicotine;

16       (4)  Requiring defendants to honestly and fully disclose to

17  the public defendants' collective and individual knowledge of the

18  fact that tobacco causes injurious health effects including

19  death;

20       (5)  Requiring defendants to honestly and fully disclose to

21  the public defendants' collective and individual knowledge and

22  capacity to manufacture, distribute and sell less dangerous

23  tobacco products;

24       (6)  Prohibiting defendants from employing any marketing or

25  promotional activity which reaches more than five percent of

26  ///

Page 68 - PLAINTIFF'S COMPLAINT

DEPARTMENT OF JUSTICE
1162 COURT STREET NE
SALEM, OREGON 97310
PHONE (503) 378-4732

1  Oregonians under the age of 16, with the determination of whether

2  the activity violates this standard to be made as follows:

3      (a)  Each defendant shall monthly conduct a valid market

4  survey in accordance with accepted market survey standards;

5      (b)  The survey shall measure the percentage of children

6  under the age of 16 who recognize the character, logo, or theme

7  of each marketing or promotional activity conducted by the

8  defendant;

9      (c)  The results of each monthly survey shall be published

10  monthly in newspapers of general circulation in Oregon; and,

11      (d)  Each defendant shall immediately and permanently cease

12  any marketing or promotional activity whose character, logo, or

13  theme is recognized by more than five percent of Oregonians under

14  the age of 16.

15      (7)  Requiring defendants to honestly and completely

16  disclose defendants' individual and collective knowledge of the

17  extent to which their past marketing and promotional activities

18  have had the intent and effect of causing children under the age

19  of 18 to become addicted to and injured by defendants' tobacco

20  products.

21      (8)  Requiring defendant Tobacco Companies to require every

22  distributor of defendant Tobacco Companies' respective tobacco

23  products to:

24      (a)  Refrain from any point of sale advertising in any

25  location in which it is lawful for a child to be present;

26  ///

Page 69 - PLAINTIFF'S COMPLAINT

1    (b)  Keep all tobacco products kept in any location in which
2    it is lawful for a child to be present secure under lock and key
3    behind opaque barriers;

4    (c)  Strictly comply with all applicable federal, state, and
5    local laws and regulations pertaining to the sale of tobacco
6    products to children;

7    (d)  Refrain from renewing or entering into agreements
8    resulting in the advertising of tobacco products on billboards;

9    (e)  Refrain from selling or distributing non-tobacco
10   products containing tobacco brand names, logos or other tobacco
11   advertising information;

12   (f)  Refrain from sponsoring cultural, athletic, or other
13   events in the tobacco product brand name; and

14   (g)  Refrain from any advertising in any medium except
15   black-on-white text;

16   c.   Pursuant to ORS 166.725(1) and ORS 166.725(1)(c),
17   ordering the dissolution of CTR, Hill & Knowlton, and the Tobacco
18   Institute;

19   d.   Pursuant to ORS 166.725(2), ordering defendants to
20   forfeit to plaintiff all real and personal property, including
21   money used in the course of, derived from, or realized through
22   the conduct alleged in this claim for relief;

23   e.   Pursuant to ORS 166.725(5), ordering defendants to pay
24   to the Attorney General of Oregon reasonably incurred costs of
25   investigation and litigation;

26   ///


Page 70 - PLAINTIFF'S COMPLAINT

1       f.    Pursuant to ORS 166.725(5), ordering defendants to

2  reimburse plaintiff's governmental departments and agencies for

3  reasonably incurred costs or expenses in connection with the

4  investigation and prosecution of this litigation;

5       g.    Pursuant to ORS 166.725(1), ordering defendants to pay

6  to plaintiff the costs incurred by plaintiff in providing health

7  care to Oregonians whose good health was impaired or whose ill

8  health was aggravated by defendants' conduct;

9       h.    Pursuant to ORS 166.725(8), ordering each defendant to

10  pay a civil penalty of $250,000; and

11       i.    Pursuant to ORS 166.725(15)(a), for plaintiff's

12  reasonable attorney fees.

13       DATED this 9th day of June, 1997.

14                 HARDY MYERS
                     Attorney General for the

15                 State of Oregon

16                    /s/

17                 Hardy Myers  #64077
                     Attorney General

18                    /s/

19

20                 Mark Gardner  #74111
                     Special Counsel to the Attorney

21                 General

22                    /s/

23                 Drew A. Lianopoulos  #92083
                     Trial Attorney
                     Assistant Attorney General

24                 Department of Justice
                     1162 Court Street NE

25                 Salem, OR  97310
                     (503) 378-4732

26                 Of Attorneys for Plaintiff

Page 71 - PLAINTIFF'S COMPLAINT