# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| IN RE: LIGHT CIGARETTES MARKETING SALES PRACTICES LITIGATION | MDL Docket No.: 1:09-MD-2068 |

This document relates to:

CAROL CORSE,

        Plaintiff,        Case No. 09CV01122 [M.D. Tenn.]

v.

PHILIP MORRIS USA, INC. and
ALTRIA GROUP, INC.,

        Defendants.

---

STEPHANIE GOOD, LORI A.
SPELLMAN, and ALLAIN L.
THIBODEAU,        Case No.1:05CV00127 [D. Me.]

        Plaintiffs,

v.

PHILIP MORRIS USA, INC. and
ALTRIA GROUP, INC.,

        Defendants.

---

MELANIE HAUBRICH,

        Plaintiff,        Case No. 09CV5867 [E.D. Pa.]

v.

PHILIP MORRIS USA, INC.,

        Defendant.

MILES TYRER,

       Plaintiff,

v.

PHILIP MORRIS USA, INC. and
ALTRIA GROUP, INC.,

       Defendants.

Case No.1 :09CV00427 [S.D. Cal.]

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT PHILIP
MORRIS USA, INC.'S MOTION FOR SUMMARY JUDGMENT
<u>ON PLAINTIFFS' CLAIMS FOR LACK OF CAUSATION</u>**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities .............................................................................................................. ii

INTRODUCTION ................................................................................................................1

DEFENDANT'S BURDEN ON SUMMARY JUDGMENT..................................................1

ARGUMENT .......................................................................................................................2

     I.     Summary Judgment is not Appropriate Here.........................................................2

          A.     Plaintiffs' Continued Use of Light Cigarettes is not Fatal to
Their Claims........................................................................................2

               1.     Defendant should not be Permitted to Benefit from the Addictive
Nature of their Products................................................2

               2.     The Voluntary Payment Doctrine does not Apply.........................4

          B.     Applicable Law does not Support Defendant's Motion .............................8

          C.     Genuine Issues of Material Fact Exist Regarding Causation
and Reliance........................................................................................10

     II.     Should the Court Grant Summary Judgment as to Any of These Proposed Class
Representatives, Plaintiffs Seek Leave to Substitute an Appropriate Class
Representative..................................................................................14

CONCLUSION..................................................................................................................17

## TABLE OF AUTHORITIES

Cases

*Allen v. Holiday Universal*, 249 F.R.D. 166 (E.D. Pa. 2008) ..........................................................6

*Am. Motorists Ins. Co. v. Shrock,* 447 S.W.2d 809 (Mo. App. 1969) .............................................5

*Armour v. City of Anniston,* 622 F.2d 1226 (5th Cir. 1980) ...........................................................15

*Birmingham Steel Corp. v. Tenn. Valley Auth.,* 353 F.3d 1331 (11th Cir. 2003) .........................14

*Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648 (8th Cir. 1999) ........................................3

*Boxdorfer v. Daimlerchrysler Corp.*, 396 F. Supp. 2d 946 (C.D. Ill. 2005)..................................15

*Cappetta v. GC Svcs. Ltd P'ship*, 654 F. Supp. 2d 453 (E.D. Va. 2009).........................................4

*Carpenter v. Stephen F. Austin State Univ.,* 706 F.2d 608, *reh'g denied,* 712 F.2d 1416 (5th Cir. 1983) ...............................................................................................................................................15

*Carter v. Gen. Motors Corp.*, CIV. A. 7:99CV230R, 2001 WL 123666 (N.D. Tex. Jan. 16, 2001)............................................................................................................ 15-16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................1

*Chrysler Credit Corp. v. Ostly*, 42 Cal. App. 3d 663 (Cal. App. Ct. 1974) ....................................7

*Chu v. Wells Fargo Inv., LLC*, C 05-04526 MHP, C 06-7924 MHP, 2009 WL 3061974 (N.D. Cal. Sept. 24, 2009).......................................................................................................................15

*CitiFinancial Mortgage Co., Inc. v. Frasure*, No. 08-5068, 2009 WL 389711 (10th Cir. Feb. 18, 2009) ..................................................................................................................................................3

*Coffey v. Braddy*, No. 3:71-cv-44-J-32TEM, 2009 WL 591280 (M.D. Fla. Mar. 6, 2009) ..........14

*Connectu, LLC v. Zuckerberg*, 522 F.3d 82 (1st Cir. 2008) ............................................................3

*Digital Filing Sys. LLC v. Aditya Int'l*, No. 07-1519, 2009 WL 822759 (6th Cir. Mar. 31, 2009)...........................................................................................................................................4

*Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008)..............................................4

*Eisel v. Midwest Bankcentre,* 230 S.W.3d 335 (Mo. 2007)............................................................5

*Ellison v. Southstar Energy Svcs. LLC*, 679 S.E.2d 750 (Ga. App. 2009) .....................................4

*Forcier v. Metropolitan Life Ins. Co.*, 469 F.3d 178 (1st Cir. 2006).............................................4

*Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452 RJHRLE, 2006 WL 1049352 (S.D.N.Y. Apr.19, 2006) ..................................................................................................................15

*Graves v. Walton County Bd. of Educ.,* 686 F.2d 1135 (5th Cir. 1982) .......................................14

*Griggs-Ryan v. Smith*, 904 F.2d 112 (1st Cir. 1990) ....................................................................1

