# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| IN RE: LIGHT CIGARETTES MARKETING SALES PRACTICES LITIGATION | ) ) ) ) ) | MDL Docket No.: 1:09-MD-2068 |
| This document relates to: | ) ) ) | |
| CAROL CORSE, | ) ) | |
| Plaintiff, v. | ) ) ) | Case No. 09CV01122 [M.D. Tenn.] |
| PHILIP MORRIS USA, INC. and ALTRIA GROUP, INC., | ) ) ) ) | |
| Defendants; | ) ) ) | |
| STEPHANIE GOOD, LORI A. SPELLMAN, and ALLAIN L. THIBODEAU, | ) ) ) | |
| Plaintiffs, v. | ) ) ) | Case No. 1:05CV00127 [D. Me.] |
| PHILIP MORRIS USA, INC. and ALTRIA GROUP, INC., | ) ) ) ) | |
| Defendants; | ) ) ) | |
| MELANIE HAUBRICH, | ) ) | |
| Plaintiff, v. | ) ) ) | Case No. 09CV05867 [E.D. Pa.] |
| PHILIP MORRIS USA, INC., | ) ) ) | |
| Defendant; | ) ) ) | |

| | |
|---|---|
| **MILES TYRER,** | ) |
| | ) |
|     **Plaintiff** | )    Case No. 1:09CV00427 [S.D. Cal.] |
| **v.** | ) |
| | ) |
| **PHILIP MORRIS USA, INC. and ALTRIA GROUP, INC.,** | ) |
| | ) |
|     **Defendants.** | ) |

**PHILIP MORRIS USA, INC.'S REPLY IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT
<u>ON PLAINTIFFS' CLAIMS FOR LACK OF CAUSATION</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

ARGUMENT.......................................................................................................................1

I. These Plaintiffs' Claims Fail For Lack of Causation .........................................1

II. Causation Requires Proof That The Plaintiff Was Deceived By And Purchased Light Cigarettes As A Result Of The Alleged Misrepresentations...................................................................................................3

III. Plaintiffs' Alleged Addiction Cannot Excuse Them From Proving Causation............................................................................................................5

CONCLUSION....................................................................................................................7

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bennett v. Visa U.S.A. Inc.*,
    198 S.W.3d 747 (Tenn. Ct. App. 2006)..................................................................................5

*Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*,
    198 F.3d 648 (8th Cir. 1999) .................................................................................................6

*Endres v. Wells Fargo Bank*,
    2008 WL 344204 (N.D. Cal. 2008).........................................................................................2

*Everest v. Leviton Mfg. Co.*,
    2006 WL 381832 (Me. Super. Ct. 2006)............................................................................4, 5

*In re Flash Memory Antitrust Litig.*,
    No. 4:07CV86, slip op. (N.D. Cal. June 9, 2010) .................................................................7

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009).........................................................................................................4

*Legal Asset Funding, LLC v. Veneski*,
    2006 WL 2623884 (M.D. Pa. 2006).......................................................................................5

*MacAleer v. Sun Oil Co.*,
    421 A.2d 449 (Pa. Super. Ct. 1980) ..................................................................................4, 5

*Princess Cruise Lines, Ltd. v. Super. Ct.*,
    101 Cal. Rptr. 3d 323 (Ct. App. 2010)...................................................................................2

*Prohias v. Pfizer, Inc.*,
    485 F. Supp. 2d 1329 (S.D. Fla. 2007)...................................................................................1

*Ravin, Inc. v. First City Co.*,
    692 A.2d 577 (Pa. Super. Ct. 1997) .......................................................................................5

*Tesauro v. The Quigley Corp.*,
    2002 WL 372947 (Pa. Com. Pl. 2002) ..................................................................................5

*U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of New York City*,
    331 U.S. 28 (1947).................................................................................................................6

*Wayman v. Amoco Oil Co.*,
    923 F. Supp. 1322 (D. Kan. 1996), *aff'd*, 1998 WL 177857 (10th Cir. 1998) ........................2

*Whiteley v. Philip Morris Inc.*,
    11 Cal. Rptr. 3d 807 (Ct. App. 2005).....................................................................................3

**INTRODUCTION**

Plaintiffs do not dispute the single critical fact that forms the basis of this motion: each of the plaintiffs at issue here continues to purchase light cigarettes even after learning the alleged "truth" about those cigarettes and filing their lawsuits. Nor do plaintiffs even attempt to address any of the authorities holding that, where the plaintiff continues to use the product or service in question after learning the "truth," that plaintiff cannot show that he or she was deceived by the alleged misrepresentation and chose the product or service as a result of the alleged misrepresentation. *See* Defs. Br. at 7-9. As these courts have recognized, the plaintiff's willingness to enter into the transaction knowing the "truth" demonstrates that the plaintiff would have entered into the transaction even if there had been no misrepresentation, and thus cannot establish causation. *See*, *e.g.*, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (plaintiffs' continued purchases of Lipitor after learning "the truth" about its limitations demonstrated that they purchased Lipitor for reasons unrelated to misrepresentations).

