**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| IN RE: LIGHT CIGARETTES MARKETING AND SALES PRACTICES LITIGATION | ) ) ) | MDL  DOCKET NO.: 1:09-2068<br><br>ALL CASES |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................2

I.   Rule 23(b)(3)'s Predominance Requirement Is Satisfied ....................................4

    A.   Issues Common To All California Class Members Predominate Over
        Potential Individual Issues ........................................................................5

        1.   Defendants' Argument that Plaintiffs Must Present Individualized Proofs
            Of Deception, Causation, and Injury For All California Class Members'
            UCL And FAL Claims Has Been Rejected By The California
            Supreme Court ................................................................................5

        2.   Neither Article III Nor Rule 23 Requires Absent California Class
            Members To Prove Standing and Injury.............................................11

        3.   Common Issues Predominate As To California Class Members'
            CLRA Claims....................................................................................16

    B.   Common Issues Predominate As To D.C. Class Members' CPPA Claims.................18

    C.   Common Issues Predominate As To Illinois Class Members' ICFA Claims .............23

    D.   Common Issues Predominate As To D.C., Illinois, and Maine Class
        Members' Unjust Enrichment Claims ........................................................23

    E.   Defendants' Reliance On *Canadian Export* Is Misguided .........................................29

    F.   Potential Affirmative Defenses Present No Obstacle
        To Class Certification ........................................................................31

II.  A Class Action Is The Superior Mechanism Through Which To Adjudicate
    This Litigation....................................................................................................32

III. Plaintiffs Are Adequate Class Representatives.....................................................34

CONCLUSION ..................................................................................................................35

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................5, 32

*Aspinall v. Philip Morris, Cos*.,
  813 N.E.2d 476 (Mass. 2004) .......................................................................21, 22, 23

*Babineau v. Fed. Exp. Corp*.,
  576 F.3d 1183 (11th Cir. 2009) ................................................................................4

*Bank of the W. v. Superior Court*,
  833 P.2d 545 (Cal. 1992) .......................................................................................9, 11

*Beck v. Test Masters Educ. Servs., Inc*.,
  No. 04-1391 (JR), 2010 WL 322242 (D.D.C. Jan. 27, 2010)................................21, 22

*Benedict v. Altria Group, Inc*.,
  241 F.R.D. 668 (D. Kan. 2007)...............................................................................35

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) .............................................................................33, 34

*Blihovde v. St. Croix County*,
  219 F.R.D. 607 (W.D. Wis. 2003) ..........................................................................32

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ...................................................................................14

*Cartwright v. Viking Indus.*,
  No. 2:07-cv-02159, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ...........................16

*Ctr. For Sci. in the Pub. Interest v. Burger King Corp*.,
  534 F. Supp. 2d 141 (D.D.C. 2008) .........................................................................22

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ...................................................................................15

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) .....................................................................................25

*Clay v. Am. Tobacco Co.*,
  188 F.R.D. 483 (S.D. Ill. 1999) ...............................................................................14

*Cleary v. Philip Morris, Inc.*,
  265 F.R.D. 289 (N.D. Ill. 2010) ....................................................................28

*Cohen v. DirectTV, Inc.*,
  178 Cal. App. 4th 966 (2009) ..........................................................10, 11, 18

*Comm. on Children's Tele., Inc. v. Gen. Foods Corp.*,
  673 P.2d 660 (Cal. 1983) ................................................................................9

*Connick v. Suzuki Motor, Co.*,
  675 N.E.2d 584 (Ill. 1996) ...........................................................................25

*Craft v. Philip Morris Cos.*
  190 S.W.3d 368 (Mo. App. Ct. 2005) .............................................................2

*Crowder v. Lash,*
  687 F.2d 996 (7th Cir. 1982) .......................................................................35

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) .........................................................................13

*Dukes v. Wal-Mart Stores, Inc.*,
  603 P.3d 571 (9th Cir. 2010) ..........................................................................4

*Engalla v. Permanente Med. Group, Inc.*,
  938 P.3d 903 (Cal. 1997) .............................................................................7, 8

*Fletcher v. Sec. Pac. Nat'l Bank,*
  591 P.2d 51 (Cal. 1979) ..............................................................................9, 10

*Giammanco v. Giammanco,*
  625 N.E.2d 990 (Ill. App. Ct. 1993) ........................................................24, 25

*Grayson v. AT & T Corp.*,
  980 A.2d 1137 (D.C. 2009),
  *vacated pending rehearing en banc*, 989 A.2d 709 (D.C. 2010) .................19

*Gunnells v. Healthplan Servs., Inc.,*
  348 F.3d 417 (4th Cir. 2003) ....................................................................34, 35

*Hansberry v. Lee,*
  311 U.S. 32 (1940) .........................................................................................34

*Hershenow v. Enterprise Rent-A-Car Co.*,
  840 N.E.2d 526 (Mass. 2006) ...................................................................21, 22

*Hoyte v. Yum! Brands, Inc.*,
  489 F. Supp. 2d 24 (D.D.C. 2007) ........................................................................21

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
  545 N.E.2d 672 (Ill. 1989) ....................................................................................27

*Hunter v. McKenzie*,
  239 P. 1090 (Cal. 1925) ......................................................................................7, 8

*IMS Health Inc. v. Ayotte*,
  550 F.3d 42 (2008)................................................................................................14

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*,
  241 F.R.D. 305 (S.D. Ill. 2007) ...........................................................................12

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008)...................................................................................4

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006).....................................................................................4

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008).................................................................................29, 30

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  582 F.3d 156 (1st Cir. 2009).............................................................................31, 34

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  491 F. Supp. 2d 20 (D. Mass. 2007) ....................................................................34

*In re Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) .....................................................................17, 18, 33

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009) ............................................................................... *passim*

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ...............................................................................17

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)...................................................................................34

*Jepson v. Country Village Mgmt., Inc.*,
  No. 04-P-1705, 2006 WL 1627911 (Mass. App. Ct. June 13, 2006) ..........................23

*Kasky v. Nike, Inc.*,
  45 P.3d 243 (Cal. 2002) ........................................................................................5

*Kim v. Carter's Inc.*,
  598 F.3d 362 (7th Cir. 2010) .........................................................................24, 25

*Korea Supply Co. v. Lockheed Marin Corp.*,
  63 P.3d 937 (Cal. 2003) ...................................................................................9, 10

*Koronthaly v. L'Oreal USA, Inc.*,
  No. 08-4625, 2010 WL 1169958 (3d Cir. Mar. 26, 2010) ........................................15

*Kraus v. Trinity Mgmt. Servs., Inc.*,
  999 P.2d 718 (Cal. 2000) ............................................................................6, 9, 10

*Leoni v. State Bar*,
  704 P.2d 183 (Cal. 1985) .....................................................................................5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...........................................................................................15

*Mack v. Suffolk County*,
  191 F.R.D. 16 (D. Mass. 2000) ............................................................................33

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009) ...........................................................................34

*Mass. Mut. Life Ins. Co. v. Superior Court*,
  97 Cal. App. 4th 1282 (2002) .........................................................................16, 17

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ..........................................................................16

*McAdams v. Monier, Inc.*,
  182 Cal. App. 4th 174 (2010) ..............................................................................16

*McInnis-Misenor v. Me. Med. Ctr.*,
  319 F.3d 63 (1st Cir. 2003) ................................................................................. 14

*Me. Eye Care Assocs. v. Gorman*,
  942 A.2d 707 (Me. 2008)................................................................................26, 27

*Me. People's Alliance v. Holtrachem Mfg. Co.*,
  211 F. Supp. 2d 237 (D. Me. 2002) ......................................................................14

*Meyer v. Sprint Spectrum L.P.*,
   200 P.3d 295 (2009)................................................................................................18

*Mulligan v. QVC, Inc.*,
   888 N.E.2d 1190 (Ill. App. Ct. 2008) ....................................................................25

*New World Comm'ns, Inc. v. Thompsen*,
   878 A.2d 1218 (D.C. 2005) ...............................................................................26, 27

*Oliveira v. Amoco Oil Co.*,
   776 N.E.2d 151 (Ill. 2002)......................................................................................23

*Osbourne v. Capital City Mortgage Corp.*,
   667 A.2d 1321 (D.C. 1995) .....................................................................................20

*Oshana v. Coca-Cola Bottling Co.*,
   225 F.R.D. 575 (N.D. Ill 2005)...............................................................................13

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008)............................................................................16

*PBA Local No. 38 v. Woodbridge Police Dep't*,
   134 F.R.D. 96 (D. N.J. 1991)..................................................................................13

*Pfizer v. Superior Court*,
   182 Cal. App. 4th 622 (2010) ...........................................................................10, 11

*Prohias v. Pfizer, Inc.*,
   485 F. Supp. 2d 1329 (D. Fla. 2007) ......................................................................15

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) .............................................................................14, 15

*Robinson v. Toyota Motor Credit Corp.*
   N.E.2d 951 (Ill. 2002)........................................................................................23, 26

*Rozema v. The Marshfield Clinic*,
   174 F.R.D. 425 (W.D. Wis. 1997)..........................................................................13

*Rule v. Fort Dodge Animal Health, Inc.*,
   604 F. Supp. 2d 288 (D. Mass. 2009) .....................................................................21

*Schwab v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 992 (E.D.N.Y. 2006) ....................................................................35

