IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRIS CHAVEZ, on behalf on          No    C 06-6609 VRW
himself and all others similarly
situated,                                 ORDER

          Plaintiff,

          v

BLUE SKY NATURAL BEVERAGE CO, et
al,

          Defendants.
_____/

          Plaintiff Chris Chavez purports to represent a class of
consumers against defendants Blue Sky Natural Beverage Co, Hansen
Beverage Company and Hansen Natural Corp for claims arising from
allegedly false or deceptive labeling of beverages.  The parties
have filed motions for judgment on the pleadings or, in the
alternative, summary judgment.  Plaintiff has also filed a motion
for class certification.

          On May 27, 2010 the court heard oral argument on the
motions.  For the reasons set forth below, Plaintiff's motion for
judgment on the pleadings and motion for class certification are

GRANTED.  Defendants' motion for judgment on the pleadings is
DENIED.


                                   I

          Defendants develop, market, distribute and sell beverages
throughout the United States including the "Blue Sky" line of sodas
and juices.  Doc #1-1 at 3, 8.  In September 2000 defendants
acquired the Blue Sky natural soda business from the Blue Sky
Natural Beverage Co which had been based in and operated from Santa
Fe, New Mexico since approximately 1980.  Id at 8.  Until May 2006
the labels of Blue Sky beverage cans and bottles stated "SANTA FE,
NEW MEXICO" OR "SANTA FE, NM."  The Blue Sky beverage containers
also stated "CANNED FOR THE BLUE SKY NATURAL BEVERAGE COMPANY SANTA
FE, NM 87501" or "CANNED UNDER THE AUTHORITY OF BLUE SKY NATURAL
BEVERAGE CO., SANTA FE, NM USA."  Id.  Plaintiff alleges that the
packaging of Blue Sky beverages also presents "a particularly
Southwestern look and feel including without limitation (stylized)
Southwestern Indian tribal bands across the top and bottom of the
cans and bottles and pictures of what appear to be the Sangre de
Cristo mountains that border Santa Fe, New Mexico on the eastern
side of the city."  Id.  Plaintiff further alleges that until May
2006 the homepage of defendants' website (www.blueskysoda.com)
prominently stated "Santa Fe, New Mexico, U.S.A." and listed a
phone number with an area code assigned to Santa Fe, New Mexico.
Id.

          Plaintiff contends that since October 2000 there has not
been any company named "Blue Sky Natural Beverage Co" operating in
Santa Fe and that Blue Sky beverages are not manufactured or

bottled in Santa Fe or anywhere else in the state of New Mexico. Id at 9.  Plaintiff alleges that from 1999 to summer of 2003 he purchased Blue Sky beverages over other comparable brands on the basis of defendants' representations about the geographic origin of these beverages.  Id at 9-10.  Plaintiff claims that he relied on defendants' misrepresentations and thus lost the full value of the price he paid for the Blue Sky beverages which he would not have paid had he known the true geographic origin of the products.  Id at 10, 13.

Plaintiff brought this action on behalf of himself and similarly situated individuals on September 21, 2006 in San Francisco superior court.  Doc #1.  Plaintiff asserts four causes of action under state law: false advertising under California Business and Professions Code § 17500 et seq; unfair trade practices under Business and Professions Code § 17200 et seq; violation of the Consumers Legal Remedies Act, California Civil Code § 1750 et seq ("CLRA"); and common law fraud, deceit and/or misrepresentation.

Defendants removed the case to this court and promptly filed a motion to dismiss on several grounds including preemption of state law claims by the Food, Drug and Cosmetic Act.  The court granted the motion to dismiss on grounds other than preemption. Doc #40.  On appeal, the Ninth Circuit reversed the dismissal and remanded the case.  Doc ## 50, 55.  It was thereafter assigned to the undersigned, Doc #52, following recusal of the prior judge. Doc #51.

On remand Plaintiff filed a motion to strike the affirmative defenses which the court denied.  Doc #72.  Plaintiff

3

now seeks judgment on the pleadings or summary judgment on the affirmative defense of preemption.  Doc #82.  Defendants seek judgment on the pleadings or summary judgment on the claim for relief under the CLRA.  Doc #84.  Plaintiff has also filed a motion for class certification.  Doc #94.

II

A

The standard applied on a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is the same standard applied on a motion to dismiss under Rule 12(b)(6): accepting the allegations of the non-moving party as true, judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.  Hal Roach Studios, Inc v Richard Feiner and Co, Inc, 896 F2d 1542, 1550 (9th Cir 1990).  If matters outside the pleadings are presented to the court, the motion must be treated as a motion for summary judgment under Rule 56.  Fed R Civ Proc 12(d).

B

The question whether plaintiffs' claims are preempted by federal law is presented in an unusual procedural posture by plaintiff moving for judgment on the preemption issue rather than defendants moving for dismissal on preemption grounds.  Plaintiff earlier filed a motion to strike the affirmative defense of

4

United States District Court
For the Northern District of California

1  preemption.  Doc #57.  Upon denial of plaintiff's motion to strike,

2  the court determined that plaintiff had failed to demonstrate that

3  the preemption defense could not succeed under any set of

4  circumstances.  Doc #72 at 6.  On plaintiff's motion for summary

5  adjudication the parties do not dispute that the preemption defense

6  may be decided as a matter of law.  Doc #107 at 26.  The court

7  determines that federal laws and regulations do not preempt

8  plaintiff's state law claims and therefore grant plaintiff's motion

9  for summary adjudication of the affirmative defense of preemption.

