607 F.3d 250, Prod.Liab.Rep. (CCH) P 18,418
**(Cite as: 607 F.3d 250)**

United States Court of Appeals,
First Circuit.
Jessica C. RULE, individually and on behalf of all others similarly situated, Plaintiff, Appellant,
v.
FORT DODGE ANIMAL HEALTH, INC., and Wyeth Corporation, Defendants, Appellees.
**No. 09-1364.**

Heard Dec. 10, 2009.
Decided June 2, 2010.

**Background:** Dog owner filed putative class action against manufacturer of recalled heartworm medication, claiming breach of implied warranty of merchantability and unfair or deceptive acts or practices, in violation of Massachusetts law, and alleging potential total liability of over $5 million. The United States District Court for the District of Massachusetts, Douglas P. Woodlock, J., 604 F.Supp.2d 288, granted manufacturer's motion to dismiss for failure to state claim. Dog owner appealed.

**Holdings:** The Court of Appeals, Boudin, Circuit Judge, held that:
(1) lack of injury precluded breach of implied warranty of merchantability claim, and
(2) lack of economic injury precluded unfair or deceptive practices claim.

Affirmed.

West Headnotes

**[1] Federal Courts 170B ⇒776**

170B Federal Courts
　　170BVIII Courts of Appeals
　　　　170BVIII(K) Scope, Standards, and Extent
　　　　　　170BVIII(K)1 In General
　　　　　　　　170Bk776 k. Trial de novo. Most Cited Cases

On the grant of a motion to dismiss for failure to state a claim, review is de novo. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⇒1772**

170A Federal Civil Procedure
　　170AXI Dismissal
　　　　170AXI(B) Involuntary Dismissal
　　　　　　170AXI(B)3 Pleading, Defects In, in General
　　　　　　　　170Ak1772 k. Insufficiency in general. Most Cited Cases

**Federal Civil Procedure 170A ⇒1773**

170A Federal Civil Procedure
　　170AXI Dismissal
　　　　170AXI(B) Involuntary Dismissal
　　　　　　170AXI(B)3 Pleading, Defects In, in General
　　　　　　　　170Ak1773 k. Clear or certain nature of insufficiency. Most Cited Cases

On motion to dismiss for failure to state a claim, judges have some room to dispatch claims that are highly implausible or pled only in conclusory terms. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Sales 343 ⇒284(1)**

343 Sales
　　343VI Warranties
　　　　343k281 Breach
　　　　　　343k284 Warranty of Quality, Fitness, or Condition
　　　　　　　　343k284(1) k. In general. Most Cited Cases

Although manufacturer's recalled heartworm medication may have been unfit for owner's dog, medication's unfitness did not give rise to any injury against which warranty of merchantability was designed to guard, under Massachusetts law, where owner and dog were not injured by medication, dog did not develop heartworm while using medication,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

607 F.3d 250, Prod.Liab.Rep. (CCH) P 18,418
**(Cite as: 607 F.3d 250)**

and dog was not more susceptible to injury after using medication. M.G.L.A. c. 106, § 2-314.

**[4]** Sales 343 ⚷284(1)

343 Sales
    343VI Warranties
        343k281 Breach
            343k284 Warranty of Quality, Fitness, or Condition
                343k284(1) k. In general. Most Cited Cases

Recovery generally is not available under the warranty of merchantability where the defect that made the product unfit caused no injury to the claimant, the threat is now gone, and nothing now possessed by the claimant has been lessened in value.

**[5]** Federal Civil Procedure 170A ⚷164

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of class; typicality. Most Cited Cases

One who has no claim is not normally a suitable plaintiff to represent the class of those who do. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[6]** Antitrust and Trade Regulation 29T ⚷235

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regulations
            29Tk232 Product Safety
                29Tk235 k. Other particular products. Most Cited Cases

Dog owner's lack of economic injury from purchases and use of recalled heartworm medication precluded her class action claim against manufacturer for unfair or deceptive acts or practices, under Massachusetts law, even though owner alleged injury from reduced value of medication based on manufacturer's failure to disclose risk, where owner filed suit after purchasing and using medication that she knew gave her both protection and convenience that she sought and that risk did not result in injury or ongoing risk to her or her dog, and she was no longer holding medication worth less than she paid, as she had used medication and suffered no economic injury at all. Mass. Gen. Laws ch. 93A, §§ 2(a), 9(1).

