Page 1

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))

Court of Appeal, Second District,
Division 8.
Jamshid ARYEH, Plaintiff and Appellant,
v.
CANON BUSINESS SOLUTIONS, INC., Defendant and Respondent.
No. B213104.

June 22, 2010.

**Background:** Lessee of copier brought action against lessor, alleging that lessor had violated the Unfair Competition Law (UCL) by wrongfully charging him for "test" copies made by lessor's repair personnel. The Superior Court, Los Angeles County, Robert L. Hess, J., No. BC 384674, sustained lessor's demurrer without leave to amend, and lessee appealed.

**Holdings:** The Court of Appeal, Flier, J., held that:
(1) continuing violations doctrine did not apply to claim, and
(2) lessee was bound by admission in initial complaint that lessor had first made wrongful charges over four years prior to filing of action.

Affirmed.

Rubin, J., filed a dissenting opinion.

West Headnotes

**[1] Appeal and Error 30 ⇌863**

30 Appeal and Error
　　30XVI Review
　　　　30XVI(A) Scope, Standards, and Extent, in General
　　　　　　30k862 Extent of Review Dependent on Nature of Decision Appealed from
　　　　　　　　30k863 k. In General. Most Cited Cases
On appeal of trial court's sustaining of a demurrer, an appellate court ascertains whether the complaint states facts sufficient to constitute a cause of action.

**[2] Appeal and Error 30 ⇌863**

30 Appeal and Error
　　30XVI Review
　　　　30XVI(A) Scope, Standards, and Extent, in General
　　　　　　30k862 Extent of Review Dependent on Nature of Decision Appealed from
　　　　　　　　30k863 k. In General. Most Cited Cases
When a demurrer is sustained without leave to amend, an appellate court decides whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and must be reversed; if not, there has been no abuse of discretion and will be affirmed.

**[3] Limitation of Actions 241 ⇌58(1)**

241 Limitation of Actions
　　241II Computation of Period of Limitation
　　　　241II(A) Accrual of Right of Action or Defense
　　　　　　241k58 Liabilities Created by Statute
　　　　　　　　241k58(1) k. In General. Most Cited Cases
Continuing violations doctrine did not apply to Unfair Competition Law (UCL) claim of copier lessee who alleged that lessor wrongfully charged him for "test" copies made by lessor's repair personnel, and thus four-year statute of limitations began to run on claim at time that lessor first made the allegedly wrongful charges, and did not begin to run again at subsequent times that lessor again made such charges. West's Ann.Cal.Bus. & Prof.Code § 17208.

See Cal. Jur. 3d, Unfair Competition, § 27; Cal. Civil Practice (Thomson Reuters 2010) Business Litigation, § 60:15; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 128.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

**[4] Limitation of Actions 241 🗝58(1)**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or Defense
            241k58 Liabilities Created by Statute
                241k58(1) k. In General. Most Cited Cases

**Limitation of Actions 241 🗝95(16)**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(F) Ignorance, Mistake, Trust, Fraud, and Concealment or Discovery of Cause of Action
            241k95 Ignorance of Cause of Action
                241k95(16) k. Consumers' Remedies. Most Cited Cases

Cause of action under the Unfair Competition Law (UCL) accrues, for purposes of determining when the four-year statute of limitation begins to run, when the defendant's conduct occurs, not when the plaintiff learns about the conduct. West's Ann.Cal.Bus. & Prof.Code § 17208.

**[5] Limitation of Actions 241 🗝58(1)**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or Defense
            241k58 Liabilities Created by Statute
                241k58(1) k. In General. Most Cited Cases

When the allegations regarding a defendant's conduct covers a period of time, the cause of action under the Unfair Competition Law (UCL) accrues, for purposes of determining when the four-year statute of limitation begins to run, at the time of the initial conduct. West's Ann.Cal.Bus. & Prof.Code § 17208.

**[6] Pleading 302 🗝36(7)**

302 Pleading
    302I Form and Allegations in General
        302k36 Conclusiveness of Allegations or Admissions on Party Pleading
            302k36(7) k. Pleadings Abandoned or Withdrawn, or to Which Demurrer Has Been Sustained. Most Cited Cases

Copier lessee's admission in initial complaint against lessor, that lessor had first made allegedly wrongful charges over four years prior to lessee's filing action under Unfair Competition Law (UCL), was binding on lessee, for purposes of determining when four-year statute of limitations began to run, even though lessee subsequently filed amended complaints omitting the admission, absent any showing of inadvertence or mistake or discovery of new facts justifying the omission. West's Ann.Cal.Bus. & Prof.Code § 17208.

**[7] Pleading 302 🗝252(1)**

302 Pleading
    302VI Amended and Supplemental Pleadings and Repleader
        302k242 Amendment of Declaration, Complaint, Petition, or Statement
            302k252 Operation and Effect in General
                302k252(1) k. In General. Most Cited Cases

**Pleading 302 🗝254**

302 Pleading
    302VI Amended and Supplemental Pleadings and Repleader
        302k242 Amendment of Declaration, Complaint, Petition, or Statement
            302k254 k. Demurrer to Amended Pleading. Most Cited Cases

**Pleading 302 🗝402**

302 Pleading
    302XVIII Waiver or Cure of Defects and Objections
        302k401 Cure by Subsequent Pleading
            302k402 k. In General. Most Cited Cases

When a pleading contains allegations destructive of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

a cause of action, the defect cannot be cured in later filed pleadings by simply omitting the allegations without explanation; the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer.

**[8] Pleading 302 🗝36(7)**

302 Pleading
    302I Form and Allegations in General
        302k36 Conclusiveness of Allegations or Admissions on Party Pleading
            302k36(7) k. Pleadings Abandoned or Withdrawn, or to Which Demurrer Has Been Sustained. Most Cited Cases

**Pleading 302 🗝225(1)**

302 Pleading
    302V Demurrer or Exception
        302k219 Operation and Effect of Decision on Demurrer
            302k225 Amendment or Further Pleading After Demurrer Sustained
                302k225(1) k. In General. Most Cited Cases

**Pleading 302 🗝252(1)**

302 Pleading
    302VI Amended and Supplemental Pleadings and Repleader
        302k242 Amendment of Declaration, Complaint, Petition, or Statement
            302k252 Operation and Effect in General
                302k252(1) k. In General. Most Cited Cases

When a pleading contains allegations destructive of a cause of action, the plaintiff is bound by his prior admission absent a showing of inadvertence or mistake or discovery of new facts justifying an amendment of the complaint.