*Graduate Cardiology Consultants, P.C. v. Vivra, Inc.*, No. 2827 FEB.TERM 2000, CONTROL 080518, 2000 WL 33711050 (Pa. Com. Pl. Oct. 20, 2000).......................................................... 8-9

*Huch v. Charter Comm., Inc.*, 290 S.W.3d 721 (Mo. 2009)............................................................4

*In re Copley Pharma., Inc. "Albuterol" Prods. Liability Litig.*, 161 F.R.D. 456 (D. Wyo. 1995) .........................................................................................................................15

*In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, M 21-95, 2005 WL 3304605 (S.D.N.Y. Dec. 7, 2005)...........................................................................................................16, 17

*In re Motor Fuel Temp. Sales Practices Litig.*, Nos. 07-MD-1840-KHV, 07-2348-KHV, 2009 WL 3122501 (D. Kan. Sept. 24, 2009) ........................................................................................17

*In re Pharm. Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61 (D. Mass. 2005) ................17

*In re Stone Energy Corp. Sec. Litig.*, Civil Action No. 05-2088, 2009 WL 3232786 (W.D. La. Sept. 30, 2009) ...................................................................................................................16, 17

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) ........................................................................10

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.,* 170 P.3d 10 (Wash. 2007)............................................................................................................................5

*June Roberts Agency, Inc. v. Venture Prop., Inc.,* 676 A.2d 46 (Me. 1996) .................................8

*Linda Coal & Supply Co. v. Tasa Coal Co.*, 204 A.2d 451 (Pa. 1694) .........................................6

*Lynch v. Baxley,* 651 F.2d 387 (5th Cir. 1981) .............................................................................16

*Maine Eye Care Assoc., P.A. v. Gorman*, 942 A.2d 707 (Me. 2008) .............................................8

*Markow v. Pollock*, No. M2008-01720-COA-R3-CV, 2009 WL 4980264 (Tn. Ct. App. Dec. 22, 2009) ............................................................................................................................................9

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313 (1st Cir. 1995)................................................1

*Mullaney v. Anderson,* 342 U.S. 415 (1952)................................................................................16

*Navarro v. Pfizer Corp.*, 261 F.3d 90 (1st Cir. 2001)....................................................................1

*Palmer v. Stassinos,* 236 F.R.D. 460, 464 (N.D. Cal. 2006) ......................................................15

*Paschall's, Inc. v. Dozier*, 407 S.W.2d 150 (Tenn. 1966) ................................................................9

*Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326 (D. Me. 2003)....................................1

*Pratt v. Smart Corp.,* 968 S.W.2d 868 (Tenn. Ct. App. 1997) ....................................................5, 7

*Ramirez v. Smart Corp.,* 863 N.E.2d 800 (Ill. App. Ct. 2007) ........................................................5

*Roach v. Underwood,* 241 S.W.2d 498 (1951) ................................................................................7

*Sobel v. Hertz Corp.*, -- F.Supp.2d ---, 2010 WL 1006882 (D. Nev. 2010) ...................................5

*Tesauro v. The Quigly Corp.*, No. 1011, CONTROL 051340, 2002 WL 372947 (Pa. Com. Pl. Jan. 25, 2002)......................................................................................................................................9

*U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of New York City*, 331 U.S. 28 (1947)............3

Rules

Fed. R. Civ. P. 56...............................................................................................................................1

Other Sources

*Manual for Complex Litigation* (Fourth) § 21.26 (2004) ...............................................................17

## INTRODUCTION

Plaintiffs Carol Corse, Stephanie Good, Lori A. Spellman, Allain L. Thibodeau, Melanie Haubrich and Miles Tyrer have each filed claims alleging that Defendants Philip Morris USA, Inc. and Altria Corp. knew that smokers were likely to receive as much or more tar and nicotine from Light cigarettes[1] as they would from regular cigarettes, and falsely represented that their Light cigarettes are healthier and safer than regular cigarettes.  Defendant Philip Morris now tries to avoid further inquiry into its conduct by filing the instant motion, which misrepresents both the law and the facts elicited during discovery in this case.

## DEFENDANT'S BURDEN ON SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56(c), summary judgment is only appropriate if the moving party sufficiently demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995).  As the First Circuit has explained:

> 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.

*Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy*, 56 F.3d at 315).  "The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case."  *Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 332 (D. Me. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  When reviewing a motion for summary judgment, a court should review the record "in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

---

[1] As used herein, the term "Light cigarettes" is defined as it is in each Plaintiff's complaint.

## ARGUMENT

## I.    Summary Judgment is not Appropriate Here

Defendant's motion is premised on the argument that, under applicable law, Plaintiffs' continued use of Light cigarettes after discovering the truth about the relative dangers of Light cigarettes, as compared to regular cigarettes, negates any allegations of reliance and causation, and thereby mandates summary judgment.  Defendant is wrong that the laws of the various states at issue require a showing of reliance and causation that would be negated by Plaintiffs' continued use of Light cigarettes.  Defendant is also incorrect in its assertions about what the evidence shows in this regard.