Instead, plaintiffs seek to avoid judgment with three arguments: (1) they try to defeat a defense, the voluntary payment doctrine, that is not the basis of the motion, (2) they dispute that they need to show causation for any of the claims at issue, and (3) they contend that, even if they did, their allegations of addiction are sufficient to disregard the ordinary rules of causation. As shown below, none of these arguments has merit.

**ARGUMENT**

**I.     These Plaintiffs' Claims Fail For Lack of Causation**

Plaintiffs devote the bulk of their Opposition to the argument that the "voluntary payment doctrine" does not apply here. Pls. Opp. at 4-8. However, this motion is based on plaintiffs' inability to establish causation and does not address the voluntary payment doctrine.

1

The two concepts are different. The voluntary payment doctrine is a defense that, as plaintiffs concede, "bars recovery of payments voluntarily made with full knowledge of the facts." *Id.* at 4 (citation omitted). As applied here, this defense -- which PM USA pled in its Answers -- forecloses liability for those purchases made by plaintiffs after they knew the alleged "truth."[1]

By contrast, the causation requirement looks to whether plaintiff can establish that the alleged misrepresentation was the but-for reason why he or she entered into the transaction. If the plaintiff would have purchased the product even if there had been no misrepresentation, that plaintiff cannot establish causation. *See*, *e.g.*, *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1358 (D. Kan. 1996) (plaintiffs fail causation where, "regardless whether [the defendant] made misrepresentations or not, they still would have entered into their agreement"), *aff'd*, 1998 WL 177857 (10th Cir. 1998); *Princess Cruise Lines, Ltd. v. Super. Ct.*, 101 Cal. Rptr. 3d 323, 329 (Ct. App. 2010) (finding no reliance on alleged misrepresentations about price or other terms where plaintiffs "would have gone on the excursions whatever the price was and without reference to anything petitioner said or did in connection with the excursions"). Plaintiffs' failure to meet the causation requirement always bars plaintiffs' claims in their entirety. Even if the plaintiff alleges that he or she did not know the "truth" for some period of time, if the undisputed facts demonstrate that he or she would have purchased light cigarettes in any event

---

[1] PM USA submits that the voluntary payment doctrine defense presents predominating individual issues that defeat class certification. *See* Defs. Opp. To Pls. Mot. For Class Cert. at 64-66. Although not necessary to decide this motion, plaintiffs' assertion that the voluntary payment doctrine does not apply to these claims is wrong. For example, contrary to their claims that "[i]n California, the voluntary payment doctrine is all but extinct," Pls. Opp. at 7, a court recently rejected class certification of California consumer protection claims in part because "the voluntary-payment doctrine . . . may bar any claims made by class members who continued to incur and voluntarily pay the overdraft protection fees." *Endres v. Wells Fargo Bank*, 2008 WL 344204, at *12 (N.D. Cal. 2008).

for reasons unrelated to the alleged misrepresentation, then that plaintiff cannot establish causation for his or her purchases.

Accordingly, this motion seeks summary judgment against all purchases made by these plaintiffs on the ground that these plaintiffs cannot establish that they purchased light cigarettes because of the alleged misrepresentations. (At a minimum, however, any purchases by plaintiffs after they learned the alleged "truth" about light cigarettes would be barred by the voluntary payment doctrine.)

### II. Causation Requires Proof That The Plaintiff Was Deceived By And Purchased Light Cigarettes As A Result Of The Alleged Misrepresentations

As PM USA demonstrated in its opening brief, under each of their consumer fraud and unjust enrichment claims, plaintiffs must prove a causal connection between the alleged misrepresentation and their purchases. *See* Defs. Br. at 3-6. With respect to *Tyrer*, plaintiffs do not dispute that Mr. Tyrer must demonstrate a causal link between the alleged misrepresentations and his decision to purchase light cigarettes to state a claim and have standing to sue under the California consumer protection statutes at issue. *See id.* at 5-6. Plaintiffs note that under California's Unfair Competition Law ("UCL") they need not show that the alleged misrepresentation was the "*only*" cause. Pls. Opp. at 10 (emphasis in original) (citation omitted). PM USA does not dispute that principle, but plaintiffs must still show that the alleged misrepresentation was a but-for cause. Where the plaintiff would have purchased the product even without any misrepresentation, the plaintiff cannot make that showing. *See*, *e.g.*, *Whiteley v. Philip Morris Inc.*, 11 Cal. Rptr. 3d 807, 842-43 (Ct. App. 2005) (though plaintiff need not show that reliance on a representation was the sole factor influencing the conduct, "actual reliance" means that "absent such representation, [plaintiff] would not, in all reasonable probability, have entered into the contract or other transaction") (internal quotations omitted)

(cited by *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009), as "provid[ing] a framework for what plaintiffs must plead and prove in UCL fraud actions in terms of reliance").