*Smilow v. Sw. Bell Mobile Sys. Inc.*,
  323 F. 3d 32 (1st Cir. 2003) ...................................................................................4, 30, 31, 32

*Summers v. Earth Island Inst.*,
  129 S. Ct. 1142 (2009) ..............................................................................................................14

*Tardiff v. Knox County*,
  365 F.3d 1 (1st Cir. 2004) ....................................................................................................30, 32

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*,
  454 U.S. 464 (1982) ...................................................................................................................14

*Vasquez v. Superior Court*,
  484 P.2d 964 (1971) ...........................................................................................................6, 8, 17

*Vuyanich v. Republic Nat't Bank of Dallas*,
  82 F.R.D. 420 (N.D. Tex. 1979) ...............................................................................................12

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) .....................................................................................................32

*Wells v. Allstate Ins. Co.*,
  210 F.R.D. 1 (D.D.C. 2002) ......................................................................................................20

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) ...........................................................................................13, 14

*Williams v. The Purdue Pharm. Co.*,
  297 F. Supp. 2d 171 (D. D.C. 2003) ....................................................................................15, 20

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) ...................................................................................................15

Rules and Statutes

U.S. Const. art. III ..............................................................................................11, 12, 13, 14, 15

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ...............................5

California Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* .........................15, 16, 17, 18, 19

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* .................. *passim*

D.C. Consumer Protection Procedures Act, D.C. Code §§ 28-3901 *et seq.* ..........19, 20, 21, 22, 23

Illinois Consumer Fraud and Deceptive Business Practices Act,
   815 ILCS §§ 505/1 *et seq.*..........................................................................23, 24, 25, 26

Judicial Council of California Civil Jury Instructions ("CACI") Nos. 1905, 1907 ......................8

Restatements, Dictionaries, and Treatises

1 Alba Conte & Herbert B. Newberg,
   *Newberg on Class Actions* § 2.07 (3d ed. 1992)....................................................12

1 Alba Conte & Herbert B. Newberg,
   *Newberg on Class Actions* § 2:5 (4th ed. 2002 & Supp. 2006) ...............................12

1 Alba Conte & Herbert B. Newberg,
   *Newberg on Class Actions* § 2.7 (4th ed. 2002)....................................................13

3 Alba Conte & Herbert B. Newberg,
   *Newberg on Class Actions* § 10.5 (4th ed. 2002)...................................................31

7AA Charles Alan Wright, Arthur R. Miller, Mary K. Kane,
   *Federal Practice and Procedure* § 1785.1 (3d ed. 2005) .........................................12

12 Samuel Williston,
   *Williston on Contracts* (3d ed. 1970) ...................................................................8

18 J.W. Moore,
   *Moore's Federal Practice* § 131.40[3][e][iii] (2002) .........................................34, 35

Ballentine's Law Dictionary 303 (3d ed. 1969)..............................................................23

Black's Law Dictionary 351 (5th ed. 1979)...................................................................23

Kalven and Rosenfield,
   *Function of Class Suit*, 8 U. Chi. L. Rev. 684 (1941)................................................6

Restatement (First) of Contracts § 479 (1932) ..............................................................8

Restatement (Second) of Judgments § 26 (1982) ..........................................................34

Restatement (Third) of Restitution and Unjust Enrichment § 1 (T.D. No. 7 2010) ...................26

Restatement (Third) of Restitution and Unjust Enrichment § 3 (T.D. No. 7 2010) .................2, 28

**INTRODUCTION**

Defendants[1] advertised, marketed, distributed, and sold their "Lights" and "Ultra-Lights" branded cigarettes (hereinafter, "light cigarettes") as a healthier alternative to regular cigarettes, knowing that they were in fact as or more unhealthy and cancerous to smoke than regular cigarettes. Plaintiffs, representing putative classes from several states, assert a number of causes of action arising out of these wrongful practices. As detailed in Plaintiffs' Motion for Class Certification (the "Opening Mem."), issues common to all members of the California, District of Columbia, Illinois, and Maine Classes (collectively, "the Classes") predominate over any potential individual issues.

Rather than addressing these predominating issues of law and fact, Defendants instead have chosen to create, and then discredit, their own version of Plaintiffs' claims. In so doing, Defendants wrongly insist that the validity of Plaintiffs' and the other Class members' claims turn on the manner in which each Class member smoked Defendants' light cigarettes, the amount of tar and nicotine that each actually ingested when smoking Defendants' light cigarettes, and whether each Class member fully "compensated" when smoking Defendants' light cigarettes. If this case were about receiving the maximum nicotine for the money, Defendants' view of the case might be relevant. But this case is about an effective and deceptive marketing campaign to sell light cigarettes as a healthier and safer alternative to regular cigarettes. Plaintiffs' claim is that Plaintiffs paid for a product that was at best an illusion, in that no one who purchased Defendants' light cigarettes received the advertised product or represented benefits, because Defendants' light cigarettes were not designed to deliver such to consumers: simply put, it was not the product Defendants said it was.

---

[1] As used herein, "Defendants" means Philip Morris USA Inc. (formerly Philip Morris Inc.) and Altria Group, Inc. (formerly Philip Morris Companies, Inc.).

This is not the first time Defendants have attempted to change the nature of a plaintiff's claims when opposing a motion for class certification. In *Craft v. Philip Morris Cos.*, in affirming the lower court's certification of a statewide consumer fraud class with claims arising out of Defendants' sale of light cigarettes, a Missouri appellate court expressly declined to "consider what proof may be required under a cause of action defendant thinks plaintiff should have pleaded," and held that "[the plaintiff's] allegations go to the condition and labeling of the product at the time it was sold; they do not make defendant's liability dependent on each consumer's individual smoking behavior." 190 S.W.3d 368, 382 (Mo. App. Ct. 2005). As in *Craft*, the Court should consider the claims Plaintiffs have asserted, not what proofs Plaintiffs would have to present if they were making the claims Defendants wish Plaintiffs had brought.

## ARGUMENT

Defendants' efforts to recast this case into one of individual consumer motivation and product usage issues cannot obscure the fact that this is not a product liability or personal injury case. The express statutory purpose of the consumer fraud statutes at issue is not to protect public health and safety *per se*, but rather to protect consumers and competitors from the economic harm resulting from deceptive marketing. These laws are not intended to protect consumers from the consequences of poor decisions, but rather to ensure that consumers have all material information to enable them to make informed decisions. The economic harm these statutes are designed to prevent and redress is simply the harm of buying a misrepresented product, regardless of whether a particular consumer would arguably have spent the same amount (or more) on a competitor's product, or even a different product from the same defendant. These statutes use an objective standard of materiality and the concept of the reasonable consumer— whether a hypothetical reasonable consumer would have considered the information that is

distorted, concealed, omitted, or misrepresented important in making a buying decision (including a choice between products)—to enable the finder of fact to determine whether the language and techniques chosen for the advertising or marketing of a particular product are deceptive without the need to enter the subjective realm of individual consumer motivation or usage. In these cases, material deception + purchase = causation and injury-in-fact. The proof is in the purchase. Here, Plaintiffs and the Classes were injured because they purchased Defendants' light cigarettes, rather than other cigarettes or nothing at all, in the context of a marketing campaign through which Defendants unfairly misrepresented the qualities and attributes of their light cigarettes while concealing information that would have been important to a reasonable consumer. Plaintiffs' unjust enrichment claims raise similarly predominant common questions as to whether and to what extent Defendants' marketing conduct, and the addictive nature of the product they sold, requires the disgorgement and restitution of unjustly obtained revenues and profits. *See, e.g.,* Order on Philip Morris' Motion for Summary Judgment, at 9 n.12 (Woodcock, C.J., May 26, 2010) [D.E. No. 216].

Similarly, Defendants' arguments that the presence of potential affirmative defenses and the possibility of individual damage calculations are obstacles to class certification are refuted by well-established class action precedent, and by the reality that the success of Defendants' deceptive marketing campaign is objectively demonstrated by sales of light cigarettes that produced the revenues and profits due to be disgorged. The remedy calculation thus derives primarily from Defendants' sales and financial data.  Additionally, the argument that Plaintiffs are not adequate class representatives because of theoretical claim-splitting issues has been rejected by several courts, and the same result is appropriate here.

3

While Defendants argue that Plaintiffs must use "Proofs (Not Allegations)" to demonstrate that Rule 23's requirements are met, it is important to be clear on what Rule 23's "rigorous analysis" actually requires. The Ninth Circuit recently elaborated on the standard discussed in the cases Defendants cite (*In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 37 (2d Cir. 2006) and *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 320 (3d Cir. 2008)), and explained that a "rigorous analysis" "will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims." *Dukes v. Wal-Mart Stores, Inc*., 603 F.3d 571, 594 (9th Cir. 2010). However, "district courts may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements." *Id*.  Also, "courts must keep in mind that different parts of Rule 23 require different inquiries." *Id*. *Dukes* explains that "[a] district court must sometimes resolve factual issues related to the merits to properly satisfy itself that Rule 23's requirements are met, but the purpose of the district court's inquiry at this stage remains focused on, for example, common questions of law or fact under Rule 23(a)(2), or predominance under Rule 23(b)(3), not the proof of answers to those questions or the likelihood of success on the merits." *Id*. at 590. Applying these proper standards, Plaintiffs' allegations and the evidence obtained to date demonstrate that this case is well-suited for class-wide adjudication.