10      Pursuant to the Supremacy Clause, US Const Art VI cl 2,

11  federal law preempts state law when (1) Congress enacts a statute

12  that explicitly preempts state law; (2) federal law occupies a

13  legislative field to such an extent that it is reasonable to

14  conclude that Congress left no room for state regulation in that

15  field; or (3) state law actually conflicts with federal law.  Chae

16  v SLM Corp, 593 F3d 936, 941 (9th Cir 2010), reh'g en banc denied

17  April 1, 2010 (citations omitted).  The Supreme Court has

18  identified two guiding principles of preemption jurisprudence:

19  first, the purpose of Congress; second, the presumption against

20  preemption "unless that was the clear and manifest purpose of

21  Congress."  Wyeth v Levine, --- US ----, 129 S Ct 1187, 1194 (2009)

22  (citations omitted).

23

24                              1

25      Where Congress enacts an express preemption provision

26  indicating its intent to preempt at least some state law, the court

27  must nonetheless "identify the domain expressly pre-empted by that

28  language."  Medtronic, 518 US 470, 484 (1996) (quotation omitted).

In <u>Bates v Dow Agrosciences LLC</u>, 544 US 431 (2005) a group of peanut farmers alleged that their crops were damaged by Dow's newly marketed pesticide.  Dow successfully argued in the lower courts that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) expressly preempted the farmers' state law claims.  FIFRA required manufacturers to submit to the EPA a proposed label and supporting data to register a pesticide and prohibited manufacturers from selling misbranded pesticides.  544 US at 438.  The statute included a preemption provision: "Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."  7 USC § 136v(b).  The Supreme Court articulated that for a state rule to be preempted by section 136v(b) it must be a requirement "for labeling or packaging" and must impose a requirement that "in addition to or different from" those required by applicable EPA regulations.  544 US at 444.  Writing for the court, Justice Stevens reasoned that under the express preemption provision a state-law labeling requirement is not preempted "if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions."  Id at 447.

Congress passed the Nutrition Labeling and Education Act of 1990 amending the FDCA to prescribe national uniform nutrition labeling for foods.  HR Rep 101-538 (June 13, 1990).  The NLEA included the explicit preemption provision codified as section 343-1(a):

> no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce — * * * any requirement for the labeling of food of the type required by

6

United States District Court
For the Northern District of California

[section 343(b)-(f), (h), (i)(1)-(2), or (k) of the FDCA] that is not identical to the requirement of such section * * *.

21 USC § 343-1(a)(2) and (3).  Section 343-1 lists provisions of the FDCA that expressly preempt state law which do not include the relevant prohibition on "false or misleading" labeling set forth in 21 USC § 343(a) which deems food to be misbranded if "its labeling is false or misleading."  The express preemption provision of the FDCA contained in section 343-1 therefore does not preempt the claims arising from false or misleading labels regulated by section 343(a).

2

In the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended to occupy exclusively.  English v General Electric Co, 496 US 72, 79 (1989).  The court may infer field preemption where it is supported by federal statutory and regulatory schemes, but where the field includes "areas that have been traditionally occupied by the states," congressional intent to supersede state laws must be "clear and manifest."  Id (quotations omitted).

The FDCA gives the FDA authority to promulgate regulations to enforce the provisions of the FDCA.  21 USC § 371.  The parties do not dispute that pursuant to that authority the FDA has promulgated regulations governing misbranding of food and providing that food is misbranded if its label

expresses or implies a geographical origin of the food or any ingredient of the food except when such representation is either:

7

   (1)  A truthful representation of geographical origin.

   (2)  A trademark or trade name provided that as applied to the article in question its use is not deceptively misdescriptive.  A trademark or trade name composed in whole or in part of geographical words shall not be considered deceptively misdescriptive if it:

    (i)  Has been so long and exclusively used by a manufacturer or distributor that it is generally understood by the consumer to mean the product of a particular manufacturer or distributor; or

    (ii) Is so arbitrary or fanciful that it is not generally understood by the consumer to suggest geographic origin.

   (3)  A part of the name required by applicable Federal law or regulation.

   (4)  A name whose market significance is generally understood by the consumer to connote a particular class, kind, type, or style of food rather than to indicate geographical origin.

21 CFR § 101.18(c).  Plaintiff identifies another FDA regulation that governs specification of the name and place of business:

   (a)  The label of a food in packaged form shall specify conspicuously the name and place of business of the manufacturer, packer, or distributor.

   (b)  The requirement for declaration of the name of the manufacturer, packer, or distributor shall be deemed to be satisfied, in the case of a corporation, only by the actual corporate name, which may be preceded or followed by the name of the particular division of the corporation. In the case of an individual, partnership, or association, the name under which the business is conducted shall be used.

   (c)  Where the food is not manufactured by the person whose name appears on the label, the name shall be qualified by a phrase that reveals the connection such person has with such food; such as "Manufactured for ---", "Distributed by ---", or any other wording that expresses the facts.

8

    (d)    The statement of the place of business shall include the street address, city, State, and ZIP code; however, the street address may be omitted if it is shown in a current city directory or telephone directory. The requirement for inclusion of the ZIP code shall apply only to consumer commodity labels developed or revised after the effective date of this section. In the case of nonconsumer packages, the ZIP code shall appear either on the label or the labeling (including invoice).

    (e)    If a person manufactures, packs, or distributes a food at a place other than his principal place of business, the label may state the principal place of business in lieu of the actual place where such food was manufactured or packed or is to be distributed, unless such statement would be misleading.

21 CFR 101.5. Plaintiff contends that his state law claims do not impose additional or different requirements from either of these regulations and are therefore not expressly preempted. Doc #114 at 14. The question before the court, however, is whether congressional intent to preempt plaintiff's state law claims may be implied.