***251** John Peter Zavez with whom Noah Rosmarin and Adkins, Kelston & Zavez, P.C. were on brief for appellant.

John J. Butts with whom Felicia H. Ellsworth and Wilmer Cutler Pickering Hale and Dorr LLP were on brief for appellees.

Before TORRUELLA, BOUDIN and HOWARD, Circuit Judges.

BOUDIN, Circuit Judge.

This appeal presents an issue of Massachusetts law on which state-court precedent is still evolving. The suit at issue was dismissed on the complaint so we take the allegations as true. *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 15 (1st Cir.2003). Although harm to the named plaintiff is arguably non-existent-this depends on legal definition-the complaint is framed as a class action and alleges potential total liability of over $5 million.

In 2002 and 2003, Jessica Rule, a Massachusetts resident, purchased two doses of ProHeart 6, a medicine for preventing heartworm in dogs, and had them administered to her dog Luke. ProHeart 6 differed in two ways from ProHeart (an older drug): it remained effective for a longer period-six months instead of one-and it had to be injected by a veterinarian rather than administered orally by the owner. Both ProHeart 6 and ProHeart were manufactured by Wyeth Corporation and its subsidiary Fort Dodge Animal Health, Inc. (collectively "Wyeth").

Rule filed a putative class action suit in federal dis-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

trict court against Wyeth in 2006, alleging that Wyeth had sold ProHeart 6 without disclosing safety concerns revealed in initial testing and in subsequent use-concerns that ultimately led Wyeth to recall the product at the FDA's request on or around September 3, 2004. According to Rule, adverse reactions, including deaths, were suffered by dogs after receiving ProHeart 6 during trials and in general use after the product was released-information possessed by Wyeth but not disclosed to purchasers. Rule conceded, however, that Luke had not suffered any harm from the drug, and that Luke had not developed heartworm while using the drug.

According to the complaint, ProHeart is "safe, inexpensive and easily administered"; ProHeart 6 is alleged to be "potentially more profitable" because it is administered through veterinarians and cannot easily be discounted. No suggestion is made that ProHeart 6 fails to protect against heartworm; in fact, the complaint says that ProHeart 6 provides a guarantee that protects against costs incurred by the owner if the dog does suffer heartworm while using the product.

Rule's complaint set forth five different claims under Massachusetts law, [FN1] but on appeal she pursues only two: one based on breach of the implied warranty of merchantability and one based on Mass. Gen. Laws ch. 93A. For damages on these two counts, Rule asserted that she and others similarly situated are entitled to the difference ***252** between the price they actually paid for ProHeart 6 and what it would have been worth had safety risks been adequately disclosed; for the chapter 93A count, she sought statutory damages if greater than actual damages and also trebling of damages. [FN2]

> FN1. The claims were product defect and a failure to warn of the defect; breach of the implied warranty of fitness for a particular purpose; breach of the implied warranty of merchantability; breach of contract; and violation of Mass. Gen. Laws ch. 93A.

> FN2. Mass. Gen. Laws ch. 93A, § 9(3) provides for the recovery of "the amount of actual damages or twenty-five dollars, whichever is greater"; double to treble damages are available if the violation was "willful or knowing" and the defendant has not made a reasonable settlement offer.

[1][2] The district court granted Wyeth's motion to dismiss the complaint for failure to state a claim, discussing pertinent law as to each claim separately. Rule v. Fort Dodge Animal Hospital, Inc., 604 F.Supp.2d 288 (D.Mass.2009). Rule appeals from the dismissal as to two of the counts. On the grant of such a motion, our review is *de novo*. Colonial Mortgage Bankers Corp., 324 F.3d at 15. Although judges have some room to dispatch at this stage claims that are highly implausible or pled only in conclusory terms, Ashcroft v. Iqbal, --- U.S. ----, ---- - ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009), that wrinkle is not of importance in this case.