**[9] Limitation of Actions 241 🗝199(1)**

241 Limitation of Actions
    241V Pleading, Evidence, Trial, and Review
        241k199 Questions for Jury
            241k199(1) k. In General. Most Cited Cases

Resolution of the defense of statute of limitations is normally a question of fact; however, when the uncontradicted facts are susceptible of only one legitimate inference, the court may determine the matter as a question of law.

**[10] Limitation of Actions 241 🗝1**

241 Limitation of Actions
    241I Statutes of Limitation
        241I(A) Nature, Validity, and Construction in General
            241k1 k. Nature of Statutory Limitation. Most Cited Cases

The fundamental purpose underlying statutes of limitations is to give defendants reasonable repose and to protect parties from having to defend stale claims.

Westrup Klick, R. Duane Westrup, Mark L. VanBuskirk, Jennifer L. Connor, Long Beach; Krieger & Krieger, Linda Guthmann Krieger and Terrence B. Krieger, Long Beach, for Plaintiff and Appellant.

Dorsey & Whitney, Kent J. Schmidt, John P. Cleveland, Irvine, Richard H. Silberberg and Robert G. Manson, for Defendant and Respondent.

FLIER, J.

**\*1** Jamshid Aryeh appeals from the order (judgment) of dismissal of his second amended complaint brought under the Unfair Competition Law (UCL), Business and Professions Code section 17200 et seq.[FN1] The trial court sustained respondent Canon Business Solutions, Inc.'s (Canon) general demurrer without leave to amend, ruling that the allegations failed to state a cause of action and that the claim is barred by laches, the applicable statute of limitations set forth in section 17208,[FN2] and the doctrines of res judicata and collateral estoppel. Appellant contends the continuing violations doc-

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

trine extended the statute of limitations, his action is not barred by laches, he adequately pleaded a UCL claim, and neither res judicata nor collateral estoppel applies. We hold the action is barred by limitations, and we therefore affirm.

## FACTS[FN3]

Canon sells and leases copiers, scanners, printers and other products to customers. In November 2001, appellant, as an individual and doing business as ABC Copy & Print, entered into an agreement with Canon to lease a black and white copier. Under the agreement, appellant agreed to pay a monthly fee in return for a monthly copy allowance, and also agreed to pay an additional excess copy charge for each additional copy beyond the monthly allotment. In February 2002, appellant entered into a second lease agreement with Canon to lease a color copier under similar terms.

Shortly after entering into the copy rental agreements, appellant began noticing that meter readings taken by Canon's field service personnel did not appear to accurately reflect the number of copies actually made on appellant's leased copiers. Appellant asked Canon numerous times, orally and in writing, to repair the copiers and to take accurate readings, to no avail. Consequently, appellant began keeping his own records of the number of copies made on each machine and determined he was being charged for "test" copies made when Canon service personnel repaired or serviced the machines. Despite appellant's attempts to have Canon correct the "excessive" copying charges, Canon failed to reimburse appellant for such overcharges and also charged him late fees.

## PROCEDURAL HISTORY

On January 31, 2008, appellant filed this suit on behalf of himself and similarly situated persons residing in the State of California who entered into copy rental agreements with Canon and who were overcharged for copies from four years preceding the action to the date of judgment. The complaint essentially alleged the foregoing facts and contained a single cause of action for unfair competition under the UCL. Appellant alleged that Canon knew or should have known it was charging appellant for excessive copies on the leased machines. Appellant sought injunctive relief, restitution and attorney fees.

Canon generally demurred to the complaint and asserted that the action was barred on various grounds, including the four-year statute of limitations under section 17208.

**\*2** The trial court sustained the general demurrer. The court ruled appellant had notice of the problem in at least 2002, after the second lease, about six years before he filed this action and well after the four-year statute of limitations had expired. Although the court did not believe appellant could plead around the limitations, the court granted appellant leave to amend.

Appellant filed a first amended complaint, adding an allegation that on various dates between February 2002 and November 2004, Canon's service personnel ran "test copies" during service or maintenance calls.

The first amended complaint omitted the reference to the time appellant discovered the alleged overcharging. Specifically, in paragraph 14, the original complaint alleged, "*Shortly after entering into the copy rental agreements* with [Canon], [appellant] began to notice that the meter readings taken by [Canon's] field servicemen did not appear to reflect the accurate number of copies...." (Italics added.) The first amended complaint substituted a new paragraph 14 that, among other things, omitted the word "shortly" and changed the allegation to read, "*After entering into the copy rental agreements* with [Canon], the products leased by [appellant] required service and/or maintenance." (Italics added.)

Appellant further alleged that the test copies run by Canon's service personnel caused appellant to ex-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

ceed the total allowable copies and required appellant to pay additional fees to Canon. Appellant asserted that, from time to time during the four-year period prior to the filing of his complaint, Canon's service personnel "made from 50 to 900 Test Copies during various service and/or maintenance calls." The amended complaint listed 17 instances during the period commencing February 6, 2002, and ending November 16, 2004, in which Canon's service personnel made test copies. Appellant alleged, "Each time [Canon's] servicemen ran Test Copies ... was independent of any prior occasions when [Canon's] servicemen ran Test Copies" and each date "resulted in a separate and distinct violation giving rise to separate and distinct damage."

Canon generally demurred to the amended pleading. The trial court again sustained the demurrer and granted appellant leave to amend a second time on counsel for appellant's representations that the payments obtained by Canon violated the written agreements between the parties. The court stated, "[t]he statute of limitations and standing to seek injunctive relief are issues, and I want to know if [appellant] is now a lessee of these Canon products." The court directed appellant's counsel to "put in whatever you think you can do, and we'll address this squarely when we come back."

Appellant filed a second amended complaint, in which he alleged that "[a]s of the date of the filing of this second amended complaint, [appellant] is not now a lessee of Canon products." For the first time, appellant attached copies of the November 2001 and February 2002 contracts. He asserted that neither contract authorized a charge for test copies.