### A.    Plaintiffs' Continued Use of Light Cigarettes is not Fatal to Their Claims

#### 1.    Defendant Should not be Permitted to Benefit from the Addictive Nature of Its Products

Defendant essentially argues that these Plaintiffs' addiction to Defendant's products – which was very intentionally caused by Defendant – should be held against them, because they have continued to use Defendant's highly addictive products even after learning the truth about them.  Defendant does not seriously contest that each of these Plaintiffs is addicted to cigarettes. *See, e.g.*, Plaintiffs' Statement of Additional Material Facts ("Plaintiffs' SAF") ¶ 67 (Haubrich stated: "I try to quit almost every other day.  It just don't work."); Plaintiffs' SAF ¶ 76 (Good stated: "I'm addicted to Marlboro Lights."); Plaintiffs' SAF ¶ 53 (Thibodeau answered: "Q. And why did you increase to a pack a day?  A. Addiction to nicotine."); Plaintiffs' SAF ¶ 51 (Spellman stated: "Because I am now addicted, so I continue to smoke them."); Plaintiffs' SAF ¶ 87 (Tyrer stated that he is "addicted to smoking."); Plaintiffs' SAF ¶ 79 (Corse stated she is "in the habit and addicted.").

Since Defendant has successfully addicted these Plaintiffs to cigarettes by lying about how healthy Light cigarettes are, it should not now be permitted to escape liability by virtue of the fact that Plaintiffs cannot stop smoking their products. *See, e.g.*, Plaintiffs' SAF ¶ 69 (Haubrich stated she continues to buy Marlboro Ultra Lights as opposed to some other cigarette "[b]ecause I can't quit."); Plaintiffs' SAF ¶ 83 (Corse stated: "[b]ecause I guess Philip Morris has made it too hard to quit . . . ."); Plaintiffs' SAF ¶ 88 (Tyrer stated he is still smoking today because he "can't quit."); Plaintiffs' SAF ¶ 62 (Thibodeau stated: "Quitting has been an ongoing problem with me."); Plaintiffs' SAF ¶ 74 (Plaintiff Good knows that it is difficult to quit smoking).

Defendant argues that Plaintiffs are not addicted to *Light* cigarettes, only to cigarettes in general, or to the nicotine therein. However, the notion that these Plaintiffs – many of whom switched to Light cigarettes in the belief that they were less dangerous – must now again switch brands in order to preserve their claims, even though, as Defendant now admits in its latter-day "disclosures" to the public, "[t]here is no such thing as a safe cigarette," (Plaintiffs' SAF ¶ 92), is absurd.

As a policy matter, courts across the country, in a wide variety of causes of action, frown on litigants who create a problem, but then try to use that problem to their advantage – exactly as Defendant is attempting to do here. *See, e.g., U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of New York City*, 331 U.S. 28, 38-39 (1947) (in bankruptcy action, the court prevented Chase from complaining of consequences of agreement that it proposed and acquiesced in); *Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 660 (8th Cir. 1999) (in action under IDEA, the court held "[b]ecause [the parents] chose not to seek a reevaluation of Grace, they cannot now be heard to complain about the manner in which the school district evaluated her"); *CitiFinancial*

*Mortgage Co., Inc. v. Frasure*, No. 08-5068, 2009 WL 389711, at *3 (10th Cir. Feb. 18, 2009); (*pro se* plaintiff cannot complain of unfamiliarity with trial procedure when court explains all procedures and allows the plaintiff an opportunity to object); *Connectu, LLC v. Zuckerberg*, 522 F.3d 82, 89 (1st Cir. 2008) (in deciding mootness of appeal, court blocked defendants' assertion that tolling date is of no consequence when defendants repeatedly asserted statute of limitations defense); *Digital Filing Sys. LLC v. Aditya Int'l*, No. 07-1519, 2009 WL 822759, at *12 (6th Cir. Mar. 31, 2009) (stating, in patent litigation case, "[u]nder these evidentiary circumstances, Defendants cannot now be heard to complain about any inaccuracy in the district judge's assessment where any purported inaccuracies were at least in part attributable to Defendants"); *Forcier v. Metropolitan Life Ins. Co.*, 469 F.3d 178, 186 (1st Cir. 2006) (in ERISA case, "a party who agrees to submit a case on a particular set of stipulated facts cannot later be heard to complain that she misjudged what evidence might be beneficial to her cause").

Moreover, as is set forth below, application of the voluntary payment doctrine to bar Plaintiffs' claims here would be against public policy and inequitable given that Plaintiffs' addiction to cigarettes makes their payments to Defendant anything but voluntary.

### 2.   The Voluntary Payment Doctrine does not Apply

In asserting that Plaintiffs cannot recover because of their continued use of Light cigarettes, Defendant seeks to apply what is known as the "voluntary payment doctrine" ("VPD"), which "'bars recovery of payments voluntarily made with full knowledge of the facts.'"   *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 38 (E.D.N.Y. 2008) (internal quotations omitted).

However, Defendant fails to acknowledge or address the fact that some states do not even recognize the voluntary payment doctrine as a defense and, in other states, courts have restricted the causes of action to which the VPD applies.  *See, e.g., Cappetta v. GC Svcs. Ltd P'ship*, 654 F.