Plaintiffs contend further that because they alleged a "long-term advertising campaign," Mr. Tyrer need not identify with an "unrealistic degree of specificity" the "particular advertisements or statements" upon which he allegedly relied. Pls. Opp. at 10 (citation omitted). But the basis for this motion is not Mr. Tyrer's failure to identify *which* specific statement he relied upon, it is that he cannot establish that *any* alleged misrepresentation was a cause because his continued purchases show that he would have bought light cigarettes in any event.

The remaining claims at issue are unjust enrichment (in *Good* (Maine), *Haubrich* (Pennsylvania), and *Corse* (Tennessee)) -- and for those claims plaintiffs make the blanket assertion that they need not show causation. *See* Pls. Opp. at 8-10.[2] As plaintiffs acknowledge, however, at the heart of unjust enrichment is the requirement that the defendant received a benefit from the plaintiff that it would be inequitable for the defendant to retain. Plaintiffs do not attempt to explain how they could show such an inequity if they would have purchased the product -- and thus provided the benefit -- even if there had been no alleged misrepresentation. For this reason, courts have held that unjust enrichment claims based on allegations of misrepresentations in connection with the sale of a product require proof of a causal link between the misrepresentation and the purchase. *See Everest v. Leviton Mfg. Co.*, 2006 WL 381832, at *4 (Me. Super. Ct. 2006) ("Defendant's retention of the monies received through the sale of the receptacles to Plaintiff is only unjust if it was obtained through fraudulent means."); *MacAleer v. Sun Oil Co.*, 421 A.2d 449, 450 (Pa. Super. Ct. 1980) ("In order to prove unjust enrichment, there must be a showing of detrimental reliance on the part of the class due to representations

---

[2] After this motion was filed, plaintiffs indicated that they were not seeking certification of their Maine Unfair Trade Practices Act claim in *Good*. Pls. Mot. for Class Cert. at 11 n.10.

4

made by [defendant] . . . ."); *Legal Asset Funding, LLC v. Veneski*, 2006 WL 2623884, at *6 (M.D. Pa. 2006) (where there was "no evidence in the summary judgment record showing that [defendant] in any way misled Plaintiff in order to induce it to enter into these contracts," defendant was entitled to summary judgment on plaintiff's claim for unjust enrichment); *Ravin, Inc. v. First City Co.*, 692 A.2d 577, 582 (Pa. Super. Ct. 1997) (where there was no evidence that defendant misled plaintiff into continuing to work on the construction site, enrichment was not unjust); *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) ("The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." (citation omitted)).  Plaintiffs ask this Court to disregard *Everest* as "not based on precedent," and simply ignore these other authorities.  Pls. Opp. at 8.[3]

## III. Plaintiffs' Alleged Addiction Cannot Excuse Them From Proving Causation

Plaintiffs erroneously argue that their continued purchases of light cigarettes despite learning of the alleged misrepresentation can be explained by their alleged addiction to smoking cigarettes.  *See* Pls. Opp. at 2-3.[4]  Plaintiffs are not claiming in these cases that they are entitled to recover based on their decision to smoke cigarettes generally, or because of the impact of addiction on their decision to smoke.  Rather, they are seeking recovery for economic loss based on their decision to purchase *a particular brand of cigarette* -- a light cigarette -- whose health effects they allege PM USA misrepresented to them.  Given plaintiffs' theory that they were

---

[3] The only authorities that plaintiffs cite that actually reject any showing of causation for purposes of any of these unjust enrichment claims are two unpublished Pennsylvania decisions by a single judge.  *See* Pls. Opp. at 9 (citing *Graduate Cardiology Consultants, P.C. v. Vivra, Inc.*, 2000 WL 33711050, at *6 (Pa. Com. Pl. 2000), and *Tesauro v. The Quigley Corp.*, 2002 WL 372947, at *6 (Pa. Com. Pl. 2002)).  That judge recognized that he was in conflict with the published decision in *MacAleer*, *see Tesauro*, 2002 WL 372947, at *6, and his conclusion is wrong for the reasons stated above.