**I.      Rule 23(b)(3)'s Predominance Requirement Is Satisfied**

"Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Sw. Bell Mobile Sys. Inc.*, 323 F.3d 32, 39-40 (1st Cir. 2003). The predominance requirement is met when issues subject to "generalized proof and thus applicable to the class as a whole" predominate "over those issues that are subject only to individualized proof." *See, e.g., Babineau v. Fed. Exp. Corp*., 576 F.3d 1183, 1191 (11th Cir.

2009) (citations and quotations omitted). This is a consumer fraud case, and "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

### A. Issues Common To All California Class Members Predominate Over Potential Individual Issues

#### 1. Defendants' Argument That Plaintiffs Must Present Individualized Proofs Of Deception, Causation, And Injury For All California Class Members' UCL And FAL Claims Has Been Rejected By The California Supreme Court

California Class members' claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"), are appropriate for class treatment. "To state a claim under either the UCL or the [FAL], based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009) [*Tobacco II*] (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243 (Cal. 2002)).[2] The UCL authorizes courts "to restore to any person in interest any money or property, real or personal, which may have been acquired by means of the unfair practice." Cal. Bus. & Prof. Code § 17203. Thus, for the California Class to recover relief sounding in restitution on their UCL and FAL claims, Plaintiffs must establish: (1) that members of the public were likely to be deceived by Defendants' promotion of Defendants' light cigarettes as "light" and healthier to smoke than regular cigarettes; and (2) that Defendants may have acquired such monies from California Class members by means of such unfair practices. These elements can each be proven through the presentment of expert testimony and evidence focusing on Defendants' conduct—evidence common to all Class members.

---

[2] *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (holding that the UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.") (citing *Leoni v. State Bar*, 704 P.2d 183 (Cal. 1985)).

The California statutes at issue were conceived as group remedies in response to the perceived need to buttress and expand on common law fraud, so that consumers being nickeled-and-dimed by deceptive or unfair practices could initiate representative suits to seek group redress when individual suits were too expensive or intimidating.  *See Kraus v. Trinity Mgmt. Servs., Inc.*, 999 P.2d 718, 725 (Cal. 2000) (collecting cases); *Tobacco II*, 207 P.3d at 30 (recognizing the "important roles" of consumer and UCL class actions and "the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose in protecting the general public against unscrupulous business practices") (citations omitted).

The California Supreme Court made the primacy of the group remedies explicit in *Vasquez v. Superior Court*, 484 P.2d 964, 968 (Cal. 1971), in recognizing that:  "Protection of various consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society."  As the California Supreme Court described the dilemma of redressing mass deception in modern mass society:

> Modern society seems increasingly to expose men to . . . group injuries for which individually they are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive.  If each is left to assert his rights alone if and when he can, there will at best be a random and fragmentary enforcement, if there is any at all.  This result is not only unfortunate in the particular case, but it will operate seriously to impair the deterrent effect of the sanctions which underlie much contemporary law.  The problem of fashioning an effective and inclusive group remedy is thus a major one.

484 P.2d at 968 (quoting Kalven and Rosenfield, *Function of Class Suit*, 8 U. Chi. L. Rev. 684, 686 (1941)). California has chosen the class action as the primary solution.

The California Supreme Court recognizes the "UCL class action" as "a procedural device that enforces substantive law by aggregating many individual claims into a single claim . . . to

achieve the remedial goals [of the UCL statute]. It does not change that substantive law, however." *Tobacco II*, 207 P.3d at 30 (citations omitted).  It is thus axiomatic that the class action mechanism is procedural in nature, and can operate neither to abridge nor expand the substantive rights of any party.  Defendants distort this precept to argue that what they posit as "individual issues" preclude class treatment.  However, the underlying substantive law that governs the claims sought to be prosecuted on a class basis is an indispensable part of any predominance analysis, a rule Defendants ignore.  In California, it is well-established that any plaintiff may utilize circumstantial evidence, such as reasonable inference, to establish any element of any claim, including, specifically, the "relevance" or causation element of fraud.  The California Supreme Court, in *Hunter v. McKenzie* (involving an individual fraud claim) made it abundantly clear that it is "not essential to a cause of action [for deceit] to produce direct evidence that [plaintiff] relied upon such false representations." 239 P. 1090, 1094 (Cal. 1925). *Hunter* expressed a preference for the circumstantial evidence of misrepresentation plus action, over the subjective (and often inaccurate or self-serving) individual testimony of what an individual would have done had she known the truth.  As the *Hunter* court observed:

> The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transactions which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded . . . than his direct testimony to the same effect.

*Id.*  Hence, *any* individual pursuing a claim for common law or statutory fraud in California may choose to use the circumstantial evidence of a material misrepresentation or omission, followed by actions consistent with reliance thereon, to demonstrate the causation element of fraud.[3]

---

[3] As made clear in *Engalla v. Permanente Medical Group, Inc.*, 938 P.3d 903, 919 (Cal. 1997), reliance need not be the sole cause of action or inaction, simply a "substantial factor" thereof.  An inference of reliance arises on a finding that a misrepresentation or omission is material.  Materiality is determined, in turn, as a matter of fact, under an objective standard:  A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."

The *Vasquez* court applied the *Hunter* rule to establish an inference of class-wide reliance and hence class-wide proof of fraud, *see* 484 P.2d at 944, which the California Supreme Court has continued to apply, *see Tobacco II*, 207 P.3d at 39.[4]  If, as is the case, the objective standards of materiality and the reasonable consumer are to be applied in any individual fraud or consumer act claim—and, in California, they demonstrably are—it follows that the collection of such individual claims into a class action, governed by the same objective standards, while it may have strategic consequences for one or both sides, does not operate to abridge or expand the substantive rights of either side.

Indeed, in this case—where relatively small (compared to the cost of litigation) economic consequences to consumers are involved, most claims could not be prosecuted absent a class device, and all that is lost in the transition from piecemeal (or nonexistent) individual actions to a collective class action is the repetition, costs, and delay of multiple individual suits—the class action is both substantively and procedurally superior to the undesirable alternative of piecemeal isolated claims, the alternative specifically decried by the California Supreme Court in *Vasquez*. 484 P.2d at 975-76.

This is not simply a "purposes and policies" argument; California case law makes that explicit.  Defendants' argument that the UCL requires absent California Class members to present individualized proofs of deception, causation, and injury was expressly rejected by the California Supreme Court in *Tobacco II*, which reaffirmed established precepts of California consumer law that proof of deception, causation, and injury involve the objective determination of materiality, the standard of the reasonable consumer, and demonstrated action rather than

*Tobacco II* applied these *Engalla* rules to UCL class actions. *Tobacco II*, 207 P.3d at 39.  *See also Judicial Council of California Civil Jury Instructions* ("CACI") Nos. 1905, 1907.

[4] The *Hunter* inference of reliance rule was not novel.  As *Vasquez* noted, it is consistent with the general evidentiary rule of 12 *Williston on Contracts*, p. 480 (3d ed. 1970), and the *Restatement (First) of Contracts*, § 479 (1932). *Vasquez*, 484 P.2d at 972-73.

subjective testimony.  The *Tobacco II* court emphasized that courts have "repeatedly and consistently" held that "relief under the UCL is available without individualized proof of deception, reliance and injury,"[5] and:

> Accordingly, to hold that the absent class members on whose behalf a private UCL action is prosecuted must show on an individualized basis that they have "lost money or property as a result of the unfair competition" (§ 17204) would conflict with the language in section 17203 authorizing broader relief-the "may have been acquired" language-and implicitly overrule a fundamental holding in our previous decisions, including *Fletcher, Bank of the West* and *Committee on Children's Television.* Had this been the intention of the drafters of Proposition 64-to limit the availability of class actions under the UCL only to those absent class members who met Proposition 64's standing requirements-presumably they would have amended section 17203 to reflect this intention. Plainly, they did not.

207 P.3d at 35 (emphasis in original). Defendants' attempt to minimize the California Supreme Court's statement in this regard by characterizing it as "*dictum*" should be rejected. Def. Opp. at 32.[6]  The language was part of the *Tobacco II* court's analysis, and is simply the latest in California's highest court's series of statements regarding the class-wide proof of fraud under California substantive law.

   To counter *Tobacco II*, Defendants rely on *Kraus v. Trinity Management Services, Inc.*, 999 P.2d 718 (Cal. 2000), and *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003), two earlier, nonrestitutionary disgorgement cases that are readily distinguishable.  *Kraus* clarified the difference between restitution and disgorgement:

> In our ensuing discussion of the UCL, when we refer to orders for restitution, we mean orders compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person. An order that a defendant disgorge money obtained through an unfair business practice may include a restitutionary element, but is not so limited. As in this case, such orders may compel a defendant to surrender all money obtained through an unfair business practice even though not all is to be

---

[5] 207 P.3d at 35 (citing *Bank of the W. v. Superior Court*, 833 P.2d 545, 553 (Cal. 1992); *Comm. on Children's Tele., Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 668-69 (Cal. 1983)).

[6] References herein to "Def. Opp." are to Defendants' Opposition to Plaintiffs' Motion for Class Certification.

restored to the persons from whom it was obtained or those claiming under those persons. It has also been used to refer to surrender of all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.