The FDCA provides that any proceeding "for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States" except that a state may bring a proceeding for civil enforcement after giving notice to the federal government. 21 USC § 337(a). Plaintiff concedes that private litigants may not bring suits for noncompliance with the FDCA. Doc #82 at 14. See <u>Buckman Co v Plaintiffs' Legal Committee</u>, 531 US 341, 349 n4 (2001) (claims of fraud on the FDA were preempted by the FDCA). Defendants argue that plaintiff attempts to use California's consumer protection statutes to regulate an area committed to the FDA, that is, the geographic references on Blue Sky beverage labels. Doc #107 at 15. Plaintiff contends, however, that section 337(a) does not preempt his state

**United States District Court**
For the Northern District of California

law claims because he has not pled violations of the FDCA, nor would he need to prove such violations to establish his claims. Doc #82 at 14.  Plaintiff also suggests that he would be able to bring a claim under the Sherman Act, but as he has not alleged any claims under the Sherman Act that issue is not before the court. Doc #82 at 15 n4 (citing Cal Health & Safety Code § 110675).

Plaintiff cites Farm Raised Salmon Cases, 42 Cal 4th 1077 (2008) to support his contention that the FDCA does not preempt claims that are based on state laws imposing identical requirements.  As defendants point out, Farm Raised held that the state law provision prohibiting misbranding with regard to the use of color additives in food is substantially identical to 21 USC § 343(k) and therefore permitted by section 343-1.  Doc #107 at 13-14.  Farm Raised analyzed the preemption provision of section 343-1 and therefore is inapposite because plaintiff's claims here allege false or misleading labels governed by section 343(a) which do not fall within express preemption provision of section 343-1 and its exception for equivalent state law regulations.

Defendants argue that labeling that complies with applicable FDA regulations cannot be attacked under California consumer protection statutes.  Doc #107 at 14.  To support their proposition that plaintiff's state claims are preempted by FDA regulations, defendants cite In re Pepsico, Inc, 588 F Supp 2d 527, 537 (SD NY 2008).  There the court held that the FDCA preempted state causes of action based on alleged mislabeling of purified water which would impose requirements in addition to federal requirements.  In Pepsico, the court considered under the express preemption provision of section 343-1 whether the state law claims

were "identical" to the FDA regulation governing the standard of

identity for bottled water.  Recognizing that "the mere fact that

Plaintiffs' state law claims threaten private liability that does

not exist under the FDCA is not sufficient to bring those claims

within the preemptive scope of Section 403A [21 USC § 343-

1(a)(1)]," the court considered the FDA's final rule interpreting

section 343-1 in response to requests for clarification as to its

preemptive scope:  "'the only State requirements that are subject

to preemption are those that are affirmatively different from the

Federal requirements.'" 588 F Supp 2d at 532 (citing 60 FR 57076,

57120 (Nov 13, 1995)).  Unlike the federal standard governing

bottled water considered in Pepsico, with respect to the FDA

regulation governing mislabeling of geographic origin, 21 CFR

101.18(c), defendants do not have the benefit of an express

preemption provision or interpretive guidance by the FDA as to the

scope of the regulation's preemptive effect.

Although section 343(a) and the regulations promulgated

by the FDA may raise an inference that federal law preempts

individual state laws governing food labeling, defendants have not

met their burden to demonstrate "clear and manifest" intent by

Congress to occupy the entire field of food labeling so as to

preempt state consumer protection laws which are traditionally

within the realm of state police power.  Medtronic, 518 US at 485.

The court therefore proceeds to consider whether the state law

claims conflict with federal law.

\\

\\

\\

11

3

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law either when "compliance with both federal and state regulations is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," <u>Hillsborough County v Automated Medical Laboratories, Inc</u>, 471 US 707, 713 (1985) (citations omitted).

Impossibility preemption is a demanding defense. <u>Wyeth</u>, 129 S Ct at 1199. Defendants contend that federal law allows them to continue using the "Santa Fe, New Mexico" statement on Blue Sky beverages as long as it complies with 21 CFR § 101.18(c) but that plaintiff would prohibit defendants from using that statement under state law. Doc #107 at 16. To the extent that defendants suggest that it would be impossible to discharge its obligations under state consumer protection laws, the court cannot conclude that it is impossible to comply with both federal and state law in the absence of clear evidence showing that FDA regulations prohibit defendants from changing the Blue Sky labels to comport with state law. <u>Wyeth</u>, 129 S Ct at 1198.

Defendants also suggest that requiring the Blue Sky labels to comply with state laws governing consumer protection and unfair business practices would obstruct the purposes and objectives of federal regulations governing food labeling. Citing section 337 defendants argue that by passing the FDCA Congress intended that the federal government, not private parties, enforce

12

United States District Court
For the Northern District of California

1   the FDCA.[1]  Because the FDCA does not allow a private right of

2   action defendants infer that Congress mandated federal enforcement

3   and preempted any state law claims.  Doc #107 at 19.  Relying on

4   Fraker v KFC Corp, 2007 US Dist LEXIS 32041 (SD Cal Apr 27, 2007),

5   defendants argue that the FDCA presents a "comprehensive regulatory

6   scheme of branding and labeling of food products" which by

7   implication preempts plaintiff's state law claims.  Doc #107 at 24.

8   Fraker was decided however without the benefit of the Supreme

9   Court's ruling in Wyeth v Levine which controls the preemption

10  analysis here.