The count alleging breach of the implied warranty of merchantability is the claim most easily put to rest. Generalizing about warranty law should be done only with care; there are variations in state law, changes over time, modification by statutes like the Uniform Commercial Code, a mingling of tort and contract concepts, and variations relating to fault, type of interest protected and damage rules. *See* Lord, *Williston on Contracts,* §§ 52:67-52:71 (4th ed.2001). But it does not take much effort to conclude that the interests protected by the warranty of merchantability were not impaired so far as concerns Rule.

A merchant warrants, even in the absence of a formal guarantee, that the item sold is fit for its ordinary purpose. Mass. Gen. Laws ch. 106, § 2-314; *Haglund v. Philip Morris, Inc.,* 446 Mass. 741, 847 N.E.2d 315, 321-22 (2006); Lord, *supra,* at § 52:67. On Rule's allegations, ProHeart 6 was not fit for use as a heartworm medicine because the adverse reactions were sufficiently numerous and serious so as to outweigh the benefits over those provided by prior and perhaps less expensive drugs. *Cf.* 1 O'Reilly,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

607 F.3d 250, Prod.Liab.Rep. (CCH) P 18,418
**(Cite as: 607 F.3d 250)**

*Food and Drug Administration* § 13:75 (3d ed.2007). Lack of fitness is arguably evidenced by the withdrawal of ProHeart 6. *See* 21 C.F.R. § 7.40 (2009).

[3] But the unfitness of ProHeart 6 lay in its potential for causing harm to the dog. Rule concedes that neither of the two doses injured Luke. So, while the sale to Rule may have been of an unfit drug, its unfitness did not give rise to any injury to Rule against which the warranty was designed to guard. Nor does she suggest that Luke is now more susceptible to injury, as might be the case where one bought and installed a defective tire that has not yet run its life or smoked cigarettes whose potential for harm lasts into the future.

[4][5] Recovery generally is not available under the warranty of merchantability where the defect that made the product unfit caused no injury to the claimant, the threat is now gone and nothing now possessed by the claimant has been lessened in value.[FN3] Nor does Rule cite any case from Massachusetts (or elsewhere) allowing **\*253** recovery under this warranty in a case like hers. True, purchasers whose dogs *were* injured might have such claims; but one who has no claim is not normally a suitable plaintiff to represent the class of those who do. *Spear v. H.V. Greene Co.,* 246 Mass. 259, 140 N.E. 795, 797-799 (1923).

> FN3. *See, e.g., Carlson v. General Motors Corp.,* 883 F.2d 287, 297-98 (4th Cir.1989); *Jarman v. United Indus. Corp.,* 98 F.Supp.2d 757, 767-68 (S.D.Miss.2000); *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 602 (S.D.N.Y.1982).

The claim under chapter 93A is a more difficult matter. Chapter 93A provides a cause of action for a plaintiff who "has been injured," Mass. Gen. Laws ch. 93A, § 9(1), by "unfair or deceptive acts or practices," *id.* ch. 93A, § 2(a). Although the statutory injury requirement has existed in its current form for more than twenty years, *Rule,* 604 F.Supp.2d at 298-304 (describing history), the pertinent decisions by the Massachusetts Supreme Judicial Court ("SJC") leave it uncertain whether and when something less than conventional economic injury will suffice under the statute.

[6] In Rule's view, she purchased Proheart 6 because of a deception (failure to disclose the risk), the product was "in reality" worth less than she paid for it (because of that undisclosed risk), and so she suffered damage measured by the difference between what she paid and what she would have paid if the risk had been disclosed. This is likely a counterfactual scenario-she alleges that had the risks been known, ProHeart 6 could not be sold at all given FDA requirements-but even assuming otherwise, it was clear at the time of Rule's law suit that she neither now could show nor could suffer in the future any adverse economic impact.