**\*3** Canon interposed a general demurrer on numerous grounds, including the statute of limitations, and requested that the court sustain the demurrer without leave to amend. Canon argued that the second amended complaint revealed even more defects in appellant's claim. For example, the written agreements appellant attached as exhibits established for the first time that no provision in the contracts required Canon to provide a credit for test copies. The attached agreements also showed that each agreement expired after 60 months. Thus, no injunctive relief would lie as neither agreement was currently in effect. Because appellant took no action to halt the alleged violation of his rights while the agreements were in effect, Canon also argued his claims were barred by laches.

The trial court determined the second amended complaint failed to dispel Canon's objections based on the statute of limitations. The court stated, "[t]here is no continuing practices doctrine that applies here" and "no equitable tolling that I can see that could possibly apply[;] [under section] 17200 [,] when the act occurs the clock starts, and here we have an allegation that there was actual knowledge in February of 2002 in an earlier pleading ..., and you have been given the chance to amend to address this if it was possible."

After further argument by both sides, the court indicated it had not changed its mind. Appellant's counsel requested that "[i]f the court is inclined to sustain the demurrer without leave [to amend], I would ask the court to do it on the statute of limitations ground because ... there needs to be some clarity, and I would like the opportunity to pursue that." The court concluded appellant was "concededly" aware of his claim "almost six years in advance of the suit being filed" and sustained the demurrer without leave to amend.

This timely appeal followed.

### STANDARD OF REVIEW

[1][2] When a demurrer is sustained, we ascertain whether the complaint states facts sufficient to constitute a cause of action. (Blank, supra, 39 Cal.3d at p. 318, 216 Cal.Rptr. 718, 703 P.2d 58.) "[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-md-02068-JAW   Document 227-3   Filed 07/13/10   Page 6 of 16

Page 6

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

and we affirm." (*Ibid.*) The burden of proving such reasonable possibility rests squarely on the appellant. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081, 6 Cal.Rptr.3d 457, 79 P.3d 569 (*Schifando* ).)[FN4]

### DISCUSSION

*1. Four-year Statute of Limitations*

[3] Appellant does not dispute that the four-year statute of limitations prescribed in section 17208 applies to his action. However, appellant asserts the statutory clock not only starts at the time of the first occurrence-i.e., the time an allegedly offending act was committed and caused injury-but rather "re-starts" each time the defendant invades the plaintiff's rights and causes injury. Specifically, appellant argues that a doctrine of continuing violations should be applied to violations of the UCL. We reject appellant's contention. His UCL cause of action accrued more than four years before he filed his action, and the continuing violation doctrine does not apply to the circumstances of this case.

*A. Accrual*

*4 [4][5] A cause of action for unfair business practice under section 17200 must be commenced "within four years after the cause of action accrued." (§ 17208; see also *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 178-179, 96 Cal.Rptr.2d 518, 999 P.2d 706 (*Cortez* ); *Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 364, 89 Cal.Rptr.3d 710; see 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 128, p. 448.) The cause of action accrues when the defendant's conduct occurs, not when the plaintiff learns about the conduct. (*Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 891, 117 Cal.Rptr.2d 331 (*Snapp* ) [" 'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply" to causes of action under § 17200].) When the allegations regarding a defendant's conduct covers a period of time, the cause of action accrues at the time of the initial conduct. (*Id.* at p. 892, 117 Cal.Rptr.2d 331 [complaint alleging wrongdoing that began more than four years before action commenced and was "on-going" barred by § 17208].)

In *Snapp,* the plaintiff insurance broker hired a salesman who brought with him a number of client accounts (TRG accounts). (*Snapp, supra,* 96 Cal.App.4th at p. 887, 117 Cal.Rptr.2d 331.) In February 1993, the plaintiff learned that the salesman had deposited commissions earned on TRG accounts into his own bank account. Plaintiff confronted the salesman and terminated his employment in March 1993. (*Ibid.*) Soon thereafter, plaintiff began receiving notices that defendant was acting as broker for the terminated salesman on some TRG accounts. Plaintiff caused a "cease and desist" letter to be sent to the defendant in May 1993. (*Id.* at pp. 887-888, 117 Cal.Rptr.2d 331.) Plaintiff then pursued the salesman for damages but its efforts were thwarted by his bankruptcy proceedings. Over four years later, in August 1997, plaintiff filed a complaint against the defendant including a claim under the UCL. (*Id.* at p. 889, 117 Cal.Rptr.2d 331.)

The trial court in *Snapp* determined plaintiff's UCL action was time-barred. (*Snapp, supra,* 96 Cal.App.4th at pp. 889, 117 Cal.Rptr.2d 331.) The appellate court agreed, holding that section 17208 required the action to be commenced within four years after the cause of action accrued. (*Snapp,* at p. 891, 117 Cal.Rptr.2d 331.) "Thus, 'the statute begins to run ... irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine.' " (*Ibid.*) The trial court rejected the plaintiff's claim that the statute did not commence running until the defendant purchased the TRG accounts from the salesman in February 1994. The court noted the first amended complaint had alleged that defendant's solicitation of plaintiff's former employees and customers "

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

'started in or about May 1993, *and is on-going*.' " (*Id.* at p. 892, 117 Cal.Rptr.2d 331, italics added.) The plaintiff thus knew of a potential claim against the defendant more than four years before it filed its complaint. (*Ibid.*) The court held the claims barred by the UCL four-year statute of limitations as defendant's wrongful conduct, although allegedly "ongoing," began and was known to the plaintiff more than four years prior to the action's commencement. (*Ibid.*) We find *Snapp* to be controlling.[FN5]

**\*5** [6] The UCL claim asserted in *Snapp* was based upon essentially the same type of conduct at issue in the present case: the allegedly wrongful collection of fees on a recurring basis. In *Snapp,* the fees at issue were recurring insurance premiums collected over a period of time beginning outside the limitations period and continuing into the limitations period. In the instant action, the fees at issue are recurring "excess copy charges" imposed over a period of time beginning outside the limitations period and continuing into the limitations period. The court in *Snapp* held that the very first allegedly improper brokering charge, which became known to the plaintiff soon after its imposition, commenced the running of the four-year statute of limitations, barring the plaintiff's claim even though plaintiff asserted that the imposition of such charges was "ongoing." (*Snapp, supra,* 96 Cal.App.4th at pp. 891-892, 117 Cal.Rptr.2d 331.) Here, appellant's initial complaint alleged that appellant began to notice that the meter readings taken by Canon's field service personnel did not appear to reflect the accurate number of copies "[s]hortly after" appellant entered into the copy rental agreements. Appellant thus admitted in the initial complaint he knew of the alleged inaccurate readings and overcharge about February 2002, six years before filing his lawsuit.