Supp. 2d 453, 464 (E.D. Va. 2009) (declining to apply VPD to FDCPA claim because it "afforded less protection to consumers than the FDCPA"); *Ellison v. Southstar Energy Svcs. LLC*, 679 S.E.2d 750, 755 (Ga. App. 2009) (declining to apply doctrine to private right of action under Georgia's Gas Act); *Huch v. Charter Comm., Inc.*, 290 S.W.3d 721, 727 (Mo. 2009) (holding that the doctrine is not available as a defense to a violation of the Missouri Merchandising Practices Act); *Sobel v. Hertz Corp.*, -- F.Supp.2d ---, 2010 WL 1006882, at *4 (D. Nev. 2010) ("the Legislature, having enacted paternalistic legislation designed to protect those that could not otherwise protect themselves, . . . would not want [those] protections . . . to be waived by those deemed in need of protection") (internal quotations omitted); *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.,* 170 P.3d 10, 24 (Wash. 2007) ("[T]he voluntary payment doctrine is inappropriate as an affirmative defense in the [Consumer Protection Act] context, as a matter of law, because we construe the [Act] liberally in favor of plaintiffs."); *Eisel v. Midwest Bankcentre,* 230 S.W.3d 335, 339-40 (Mo. 2007) (because voluntary payment doctrine is based on waiver and consent, defendant could not assert the defense to claim that it engaged in the unauthorized practice of law in violation of statute enacted for the protection of public); *Ramirez v. Smart Corp.,* 863 N.E.2d 800, 810 (Ill. App. Ct. 2007) ("[T]his state has an interest in transactions that violate 'statutorily-defined public policy.' The effect of such transgressive acts, generally speaking, is that the voluntary payment rule will not be applicable.") (internal quotations omitted); *Pratt v. Smart Corp.,* 968 S.W.2d 868, 872 (Tenn. Ct. App. 1997) ("[T]he State has an interest in transactions that involve violations of statutorily defined public policy, and, generally speaking, in such situations, the voluntary payment rule will not be applicable.").

Here, where Plaintiffs are addicted to Defendant's products, it is against public policy to

apply the VPD.  The purpose of the VPD is to level the playing field between litigants.  *Am. Motorists Ins. Co. v. Shrock,* 447 S.W.2d 809, 812 (Mo. App. 1969) ("The underlying reason for those requirements is that it would be inequitable to give such person the privilege of selecting his own time and convenience for litigation short of the bar of the statute of limitations, and thereby subject the payee to the uncertainties and casualties of human affairs likely to affect his means of defending the claim.").  Because of Plaintiffs' addiction, they are dependent on Defendant's products, making a "balanced" relationship between them impossible.  The VPD was simply not crafted to apply to such a relationship.

Defendant's attempt to apply the VPD here must fail, as the law in Maine, Pennsylvania, Tennessee and California do not support Defendant's position, and there are numerous disputed material facts that defeat Defendant's motion.

**Maine (Good, Spellman and Thibodeau).**  There are no cases in Maine that address the VPD, suggesting that such a defense does not even exist in Maine.  Defendant appears to recognize this, as their brief contains no citations to any Maine cases or even any cases at all from states located within the First Circuit.

**Pennsylvania (Haubrich).**  There are no cases in Pennsylvania that apply the VPD in the consumer fraud setting.  *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 n.13 (E.D. Pa. 2008) (holding that "There do not appear to be any cases applying the voluntary payment doctrine to transactions allegedly in violation of a Pennsylvania consumer protection statute.").

The only Pennsylvania case cited by Defendant is easily distinguishable.  In *Linda Coal & Supply Co. v. Tasa Coal Co.*, the plaintiff and defendant negotiated to strip mine lands owned by the defendant.  204 A.2d 451, 453 (Pa. 1694).  After the contract was signed, the plaintiff discovered that the defendant had intentionally misrepresented the overburden on the land.  *Id.*

The parties then renegotiated the terms of the contract, based on the proper information.  *Id.*
Despite the renegotiation, the plaintiff filed suit against the defendant based upon the original
misrepresentation.  *Id.*

The important distinction is that the *Linda Coal* plaintiff was not addicted to the
defendant's product and those parties had equal bargaining power in their negotiations.  Here,
Plaintiffs have no power to negotiate with Defendant at all.  And as discussed above, Ms.
Haubrich "tr[ies] to quit almost every other day," but simply cannot.  Plaintiffs' SAF ¶ 67.  And
as she testified, that is why Ms. Haubrich continues to smoke Light cigarettes.  Plaintiffs' SAF ¶
69.  She is not voluntarily choosing to continue in the transaction after learning the truth, as the
*Linda Coal* plaintiffs did; she is simply continuing to engage in the same conduct and purchase
the same cigarettes because she is addicted.

**Tennessee (Corse).**  In Tennessee, the voluntary payment doctrine is grounded in
common law.  *Pratt,* 968 S.W.2d at 872 (citing *Roach v. Underwood,* 241 S.W.2d 498 (1951)).
Further, "[the] common law doctrine is not universally applicable to all transactions," and "[it]
does not come into play in situations involving a transaction that violates public policy."  *Id.*
The transactions at issue were fraudulently induced by Defendant's misleading, extensive, and
expansive marketing campaign.  As stated more fully above, it would violate public policy to
allow Defendant to escape liability for its actions by applying the voluntary payment doctrine to
Plaintiffs' claims.