[4] PM USA has acknowledged for years that cigarette smoking is addictive.  *See* http://www.pmusa.com/en/cms/Products/Cigarettes/Health_Issues/Addiction/default.aspx?src=top_nav.

deceived by PM USA into buying light cigarettes in particular, plaintiffs cannot invoke their alleged addiction to "cigarettes in general, or the nicotine therein," *see* Pls. Opp. at 3, to avoid the need to prove causation.[5] Indeed, plaintiffs concede that their addiction does not extend to any particular brand of cigarettes and that they could switch to other brands. *See*, *e.g.*, Thibodeau Dep. 63:2-7 (claiming that he is addicted to nicotine but admitting that he is not addicted to Marlboro Lights); Haubrich Dep. 118:7-18 (although she believes she "can't quit" smoking, she acknowledges she can quit smoking Marlboro Ultra Lights); Corse Dep. 56:21-22 ("I can't say that I am addicted to that brand.").[6]

Moreover, plaintiffs disregard that they have previously alleged not only that light cigarettes do not deliver less tar and nicotine and thus are not safer, but that such cigarettes might be *more* dangerous than other cigarettes. *See* Pls. Mot. For Class Cert. at 18, 36, 39. Several of these plaintiffs testified that they continued to purchase light cigarettes notwithstanding their belief that light cigarettes are more dangerous. Thibodeau Dep. at 62:15-18; Corse Dep. 75:12-15; Spellman Dep. 116:19-24; Good Dep. 99:4-13. Plaintiffs here seem to ignore this allegation; their reliance on addiction is predicated on the conclusion that there is no reason for a smoker to "switch back to regular cigarettes upon learning that *no* cigarette is healthier than any other."

---

[5] Plaintiffs' invocation of "public policy" similarly cannot excuse their inability to establish an essential element of their claim; nor do any of the cases cited by plaintiffs even suggest such a result. *See* Pls. Opp. at 3-4. Rather, these cases at most demonstrate that the validity of a litigant's argument is undermined when that same litigant acts or speaks in a way that would be contrary to that same argument. *See*, *e.g.*, *U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of New York City*, 331 U.S. 28, 38-39 (1947) (where litigant proceeded as if the court knew of the agreement, cannot later claim that the court did not know of the agreement); *Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 660 (8th Cir. 1999) (where plaintiffs did not have their child reevaluated, they could not thereafter claim improper evaluation).

[6] Although addiction cannot excuse plaintiffs' failure to prove causation, it is relevant to the issue of whether plaintiffs failed to receive less tar and nicotine. Under plaintiffs' theory, light smokers compensate to maintain a set amount of nicotine, and thus those non-addicted smokers would have no need to compensate. Because not all smokers are addicted, individual inquiries would be needed to determine which class members are addicted. *See* Defs. Opp. To Pls. Mot. For Class Cert. at 28-29.

6

Pls. Opp. at 13 (emphasis in original); *see also id*. at 14 ("switching away from Light cigarettes now that Plaintiffs know the truth would accomplish nothing in terms of health benefits"). That plaintiffs continue to purchase light cigarettes today notwithstanding their belief that these cigarettes are more dangerous further demonstrates that plaintiffs would have purchased light cigarettes regardless of the alleged misrepresentation.[7]

## CONCLUSION

For the above-stated reasons, PM USA respectfully requests that this Court enter summary judgment dismissing the *Corse*, *Good*, *Haubrich*, and *Tyrer* cases.

Dated: June 17, 2010

Respectfully submitted,

/s/ H. Peter Del Bianco, Jr.
H. Peter Del Bianco, Jr.
Lambert Coffin
P.O. Box 15215
477 Congress Street
Portland, Maine 04112-5215
(207) 874-4000

Philip H. Curtis
Nancy G. Milburn
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000

---

[7] Plaintiffs' request that they be allowed to substitute class representatives if the Court grants summary judgment as to any of these plaintiffs is improper. If plaintiffs' selected representatives' claims are barred by failure to prove causation, then plaintiffs must file a timely motion to amend their complaints to substitute new class representatives, so that the parties can brief the propriety of that amendment. *See*, *e.g.*, *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010) (plaintiffs' motion to substitute class representatives was untimely where plaintiffs waited until after their class certification filing to request substitution of new plaintiffs).

7

Judith Bernstein-Gaeta
James M. Rosenthal
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000

John H. Beisner
Skadden, Arps, Slate, Meagher
& Flom & Affiliates
1440 New York Avenue, N.W.
Washington, D.C. 20005
(203) 371-7000

Counsel to Defendant Philip Morris USA Inc.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 17, 2010, I electronically filed the foregoing Reply in Support of Motion for Summary Judgment on Plaintiffs' Claims for Lack of Causation with the Clerk of the Court using the EM/ECF system which will send notification of such filing to all counsel of record registered with the ECF system.

      /s/H. Peter Del Bianco, Jr.
      H. Peter Del Bianco, Jr., Esq.
      LAMBERT COFFIN
      P.O. Box 15215
      477 Congress Street
      Portland, Maine 04101
      Telephone: (207) 874-4000
      pdelbianco@lambertcoffin.com