999 P.2d at 725. In *Korea Supply*, the plaintiff, a broker for a manufacturing company, sought disgorgement of profits from a defendant that received a contract instead of the plaintiff's client as the result of allegedly unfair activity—but the money defendant obtained under the contract was not obtained from the plaintiff, or even the plaintiff's client. 63 P.3d at 941. Similarly, in *Kraus*, a non-class case, six plaintiffs sought disgorgement of all profits obtained from not just the plaintiffs, but all other persons, as a result of the defendants' allegedly unfair practices. 999 P.2d at 722. In both, the court held that such nonrestitutionary disgorgement was not available, because the plaintiffs were seeking to recover profits that they neither gave to the defendant nor in which they had any ownership interest. *Kraus*, 999 P.2d at 732; *Korea Supply*, 63 P.3d at 946-47. In contrast, in this case, California Class members' claims sound in restitution, as they seek recovery of the profits that Defendants obtained from California Class members when they purchased Defendants' falsely-advertised light cigarettes.

Defendants' characterization of *Kraus* and *Korea Supply* as standing for the proposition that the UCL requires the presentment of individualized proofs of deception, causation, and injury for each California Class member is incorrect. *Tobacco II* expressly states that the *Kraus* prohibition against nonrestitutionary disgorgement "did not overrule any part of *Fletcher v. Security Pacific National Bank,* 591 P.2d 51, under which restitution may be ordered 'without individualized proof of deception, reliance, and injury if necessary to prevent the use or employment of an unfair practice.' (*Bank of the West,* 833 P.2d 545)." 207 P.3d at 35.

Similarly distinguishable are *Cohen v. DirectTV, Inc.,* 178 Cal. App. 4th 966 (2009) and *Pfizer v. Superior Court,* 182 Cal. App. 4th 622 (2010). In both of these cases, California courts

10

declined to certify classes that likely consisted of a substantial number of persons who were never exposed to the deceptive advertising at issue. *Pfizer,* 182 Cal. App. 4th at 632 (where the allegedly deceptive phrase appeared on only 15 of 39 Listerine mouthwash products sold during the relevant period); *Cohen*, 178 Cal. App. 4th at 980 (rejecting the plaintiffs' motion to certify a national class that included "persons never exposed in any way to an allegedly wrongful business practice"). In contrast to *Pfizer* and *Cohen*, all California Class members were exposed to the terms "Lights," "Ultra-Lights," or other similar representations, which appeared on the packaging of *all* of Defendants' light cigarettes during the Class period.

## 2. Neither Article III Nor Rule 23 Requires Absent California Class Members To Prove Standing And Injury

Defendants argue that "[n]ot only is plaintiffs' reading of *Tobacco II* incorrect as a matter of California law," it is purportedly not a viable theory under federal law because it supposedly violates standing requirements of Article III and Rule 23.  Def. Opp. at 33. Plaintiffs' "reading of *Tobacco II*" is not some tortured interpretation of *dicta* as Defendants suggest. Plaintiffs rely upon the express holding of *Tobacco II*:  a clear pronouncement that "standing requirements are applicable only to the class representatives, and not all absent class members." 207 P.3d at 25. This holding was reached after an analysis of *federal* standing requirements in class actions pursuant to Rule 23 and Article III, and is proper under that jurisprudence.

Ignoring the California Supreme Court's extensive discussion of Rule 23 and federal case law interpreting it, Defendants argue that the *Tobacco II* decision was "based on a *procedural* determination that—as a matter of California class action law—only the named representatives need standing." Def. Opp. at 35 (emphasis in original). To the contrary, the *Tobacco II* court concluded that *federal* case law does "not support the proposition that all class members must *individually show* they have the same standing as the class representative in order to be part of

the class.  Rather, *federal case law* is clear that the question of standing in class actions involves

the standing of the class representative and not the class members." 207 P.3d at 34 (emphasis

added).  The federal sources *Tobacco II* cited are unequivocal:

> [I]n the class-action context, standing is tested according to special rules.
> Generally standing in a class action is assessed solely with respect to class
> representatives, not unnamed members of the class. "Once threshold individual
> standing by the class representative is met, a proper party to raise a particular
> issue is before the court, and there remains no further separate class standing
> requirement in the constitutional sense." 1 Alba Conte & Herbert B. Newberg,
> *Newberg on Class Actions* § 2:5 (4th ed. 2002 & Supp. 2006) (collecting cases).

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 310 (S.D. Ill. 2007); *see*

1 Newberg & Conte, Newberg on Class Actions § 2.07, p. 2-41 (3d ed. 1992) ("the standing

issue focuses on whether the plaintiff is properly before the court, not whether . . . absent class

members are properly before the court").  Notably, the *General Motors* court acknowledged the

need to show Article III standing on the part of *plaintiffs*, expressly distinguishing it from a need

to demonstrate standing by *individual class members.* 241 F.R.D. at 309-10.  The *Tobacco II*

court further observed that in federal courts, "[r]epresentative parties who have a direct and

substantial interest have standing; the question whether they may be allowed to present claims on

behalf of others who have similar, but not identical, interests depends not on standing, but on an

assessment of typicality and adequacy of representation." 207 P.3d at 318-19 (quoting 7AA

Wright et al., Federal Practice and Procedure, § 1785.1, pp. 388-389 (3d ed. 2005)).[7]

The cases Defendants cite, and the decisions cited within them, support that

individualized showings of standing by Class members are not required as a condition of class

---

[7] Defendants set forth that the *Tobacco II* court relied exclusively on *Vuyanich v. Republic National Bank of Dallas*, 82 F.R.D. 420 (N.D. Tex. 1979), for its interpretation of federal law on this issue, and attempt to dispose of the court's analysis by pointing out that *Vuyanich* was subsequently vacated by the Fifth Circuit. Def. Opp. at 36 n.31. *Vuyanich* was but one of the federal sources cited by the *Tobacco II* court, and in any event, as explained hereafter, the cases Defendants themselves cite further support the *Tobacco II* court's interpretation.

certification. For example, in *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d Cir. 2006) the

Second Circuit noted:

> We do not require that each member of a class submit evidence of personal standing. *See, e.g., Rozema v. The Marshfield Clinic,* 174 F.R.D. 425, 444 (W.D. Wis. 1997) ("Those represented in a class action are passive members and need not make individual showings of standing."); *PBA Local No. 38 v. Woodbridge Police Dep't,* 134 F.R.D. 96, 100 (D. N.J. 1991) ("Once it is ascertained that there is a named plaintiff with the requisite standing, however, there is no requirement that the members of the class also proffer such evidence."); *see also* Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002).

*Id.* at 264. Yet, even while citing this case rejecting the notion that absent class members are

required by Article III and Rule 23 to make an individual showing of standing to be part of a

class in federal court, Defendants nonetheless maintain that "Rule 23 principles mandate that

absent class members proceeding in federal court . . . each . . . establish an injury." Def. Opp. at

36. That simply does not follow.

Further, while Defendants correctly quote from *Denney* that, "no class may be certified

that contains members lacking Article III standing," (Def. Opp. at 35), they fail to mention the

*Denney* court's clarification that this goes to the question of how broadly a class is defined,

rather than requiring individualized proof of standing. 443 F.3d at 264 ("The class must therefore

be defined in such a way that anyone within it would have standing."). *Oshana v. Coca-Cola*

*Bottling Co.*, 225 F.R.D. 575 (N.D. Ill 2005), similarly couches the issue not in terms of

individual class members' need to demonstrate standing, but in terms of the definition of the

class. *Id.* at 580 ("The identities of class members do not need to be specified for certification,

but the proposed class must be sufficiently definite in order to demonstrate that a class actually

exists."); *see also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009) (reversing

district court denial of class certification, remanding for analysis of whether proposed method for

proving class-wide injury by common evidence was workable, and requiring any injunctive relief subclass to be defined to include only those with standing to seek injunctive relief). The *Tobacco II* court took note of such federal case law and expressly rejected the notion that it called for individual standing showings by class members:

> Although, with respect to whether such a class exists, it has been said that "[t]he definition of a class should not be so broad as to include individuals who are without standing to maintain the action on their own behalf" (*Clay v. American Tobacco Company* (S.D. Ill. 1999) 188 F.R.D. 483, 490), such references do not support the proposition that all class members must individually show they have the same standing as the class representative in order to be part of the class.