11      As the Supreme Court recognized in Wyeth, "Congress

12  enacted the FDCA to bolster consumer protection against harmful

13  products [and] did not provide a federal remedy for consumers

14  harmed by unsafe or ineffective drugs in the 1938 statute or in any

15  subsequent amendment."  129 S Ct at 1199.  In Wyeth the Supreme

16  Court considered the legislative history of the FDCA discussed in

17  National Women's Health Network and mentioned in defendants'

18  opposition brief.  Doc #107 at 19.  Wyeth noted that Congress

19  considered a version of the bill that would have provided a federal

20  cause of action but heard testimony that such a right of action was

21  unnecessary because common-law claims were already available under

22  state law.  129 S Ct at 1199 and n7.  The Supreme Court concluded

23  _____

24      [1]   Defendants cite several opinions deducing that state law
    claims were preempted because the FDCA does not provide a private
25  cause of action and allowing such claims to proceed would be
    inconsistent with the federal regulatory scheme.  Doc #107 at 18
26  (citing Pacific Trading Co v Wilson & Co, Inc, 547 F2d 367 (7th Cir
    1976); National Women's Health Network, Inc v A H Robins Co, 545 F
27  Supp 1177 (D Mass 1982); Animal Legal Defense Fund Boston, Inc v
    Provimi Veal Corp, 626 F Supp 278 (D Mass 1986)).  Those cases provide
28  little analysis or discussion of the preemption doctrine and so offer
    limited instruction here.

13

United States District Court
For the Northern District of California

1   that Congress evidently determined that "widely available state

2   rights of action provided appropriate relief for injured

3   consumers." Id at 1199. Wyeth further indicated that Congress

4   "may have also recognized that state-law remedies further consumer

5   protection by motivating manufacturers to produce safe and

6   effective drugs and to give adequate warnings." Id at 1199-1200.

7        Plaintiff cites several recent district court decisions

8   determining that the FDCA did not preempt state law claims:

9   Lockwood v Conagra Foods, Inc, 597 F Supp 2d 1028 (ND Cal 2009).

10  Wright v General Mills, 2009 WL 3247148, 2009 US Dist LEXIS 90576

11  (SD Cal Sept 30, 2009); Hitt v Arizona Bev Co, LLC, 2009 US Dist

12  LEXIS 16871 (SD Cal Feb 4, 2009). Those cases involved state law

13  claims based on "natural" labeling and were decided in part on the

14  FDA's stated policy declining to regulate the term "natural." See

15  Lockwood, 597 F Supp 2d at 1033. As the parties identify no such

16  explicit policy statement by the FDA on the scope of its regulation

17  of geographic origin labels, those cases offer limited instruction

18  here.

19        The statutory provision deeming food misbranded if "its

20  labeling is false or misleading in any particular" was enacted in

21  1938 as section 403(a) of the FDCA and codified as 21 USC

22  343(a)(1). 75 Pub L 717, 52 Stat 1040 (June 25, 1938). In view of

23  the Supreme Court's determination in Wyeth that Congress did not

24  intend FDA oversight to be exclusive means of ensuring drug safety

25  and effectiveness, and in the absence of authority to the contrary

26  in the food labeling regulatory scheme, defendants have not

27  persuaded the court that plaintiff's state law claims obstruct

28

United States District Court
For the Northern District of California

1   federal regulation of food labeling, particularly statements of

2   geographic origin.

3

4                                    C

5        Defendants further suggest that the court should refrain

6   from deciding issues committed to the FDA's primary jurisdiction.

7   Doc #107 at 23-26.  "The primary jurisdiction doctrine allows

8   courts to stay proceedings or to dismiss a complaint without

9   prejudice pending the resolution of an issue within the special

10  competence of an administrative agency."  <u>Clark v Time Warner</u>

11  <u>Cable</u>, 523 F3d 1110, 1114 (9th Cir 2008).  The court's invocation

12  of the doctrine does not indicate that it lacks jurisdiction;

13  rather it is a "prudential" doctrine "under which a court

14  determines that an otherwise cognizable claim implicates technical

15  and policy questions that should be addressed in the first instance

16  by the agency with regulatory authority over the relevant industry

17  rather than by the judicial branch."  Id.  To apply the doctrine of

18  primary jurisdiction the court must determine whether the claim

19  "requires resolution of an issue of first impression, or of a

20  particularly complicated issue that Congress has committed to a

21  regulatory agency," and "if protection of the integrity of a

22  regulatory scheme dictates preliminary resort to the agency which

23  administers the scheme."  Id (quotation marks and citations

24  omitted).

25        Defendants cite several decisions in support of their

26  argument that the court should apply the primary jurisdiction

27  doctrine.  Most recently the Ninth Circuit affirmed summary

28  judgment on Lanham Act claim premised on violation of the FDCA in

                                   15

**United States District Court**
For the Northern District of California

1   _PhotoMedex, Inc v Irwin_, 601 F3d 919 (9th Cir 2010).  In _PhotoMedex_

2   a medical device manufacturer brought a Lanham Act claim alleging

3   that a competitor violated the FDCA by misrepresenting that its

4   product had received FDA clearance when the FDA had declined to

5   make a finding or bring an enforcement action.  The court of

6   appeals determined that because the FDCA forbids private rights of

7   action under that statute, a private action may not be brought

8   under the Lanham Act if it would require litigation of the alleged

9   FDCA violation in a circumstance where the FDA itself has not

10  concluded that there was a violation.  601 F3d at 924.  The court

11  considered other court decisions refusing to allow private actions

12  under the Lanham Act alleging violations of the FDCA and FDA

13  regulations and reasoned that "[t]esting the truth of PhotoMedex's

14  claim would similarly require a court to usurp the FDA's

15  prerogative to enforce the FDCA and to decide whether, under the

16  FDCA and its regulations," the defendants were required to seek

17  clearance from the FDA to market its device.  Id at 928.  The court

18  of appeals therefore affirmed summary judgment for the claims based

19  on the competitor's statements that its medical laser device had

20  FDA clearance but remanded the state law claims based on alleged

21  misrepresentations about the product's release date or the

22  product's inventor.  Notably _PhotoMedex_ did not present the issue

23  of preemption to the Ninth Circuit which noted that "PhotoMedex

24  does not argue that it would be able to pursue state law claims for

25  false advertising of FDA clearance even if its Lanham Act claim

26  fails."  Id at 931 n7.