Not knowing of the risk, Rule obviously thought that ProHeart 6 was worth the charged price-probably in part because of the added convenience; and let us suppose that, had the risk been disclosed to her, she would have been willing to buy ProHeart 6 but only at a lower price, the reduction representing the discount required because of the risk that her dog might become ill or even die, entailing for her further cost and other suffering. So if she or some other hypothetical buyer had sued at this point, before her dog had consumed ProHeart 6, perhaps she could have claimed injury and thus damages on the theory and calculation she now urges.[FN4]

> FN4. *See Iannacchino v. Ford Motor Co.,* 451 Mass. 623, 888 N.E.2d 879, 886 (2009) (finding injury requirement satisfied based on reduced value due to a risk that had not yet caused harm and distinguishing prior case on the basis that "[h]ere, ... the plaintiffs continue to own the allegedly noncompliant vehicles").

But Rule's law suit was brought *after* her purchases and use of the drug and she now knows that she got both the protection and convenience she sought *and*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

607 F.3d 250, Prod.Liab.Rep. (CCH) P 18,418
**(Cite as: 607 F.3d 250)**

that the risk did not manifest itself in injury to her or her dog. Nor is she still *holding* a product that is worth less than she paid; she used the product and *in fact* suffered no economic injury at all. Indeed, her theory would not be adopted by deceived buyers whose dogs were injured or killed; they could seek not some modest reduction in price but the full cost of added veterinary bills and, if the dog died, its value.

So if chapter 93A injury requires that a plaintiff who seeks to recover show "real" economic damages, Rule does not qualify. If instead a different notion of injury sufficed-injury as a violation of some abstract "right" like the right not to be subject to a deceptive act that happened to cause no economic harm-then she would arguably have a claim under chapter 93A and perhaps could obtain statutory damages. But this is so only if chapter 93A embodies this permissible but less common notion of injury as the impairment of an abstract right without economic loss. Alternatively, for policy or other reasons, a **\*254** court might choose to look at injury at some earlier point and ignore later realities.

Two early SJC decisions suggested that merely proving an unfair or deceptive act by the defendant directed at the consumer was sufficient to establish injury to that consumer. In *Leardi v. Brown,* 394 Mass. 151, 474 N.E.2d 1094, 1098 (1985), tenants filed suit against their landlord over allegedly illegal and deceptive provisions in their leases, even though the landlord had never attempted to enforce them and the tenants concededly had not read them. The SJC held that the tenants had sufficiently alleged an injury, explaining that "injury" meant "the invasion of any legally protected interest of another," and that injury could exist even in the absence of actual harm. *Id.* at 1101 (Mass.1985) (quoting *Restatement (Second) of Torts* § 7 (1965)).

The SJC later used similar language in *Aspinall v. Philip Morris Companies, Inc.,* 442 Mass. 381, 813 N.E.2d 476 (2004). In *Aspinall,* purchasers of light cigarettes filed suit against a tobacco company for deceptive advertising under chapter 93A, even though they claimed no actual harm from smoking the cigarettes. *Id.* The court found chapter 93A's injury requirement satisfied, reasoning that the tobacco company's deceptive advertising "effected a per se injury on consumers who purchased the cigarettes." *Id.* at 492.

The court moved away from such a "per se" concept in *Hershenow v. Enterprise Rent-A-Car Co.,* 445 Mass. 790, 840 N.E.2d 526 (2006), where two car renters purchased collision damage waivers from a car rental company-exemptions from paying for repairs if the car is damaged; the renters then sued under chapter 93A, alleging that onerous restrictions in the waivers violated state law. *Id.* at 529. However, the plaintiffs had returned their cars without damage, and the rental company thus had no occasion to seek to enforce the allegedly unlawful restrictions in the waiver against them. *Id.* at 530.

The SJC held that where "the plaintiff cannot demonstrate that the illegal contract (the invasion of a legally protected interest) causes any loss," the violation does not constitute an "injury per se." *Id.* at 535. Because the waiver "made neither rental customer worse off during the rental period" than if the waiver had fully complied with statutory requirements, the court held that neither customer had suffered an injury. *Id.* That this was a change in course from the prior cases seems evident.[FN5] It also dooms a claim that an undisclosed risk that is never realized and can never be realized in the future constitutes damages merely because it existed at an earlier stage.[FN6]

> FN5. *See, e.g., id.* at 536 (Cowin, J., concurring, but urging that *Leardi* be explicitly rather than implicitly overruled); *id.* at 539-41, 888 N.E.2d 879 (Greaney, J., author of *Aspinall,* dissenting and arguing that the court had "effectively set aside" *Leardi* and *Aspinall* ).