[7][8] Appellant omitted this allegation in his subsequent pleadings and offered no explanation for the omission nor made any showing he had since obtained further facts indicating his prior allegation was inaccurate. When a pleading contains allegations destructive of a cause of action, the defect cannot be cured in later filed pleadings by simply omitting the allegations without explanation. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742, 1 Cal.Rptr.2d 543, 819 P.2d 1.) The " ' "original defect infects the subsequent pleading so as to render it vulnerable to a demurrer." ' " (*Id.* at p. 743, 1 Cal.Rptr.2d 543, 819 P.2d 1.) The plaintiff is bound by his prior admission absent a showing of inadvertence or mistake or discovery of new facts justifying an amendment of the complaint. (*Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044, 36 Cal.Rptr.3d 532.)

[9][10] Resolution of the defense of statute of limitations is normally a question of fact. However, when the uncontradicted facts are susceptible of only one legitimate inference, the court may determine the matter as a question of law. (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112, 245 Cal.Rptr. 658, 751 P.2d 923; *Snapp, supra,* 96 Cal.App.4th at pp. 889-890, 117 Cal.Rptr.2d 331.) Such a rule serves the fundamental purpose underlying the statute of limitations, namely, to give defendants reasonable repose and to protect parties from having to defend stale claims. (*Jolly,* at p. 1112, 245 Cal.Rptr. 658, 751 P.2d 923.) In the present case, the uncontradicted facts are susceptible of only one legitimate inference: appellant knew "shortly after" he entered into the second contract in February 2002 of Canon's alleged overcounting of copies and overcharging for them.

### B. No Continuing Violation

**\*6** Appellant cites no legal authorities justifying his assertion that the continuing violations doctrine applies to UCL claims. He claims application of the continuing violations doctrine to a "pure UCL consumer lawsuit" is an issue of first impression and it was error for the trial court not to apply the doctrine to save his UCL claim. In making this argument, appellant cites a smorgasbord of federal and state law authorities that are factually and legally

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

inapposite, including authorities that do not involve the continuing violations doctrine. None of the authorities appellant cites compels us to apply the continuing violations doctrine to salvage his claim.

In *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 111 Cal.Rptr.2d 87, 29 P.3d 175 *(Richards ),* our Supreme Court discussed the continuing violations doctrine in context of the statute of limitations under the Fair Employment and Housing Act ( Gov.Code, § 12900 et seq.; FEHA). Quoting a leading treatise, the Supreme Court observed that the continuing violation doctrine is " 'arguably the most muddled area in all of employment discrimination law.' " *(Richards,* at p. 813, 111 Cal.Rptr.2d 87, 29 P.3d 175, quoting 2 Lindemann & Grossman, Employment Discrimination Law (3d ed. 1996) p. 1351.) The Supreme Court noted that the continuing violation doctrine is muddled because it "refers not to a single theory, but to a number of different approaches, in different contexts and using a variety of formulations, to extending the statute of limitations in employment discrimination cases." *(Ibid.)*

The Supreme Court identified four different approaches followed by state and federal courts in applying the continuing violation doctrine. *(Richards, supra,* 26 Cal.4th at pp. 813-817, 111 Cal.Rptr.2d 87, 29 P.3d 175.) The Supreme Court concluded that courts applying the continuing violation doctrine "have tended toward a broader view of that doctrine when the cause of action involves ongoing harassment or ongoing failure to accommodate disability." *(Id.* at p. 817, 111 Cal.Rptr.2d 87, 29 P.3d 175.) In the case of alleged FEHA violations, the Supreme Court determined the one-year statute of limitations should be " 'construed liberally' " in order to " 'carry out the purposes of the FEHA to safeguard the employee's right to hold employment without experiencing discrimination.' " *(Id.* at p. 819, 111 Cal.Rptr.2d 87, 29 P.3d 175.) Further, the FEHA limitations period " 'should be interpreted so as to promote the resolution of potentially meritorious claims on the merits.' " *(Ibid.)*

The *Richards* court declared: "we do not believe the FEHA statute of limitations should be interpreted to give a disabled employee engaged in the process of seeking reasonable workplace accommodation or ending disability harassment two unappealing choices: on the one hand resigning and bringing legal action soon after the first signs that her rights have been violated, or on the other hand attempting to persist in the informal accommodation process and risk forfeiture of the right to bring such an action altogether. Nor ... is the third choice-retaining employment while bringing formal legal action against the employer-a viable option for many employees." *(Richards, supra,* 26 Cal.4th at pp. 820-821, 111 Cal.Rptr.2d 87, 29 P.3d 175.) The court observed that there is good reason to view a failure over time to reasonably accommodate a disabled employee as a single course of conduct, as reasonable accommodation is often an "ongoing process" rather than a single action. *(Id.* at p. 821, 111 Cal.Rptr.2d 87, 29 P.3d 175.) Moreover, in cases of employment discrimination or harassment, a single instance of an employer's failure to accommodate that may seem "trivial" in isolation can take on greater significance and inflict greater injury when viewed as "one of a series of such failures." ( *Id.* at p. 822, 111 Cal.Rptr.2d 87, 29 P.3d 175.) The court therefore held that when an employer engages in a continuing course of unlawful conduct under the FEHA by refusing reasonable accommodation of a disabled employee or engaging in disability harassment not amounting to a constructive discharge, the statute of limitations begins to run, "not necessarily when the employee first believes that his or her rights may have been violated," but either when the course of conduct is brought to an end or when the employee is on notice that further efforts to end the unlawful conduct will be in vain. *(Id.* at p. 823, 111 Cal.Rptr.2d 87, 29 P.3d 175.)

**\*7** This court applied the continuing violations doctrine in *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 19 Cal.Rptr.3d 29 *(Alch ),* in which the plaintiffs filed a series of class action lawsuits on behalf of television writers against stu-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

dios, networks and talent agencies for age discrimination under the FEHA.[FN6] We acknowledged in *Alch* the type of "continuing violation" comprising a "systematic, companywide corporate policy of discrimination against a protected class" that began prior to and extended into the limitations period. (*Alch, supra,* 122 Cal.App.4th at pp. 369, 374-376, 19 Cal.Rptr.3d 29.)