**California (Tyrer).**  In California, the voluntary payment doctrine is all but extinct.  The
last case discussing the doctrine in any detail is the 1974 case of *Chrysler Credit Corp. v. Ostly*,
42 Cal. App. 3d 663, 675-76 (Cal. App. Ct. 1974).  In *Ostly*, the court declined to apply the
voluntary payment doctrine in the context of a claim seeking recoupment of certain tax

payments.  *Id*.  Relevant to the present inquiry, the court stated, "[a prior case] may have stated the rule of the common law at the time of its pronouncement in regard to voluntary payments, but the rule, as thus announced, *has been greatly relaxed in more recent decisions in favor of the recovery of money improperly exacted by a defendant*."  *Id.* at 675 (emphasis added).  In the present case, Plaintiffs allege that Defendant improperly exacted monies from them by employing the deceptive marketing campaign described *in seriatim*.  At a minimum, Plaintiffs have shown that genuine issues of material fact exist precluding the entry of summary judgment.

**B.      Applicable Law does Not Support Defendants' Motion**

**Maine (Good, Spellman and Thibodeau).**  In Maine, all that must be shown to establish a claim for unjust enrichment is:  (1) that the plaintiff conferred a benefit on the other party; (2) that the other party had appreciation or knowledge of the benefit; and (3) that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.  *June Roberts Agency, Inc. v. Venture Prop., Inc.,* 676 A.2d 46, 49 (Me. 1996).  There are no other elements.

Contrary to Defendant's assertion, Maine law does not require detrimental reliance to establish the "inequitable" prong of an unjust enrichment claim.  The Superior Court's holding in *Everest v. Leviton Manufacturing Co*., No. CV-040612, 2006 WL 381832 (Me. Super. Ct. Jan. 13, 2006), cited by Defendant, is not based on precedent, and is not binding on this Court.  In *Maine Eye Care Assoc., P.A. v. Gorman*, the Law Court determined that the plaintiff could not succeed on its claims for either fraudulent misrepresentation or unjust enrichment, but on entirely different bases.  942 A.2d 707, 711-13 (Me. 2008).  In its discussion of unjust enrichment, the court reiterated the three elements discussed above and made no mention of a need to show detrimental reliance.  *Id.* (dismissing fraudulent misrepresentation claim for failure to show

8

justifiable reliance and dismissing unjust enrichment claim for failure to show that something of value had been taken or retained).  If detrimental reliance was part of an unjust enrichment claim, the Law Court could have said so, but it did not.

**Pennsylvania (Haubrich).**  Defendant is incorrect that causation is an element of unjust enrichment in Pennsylvania.  Ample caselaw states that causation and reliance are simply not required to establish a claim for unjust enrichment.  *See, e.g., Graduate Cardiology Consultants, P.C. v. Vivra, Inc.*, No. 2827 FEB.TERM 2000, CONTROL 080518, 2000 WL 33711050, at *6 (Pa. Com. Pl. Oct. 20, 2000) ("No Pennsylvania case specifically requires loss by the plaintiff or causation."); *Tesauro v. The Quigly Corp.*, No. 1011, CONTROL 051340, 2002 WL 372947, at *6 (Pa. Com. Pl. Jan. 25, 2002) (stating "this court does not agree that detrimental reliance is a requisite element to proceed as a class action on an unjust enrichment claim").  Defendant's attempt to insert causation into the unjust enrichment claim in Pennsylvania is misguided.

**Tennessee (Corse).**  Decades ago, the Tennessee Supreme Court held that there are three elements to an unjust enrichment claim in Tennessee: "[1] [a] benefit conferred upon the defendant by the plaintiff, [2] appreciation by the defendant of such benefit, and [3] acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof."  *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966). In the forty-four years since the Tennessee Supreme Court decided *Paschall's*, the law on unjust enrichment has not changed.  *See Markow v. Pollock*, No. M2008-01720-COA-R3-CV, 2009 WL 4980264, at *4 (Tn. Ct. App. Dec. 22, 2009) (listing same three elements for claim of unjust enrichment).

Try as it might, Defendant cannot insert into the elements of unjust enrichment the added requirements of detrimental reliance or causation.  There simply is no Tennessee case law stating

that detrimental reliance and/or causation are required to prove a claim for unjust enrichment.

**California (Tyrer).**  Defendant misinterprets the reliance requirement for standing to bring a claim under the California Unfair Competition Law ("UCL").  In the context of claims involving allegations of misleading advertising – like the ones herein – the California Supreme Court has ruled:

> While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the *only* cause.  'It is not . . . necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole *or even the predominant or decisive factor* influencing his conduct . . . .  It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision.'

*In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) (emphasis added; internal citation omitted in original).  Especially relevant to the instant case, the court stated:

> Furthermore, where, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.  Finally, an allegation of reliance is not defeated merely because there was alternative information available to the consumer-plaintiff, even regarding an issue as prominent as whether cigarette smoking causes cancer.  (See *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 638, 54 Cal.Rptr.3d 735, 151 P.3d 1151 (there is no "special presumption under California law based on common knowledge that a plaintiff is aware that smoking is addictive or harmful".))  Accordingly, we conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204 but, consistent with the principles set forth above, is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign.

*Tobacco II*, 207 P.3d at 40-41.  As shown in Plaintiffs' Statement of Additional Material Facts, Plaintiff Tyrer testified that he relied on Defendant's misrepresentations about its cigarettes when he began using Light cigarettes.  Plaintiffs' SAF ¶ 90.  As is set forth further below, he and the other Plaintiffs have not ceased using Light cigarettes because of their addiction to Defendant's

product and the lack of a viable alternative product that would satisfy their addiction.  This evidence is more than sufficient to create a genuine issue of material fact, thus, defeating Defendant's motion.