207 P.3d at 34.

None of the cases Defendants cite disagree with this general view of federal law. Instead, several recognize that only the *named plaintiff* must demonstrate standing, which Plaintiffs do not dispute. *See, e.g., Birdsong v. Apple, Inc.,* 590 F.3d 955, 960 n.4 (9th Cir. 2009) (UCL *plaintiffs* must satisfy standing requirements under Article III); *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009) (a *plaintiff* must assert a personal stake in the outcome of the controversy); *IMS Health Inc. v. Ayotte*, 550 F.3d 42, 48 (2008) (deals with the question of standing on the part of *plaintiffs*); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (*plaintiff* must demonstrate *at trial* that he has personally suffered an actual or threatened injury); *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 67 (1st Cir. 2003) (*plaintiff* must show that he personally has suffered some actual or threatened injury); *see also Me. People's Alliance v. Holtrachem Mfg. Co.*, 211 F. Supp. 2d 237, 252 (D. Me. 2002) (addressing the requirements for representative standing by associations seeking to represent their members' interests in non-class actions). *Rivera v. Wyeth-Ayerst Laboratories,* 283 F.3d 315 (5th Cir. 2002) found that the *plaintiffs* had failed to allege that they themselves had been injured, instead basing their case on the injuries of "some third party not

before the court." *Id.* at 321 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The same is true of *Williams v. The Purdue Pharma Co.*, 297 F. Supp. 2d 176 (D. D.C. 2003), *Koronthaly v. L'Oreal USA, Inc.*, No. 08-4625, 2010 WL 1169958, at *2 (3d Cir. 2010), and *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007)—all cases that were dismissed because the *plaintiffs* had not alleged that they had suffered any legally cognizable injury-in-fact. Here, Plaintiffs have indeed alleged an injury that is "personal" to them; they merely propose, correctly, that the rest of the Class will not have to *individually* prove "deception, reliance, and injury." *See* Opening Mem. at 26.  Nothing in any of the cases cited by Defendants suggests otherwise, and the federal courts recognize class-wide proof of these elements under California substantive law. *Chamberlan v. Ford Motor Co.,* 402 F.3d 952 (9th Cir. 2005) (affirming CLRA class certification).

  *Yokoyama v. Midland National Life Insurance Co.*, 594 F.3d 1087 (9th Cir. 2010) recently held, applying Rule 23, that a consumer protection statute similar to the UCL does not require an individual showing of reliance by class members. In reversing the district court's denial of class certification, the Ninth Circuit determined it was error to find that individual questions would predominate in a claim under Hawaii's Deceptive Practices Act. *Id.* at 1093. Noting that, as with the UCL,[8]  "Hawaii uses an objective test to effectuate its remedial consumer protection statute" in that "actual deception need not be shown, the capacity to deceive is sufficient," the Ninth Circuit held that "the district court erred in holding that individual reliance issues make this case inappropriate for class certification." *Id*.  The Ninth Circuit thus found that, on claims arising under a remedial deceptive practices statute like the UCL, "there are no individualized issues of reliance *under Rule 23*." *Id.* at 1094 (emphasis added). Clearly

---

[8] As is noted above, in a UCL claim "based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Tobacco II,* 207 P.3d at 29.

then, Defendants' suggestion that Rule 23 requires individual class members to "establish injury (and deception and causation)" is without merit.  Def. Opp. at 36.

> **3. Common Issues Predominate As To California Class Members' California Legal Remedies Act Claims**

Defendants' assertion that Plaintiffs cannot establish the reliance and damage elements of California Class members' California Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA") claims through the presentment of common evidence is incorrect, and has been rejected by California courts. The CLRA, enacted in 1970, unequivocally states its statutory purpose:

> This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

Cal. Civ. Code § 1760.  The mechanism the California Legislature chose to "provide efficient and economic procedures to secure" consumer protection was the class action—a complete class action procedure (taken nearly verbatim from the then-operative version of Federal Rule 23), incorporated into the CLRA, appearing as Cal. Civil Code § 1781.

Under the CLRA, an inference of reliance is made on an objective "reasonable person" standard, and is appropriate when a defendant omits facts that would have been material to any reasonable person contemplating the purchase of the defendant's product. *See McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174 (2010); *Mass. Mut. Life Ins. Co, v. Superior Court of San Diego,* 97 Cal. App. 4th 1282, 1293 (2002); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596 (C.D. Cal. 2008) (certifying the plaintiffs' CLRA claim pursuant to Rule 23(b)(3)); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) (same); *Cartwright v. Viking Indus.*, No. 2:07-cv-02159, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) (same).

Recognizing that such a presumption is appropriate in this matter, Defendants argue that their ability to attack it renders class treatment inappropriate.[9] But, the court in *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010) recently rejected a virtually identical argument. *Steroid* reversed the denial of the plaintiff's motion for class certification, and held that the plaintiff could establish the CLRA's causation and injury elements on a class-wide basis by showing that the misrepresentation at issue was material, "even if [the defendant] might be able to show that some class members would have bought the products even if they had known [of the alleged misrepresentation]." *Id.* at 157. The *Steroid* court applied the established *Vasquez* rule: "if [the plaintiff] can show that 'material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.'" *Id.*[10] *Steroid* also reaffirmed *Mass. Mutual Life Insurance Co.'s* holding that:

> Causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all.

181 Cal. App. 4th at 157 (quoting *Mass Mutual Life Ins. Co.*, 97 Ca. App. 4th at 1292)

All California Class members were subjected to Defendants' representations, advertisements, and promotions that their light cigarettes were "light," and thus healthier to

---

[9] Defendants attempt to dispense with *Vasquez* in a footnote, arguing that the inference rebuttal right *Vasquez* recognizes "would itself create predominantly individual issues." Def. Opp. at 47 n.43 (citing only non-California authorities). Defendants ignore three crucial points: 1) *Vasquez* addressed the predominance issue and found that the deceptive marketing case before it could go forward as a class action (*see Vasquez*, 484 P.2d at 970-80); 2) Defendants' threat to cross-examine Class members on reliance would revive, to no legitimate purpose, the techniques criticized in *Hunter*; and 3) California courts have applied both the *Vasquez* inference of class-wide reliance, and the corresponding principle that the opportunity to rebut does not destroy predominance, expressly to CLRA claims. *Mass Mutual Life Ins. Co.*, 97 Ca. App. 4th at 1292-93.

[10] Importantly, the *Steroid* court also distinguished *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009), and *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009), two opinions relied on by Defendants, and, denying the defendants' petition for rehearing, reiterated:  "There is no impediment to establishing reliance for the CLRA claim in this case because it can be established by showing that the alleged misrepresentation . . . was material." 181 Cal. App. 4th at 160

smoke than regular cigarettes. Whether these alleged misrepresentations were material is a question common to all California Class members, and Defendants' argument that some California Class members would testify that they would still have purchased Defendants' light cigarettes even if they had known such representations were false does not render class treatment inappropriate.

Finally, Defendants mischaracterize the damage element of California Class members' CLRA claims. "The damage that a plaintiff in a CLRA action must show under Civil Code section 1780, subdivision (a) is any damage, which is not synonymous with actual damages and may encompass harms other than pecuniary damages." *In re Steroid Hormone Prod. Cases***,** 181 Cal. App. 4th at 156 (citing *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295 (Cal. 2009)) (quotations omitted). California Class members were harmed as the result of purchasing Defendants' light cigarettes, which Defendants' represented as healthier to smoke than regular cigarettes, and receiving cigarettes that were as or more harmful to smoke than regular cigarettes—harm that  the CLRA (and UCL) was designed to redress, punish, and prevent.

**B.  Common Issues Predominate As To D.C. Class Members' Consumer Fraud Claims**

Defendants ignore the plain language of the CPPA and applicable authority in arguing that Plaintiffs must present individualized proof of deception, causation, and injury to establish the elements of the D.C. Class members' CPPA claims. The plain language of the CPPA states:

It shall be a violation of this chapter, *whether or not any consumer is in fact misled, deceived or damaged thereby*, for any person to:

(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . .  (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; (f) fail to state a material fact if such failure tends to mislead . . . .

D.C. Code § 28-3904 (emphasis added). In this matter, Plaintiffs can use proofs common to all D.C. Class members relating to Defendants' conduct to establish a violation of the CPPA.[11]

In trying to nullify the plain language of the CPPA, Defendants create a false dichotomy between "what is necessary to prove a violation of the statute . . . and what is necessary to establish a private cause of action for monetary relief." *See* Def. Opp. at 36-37. The CPPA includes no additional requirements for bringing a private cause of action under the statute. *See* D.C. Code § 28-3905(k)(1). Additionally, the plain language of the CPPA expressly states that a plaintiff may bring an action under the CPPA and may recover "in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which *may* have been acquired by means of the unlawful trade practice." D.C. Code § 28-3905(k)(1)(E) (emphasis added). To require Plaintiffs to present individualized proofs of causation or injury as Defendants suggest would be entirely inconsistent with the CPPA's clear mandate that relief may be distributed to restore property which "may have been acquired" by means of Defendants' unlawful practices. Moreover, Defendants' arguments are entirely inconsistent with the stated purposes of the CPPA, which are to:

> (1) assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices; (2) promote, through effective enforcement, fair business practices throughout the community; and (3) educate consumers to demand high standards and seek proper redress of grievances.

D.C. Code § 28-3901(b). The CPPA further instructs that it should be "construed and applied liberally to promote its purpose." D.C. Code § 28-3901(c). The stated purposes of the CPPA do not relate to consumer purchasing decisions or product usages—it is not a products liability or personal injury statute. Rather, the purposes of the CPPA relate to protecting consumers (and

---

[11] *See Grayson v. AT & T Corp.*, 980 A.2d 1137, 1154 (D.C. 2009) (holding that "the 2000 Amendments to the CPPA permit [the plaintiff] to pursue his CPPA claim on behalf of himself and the general public regardless of whether he has experienced an injury in fact as a result of the appellees' trade practices."), *vacated pending rehearing en banc,* 989 A.2d 709 (D.C. 2010).