27          In _Sandoz Pharm Corp v Richardson-Vicks, Inc_, 902 F2d

28  222, 231 (3rd Cir 1990) the court affirmed denial of a preliminary

injunction against false and deceptive advertising allegedly in
violation of the Lanham Act and held that it was not proper for a
district court to "usurp administrative agencies' responsibility
for interpreting and enforcing potentially ambiguous regulations."
The Third Circuit determined that "the issue of whether an
ingredient is properly labeled 'active' or 'inactive' under FDA
standards is not properly decided as an original matter by a
district court in a Lanham Act case." Id at 232. Defendants also
cite Summit Tech, Inc v High-Line Med Instruments Co, Inc, 922 F
Supp 299, 306 (CD Cal 1996) in which the district court relied on
Sandoz Pharm Corp to dismiss the Lanham Act claim for false and
misleading advertising where the FDA had not completed its
investigation whether defendants had violated FDA regulations as
alleged by the plaintiff.

In Perez v Nidek Co Ltd, 657 F Supp 2d 1156, 1165 (SD Cal
2009) the court recognized that literally false or misleading
statements made to promote drugs or devices are actionable if the
claims do not depend on a judicial determination whether the FDCA
has been violated. In Perez the court dismissed the state law
claims under the CLRA and Unfair Competition Law because those
claims required the court to determine whether the defendants'
modified lasers were "adulterated" medical devices within the
meaning of the FDCA, whether FDA regulations required defendant to
re-certify the modified lasers and whether defendants failed to
inform patients that the modified lasers were not approved or
properly certified by the FDA. The court held that those issues
"should be decided by the FDA in the first instance" and dismissed
the state law claims. Id at 1166.

17

United States District Court
For the Northern District of California

1        Unlike <u>PhotoMedex</u>, <u>Sandoz Pharm Corp</u>, <u>Summit Technology</u>

2    and <u>Perez</u>, plaintiff's state law claims do not require an FDA

3    ruling as to whether the FDCA had been violated, nor does

4    adjudication of those claims require the FDA's particular expertise

5    or uniformity in administration of labeling requirements.  See <u>Pom</u>

6    <u>Wonderful LLC v Ocean Spray Cranberries</u>, 642 F Supp 2d 1112, 1123

7    (CD Cal 2009).  In <u>Bates</u> Justice Stevens recognized that "competing

8    state labeling standards * * * would create significant

9    inefficiencies for manufacturers."  544 US at 452.  In his

10   concurring opinion Justice Breyer wrote that "the federal agency

11   charged with administering the statute is often better able than

12   are courts to determine the extent to which state liability rules

13   mirror or distort federal requirements," citing his concurrence in

14   <u>Medtronic</u>, 518 US at 506.  Id at 455 (Breyer, J, concurring).

15   Plaintiff's state law claims would not, however, threaten the

16   integrity of the FDA's regulatory scheme governing misbranded food

17   and do not implicate technical and policy questions that are

18   reserved for the FDA.

19       If defendants suggest that the FDA regulations would

20   allow Blue Sky labels to mislead consumers about the geographic

21   origin of those beverages, then the federal regulations act as a

22   floor setting minimum standards that do not prevent the states from

23   passing laws that further protect consumers absent express or

24   implied preemption.  As the court recognized in <u>Wyeth</u>, the FDA has

25   traditionally regarded state law as an additional layer of consumer

26   protection that complements FDA regulation.  129 S Ct at 1202.

27   The court finds no basis for applying the primary jurisdiction

28   doctrine to stay or dismiss this action.

United States District Court
For the Northern District of California

### III

For their part defendants seek judgment on the pleadings on plaintiff's third claim for relief under the CLRA for failure to comply with the statutory 30-day notice requirement under Civil Code section 1782 and failure to file an affidavit of venue stating facts showing that this action was commenced in a county described in section 1780. Defendants have waived their objections by failing to raise them in their earlier motion to dismiss. Doc #6.

### IV

Plaintiff seeks certification of the following class:

> All persons who, any time between May 16, 2002 and June 30, 2006, purchased in the United States any beverage bearing the Blue Sky mark or brand.

Plaintiff also seeks his appointment as class representative and appointment of the Gutride Safier LLP firm as class counsel.

A court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FRCP 23(a). In addition to meeting these requirements, parties seeking certification must meet at least one requirement of FRCP 23(b). Rodrigues v Hayes, 591 F3d 1105, 1122 (9th Cir 2010) (citing Zinser v Accufix Research Inst, Inc, 253 F3d 1180, 1186 (9th Cir) amended by 273 F3d 1266 (9th Cir 2001)).

\\

\\

United States District Court
For the Northern District of California

A

As a threshold matter defendants contend that plaintiff
has not demonstrated that any purported class member other than
himself suffered an injury-in-fact so as to confer Article III
standing.  Doc #106 at 14-20.  Defendants do not dispute that
plaintiff has sufficiently alleged injury, as recognized by the
Ninth Circuit, Doc #106 at 12-13 (citing Doc #50), but challenge
the standing of the unnamed class members.  Defendants rely on Lee
v American National Ins Co, 260 F3d 997, 1001-02 (9th Cir 2001) in
which the Ninth Circuit determined that the putative class
representative lacked standing to bring a class action challenging
the insurance company's allegedly unfair business practice under
the Unfair Business Practices Act because he had not purchased an
insurance policy and suffered no individualized injury.  Lee did
not however consider the question whether unnamed class members
must each also satisfy Article III standing requirements as
defendants suggest.