> FN6. *Iannacchino* explained that no injury

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

existed in *Hershenow* because "the unlawful contract terms 'did not and could not' cause any harm to the plaintiffs after they had returned their vehicles undamaged at the end of their rental periods." 888 N.E.2d at 886.

Next in 2008 in *Iannacchino,* owners of Ford vehicles with allegedly defective door latches filed a class action lawsuit alleging violations of chapter 93A and the implied warranty of merchantability. 888 N.E.2d at 882. The plaintiffs' own doors had not malfunctioned; but the SJC-although it rejected the claims on another ground-said that "[i]f Ford knowingly sold noncompliant (and therefore potentially unsafe) vehicles ... the plaintiffs would have paid for more ... than they received," and that overpayment "would represent an economic loss" redressable under chapter 93A. *Id.* at 886.

***255** This certainly follows where the owners still possess their cars, whose value was now reduced because of the risk that the doors might malfunction. The owner of a product with a newly revealed defect is like the ProHeart 6 buyer who has not used the drug yet; he certainly does own a product whose newly revealed defect reduces its value below what was expected, possibly even to zero in the case of ProHeart 6, and so economic injury would exist and be recoverable in many jurisdictions.[FN7] But Rule, as already explained, used up her purchases, neither holds nor sold anything of reduced value, faced no continuing risk and suffered no harm.

> FN7. *See, e.g., Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 916 A.2d 257, 281 (2007) (owners of cars with undisclosed defect in seats could recover under Maryland Consumer Protection Act); *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 609 (Tex.App.1995) (purchasers of software with undisclosed defect causing potential data loss could recover under Washington Consumer Protection Act). *But see Coker v. DaimlerChrysler Corp.,* 172 N.C.App. 386, 617 S.E.2d 306, 313-14 (2005) (consumers who purchased minivans lacking safety device did not state claim under North Carolina Unfair and Deceptive Trade Practices Act absent sale or repair expenses).

Finally, in *Donovan v. Philip Morris USA, Inc.,* 455 Mass. 215, 914 N.E.2d 891 (2009), which postdates the district court's opinion, smokers who had not manifested any smoking-related disease sued Philip Morris, seeking expenses for a program of "medical monitoring" to detect early signs of lung cancer. *Id.* at 895. The court upheld their claims including ones under chapter 93A, *id.* at 900-03, but this is completely consistent with compensating for economic injury. The risk was ongoing and, unlike Rule, the former smokers needed to incur economic costs (*e.g.,* monitoring) to cope with the consequences of the risk.

Absent explicit overruling, some tension remains in the language used as between the earlier and the later SJC decisions, *see* note 5, above, and universal rules are hard to come by where deception and risk are involved. *See, e.g.,* 2 Dobbs, *The Law of Torts* §§ 481-83 (2001); 2 Dobbs, *The Law of Remedies* §§ 9.2-9.4 (2d ed.1993). However, the most recent SJC cases in point appear to have returned to the notion that injury under chapter 93A means economic injury in the traditional sense; and, if cases like *Leardi* survive as exceptions, it is for the SJC to identify and define them.

Conduct like that attributed to Wyeth needs to be deterred, but not necessarily by those who bought the drug but were not injured. The state has authority to seek heavy sanctions on those who engage in deceptive advertising even without injury, Mass. Gen. Laws ch. 93A, § 4; and anyone whose dog was injured, or a class of those persons, may (assuming Rule's allegations are correct) likely sue and collect damages. Rule, having suffered no economic injury, may not.

*Affirmed.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

607 F.3d 250, Prod.Liab.Rep. (CCH) P 18,418
**(Cite as: 607 F.3d 250)**

C.A.1 (Mass.),2010.
Rule v. Fort Dodge Animal Health, Inc.
607 F.3d 250, Prod.Liab.Rep. (CCH) P 18,418

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.