We find no correlation between appellant's claim seeking recovery for individual instances in which he purports to have been wrongfully charged for "test" copies and the plaintiffs' claims in *Richards* and *Alch,* which were not based upon specific acts of alleged misconduct, but instead upon on-going, accumulative harassment in the case of *Richards* or a broad and longstanding corporate policy of employment discrimination in the case of *Alch.* (*Richards, supra,* 26 Cal.4th at p. 822, 111 Cal.Rptr.2d 87, 29 P.3d 175; *Alch, supra,* 122 Cal.App.4th at pp. 375-376, 19 Cal.Rptr.3d 29.) Here, once appellant was aware he was being "overcharged" for test copies and that his protests to Canon were futile, he could and should have taken diligent action. He could not wait for years until the agreement expired while more "overcharges" accumulated before filing a complaint.

Only one reported California case to our knowledge has extended the continuing violations doctrine outside the employment law context. In *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 95 Cal.Rptr.3d 880 (*Komarova* ), a plaintiff who had been mistakenly and repeatedly harassed by a debt collection agency asserted a claim under the Robbins-Rosenthal Fair Debt Collection Practices Act (Civ.Code, § 1788 et seq.). The court found that the defendant's statute of limitations defense was overcome by the continuing violation doctrine, permitting recovery " 'for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period.' " (*Komarova, supra,* at p. 343, 95 Cal.Rptr.3d 880, quoting *Richards, supra,* 26 Cal.4th at p. 812, 111 Cal.Rptr.2d 87, 29 P.3d 175.) The court, quoting *Joseph v. J.J. Mac Intyre Companies, L.L.C.* (N.D.Cal.2003) 281 F.Supp.2d 1156 (*Joseph* ), noted that " '[t]he key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts.' " (*Komarova, supra,* at p. 343, 95 Cal.Rptr.3d 880.) Citing a close analogy between " 'a pattern of debtor harassment consisting of a series of calls' " and a hostile work environment, the court explained that, as with hostile work environment cases, debtor harassment claims "by ' "[t]heir very nature involve [ ] repeated conduct" ' rather than ' "discrete acts" ' ...." (*Komarova, supra,* 175 Cal.App.4th at p. 344, 95 Cal.Rptr.3d 880, quoting *Joseph, supra,* 281 F.Supp.2d at p. 1160.)

**\*8** Routinely billing and collecting for "test" copies is not the type of harassing and egregious conduct the continuing violation doctrine is designed to deter. No comparable policy considerations compel applying the continuing violations doctrine to violations of the UCL. (*Cortez, supra,* 23 Cal.4th at pp. 173, 96 Cal.Rptr.2d 518, 999 P.2d 706.) The UCL is not an "all-purpose substitute" for a tort or contract action. (*Ibid.*) The Legislature has expressed a goal that the UCL be "a *streamlined* procedure for the prevention of ongoing or threatened acts of unfair competition." (*Id.* at pp. 173-174, 96 Cal.Rptr.2d 518, 999 P.2d 706.) A claim for recovery of past damages is not within the contemplation of the UCL.

The statute of limitations on a UCL action begins to run upon accrual unless equitably tolled. (*Snapp, supra,* 96 Cal.App.4th 884, 891, 117 Cal.Rptr.2d 331.) Appellant does not assert equitable tolling applies to his action, nor does he allege any facts establishing the doctrine applies.

*2. Leave to Amend*

Appellant has not informed this court of any new

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-md-02068-JAW   Document 227-3   Filed 07/13/10   Page 10 of 16

Page 10

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

facts or suggested how he could amend his complaint to overcome the statute of limitations. Nor did he make any such showing in the trial court. Thus, the court did not abuse its discretion in sustaining the demurrer without leave to amend. *(Schifando, supra,* 31 Cal.4th at p. 1081, 6 Cal.Rptr.3d 457, 79 P.3d 569.)

### DISPOSITION

The judgment is affirmed. Respondent Canon is to recover costs on appeal.

I concur: LICHTMAN, J.[FN*]
RUBIN, J., Dissenting:
I respectfully dissent.

I agree with the majority's conclusion that the accrual date of appellant's claim dictates whether or not his complaint is barred by the statute of limitations. I also agree that the case does not rest on principles of delayed discovery or equitable tolling, doctrines that appellant expressly disavows.[FN1] I part with the majority because, in my view, there are several claims alleged in the operative second-amended complaint that do not appear on the face of the pleading to be barred by the statute of limitations even if others are legally stale. Accordingly, the demurrer should have been overruled.

The majority correctly describes the chronology of complaints, demurrers and amendments, the last of which produced the trial court's ruling sustaining the demurrer to the second-amended complaint without leave to amend. Briefly, the amendment process achieved its salutary purpose of forcing appellant to allege facts concerning when the alleged wrongs took place. By the second-amended complaint, appellant had alleged that some of the unfair business practices took place as early as February 6, 2002, and some as late as November 16, 2004. The parties agree that there is a four year statute of limitations for Unfair Competition Law (UCL) claims. (Bus. & Prof.Code, § 17208.) Appellant acknowledges that any allegedly unauthorized copying charges that were debited more than four years before the filing of the original complaint on January 31, 2008, are barred by the statute of limitations. He contends those charges imposed on him after January 31, 2004-some 4628 unauthorized test copies according to the complaint-constitute UCL violations that occurred within the four year period and are not barred by the statute of limitations.

*9 The majority's opinion that the statute of limitations defeats appellant's entire action is predicated on two conclusions: (1) the "continuing violation" rule found in other areas of the law has no application to the UCL; and (2) the trial court's ruling was correct under the authority of *Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 117 Cal.Rptr.2d 331 (*Snapp*). In my view, the majority has unnecessarily focused on the continuing violation rule, which has little to do with this case. Instead, the similarly named but conceptually distinct "continuous accrual" doctrine is applicable. I also conclude that *Snapp* does not support the trial court's ruling.[FN2]

### *Continuing Violation*

The "continuing violation" rule is almost exclusively a creature of employment discrimination law.[FN3] As explained by our Supreme Court in its seminal opinion, the doctrine "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802, 111 Cal.Rptr.2d 87, 29 P.3d 175 (*Richards*).) If the continuing violation applies in a given case, not only is *evidence* of wrongdoing that would otherwise be barred by the statute of limitations admissible, the actual wrongdoing-even though occurring outside the statute of limitations-is *actionable.* "Essentially, the continuing violation doctrine comes into play when an employee raises a claim based on conduct that occurred in part outside the limitations period. In such cases, two questions are potentially raised. The first question is evidentiary:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

Are the alleged acts outside the limitations period admissible as relevant background evidence? [Citation.] The second and more difficult question is remedial: Is an employer liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period?" (*Richards, supra,* at p. 812, 111 Cal.Rptr.2d 87, 29 P.3d 175.)