### C.    Genuine Issues of Material Fact Exist Regarding Causation and Reliance

Defendant's arguments that these Plaintiffs "would have purchased light cigarettes even without the deception" (Def. Mem. at 11), run directly counter to the testimony Plaintiffs gave in their depositions.  For example, Plaintiff Carol Corse testified that she started smoking Marlboro Light cigarettes "because of the advertisements and promotions . . . that, you know, it's a healthier, lighter cigarette, less tar, less nicotine, why not go that route if you – if you're wise, you would.  I was already at that point of addiction and habit that I needed to go light." Plaintiffs' SAF ¶ 77.  Ms. Corse said that she took the use of the words "lower nicotine and tar" in Philip Morris advertisements of light cigarettes to mean "safer."  Plaintiffs' SAF ¶ 78.

Plaintiff Miles Conrad Tyrer testified that he understood Philip Morris's representations that Light Cigarettes are "lower in tar, lower in nicotine," to mean that they are "safer." Plaintiffs' SAF ¶ 84.  Mr. Tyrer began smoking light cigarettes because of information regarding lower tar and nicotine that he received from a friend, because of advertisements stating that the light cigarettes were lower in tar and nicotine, and because the packs stated that they were lower in tar and nicotine.  Plaintiffs' SAF ¶ 90.  He further testified that, in switching to Marlboro Lights from Marlboro Mediums, he hoped that he could "wean [himself] off cigarettes, and if there was less tar and nicotine going into [his] system, then the craving would somehow subside."  Plaintiffs' SAF ¶ 91.

Similarly, Plaintiff Thibodoeau testified that he first started smoking Marlboro Lights because "[l]ower tar and lower nicotine made me think it was a safer, less-addictive cigarette."

Plaintiffs' SAF ¶ 54.  Ms. Spellman testified that she chose Marlboro Lights as her cigarette when she started smoking because she "thought it was less unhealthy than regular cigarettes." Plaintiffs' SAF ¶ 47.  Ms. Good testified that she thinks that by smoking Marlboro Lights she is at less risk of getting disease than from smoking full flavored cigarettes.  Plaintiffs' SAF ¶ 75. Plaintiff Melanie Haubrich testified that she switched to light cigarettes from full-flavored cigarettes because they were lower in tar and nicotine, and she thought smoking a cigarette with less nicotine would be healthier and less addictive.  Plaintiffs' SAF ¶¶ 63, 64, 65.  Ms. Haubrich concluded, "the only reason why I started smoking them was because I thought it was less in tar and nicotine, and I thought it would be a little bit more healthier for me to smoke Ultra Light cigarettes."  Plaintiffs' SAF ¶ 68.

Thus, contrary to Defendant's assertions, every Plaintiff began using Light cigarettes because of Defendant's misrepresentations that Light Cigarettes were less harmful and addictive, and thus perpetuated their dependence upon cigarettes instead of quitting smoking.  *See, e.g.,* Plaintiffs' SAF ¶ 82 (Corse stated: "if I could have had the option, knowing lights were going to be just as bad as full, I could have quit, and not continued to think it was doing better."); Plaintiffs' SAF ¶¶ 55, 52 (Thibodeau attempted to quit upon learning the truth about Light cigarettes, but has not yet been able to quit; he continues to smoke Marlboro Lights because of "habit.  It's not that I choose to.  It's just the addiction that I'm trying to get – you know, I'm trying to quit.").

Despite this unambiguous testimony, Defendant tries to argue that Plaintiffs purchase their highly-addictive products for reasons other than Defendant's misrepresentations about the relative health risks of Light cigarettes, such as a preference for the taste of Light cigarettes. Def. Mem. at 10-11.  However, just as every single Plaintiff testified that he or she began

12

smoking Light cigarettes because of the misrepresentations, as is set forth above, every single Plaintiff testified that he or she continues to smoke Light cigarettes because of addiction.  *See supra* pp. 2-3.

Contrary to Defendant's "taste" argument, several Plaintiffs testified that they do not like the taste of either Light cigarettes *or* regular cigarettes (Plaintiffs' SAF ¶ 50 (Spellman does not like the taste of Marlboro Lights, or of any cigarettes); Plaintiffs' SAF ¶ 59 (Thibodeau does not "like the taste of cigarettes, period")), or denied that they had any preference for the taste of Light cigarettes over other cigarettes.  Plaintiffs' SAF ¶ 56.  Indeed, some Plaintiffs testified that they do not enjoy smoking at all.  *See, e.g.,* Plaintiffs' SAF ¶ 71 (Haubrich does not really like smoking); Plaintiffs' SAF ¶ 86 (Tyrer thinks smoking is "a curse"); Plaintiffs' SAF ¶ 51 (Spellman "wouldn't call it enjoy"); Plaintiffs' SAF ¶ 79 (Corse stated: "It's hard to use the word 'enjoy.'  I think I'm just more in the habit and addicted.").  Thus, after successfully hooking Plaintiffs on cigarettes, and keeping them hooked through their misrepresentations about Light cigarettes, Defendant's suggestion that Plaintiffs continue to buy Light cigarettes because they taste good rings hollow.