19

likely competitors) from the economic harms related to "all improper trade practices." *Id.* Such

protections include ensuring that consumers have all material information when purchasing

products. *See* D.C. Code § 28-3904(a), (d)-(f). Defendants' arguments, if true, would effectively

transform the CPPA from a statute that remedies and deters "all improper trade practices," into

one that deters and remedies only those improper trade practices that deceive consumers, are

relied upon, and result in economic injury provable on an individual basis. Defendants'

arguments in this regard should be rejected.[12]

   To the extent that Defendants argue that Plaintiffs Slater or Parsons lack Article III

standing, they are incorrect, as Plaintiffs Parsons and Slater satisfy all applicable standing

requirements. Plaintiffs Slater and Parsons have alleged that they did not receive what they were

promised, and that each was damaged as a result of Defendants' violations. *See* Opening Mem. at

8-10.  Slater's testimony shows that he purchased light cigarettes as the result of seeing and

believing Defendants' labeling and advertising of their light cigarettes as "light" and healthier to

smoke than regular cigarettes, and that he would not have purchased and begun smoking

Defendants' light cigarettes but for Defendants' misrepresentations and omissions. *See id.* at 9.

Parson's testimony shows that he saw and believed Defendants' advertisements and promotions

that their light cigarettes were safer and healthier to smoke than regular cigarettes, and that he

would not have purchased or begun smoking Defendants' light cigarettes but for Defendants'

misrepresentations and omissions. *Id.* Neither plaintiff received what they paid for: a cigarette

---

[12] Defendants' citation to *Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1330 (D.C. 1995), a case decided before the CPPA was modified in 2000 to eliminate the requirement of injury in fact and causation, is without merit. *See* Def. Opp. at 36-37; *See* Opening Mem. at 33-34 & n.18 (citing D.C. Code §§ 28-3904; 28-3905(k)(1)); *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 8-9 (D.D.C. 2002) (noting that the CPPA "as amended eliminates the[] requirements of injury in fact and causation").

that was healthier to smoke than a regular cigarette. *See id.* at 9-10. Thus, each Plaintiff has

standing.

This case is distinguishable from *Williams v. Purdue Pharma Co*., 297 F. Supp. 2d 171,

176 (D.D.C. 2003), and *Beck v. Test Masters Education Services., Inc*., No. 04-1391 (JR), 2010

WL 322242 (D.D.C. Jan. 27, 2010). The *Williams* court dismissed a claim under the pre-2000

amendment CPPA which did "not allege that Oxycontin failed to provide them effective pain

relief or that they suffered any adverse consequences from their use of Oxycontin" and that,

therefore, the plaintiffs "got what they paid for." 297 F. Supp. 2d at 176.  Similarly, the court in

*Beck* held that the plaintiffs did not have federal court standing. 2010 WL 322242, at *1 (noting

that the two "nominally individual plaintiffs," who "might as well be straw parties" brought

common law and CPPA claims against Test Masters alleging that they were "duped into taking

the 'wrong [LSAT] course' by the omissions and misrepresentations of Test Masters"). These

plaintiffs lacked standing because, according to the court, the plaintiffs got what they paid for:

two plaintiffs improved their LSAT scores and were admitted to law schools. *Id*. at *2.  In

contrast, Plaintiffs here have alleged that they did not get what they paid for:  a cigarette that was

healthier to smoke than a regular cigarette. *See* Opening Mem. at 8-9.

To the extent Defendants cite *Williams*, 297 F. Supp. 2d at 177, *Hoyte v. Yum! Brands,

Inc*., 489 F. Supp. 2d 24, 28 (D.D.C. 2007) and *Center For Science in the Public Interest v.

Burger King Corp*., 534 F. Supp. 2d 141, 143 (D.D.C. 2008), for the proposition that Plaintiffs

must prove more than their own standing (even after the 2000 amendments), they are incorrect.

None of these cases hold that a plaintiff, having met Article III's standing requirement, must then

provide evidence of absent class members' injury on an individualized basis. The CPPA requires

no such proofs.

Finally, Defendants attempt to downplay the effect of the CPPA's statutory damages floor in negating potential individual issues, by arguing that the statutory damages can only be recovered in the event "liability is established." *See* Def. Opp. at 37-8.  As previously noted, Plaintiffs intend to establish liability under the CPPA by showing that Defendants misrepresented, through use of the terms "Lights" and "Ultra-lights," that Defendants' light cigarettes were healthier to smoke than regular cigarettes, and this misrepresentation had a tendency to mislead consumers. Similarly, Plaintiffs intend to establish liability under the CPPA by showing that Defendants failed to disclose the material fact that their light cigarettes were not healthier to smoke than regular cigarettes. Once liability has been established, all D.C. Class members will be entitled to, at least, the statutory minimum in damages. *See* D.C. Code §§ 28-3904, 28-3905(k)(1);[13] *see also Aspinall v. Philip Morris, Cos*., 813 N.E.2d 476 (Mass. 2004).

Defendants also argue that *Aspinall's* holding regarding the availability of statutory damages has been called into question. *See* Def. Opp. at 38.  Notably, though, *Hershenow v. Enterprise Rent-A-Car Co*., 840 N.E.2d 526 (Mass. 2006), and *Rule v. Fort Dodge Animal Health, Inc*., 604 F. Supp. 2d 288 (D. Mass. 2009), the two cases cited by Defendants, distinguish *Aspinall* based on the facts without affecting its ultimate holding that the statutory damages floor supported a finding that common issues predominate relating to potential damages for light cigarette purchasers. *See Hershenow*, 840 N.E.2d at 535; *Rule*, 604 F. Supp. 2d at 300-01. The *Hershenow* court specifically distinguished that case's facts from those in *Aspinall*, stating that "the members of the plaintiff class [in *Aspinall*] purchased 'light' cigarettes that, in most instances, delivered as much or more tar and nicotine as regular cigarettes." *Hershenow*, 840 N.E.2d at 535. This is exactly the same situation as in the present case, and, as in *Aspinall*,

---

[13] The CPPA, by its terms, allows the Plaintiff to recover "treble damages or $1500 per violation, whichever is greater, payable to the consumer." *See* D.C. Code § 28-3905(k)(1)(A).

the statutory damages floor supports a finding that common issues predominate. *See* Opening Mem. at 34. *Hershenow's* logic, cited by Defendants as potentially limiting the availability of statutory damages, does not apply where the plaintiff has been injured by the conduct at issue. *See Jepson v. Country Village Mgmt., Inc*., No. 04-P-1705, 2006 WL 1627911, at *2 n.6 (Mass. App. Ct. June 13, 2006). As in *Aspinall*, Plaintiffs and absent class members who purchased light cigarettes that had been deceptively advertised are entitled to statutory damages under the CPPA.

### C.  Common Issues Predominate As To Illinois Class Members' ICFA Claims

Illinois Class members' Illinois Consumer Fraud Act claims can be established through the presentment of common evidence. The Illinois Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.* N.E.2d 951, 960 (Ill. 2002). To establish a private cause of action for a violation of ICFA, a plaintiff must show: (1) an unfair or deceptive act or practice by the defendant; (2) defendant's intent that the plaintiff rely upon the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff that is (5) proximately caused by the unfair conduct or deceptive practice. *See Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 161 (Ill. 2002).[14] The first three elements of Illinois Class members' ICFA claims focus entirely on Defendants' conduct, and can be proven through evidence common to all Illinois Class members.

---

[14] The Illinois Supreme Court has delineated the following objective factors to determine whether a practice is "unfair" under the Illinois Consumer Fraud Act:  (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) "All three factors do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.*

Defendants mischaracterize the nature of ICFA's actual damage requirement. To state a cause of action under ICFA, Illinois Class members must each "suffer[] actual damage as a result of a violation of [the Illinois Consumer Fraud Act]." 815 ILCS 505/10(a).[15] The Illinois Supreme Court has never defined the "actual damage" language of ICFA. However, as recognized in a case relied on by Defendants:

> "Damage" (an element of the tort of common-law fraud) is to be distinguished from "damages" (a remedy). It has been noted that, "[a]lthough the words, 'damage,' 'damages,' and 'injury,' are sometimes treated loosely as synonyms, there is a material distinction between them. Injury is the illegal invasion of a legal right; damage is the loss, hurt, or harm which results from the injury; and damages are the recompense or compensation awarded for the damage suffered." (Ballentine's Law Dictionary 303 (3d ed. 1969); see also Black's Law Dictionary 351 (5th ed. 1979) ("The word [ 'damage' ] is to be distinguished from its plural, 'damages', which means a compensation in money for a loss or damage").

*Giammanco v. Giammanco*, 625 N.E.2d 990, 997 (Ill. App. Ct. 1993). Thus, to satisfy the actual damage element of ICFA, Illinois Class members must have suffered actual harm, hurt, or loss as a result of Defendants' unfair and deceptive practices. Whether Illinois Class members suffered harm, hurt, or loss as a result of purchasing cigarettes labeled and advertised as being light and healthier to smoke than regular cigarettes, but which were not, is a question common to all Illinois Class members, which can be resolved on a class-wide basis through the presentment of evidence relating to Defendants' conduct.