Though federal courts are not bound by the decisions of
the state supreme court on matters of federal law, the court notes
that in In re Tobacco II Cases the California Supreme Court
concluded after a reasoned analysis that unnamed class members in
an action under the Unfair Competition Law ("UCL"), as amended in
2004 by the passage of Proposition 64, are not required to
establish standing.  46 Cal 4th 298, 324 (2009).

B

Defendants further challenge the proposed definition of
the class as unascertainable and "hopelessly broad."  Doc #106 at

United States District Court
For the Northern District of California

1   20-22.  "'Although there is no explicit requirement concerning the

2   class definition in FRCP 23, courts have held that the class must

3   be adequately defined and clearly ascertainable before a class

4   action may proceed.'"  <u>Schwartz v Upper Deck Co</u>, 183 FRD 672, 679-

5   80 (SD Cal 1999) (quoting <u>Elliott v ITT Corp</u>, 150 FRD 569, 573-74

6   (ND IL 1992)).  "A class definition should be 'precise, objective

7   and presently ascertainable.'"  <u>Rodriguez v Gates</u>, 2002 WL 1162675

8   at *8 (CD Cal 2002) (quoting <u>O'Connor v Boeing North American, Inc</u>,

9   184 FRD 311, 319 (CD Cal 1998)); see also Manual for Complex

10  Litigation, Fourth §21.222 at 270-71 (2004).  While the identity of

11  the class members need not be known at the time of certification,

12  class membership must be clearly ascertainable.  <u>DeBremaecker v</u>

13  <u>Short</u>, 433 F2d 733, 734 (5th Cir 1970).  The class definition must

14  be sufficiently definite so that it is administratively feasible to

15  determine whether a particular person is a class member.  See, e g,

16  <u>Davoll v Webb</u>, 160 FRD 142, 144 (D Colo 1995).

17          Defendants contends that "'[a]n identifiable class exists

18  if its members can be ascertained by reference to objective

19  criteria, but not if membership is contingent on the prospective

20  member's state of mind.'"  Doc #106 at 20 (quoting <u>Schwartz v Upper</u>

21  <u>Deck Co</u>, 183 FRD 672, 679-80 (SD Cal 1999) (citation omitted).

22  Contrary to defendants' argument that plaintiff's CLRA and fraud

23  claims "require an in-depth analysis of each potential class

24  member's motivation," id at 21, plaintiff's claims do not require

25  individualized showing of reliance.  As to the class claims under

26  the UCL the state supreme court has stated that "relief under the

27  UCL is available without individualized proof of deception,

28  reliance and injury."  <u>Tobacco II</u>, 46 Cal 4th at 320.  See <u>In re</u>

21

Steroid Hormone Product Cases, 181 Cal App 4th 145, 158 (2010)
(disagreeing with Cohen v DIRECTV, Inc, 178 Cal App 4th 966, 101
(2009) "to the extent the appellate court's opinion might be
understood to hold that plaintiffs must show class members'
reliance on the alleged misrepresentations under the UCL").

As to the CLRA claim reliance on the alleged
misrepresentations may be inferred as to the entire class if the
named plaintiff can show that material misrepresentations were made
to the class members. Steroid Hormone Product Cases, 181 Cal App
at 157. In Steroid Hormone Products Cases the court of appeal
reversed the trial court's denial of class certification which was
based upon an erroneous legal assumption that the materiality of
the alleged misrepresentations about products containing anabolic
steroids depended upon each class member's subjective belief. Id
at 156-58. The court of appeal held that materiality of an alleged
misrepresentation in a CLRA claim is determined by a reasonableness
standard. Id at 157.

As to the common law fraud claim, the state supreme court
applied the same reasonableness standard for materiality and
reliance in support of a fraud claim: "Reliance is proved by
showing that the defendant's misrepresentation or nondisclosure was
'an immediate cause' of the plaintiff's injury-producing conduct.
A plaintiff may establish that the defendant's misrepresentation is
an 'immediate cause' of the plaintiff's conduct by showing that in
its absence the plaintiff 'in all reasonable probability' would not
have engaged in the injury-producing conduct." Tobacco II, 46 Cal
4th at 326. "Moreover, a presumption, or at least an inference, of
reliance arises wherever there is a showing that a

1   misrepresentation was material [that is] if 'a reasonable man would

2   attach importance to its existence or nonexistence.'"  Id at 327.

3           To support their argument that individual determinations

4   would predominate over common questions, defendants rely on

5   Schwartz in which the district court denied class certification

6   upon finding that the action would focus on each individual

7   plaintiff's state of mind in buying defendant's trading cards.

8   There plaintiffs raised RICO claims alleging that defendants

9   engaged in illegal lottery or gambling by inserting "chase" cards

10  in their trading card packs.  183 FRD at 679.  The proposed class

11  in Schwartz was limited "to those who bought defendant's product

12  for the purpose of finding a chase card."  Id at 676.  Here by

13  contrast the proposed class is defined by an objective standard of

14  consumers who purchased a Blue Sky beverage bearing the allegedly

15  misleading labels in violation of state law.

16          To establish that the class claims share common

17  questions, plaintiff offers the expert opinion of Dean Fueroghne as

18  to the materiality of Blue Sky's product labeling and marketing.