*Richards* involved claims for employment disability accommodation and harassment. In *Yanowitz v. L'Oreal, USA, Inc.* (2005) 36 Cal.4th 1028, 1054, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (*Yanowitz*), the Supreme Court extended the doctrine to retaliation claims. A leading text on the subject describes the *Richards/ Yanowitz* rule this way: "The continuing violation doctrine comes into play when an employee raises a claim based on conduct that occurred *in part* outside the limitations. Provided at least one of the acts occurred *within* the statutory period, the employer may be liable for the entire course of conduct, including acts predating the statutory period, under the continuing violation doctrine." (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2009) ¶ 16.264, p. 16-36.)

The continuing violation doctrine thus is implicated only when recovery is sought for some conduct that falls within the statute of limitations *and* some that falls outside the statute. If appellant were arguing that his pre-January 31, 2004 claims are nevertheless actionable because the continuing violation rule allows them to be joined with his timely claims, then we would have the issue the majority raises: Does the continuing violation rule apply to UCL claims? But that is not appellant's argument.

**\*10** Appellant's contention is much simpler: respondent's conduct in violating the terms of the parties' agreement comprised a series of unfair business practices. Those acts occurring within four years of the filing of the complaint are actionable. Those that occurred earlier are barred by the statute of limitations. The straightforward nature of his point emerges if we consider this case as one involving a series of breaches of contract. Appellant alleges respondent breached the two copier leases on several dates in 2002, 2003 and 2004. In contract statute of limitations terms, the breaches that occurred before 2004 would be barred under Code of Civil Procedure section 337, subdivision (1), the four year statute for breach of a written contract. Those breaches occurring in 2004, within four years of the filing of the complaint, are actionable. Ironically, respondent agrees that this is essentially a breach of contract case, or as respondent puts it in the first sentence of its appellate brief: "This is a garden variety contract dispute concerning the propriety of certain charges...."[FN4]

Viewed in the context of breach of contract, it is well established that, when a contract is breached on multiple occasions, each breach gives rise to a new cause of action. Witkin states the rule plainly: "When a contract is severable, the duty to perform each part arises independently and the statute begins to run on the severable obligations from the time the performance of each is due." (3 Witkin Cal. Procedure (5th ed. 2008) Actions, § 520, at p. 665.) Examples can be found in a wide variety of contract settings generally similar to the present case. (E.g., *White v. Moriarty* (1993) 15 Cal.App.4th 1290, 1299, 19 Cal.Rptr.2d 200 [promissory note]; *Conway v. Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 200, 164 Cal.Rptr. 585 [buy-sell agreement with monthly payments for life]; *Carrasco v. Greco Canning Co.* (1943) 58 Cal.App.2d 673, 675, 137 P.2d 463 [monthly salary increase]; *Tillson v. Peters* (1940) 41 Cal.App.2d 671, 674, 107 P.2d 434 [rent due under lease]; *Lee v. De Forest* (1937) 22 Cal.App.2d 351, 360, 71 P.2d 285 [deficiency in monthly rental recoverable under terms of lease after lessor's lease to new tenant]; *Trigg v. Arnott* (1937) 22 Cal.App.2d 455, 459, 71 P.2d 330 [installment note].)

Some cases have characterized this statute of limitations principle as the continuous accrual rule. A careful parsing of "continuing violation" and "continuous accrual" reveals more than a semantical difference. The former describes what is essen-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-md-02068-JAW   Document 227-3   Filed 07/13/10   Page 12 of 16

Page 12
--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

tially a fiction: a wrong committed sometime in the past will be deemed to have also been committed later if it is closely connected with more recent misconduct. The original violation will be treated as continuing even if the earlier act is completed. Continuous accrual is different. Rather than extending the impact of prior conduct, it acknowledges the reality that similar acts can continue to occur: one can breach the same contract over and over again in substantially the same manner. Earlier conduct is not *extended* but *repeated.* Witkin describes the rule as follows: "In several types of cases it has been held that, where a right or obligation is continuing, successive causes of action to enforce it continuously accrue, and the bar of the statute can only be set up against those causes on which the period has run." (3 Witkin Cal. Procedure, *supra,* Actions, § 669, p. 886.)

**\*11** For example in *City of Santa Cruz v. Pacific Gas & Electric Co.* (2000) 82 Cal.App.4th 1167, 1178, 99 Cal.Rptr.2d 198, the appellate court held that in an action against a public utility for underpayment of franchise fees, a new claim accrued each time the utility underpaid fees. To be sure, many of the continuous accrual cases involve public entities. (*E.g. Howard Jarvis Taxpayers Ass'n. v. City of La Habra* (2001) 25 Cal.4th 809, 821, 107 Cal.Rptr.2d 369, 23 P.3d 601 [declaratory relief claim based on invalidity of tax timely even though original wrong occurred beyond statute of limitations; some taxes had been imposed within statutory period]; *Hogar Dulce Hogar v. Community Development Com'n of City of Escondido* (2003) 110 Cal.App.4th 1288, 2 Cal.Rptr.3d 497 [reimbursement for overages paid to Housing Fund limited to three years before filing of complaint under applicable three year statute of limitations]; *Dryden v. Board of Pension Com'rs. of City of Los Angeles* (1936) 6 Cal.2d 575, 580-581, 59 P.2d 104 [fact some claims for pension benefits were barred by statute of limitations did not prevent recovery for timely claims; right to pension payments "is a continuing right"].) However, the rule applies in the private sector as well.