Defendant argues that addiction cannot explain Plaintiffs' continued use of Light cigarettes because Plaintiffs are addicted to cigarettes generally, not Light cigarettes specifically. But, Defendant offers no logical explanation as to why a smoker who switched to Light cigarettes in the first place believing they were a healthier alternative to regular cigarettes would then switch back to regular cigarettes upon learning that *no* cigarette is healthier than any other. What the testimony ultimately shows is that Plaintiffs' continued use of Light cigarettes is the result of both addiction to cigarettes in general and the force of habit of purchasing a particular brand.  *See* Plaintiffs' SAF ¶ 48 (Spellman continues to smoke Marlboro Lights because "[i]t's a

habit" – both smoking in general and smoking Marlboro Lights specifically); Plaintiffs' SAF ¶ 61 (Thibodeau sometimes buys Marlboro Lights due to "[f]orce of habit"); Plaintiffs' SAF ¶ 69 (Haubrich continues to smoke Marlboro Ultra Lights as opposed to another brand "[b]ecause I've been buying that brand for years," and "[b]ecause I've been smoking Marlboro my whole life"); Plaintiffs' SAF ¶ 76 (Good is addicted to Marlboro Lights); Plaintiffs' SAF ¶ 80 (will not switch to a different brand of cigarettes because Corse has been "smoking them long enough that that's what [she] prefer[s]"); Plaintiffs' SAF ¶ 88 (Tyrer continues to smoke today because he "can't quit"); Plaintiffs' SAF ¶ 89 (Tyrer has "no reason other than habit" why he does not switch to a different brand of cigarettes).

Significantly, Plaintiffs' habit of purchasing Light cigarettes is a habit that there is no valid reason to alter, unless Plaintiffs were somehow able to break their addiction to cigarettes altogether, since there is no healthier alternative cigarette brand to switch to.  Defendant itself has admitted as much, stating in its package "onserts" that "[t]here is no such thing as a safe cigarette . . . .  If you are concerned about the health effects of smoking, you should quit." Plaintiffs' SAF ¶ 92.

Defendant has thus admitted that switching away from Light cigarettes now that Plaintiffs know the truth would accomplish nothing in terms of health benefits.  As Ms. Corse put it, "[Light cigarettes] were supposed to be better for you is why I switched over to begin with, so now my – do they have something better out there than that?"  Plaintiffs' SAF ¶ 81.  For people who are unable to quit smoking altogether, there is nothing "better out there," as Defendant has publicly admitted.  This Court should reject Defendant's cynical attempt to escape liability by using against Plaintiffs their failure to take the step of switching away from Light cigarettes, when Defendant itself admits that taking such a step would be pointless.

**II.     Should the Court Grant Summary Judgment as to Any of
         These Proposed Class Representatives, Plaintiffs Seek Leave to
         Substitute an Appropriate Class Representative**

Should the Court decide to grant summary judgment as to any of the proposed class representatives, Plaintiffs respectfully request that they be permitted to replace the proposed class representative within sixty days of the Court's order.   The replacement of a class representative does not require formal intervention or substitution.  *See Coffey v. Braddy*, No. 3:71-cv-44-J-32TEM, 2009 WL 591280, at *2 n. 7 (M.D. Fla. Mar. 6, 2009) (describing the replacement of class representatives without formal intervention).  *See also Birmingham Steel Corp. v. Tenn. Valley Auth.,* 353 F.3d 1331, 1343 (11th Cir. 2003) (remanding with directions "to allow a reasonable period of time for a member of the class to intervene or to be substituted as the class representative" where named representative became inadequate); *Graves v. Walton County Bd. of Educ.,* 686 F.2d 1135, 1138 (5th Cir. 1982) ("It is firmly established that where a class action exists, members of the class may intervene or be substituted and named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot."); *Armour v. City of Anniston,* 622 F.2d 1226, 1226 (5th Cir. 1980) (directing court on remand to, *inter alia,* determine whether named plaintiff was proper class representative "and, if she is not, to substitute an appropriate class representative should one desire to be appointed").

In the alternative, Plaintiffs ask to be permitted to amend the respective complaints to add appropriate class representatives.   "In the context of class actions, courts have historically permitted the replacement or addition of class representatives simply by amending the complaint."  *Chu v. Wells Fargo Inv., LLC*, C 05-04526 MHP, C 06-7924 MHP, 2009 WL 3061974, at *1 n. 1 (N.D. Cal. Sept. 24, 2009).

Requesting leave to amend to add or substitute representatives in a class action lawsuit is not uncommon.  *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452 RJHRLE, 2006 WL

15

1049352, at *2 (S.D.N.Y. Apr.19, 2006) ("In class actions, plaintiffs may add or modify class representatives during pre-class certification discovery."); *Palmer v. Stassinos,* 236 F.R.D. 460, 464, 466 (N.D. Cal. 2006) (granting leave to amend for the purpose of adding plaintiffs).  There is no need for the case to be dismissed.  *Boxdorfer v. Daimlerchrysler Corp.*, 396 F. Supp. 2d 946, 951 (C.D. Ill. 2005) ("Class action proceedings can change named plaintiffs and proceed as the same class action.").  "In the typical suit, replacing the class representative will have no effect on the suit."  *Carter v. Gen. Motors Corp.*, CIV. A. 7:99CV230R, 2001 WL 123666, at *3 (N.D. Tex. Jan. 16, 2001).  "[T]he Court may replace named representative plaintiffs at any time."  *In re Copley Pharma., Inc. "Albuterol" Prods. Liability Litig.*, 161 F.R.D. 456, 468 (D. Wyo. 1995) (citing *Carpenter v. Stephen F. Austin State Univ.,* 706 F.2d 608, *reh'g denied,* 712 F.2d 1416 (5th Cir. 1983)).