Defendants are wrong in arguing that ICFA's actual damage element requires a showing of actual pecuniary loss by each Illinois Class member. Defendants' argument in this regard relies on the "actual pecuniary loss" language of *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010), a recent decision that is inconsistent with Illinois law and the very Illinois case law that it relies on. In drafting the Illinois Consumer Fraud Act, the Illinois legislature could have

---

[15] Once liability under ICFA is established, "[t]he court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10(a).

used the term "pecuniary loss" or language synonymous with the term—it did not.  Nor, to

Plaintiffs' knowledge, has the Illinois Supreme Court ever equated actual damage with pecuniary

loss. In fact, *Kim* relies upon *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008),

an Illinois Appellate Court case citing *Giammanco* for the proposition that "damage is the loss,

hurt, or harm which results from the injury." *Id.* at 1197 (citing *Giammanco v. Giammanco,* 625

N.E.2d 990, 997 (1993)).

Further, the proximate causation element of the Illinois Class' ICFA claims can also be

established through the presentment of common evidence. To establish the proximate causation

element of an ICFA unfair or deceptive practices claim, a plaintiff must establish that she

suffered an injury that would not have occurred absent the defendant's unfair or deceptive

practices, and that the injury is of a type that a reasonable person would see as a likely result of

the defendant's unfair or deceptive practices. *City of Chicago v. Beretta U.S.A. Corp.*, 821

N.E.2d 1099, 1127 (Ill. 2004).

In *Connick v. Suzuki Motor, Co.* the Illinois Supreme Court held that the following

allegations satisfy the elements of ICFA:

> Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems,
> including its tendency to roll over and its inadequate protection for passengers.
> Plaintiffs further alleged that Suzuki failed to disclose these defects. Finally,
> plaintiffs alleged that the safety problems of the Samurai were a material fact in
> that they would not have purchased the vehicles if Suzuki had disclosed the
> Samurai's safety risk.

675 N.E.2d 584, 595 (Ill. 1996). As in this matter, the harm at issue was the defendant's failure

to disclose material facts in conjunction with material and misleading statements. *Id* ("A material

fact exists where a buyer would have acted differently knowing the information, or if it

concerned the type of information upon which a buyer would be expected to rely in making a

decision whether to purchase."). Thus, the proximate causation element of ICFA may be demonstrated here with the same evidence as to the entire Illinois Class.

The proximate causation element of Illinois Class members' ICFA unfair practices claims can also be satisfied on a class-wide basis. Under ICFA, a practice may be unfair if it offends public policy; is immoral, unethical, oppressive or unscrupulous; or causes substantial injury to consumers. *Robinson*, 775 N.E.2d at 961 ("All three factors do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."). If Defendants' unfair conduct had not occurred, Illinois Class members would not have been harmed as a result of receiving a product that was more harmful than represented. Thus, the Class members' ICFA claims can be established through the presentment of class-wide evidence.

### D. Common Issues Predominate As To D.C., Illinois, And Maine Class Members' Unjust Enrichment Claims

The D.C., Maine, and Illinois Classes' unjust enrichment claims relate to the product at the time of purchase, and Plaintiffs' allegation that Defendants unjustly profited from the sale of cigarettes that they falsely represented to be "light" and healthier to smoke than regular cigarettes. These allegations are consistent with the principle that "instances of unjustified enrichment are both predictable and objectively determined, because the justification in question is not moral but legal. Unjustified enrichment is enrichment that lacks an adequate legal basis; it results from a transfer that the law treats as ineffective to work a conclusive alteration in ownership rights." Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b (T.D. No. 7 2010).

Additionally, class treatment of such claims is consistent with the required elements of unjust enrichment claims under relevant state law. *See, e.g., New World Comm'ns, Inc. v.*

26

*Thompsen*, 878 A.2d 1218, 1223 (D.C. 2005) (under D.C. law, "[u]njust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust."); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 545 N.E.2d 672, 679 (Ill. 1989) (To state a cause of action for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."); *Me. Eye Care Assocs. v. Gorman*, 942 A.2d 707, 712 (Me. 2008) (to state a claim for unjust enrichment under Maine law, a plaintiff must show: (1) that they conferred a benefit on the defendant, (2) that the defendant had appreciation or knowledge of the benefit, and (3) that the acceptance or retention of the benefit was under circumstances that make it inequitable for the defendant to retain the benefit). All of these elements can be shown on a class-wide basis. Defendants' attempt to portray these claims as confusing is without merit.  Def. Opp. at 22 (stating that such claims "somehow focus[] only on the condition of the product 'at the time of purchase'") (quoting Opening Mem. at 31). Defendants' view of Plaintiffs' unjust enrichment claims as relating, not to the product received at the time of transaction, but to the FTC testing method, compensation, and/or individual smoking habits, are without merit.  Def. Opp. at 22-29.

Defendants' assertion that Plaintiffs argue that the Illinois Class need not show that Defendants retained benefits to their detriment is incorrect. *See* Opening Mem. at 40. Plaintiffs can use evidence common to all Illinois Class members to establish that Defendants retained a benefit to Illinois Class members' detriment. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 545 N.E.2d 672, 679 (Ill. 1989). Illinois Class members' unjust enrichment claims are premised on their receiving, at the time of purchasing Defendants' light cigarettes, a product

27

that was more harmful and cancerous to smoke than as labeled and advertised. This information was material, in that it is of the kind that a reasonable consumer would consider important when purchasing cigarettes. Thus, all Illinois Class members suffered detriment as the result of Defendants' retention of profits collected through selling a materially mislabeled product.

Illinois Class members' claims are readily distinguishable from the claims at issue in *Cleary v. Philip Morris, Inc.*, 265 F.R.D. 289, 292-93 (N.D. Ill. 2010), where the court held that the plaintiff's claims were not typical of the class he sought to represent. Defendants here do not challenge Plaintiffs on typicality. *Cleary* rejected a proposed class representative's argument that under Illinois unjust enrichment law he was not required to establish detriment or injury as an element of unjust enrichment, and held that because he offered no explanation as to how he would establish or determine injury or detriment suffered, that his claims were not typical of the proposed class he sought to represent. *Id.* In this matter, as discussed above, Plaintiffs acknowledge that Illinois Class members are required to establish detriment as an element of their unjust enrichment claims, and have shown that they can do so through the presentment of evidence common to all Illinois Class members.

Moreover, Defendants' argument that D.C. and Maine Class members must establish detriment or injury resulting from Defendants' unjust enrichment is incorrect—neither jurisdiction recognizes such a requirement. In this respect, the unjust enrichment jurisprudence of D.C. and Maine is consistent with the recognition that unjust enrichment "requires full disgorgement of profit by a conscious wrongdoer, not just because of the moral judgment implicit in the rule of this Section, but because any lesser liability would provide an inadequate incentive to lawful behavior." Restatement (Third) of Restitution and Unjust Enrichment § 3 (T.D. No. 7 2010).

28

### E.  Defendants' Reliance On *Canadian Export* Is Misguided

Defendants mischaracterize *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6 (1st Cir. 2008) [*Canadian Export*].  Def. Opp. at 40-44. *Canadian Export* does not, as Defendants assert, require that Plaintiffs must prove injury-in-fact suffered by each and every Class member as a prerequisite to class certification. Additionally, Defendants' attacks on Plaintiffs' ability to present aggregate proof of damages ignore that such a procedure has expressly been approved by the First Circuit.

In *Canadian Export*, when the plaintiffs proposed a novel and complex theory of calculating indirect purchaser antitrust injury (or impact), the First Circuit vacated the lower court's class certification order, and remanded the matter requesting "a more thorough explanation of *how* the pivotal evidence behind plaintiff's theory can be established." *Canadian Export*, 522 F.3d at 29 (emphasis in original); *see also id.* ("If there is no realistic means of proof, many resources will be wasted setting up a trial that plaintiffs cannot win."). The context of an indirect purchaser antitrust case is far different than the claims at issue in this consumer class action, as the element of injury-in-fact (or impact), and the stringent proof requirements for establishing such injury-in-fact in indirect purchaser antitrust cases, is not at issue in this litigation. The damage theories and legal claims in this matter are vastly different and do not implicate the far different views regarding the "double recovery" views associated with indirect purchaser cases and the "skeptical view" sometimes confronting such cases depending on jurisdiction, as opposed to the "sanguine view." Moreover, *Canadian Export* does not stand for the proposition, as Defendants suggest, that a plaintiff must establish that every proposed class member suffered injury-in-fact for a class to ever be certified pursuant to Rule 23(b)(3). Def. Opp. at 40. Rather, the court held that the plaintiffs had not demonstrated a viable means of

29

establishing an element of their antitrust claims—the injury (or impact) element. 522 F.3d at 25-26 ("Plaintiffs cannot make their case without common proof of causation, and they can only prove causation through common means if their novel theory is viable; that viability in turn depends on their ability to establish—whether through mathematical models or further data or other means—the key logical steps behind their theory."). In this case, as demonstrated herein and in Plaintiffs' Opening Memorandum, Plaintiffs can establish the elements of the Class members' claims through the presentment of evidence common to all Class members, and common questions of law and fact predominate over any potential individual issues.[16]

Further, Plaintiffs have satisfied their burden of establishing that they can calculate damages on an aggregate class-wide basis through expert testimony. "The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197-98 (1st Cir. 2009) (citing 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10.5, at 483-86 (4th ed. 2002) (noting that:

> Aggregate computation of class monetary relief is lawful and proper. Courts have not required absolute precision as to damages . . . . Challenges that such aggregate proof affects substantive law and otherwise violates the defendant's due process or jury trial rights to contest each member's claim individually, will not withstand analysis . . . . Just as an adverse decision against the class in the defendant's favor will be binding against the entire class in the aggregate without any rights of individual class members to litigate the common issues individually, so, too, an aggregate monetary liability award for the class will be binding on the defendant without offending due process. (footnotes omitted).