19  Doc #96.  Defendants object to the admissibility of Mr Fueroghne's

20  opinion testimony pursuant to Daubert v Merrell Dow Pharm, Inc, 509

21  US 579, 589-91 (1993).  Doc #106-7.  At the class certification

22  stage Mr Fueroghne's opinion is limited to whether the claims raise

23  a common question for all class members, regardless whether the

24  trier of fact agrees with his analysis at the merits stage.  Dukes

25  v Wal-Mart Stores, Inc, 603 F3d 571, 603 and n22 (9th Cir 2010) (en

26  banc).  Defendants' Daubert objections are overruled and the

27  Fueroghne declaration is admissible for the limited purpose of

28  deciding the motion for class certification.  Similarly defendants'

23

United States District Court
For the Northern District of California

1  objections to the Safier Declaration are overruled on the ground

2  that plaintiff has proffered the testimony of defendants' CEO,

3  Rodney Sacks, as a basis for authenticating the web pages at issue.

4  Doc ##106-6, 111.

5       Plaintiff proposes a class of all persons who (1)

6  purchased any beverage bearing the Blue Sky mark or brand (2) in

7  the United States (3) between May 16, 2002 and June 30, 2006.  By

8  these objective criteria the members of the proposed class can be

9  ascertained by "tangible and practicable standards for determining

10  who is and who is not a member of the class."  5 James W Moore,

11  Moore's Federal Practice 3d § 23.21[1] at 23-48 (2007).

13                              C

14       Having considered defendants' underlying objections to

15  the individual class members' standing and reliance on the alleged

16  misrepresentations, the court proceeds to find that plaintiff has

17  satisfied the requirements of Rule 23(a).

19                              1

20       Defendants dispute whether plaintiff has satisfied the

21  numerosity requirement of Rule 23(a)(1).  Although the parties have

22  not identified the number of possible class members, the court

23  infers from the allegation that Blue Sky sold over $20 million of

24  product, or over 500,000 cases per year, that there are numerous

25  purchasers who are potential class members so as to satisfy the

26  numerosity requirement.

27  \\

28  \\

                              24

United States District Court
For the Northern District of California

2

Defendants contend that individual issues of motivation and damages defeat the commonality required under Rule 23(a)(2). Those arguments focus more on the question whether the common issues predominate under Rule 23(b)(3), rather than the less rigorous determination of whether the class shares legal issues or facts. See Hanlon v Chrysler Corp, 150 F3d 1011, 1019 (9th Cir 1998). The court determines that the class members claims have common issues of fact and law to satisfy Rule 23(a)(2): whether the Blue Sky packaging and marketing materials are unlawful, unfair, deceptive or misleading to a reasonable consumer.

3

Defendants argue that plaintiff's claims are not typical of the purported class, pointing out that plaintiff did not buy each product in the Blue Sky beverage line and would not have claims typical of the entire class. Doc #106 at 25. Under Rule 23(a)(3)'s permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F3d at 1020. Plaintiff's claims here arise out of the allegedly false statement, worded in several variations, made on every Blue Sky container indicating that the beverages are connected to Santa Fe, New Mexico and therefore arise from the same facts and legal theory. Because plaintiff alleges that all the Blue Sky beverages bore substantially the same misrepresentation, these claims are distinguishable from the class claims alleged in Wiener v Dannon, 255 FRD 658 (CD Cal 2009) in which the court held

25

that the named plaintiff was not typical because she had only

purchased one of several lines of yogurt, each claiming different

health benefits.  <u>Wiener</u> determined that these differences "lead to

a substantial divergence in the evidence" required to prove that

the statements were false or misleading.  Id at 666.  Although

plaintiff did not purchase each type of beverage carrying the

misleading label, his claims are "'reasonably coextensive with

those of absent members.'"  <u>Staton v Boeing Co</u>, 327 F3d 938, 957

(2003) (quoting <u>Hanlon</u>, 150 F3d at 1020).


4

Defendants raise no opposition to the requirement under

Rule 23(a)(4) that the representative parties will fairly and

adequately protect the interests of the class.  In view of

plaintiff's rigorous prosecution of the class claims in this court

and on appeal and finding no conflicts of interest with other class

members, the court determines that the adequacy requirement is

satisfied.  <u>Staton</u>, 327 F3d at 957.


D

If Rule 23(a) is satisfied Rule 23(b)(3) permits class

certification upon a determination that "questions of law or fact

common to class members predominate over any questions affecting

only individual members, and that a class action is superior to

other available methods for fairly and efficiently adjudicating the

controversy."  Fed R Civ Proc 23(b)(3).  To determine whether the

requirements of Rule 23(b)(3) are met the court must consider the

following factors:  (A) the class members' interests in

26

individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning the

controversy already begun by or against class members; (C) the

desirability or undesirability of concentrating the litigation of

the claims in the particular forum; and (D) the likely difficulties

in managing a class action.  Id.  Plaintiff sufficiently

demonstrates that the proposed class action satisfies the

requirements of Rule 23(b)(3).


1

    The predominance inquiry focuses on the relationship

between the common and individual issues.  Hanlon, 150 F3d at 1022.

"'When common questions present a significant aspect of the case

and they can be resolved for all members of the class in a single

adjudication, there is clear justification for handling the dispute

on a representative rather than on an individual basis.'"  Id

(quoting 7A Charles Alan Wright, Arthur R Miller & Mary Kay Kane,

Federal Practice and Procedure § 1778 (2d ed 1986)).

    Defendants argue that individual factual issues

predominate over common issues.  The court has already considered

defendants' argument that individual class members would have to

prove reliance on the alleged misrepresentations and determined

that under Tobacco II and state law, relief is available without

individual showing of reliance.  Defendants contend that not all

potential class members relied on the Santa Fe representations and

may have had other reasons to buy Blue Sky beverages.  The state

supreme court made clear, however, that "[t]he substantive right

extended to the public by the UCL is the right to protection from

United States District Court
For the Northern District of California

1  fraud, deceit and unlawful conduct, and the focus of the statute is

2  on the defendant's conduct." Tobacco II, 46 Cal 4th at 324.  The

3  court recognized the certified class as consisting of "members of

4  the public who were exposed to defendants' allegedly deceptive

5  advertisements and misrepresentations and who were also consumers

6  of defendants' products during a specific period of time."  Id.