In *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 11 Cal.Rptr.3d 412, the Court of Appeal was required to determine whether a complicated oil and gas lease was breached on a single date, more than four years before the complaint was filed, or whether repeated failures of performance arising out of monthly payments and production delivery obligations were recurring breaches. The court held that the statute of limitations barred only those claims that predated the complaint by four years. "As a general rule, a cause of action accrues and a statute of limitations begins to run when a controversy is ripe-that is, when all of the elements of a cause of action have occurred and a suit may be maintained. [Citation.] Where there is a continuing wrong, however, with periodic new injury to the plaintiff, the courts have applied what Justice Werdegar has termed a "theory of continuous accrual." [Citations.] [¶] Thus, where performance of contractual obligations is severed into intervals, as in installment contracts, the courts have found that an action attacking the performance for any particular interval must be brought within the period of limitations after the particular performance was due. The situations in which this rule has been applied include not only installment contracts [citation], but also such diverse contractual arrangements as leases with periodic rental payments [citation], and contracts calling for periodic, pension-like payments on an obligation with no fixed and final amount [citation]." (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co., supra,* at p. 1388, 11 Cal.Rptr.3d 412; but see *Green v. Obledo* (1981) 29 Cal.3d 126, 141-142, 172 Cal.Rptr. 206, 624 P.2d 256 [court may have equitable power to shorten statute of limitations].)

I see little difference between this case which involves charges imposed on appellant as part of the rent he is contractually obligated to pay and, for example, the rental obligations in *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1338, 67 Cal.Rptr.2d 726, which involved a complicated formula based on square

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

footage, cost of construction and the consumer price index. In each case a new breach, a new unfair business practice, starts a new accrual period.

**\*12** Nor do I discern any public policy that would justify in this context treating UCL claims based on multiple acts differently from claims based on contract or other theories. Even after Proposition 64, the UCL is broad in scope, a tool that often may be used to correct unfair business practices. (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 317, 93 Cal.Rptr.3d 559, 207 P.3d 20; *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682.) If an unlawful business practice is ongoing and causes an injury, the injured party may be entitled to the limited remedies afforded by the UCL, as well as to those available under more traditional theories. The nature of the repeated wrong does not change by the inclusion of a UCL claim along with common law causes of action. The injunctive relief authorized by the UCL should not be automatically unavailable following recent misconduct merely because the first unfair practice took place several years earlier. And, the policies of the statute of limitations and of the UCL seem equally furthered if any restitutionary award is limited to the four years preceding the filing of the complaint. (Bus. & Prof.Code, § 17208.)

*Snapp & Associates Ins. Services v. Malcolm Bruce Burlingame Robertson*

The second reason the majority gives for affirming the trial court's ruling is the decision in *Snapp & Associates Ins. Services v. Robertson, supra,* 96 Cal.App.4th 884, 117 Cal.Rptr.2d 331. In *Snapp* the plaintiff asserted common law and statutory causes of action including a claim under the UCL. The underlying wrong was the theft of insurance client accounts and commissions by one Gwin, who had long ago fled the country. The lawsuit was filed against defendant Robertson for his role in the misappropriation of the customer accounts. Although the complaint was filed more than four years after the conversion took place, the plaintiff argued that the statute of limitations did not bar his claims because of the delayed discovery rule and equitable tolling. (*Id.* at p. 887, 117 Cal.Rptr.2d 331.) Yet, Gwin had stolen the accounts in February 1993 and the plaintiff "immediately began receiving notices that Robertson was acting as broker of record for Gwin" on some of the accounts. (*Ibid.*) In March 1993 the plaintiff sued Gwin and ultimately recovered over $400,000, only a portion of which he was able to collect. He filed suit against Robertson in August 21, 2007, more than four years after the theft.

The court concluded that Robertson committed a single wrong when he became complicit in Gwin's theft of the plaintiff's customer files, an act that had taken place outside the statute of limitations. The court's analysis was confined to whether equitable tolling or delayed discovery applies to UCL claims. Because the plaintiff knew Robertson's complicity almost from the get go, no tolling or delayed discovery was available. There is no discussion of continuing violation or continuous accrual. None of the cases cited in the majority opinion here or in this dissent are mentioned in *Snapp.* The court assumed there was a single act of conversion and concluded that it had taken place more than four years before the complaint. *Snapp* begins and ends with a rejection of equitable tolling and delayed discovery, neither of which appellants assert here.[FN5]

**\*13** In contrast to *Snapp* is *Suh v. Yang, supra,* 987 F.Supp. 783 (*Suh* ), a case that the majority does not discuss. *Suh* implicitly addresses both the continuing violation and the continuous accrual rules in the context of a UCL claim, and, in my view, correctly distinguishes the two concepts. There, the plaintiff allegedly created a new form of martial arts and over many years had licensed some 120 schools nationwide to use his trademark and logo. The defendant first joined the plaintiff in his operations, and then left to form a competing school. The plaintiff filed suit against defendant for his improper use of the terms "Kuk Sool Won" and "Kuk Sool" in which the plaintiff had claimed a protected

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

proprietary interest. He alleged federal trademark and Lanham Act violations, as well as causes of action under California common law and statutes, including the UCL.

The parties each moved for summary judgment. Much of the opinion is devoted to a discussion of whether the name marks in question are legally protected, but defendant also asserted that the state UCL claim was barred by the statute of limitations. The defendant concededly started using the marks in 1987, but the lawsuit was not filed until 1996 well beyond the four year limitation of Business and Professions Code section 17208. The court nevertheless rejected defendant's statute of limitations argument. It first assumed that neither delayed discovery nor equitable tolling applied to UCL actions, the same points which appellant here has conceded. (See *Stutz Motor Car of America, Inc. v. Reebok Intern. Ltd.* (C.D.Cal.1995) 909 F.Supp. 1353, affd. 113 F.3d 1258 (1997), *cert. den.,* 522 U.S. 863, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997).) The court then held: "Assuming, *arguendo,* that *Stutz* correctly interprets Section 17208, Plaintiff's claim for unfair competition would not be barred by the four year statute of limitations since the alleged wrongs (i.e. the wrongful use and dilution of Suh's service marks) are multiple, continuous acts, and some of these acts have occurred within the limitations period." (*Suh, supra,* 987 F.Supp. at p. 795.) The court found that *Stutz* was distinguishable because the claim there was based on a single wrong. The *Suh* court concluded that the plaintiff's claims involved repeated acts of wrongful appropriation, each creating "a separate cause of action for unfair competition and trademark infringement." (*Id.* at p. 796.)