The fact that the court has not yet certified a class does not bar Plaintiffs from replacing a class representative.  *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, M 21-95, 2005 WL 3304605, at *3 (S.D.N.Y. Dec. 7, 2005) (permitting replacement of Diners Club class representative despite previously declining to certify Diners Club class); *In re Stone Energy Corp. Sec. Litig.*, Civil Action No. 05-2088, 2009 WL 3232786, at **5-6 (W.D. La. Sept. 30, 2009) (permitting lead plaintiff to be substituted when original plaintiff was dismissed for lack of standing).

In *Stone Energy* the court found that "[d]ismissal of the entire consolidated suit would be both wasteful of judicial resources and of the parties' time, energy, and money spent litigating the case thus far which the Court must assume, based on the record, has been considerable." 2009 WL 3232786, at *5 (citing *Mullaney v. Anderson,* 342 U.S. 415, 417 (1952) (recognizing notions of judicial efficiency in allowing plaintiff without standing to substitute proper plaintiff

16

under Rule 21 of the Federal Rules of Civil Procedure; culmination of trial with plaintiff lacking standing did not prejudice defendant, and re-filing of complaint by proper plaintiff would result in needless waste) and *Lynch v. Baxley,* 651 F.2d 387, 388 (5th Cir. 1981) ("Efficient judicial administration weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the interests of the subclass.")).

The *Stone Energy* court then went on to explain why judicial efficiency favored replacement of the class representative instead of dismissal of the entire action:

> Should the Court dismiss this case in its entirety, the other plaintiffs would presumably still be free to bring a class action against Stone, and Knoxville would presumably still be eligible to become lead plaintiff.  To create an opportunity for identical complaints to be filed by identical parties by using the same arguments presented in the same briefs would be senseless, to say nothing of wasteful.

*Stone Energy*, 2009 WL 3232786, at *6.  *Stone Energy* cites with approval *Currency Conversion* (cited above) and states "the *Currency Conversion* court certified an entire class, then de-certified a particular subclass.  The court implicitly found it inequitable to require the aggrieved subclass to re-file a complaint and begin the litigation anew."  *Id.*

Further, district courts have recognized that the need to replace a proposed class representative "does not frequently arise at convenient times, such as prior to the deadlines contemplated in Rules 15 and 16."  *In re Motor Fuel Temp. Sales Practices Litig.*, Nos. 07-MD-1840-KHV, 07-2348-KHV, 2009 WL 3122501, at *2 (D. Kan. Sept. 24, 2009) (permitting replacement of proposed class representative before class was certified).

Finally, sixty days is a reasonable time frame within which to substitute an appropriate class representative.  *See In re Pharm. Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61, 80 (D. Mass. 2005) (permitting plaintiffs sixty days to amend complaint to substitute class representatives); *Manual for Complex Litigation* (Fourth) § 21.26 (2004) (where replacement of a class representative is necessary, "courts generally allow class counsel time to make reasonable

efforts to recruit and identify a new representative").

## **CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully request that the Court deny Defendant's motion for summary judgment.


Dated:  May 3, 2010                                   Respectfully submitted,

                                                      _/s/ Samuel W. Lanham, Jr._
                                                      Samuel W. Lanham, Jr.
                                                      **LANHAM BLACKWELL, P.A.**
                                                      470 Evergreen Woods
                                                      Bangor, ME 04401

                                                      Ben Barnow
                                                      **BARNOW AND ASSOCIATES, P.C.**
                                                      One North LaSalle Street, Suite 4600
                                                      Chicago, IL 60602

                                                      Don Barrett
                                                      **BARRETT LAW OFFICE, P.A.**
                                                      404 Court Square
                                                      Lexington, MS 39095-0987

                                                      Kent Caperton
                                                      **BEN BARNES GROUP**
                                                      1215 19th Street, NW
                                                      Washington, DC 20036

                                                      Marian S. Rosen
                                                      **MARIAN S. ROSEN
                                                        & ASSOCIATES**
                                                      5065 Westheimer, Suite 840
                                                      Houston, TX 77056

                                                      Howard Rubinstein
                                                      **LAW OFFICE OF
                                                      HOWARD WEIL RUBINSTEIN**
                                                      P.O. Box 4869
                                                      Aspen, CO 81611

Walter Umphrey
**PROVOST UMPHREY**
  **LAW FIRM, LLP**
P.O. Box 4905
Beaumont, TX 77704-4905

Joe R. Whatley, Jr.
**WHATLEY, DRAKE & KALLAS**
1540 Broadway, 37th Floor
New York, NY 1036

John Eddie Williams
**WILLIAMS, KHERKER, HART,**
  **BOUNDAS, LLP**
8441 Gulf Freeway, Suite 600
Houston, TX 77017

*Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

Service of Plaintiffs' Memorandum of Law in Opposition to Defendant Philip Morris USA, Inc.'s Motion for Summary Judgment on Plaintiff's Claims for Lack of Causation has been made through the Court's ECF system on all those registered to receive ECF service, and on all others not registered but listed on the Court's Manual Notice List by regular mail.

Date:   May 3, 2010

  */s/ Samuel W. Lanham, Jr.*
Samuel W. Lanham, Jr.
**LANHAM BLACKWELL, P.A.**
470 Evergreen Woods
Bangor, ME 04401