---

[16] Defendants mischaracterize *Canadian Export* as standing for the proposition that individualized damage calculations render this case unmanageable and are an obstacle to class certification. To the contrary: "Predominance is not defeated by individual damages questions as long as liability is still subject to common proof. . . . This is because the class action can be limited to the question of liability, leaving damages for later individualized determinations." 522 F.3d at 28 (citing *Tardiff*, 365 F.3d at 7; *Smilow*, 323 F.3d at 41; 6 Conte & Newberg, § 18:53, at 179 & n.10, § 18:56, at 190-92).

To the extent that Defendants characterize Dr. Jeffrey E. Harris's, M.D. Ph.D., analysis as an attempt to establish a non-existent economic injury element, they are incorrect. Dr. Harris's analysis was offered to establish that the aggregate amount of damages at issue can be established through the presentment of expert testimony. Establishing the amount of damages is entirely different from establishing the elements of a cause of action.

### F.   Potential Affirmative Defenses Present No Obstacle To Class Certification

The existence of potential affirmative defenses does not alter that common issues predominate in this litigation. "Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Smilow*, 323 F. 3d at 39-40 (citations omitted). Rather, where, as in the instant litigation, common issues otherwise predominate, "courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses." *Id.* "After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Id.* (citations omitted).

Ignoring this well-established principle of class action procedure, Defendants incorrectly argue that questions relating to the assertion of potential statute of limitations and voluntary payment defenses destroys predominance in this matter.  This argument is contrary to the above-cited authority and to the holding in *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000), that "possible differences in the application of a statute of limitations to individual class members . . . does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." 208 F.3d at 2196 (citations omitted).  The *Smilow* court also rejected an argument that potentially individualized waiver defenses rendered class action treatment inappropriate—an argument

31

virtually identical to the voluntary payment argument Defendants now pursue. *Smilow*, 323 F. 3d at 39. Thus, Defendants' arguments in this regard should be rejected.

## II.    A Class Action Is The Superior Mechanism Through Which To Adjudicate This Litigation

A class action is the superior means through which to adjudicate this litigation, and Defendants' arguments to the contrary mischaracterize the facts of this case and applicable law. The foundations of Rule 23, class action procedure generally, and public policy support a finding here that the class action mechanism is the superior means to adjudicate Plaintiffs' claims.

Class members' claims are likely too small to vindicate on an individual basis. The value of each individual Class member's claim is likely to be in the hundreds, or at most, thousands of dollars. The costs of litigating such claims on an individual basis against Defendants, two large and extremely well-funded corporations that have been engaged in tobacco-related litigation for decades, would far exceed these individual amounts. Thus, the class action mechanism is almost certainly the only feasible way to litigate the claims of Class members and is, therefore, superior to other alternatives. *See, e.g., Tardiff v. Knox County*, 365 F.3d 1, 17 (1st Cir. 2004) (citing *Blihovde v. St. Croix County*, 219 F.R.D. 607, 622 (W.D. Wis. 2003); *Mack v. Suffolk County*, 191 F.R.D. 16, 25 (D. Mass. 2000)).  In *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997), the Supreme Court observed:

> [w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all . . . The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Id.* at 617 (1997) (citations and quotation marks omitted).

32

Additionally Defendants' portrayal of this litigation as one involving innumerable individual issues is based upon a distortion of applicable law and the claims at issue.  Defendants claim that a due process right to attack common findings as to each individual Class member defeats predominance. This proposed tactic of nullifying predominance via rebuttal has been decisively rejected. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).  The right of rebuttal "does not preclude the predominance of common questions." *Id.* at 906.  Instead, materiality remains key.  An attack on individual class members "does not transform the common question into a series of individual ones; plaintiffs may satisfy their burden of showing causation as to each by showing materiality as to all." *Id.*; *Accord In re Steroid Hormone Product Cases*, 181 Cal. App. 4th at 157; *Mass. Mutual Life Ins. Co.*, 97 Cal. App. 4th at 1292.

A defendant's attempts to deploy rebuttal to foster unmanageability, or increase cost and delay, are likewise rebuffed.  *Blackie* catalogs a number of procedures "which will provide fairness to defendants and a genuine resolution of disputed issues while obviating the danger of subverting the class action with delaying and harassing tactics." *Blackie,* 524 F.2d at 906. The First Circuit directly rejected this argument in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156 (1st Cir. 2009) (it is "obvious that class-action litigation often *requires* the district court to extrapolate from the class representatives to the entire class; for example, the district court employed just this kind of analysis without objection in this very case when it applied the 'discovery rule' to determine when the statute of limitations should cut off the plaintiffs' claims, but did not make specific findings as to each class member.") (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 75-80 (D. Mass. 2007).[17]

---

[17] "It is familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, or where they actually participate in the conduct of the litigation in which members of the class are present as parties, or

Defendants' attempts to characterize this matter as unmanageable should be rejected. *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140 (2d Cir. 2001) (noting that denying class certification on manageability grounds is "disfavored").

## III.    Plaintiffs Are Adequate Class Representatives

Defendants' argument that Plaintiffs are not adequate class representatives because they are not pursuing claims for personal injuries on behalf of themselves and the Classes is without merit. Defendants ignore that "the doctrine of claim splitting generally does not apply to class actions." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* 256 F.R.D. 586, 597-98 (N.D. Ill. 2009) (citing 18 Moore's Federal Practice § 131.40[3][e][iii] (2002) (citing Restatement (Second) of Judgments § 26(1)(c) (1982)); *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 432 (4th Cir. 2003) (rejecting claim splitting argument in context of Rule 23(b)(3) class); *see also Crowder v. Lash,* 687 F.2d 996, 1008 (7th Cir. 1982). As explained in Moore's Federal Practice:

> Generally, the request for certification as a class action and the order approving such certification will determine the nature of the claims subject to class treatment, and the resultant judgment will be limited to those claims . . . Thus, a class action can be thought of as an action in a court of limited jurisdiction in which only certain claims and certain forms of relief are available. This type of action, of course, is one of the recognized exceptions to the rule against claim splitting.

18 Moore's Federal Practice § 131.40[3][e][iii] (2002). Several courts have rejected Defendants' claim-splitting argument specifically in tobacco cases. *See, e.g., Benedict v. Altria Group Inc.,* 241 F.R.D. 668, 674-675 (D. Kan. 2007); *Schwab v. Philip Morris USA, Inc*., 449 F. Supp. 2d 992, 1078 (E.D.N.Y. 2006) (collecting cases). The Court should reject it as well.

---

where the interest of the members of the class, some of whom are present as parties, is joint, or where for any other reason the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter."  *Hansberry v. Lee,* 311 U.S. 32, 42-43 (1940).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court: (1) certify the California, D.C., Illinois, and Maine Classes, as requested by Plaintiffs' Memorandum for Class Certification and Incorporated Memorandum of Law; (2) appoint Plaintiffs as Class Representatives for their respective Classes; and (3) appoint the members of the Plaintiffs' Executive Committee, the members of Plaintiffs' Steering Committee, and local counsel for each respective Class, as Class Counsel Committee for that Class.

Dated:  June 17, 2010                                 Respectfully submitted,


                                                       /s/ Samuel W. Lanham, Jr.

                                                      Samuel W. Lanham, Jr.
                                                      **LANHAM BLACKWELL, P.A.**
                                                      470 Evergreen Woods
                                                      Bangor, ME 04401

                                                      Ben Barnow
                                                      **BARNOW AND ASSOCIATES, P.C.**
                                                      One North LaSalle Street, Suite 4600
                                                      Chicago, IL 60602

                                                      Don Barrett
                                                      **BARRETT LAW OFFICE, P.A.**
                                                      404 Court Square
                                                      Lexington, MS 39095-0987

                                                      Kent Caperton
                                                      **BEN BARNES GROUP**
                                                      1215 19th Street, NW
                                                      Washington, DC 20036

                                                      Marian S. Rosen
                                                      **MARIAN S. ROSEN**
                                                       **& ASSOCIATES**
                                                      5065 Westheimer, Suite 840
                                                      Houston, TX 77056

35

Howard Rubinstein
**LAW OFFICE OF**
**HOWARD WEIL RUBINSTEIN**
P.O. Box 4869
Aspen, CO 81611

Walter Umphrey
**PROVOST UMPHREY**
  **LAW FIRM, LLP**
P.O. Box 4905
Beaumont, TX 77704-4905

Joe R. Whatley, Jr.
**WHATLEY, DRAKE & KALLAS**
1540 Broadway, 37th Floor
New York, NY 1036

John Eddie Williams
**WILLIAMS, KHERKER, HART,**
  **BOUNDAS, LLP**
8441 Gulf Freeway, Suite 600
Houston, TX 77017

*Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

Service of this Reply in Support of Plaintiffs' Motion for Class Certification has been made through the Court's ECF system on all those registered to receive ECF service, and on all others not registered but listed on the Court's Manual Notice List by regular mail.

Date:   June 17, 2010

  _/s/ Samuel W. Lanham, Jr._

Samuel W. Lanham, Jr.
**LANHAM BLACKWELL, P.A.**
470 Evergreen Woods
Bangor, ME 04401