7  The class issues similarly predominate over individual issues here.

8  Though the amount of damages is an individual question, it does not

9  defeat class certification.  Blackie v Barrack, 524 F2d 891, 905

10 (9th Cir 1975).

11     At class certification, plaintiff must present "'a likely

12 method for determining class damages,'" though it is not necessary

13 to show that his method will work with certainty at this time.  In

14 re Tableware Antitrust Litigation, 241 FRD 644, 652 (ND Cal 2007)

15 (quoting In re Domestic Air Transp Antitrust Litig, 137 FRD 677,

16 693 (ND Ga 1991).  Plaintiff's counsel represents that the issue of

17 measuring damages in a class action raising UCL, CLRA and false

18 advertising claims is currently pending before the California

19 Supreme Court.  At this stage, however, plaintiff has demonstrated

20 at least one measure of damages that is determinable by objective

21 criteria to satisfy standing requirements under Article III, that

22 is, the price differential between the premium paid for the Blue

23 Sky line of beverages and the lower price of Hansen's mainstream

24 line of beverages.  See Safier Decl (Doc #97) Ex A at 147 (Sacks

25 Depo); Ex E (Hopkinson email).

26     Defendants further contend that the law applicable to the

27 proposed nationwide class is not uniform because California

28 consumer protection laws do not apply to nonresident plaintiffs.

Doc #106 at 30-31.  Defendants concede that they are subject to personal jurisdiction in California but contend that the forum state's laws cannot have extraterritorial effect unless the forum state has "significant contact or [] aggregation of contacts to the claims asserted by each member of the plaintiff class."  Id at 30 (citing Norwest Mortgage, Inc v Superior Court, 72 Cal App 4th 214, 225-26 (1999)).  In Norwest Mortgage the court of appeal considered that the defendant's headquarters and its principal place of business were outside California, as were the place where the nonresident members were injured and where the injury-producing conduct occurred.  Id at 227.  The court concluded that extraterritorial application of the UCL to nonresident member claims would violate due process.  Id.  As defendants neglect to point out, however, Norwest Mortgage distinguished its holding from other state court decisions finding that application of California law to nationwide class claims was constitutionally permissible: Clothesrigger, Inc v GTE Corp, 191 Cal App 3d 605 (1987) and Diamond Multimedia Systems, Inc v Superior Court (1999) 19 Cal 4th 1036, 1058-1059 (1999).

> The Clothesrigger court, applying the [Phillips Petroleum Co v Shutts, 472 US 797 (1985)] test, concluded application of California law was constitutionally permissible there because the defendant's principal offices were in California and because the claims asserted by every nationwide class member related to the alleged fraudulent misrepresentations contained in literature prepared in California; thus the conduct occurred in California.  * * *
>
> In contrast to the claims of class members in Clothesrigger and Diamond, the only contact between the claims of Category III members and California is Norwest Mortgage's state of incorporation.

29

**United States District Court**
For the Northern District of California

1   <u>Norwest Mortgage</u>, 72 Cal App 4th at 227.  Defendants are

2   headquartered in California and their misconduct allegedly

3   originated in California.  With such significant contacts between

4   California and the claims asserted by the class, application of the

5   California consumer protection laws would not be arbitrary or

6   unfair to defendants.  <u>Shutts</u>, 472 US at 821-22; <u>Clothesrigger</u>, 191

7   Cal App 3d at 613.

8

9                                  2

10      Although defendants object generally to the superiority

11  of the class action to other available methods of adjudicating this

12  dispute, the court determines that the class action is superior to

13  maintaining individual claims for a small amount of damages and

14  concludes that this action satisfies Rule 23(b)(3)'s superiority

15  requirement.  <u>Hanlon</u>, 150 F3d at 1023.

16

17                                  E

18      Having determined that plaintiff has satisfied the Rule

19  23 requirements for class certification, the court proceeds to

20  appoint plaintiff Chris Chavez as representative of the following

21  class:

22          All persons who, any time between May 16, 2002 and
            June 30, 2006, purchased in the United States any
23          beverage bearing the Blue Sky mark or brand.

24

25      Having considered the work plaintiff's counsel has done

26  in identifying or investigating potential claims in the action and

27  litigating these claims in this court and before the court of

28  appeals, counsel's representation as to their experience in

                                   30

1  handling class actions and other complex litigation (Doc #97 ¶ 18

2  and Ex R), counsel's knowledge of the applicable law as evidenced

3  by their briefs submitted in this action, and the resources that

4  counsel will commit to representing the class, the court also

5  appoints Gutride Safier LLP as counsel for the class pursuant to

6  Rule 23(g)(1).

7       Within 14 days of this order the parties must meet and

8  confer on the notice to be issued to the class, and must file with

9  the court a draft notice that complies with Rule 23(c)(2)(B) within

10 30 days of this order.

11

12                                    V

13      For the reasons stated above, the court ORDERS as

14 follows:

15      (1)  Plaintiff's motion for judgment on the pleadings on

16           the affirmative defense of preemption (Doc #82) is

17           GRANTED;

18      (2)  Defendants' motion for judgment on the pleadings

19           (Doc #84) is DENIED;

20      (3)  Plaintiff's motion for class certification (Doc #94)

21           is GRANTED.  Plaintiff Chris Chavez is appointed as

22           class representative and Gutride Safier LLP is

23           appointed as class counsel.

24

25      IT IS SO ORDERED.

26                                    _____

27                                    VAUGHN R WALKER
28                                    United States District Chief Judge

United States District Court
For the Northern District of California

31