Without using the term "continuous accrual," *Suh* applies the doctrine to a case presenting multiple UCL claims, some of which had occurred within the statute of limitations and some of which were outside the statute. Those occurring within four years, it held, were actionable. Using legal jargon, the present case is on "all fours" with *Suh.* And almost as if the federal court had anticipated the debate between the majority and dissent here, the court expressly refused to consider whether "recovery for allegedly infringing acts occurring *prior* to the four year statute of limitations is barred" because the parties had not raised it. (*Id.* at p. 796, fn. 9.) Again, without using the term "continuing wrong," the *Suh* court thus decided it did not have to decide whether that doctrine applied in UCL cases because the issue had not been raised.

**\*14** In my view neither the continuing violation rule nor the holding in *Snapp* supports the decision the majority reaches. On the contrary, application of long standing principles in analogous settings, often described as the "continuous accrual" rule, fortifies the conclusion that none of appellant's post-January 31, 2004 claims are barred by the statute of limitations. Accordingly, I would reverse the judgment in favor of respondent and permit the case to proceed.[FN6]

> FN1. All further statutory references are to the Business and Professions Code unless indicated otherwise.

> FN2. Section 17208 provides, in pertinent part: "Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."

> FN3. On review of the sufficiency of a complaint against a general demurrer, we treat the demurrer as admitting all properly pleaded material facts, but not contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58 (*Blank*).) We also consider matters subject to judicial notice. (*Ibid.*)

> FN4. We discuss additional standards of review below in context of specific issues.

> FN5. Appellant asserts that *Snapp's* hold-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

ing is relevant only to the issue whether the delayed discovery rule should be applied to UCL claims and has no relevance to the issue whether a cause of action is subject to "continuing violations" or "multiple accrual." We do not interpret *Snapp's* holding so narrowly.

FN6. Appellant notes *Alch* included claims under the UCL. In *Alch,* we found that the trial court erred in ruling plaintiffs were required to show potential competitive harm or consumer deception to state a claim under the UCL. (*Alch, supra,* 122 Cal.App.4th at pp. 400-403, 19 Cal.Rptr.3d 29.) But we held the trial court properly sustained demurrers to UCL claims because the plaintiffs were seeking nonrestitutionary backpay and the court had no authority to award such damages in the first instance. (*Id.* at p. 408, 19 Cal.Rptr.3d 29.) *Alch* did not discuss the continuing violation doctrine with respect to the statute of limitations under the UCL. (*Id.* at pp. 400-409, 19 Cal.Rptr.3d 29.)

FN* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

FN1. The Supreme Court has not resolved the question of whether delayed discovery applies to UCL claims. (*Grisham v. Philip Morris, U.S.A., Inc.* (2007) 40 Cal.4th 623, 639, fn. 7, 54 Cal.Rptr.3d 735, 151 P.3d 1151; see *Broberg v. Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 920, 90 Cal.Rptr.3d 225.)

FN2. I do not quarrel with the majority for addressing the continuing violation rule because that is how appellant unfortunately has framed the issue and how respondent understandably has answered. Somewhat buried in both the second amended complaint and in appellant's opening brief is the frank concession that appellant is not seeking restitution for charges that occurred before the four year statute of limitation of Bus. & Prof.Code, section 17208. As I suggest below, the continuing violation doctrine, which "saves" otherwise barred claims, has no application to those claims that in fact fall within the statute of limitations, as is the case with all of appellant's post January 31, 2004 claims.

FN3. "Almost exclusively" because there are occasional applications in other areas of law. (E.g., *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 343-346, 95 Cal.Rptr.3d 880 [continuing violation rule applies to claims for violations of Rosenthal Fair Debt Collection Practices Act (Civ.Code, § 1788 et seq.)].) Although the court in *Suh v. Yang* (N.D.Cal.1997) 987 F.Supp. 783, 795-796 did not use the term "continuing violation" it described the California UCL claim as "continuing." The court held that the statute of limitations did not bar state claims based on conduct occurring within four years of the filing of the complaint. The court expressly did not address whether recovery could be based on acts prior to the four year statute. (*Id.* at p. 796, fn. 9.) Other unpublished federal cases suggest that UCL claims are not barred when at least some multiple, continuous acts occurred within the limitations period. (E.g. *Betz v. Trainer Wortham & Company, Inc.* (9th Cir.2007) 236 Fed.Appx. 253, 256; citable under *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn. 6, 107 Cal.Rptr.3d 373.)

FN4. Neither the trial court nor the majority nor this opinion addresses whether on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423
**(Cite as: 2010 WL 2491415 (Cal.App. 2 Dist.))**

the merits appellant has stated a cause of action for violating the UCL. Because the initial series of attacks on the complaint dealt with the statute of limitations and other procedural issues, no court has been called upon to determine whether, in respondent's words, this is only a garden variety contract case or appellant has adequately alleged a UCL claim.

FN5. Some UCL claims may have a single accrual date. As in *Snapp,* the facts of a case might indicate a solitary unfair business practice, albeit with some tangential adverse consequences occurring over a period of time. Under those circumstances it may be that as a factual matter there is only one accrual date, such that the continuous accrual rule would be unavailable. The present case, though, involves a series of repeated, discrete acts, each of which, in my view, is separately actionable.

FN6. Because the majority found the statute of limitations barred appellant's claim, it did not need to address the two other grounds respondent asserted in support of its demurrer. Briefly, respondent's laches argument is unpersuasive because laches, assuming it otherwise applies, requires a showing of prejudice ( *Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 263, 80 Cal.Rptr.3d 876 [delay and either acquiescence or prejudice] ), and the second amended complaint does not show prejudice on its face. As to respondent's res judicata/collateral estoppel defense, those doctrines have only narrow application when the initial proceeding was in small claims court, as was the case here. (See *Perez v. City of San Bruno* (1980) 27 Cal.3d 875, 884-886, 168 Cal.Rptr. 114, 616 P.2d 1287; *Sanderson v. Niemann* (1941) 17 Cal.2d 563, 571, 110 P.2d 1025; *Pitzen v. Superior Court* (2004) 120 Cal.App.4th 1374, 16 Cal.Rptr.3d 628.) Neither the second-amended complaint nor the matters of which the court could take judicial notice would permit the trial court to conclude that appellant's action is barred by res judicata or collateral estoppel as a matter of law.

Cal.App. 2 Dist.,2010.
Aryeh v. Canon Business Solutions, Inc.
--- Cal.Rptr.3d ----, 2010 WL 2491415 (Cal.App. 2 Dist.), 10 Cal. Daily Op. Serv. 7998, 2010 Daily Journal D.A.R. 9423

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.