UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IN RE: LIGHT CIGARETTES           ) MDL DOCKET NO. 1-09-MD-2068
MARKETING SALES PRACTICES         )         ALL CASES
LITIGATION                        )

**ORDER ON PHILIP MORRIS USA, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR LACK OF CAUSATION**

In this multi-district litigation, Philip Morris USA, Inc. (PM) moves for summary judgment against six plaintiffs on the ground that because they continued to purchase light cigarettes after learning the truth about their health risks, as a matter of law, they cannot show that PM's misrepresentations caused them to buy light cigarettes.[1] The Court concludes that whether these plaintiffs relied on PM's misrepresentations is a factual question and denies PM's motion.

**I.    STATEMENT OF FACTS**

The Plaintiffs assert state consumer fraud and unjust enrichment claims, alleging that PM misrepresented to consumers that light cigarettes were less harmful than regular cigarettes. *Second Am. Good, Spellman, & Thibodeau Compl.* ¶¶ 1-2 (Docket # 91) (*Good Compl.*); *Corse Compl.*, 09-cv-638, Attach. 2 ¶ 16 (Docket # 1);[2] *Haubrich Compl.*, 10-cv-76, Attach. 2 ¶ 3 (Docket # 1); *Second Am. Tyrer Compl.* ¶¶ 1-3 (Docket # 132) (*Tyrer Compl.*).[3] To support their claims, the

---

[1] PM's motion is directed against the claims of Plaintiffs Stephanie Good, Lori Spellman, Allain Thibodeau, Carol Corse, Melanie Haubrich, and Miles Tyrer.
[2] The *Corse* and *Haubrich* Complaints do not appear as regular docket entries. Instead, they are docketed under their related case numbers and included in the MDL docket via the transfer order. *MDL Transfer Order* (Docket # 1).
[3] Ms. Good, Ms. Spellman, and Mr. Thibodeau sue for unjust enrichment and under the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A *et seq.* (MUTPA). *Good Compl.* ¶ 2. Ms. Corse sues for unjust enrichment in Tennessee. *Corse Compl.* ¶ 16. Ms. Haubrich sues for unjust enrichment in Pennsylvania. *Haubrich Compl.* ¶ 3. Mr. Tyrer sues under California's Unfair Competition Law,

Plaintiffs testified that they started smoking light cigarettes in reliance on PM's alleged misrepresentations. *PM's Statement of Material Facts* Attach. 1, *Good Dep. Tr.* 71:7-15, Attach. 2, *Thibodeau Dep. Tr.* 33:7-8, Attach. 3, *Spellman Dep. Tr.* 87:14-19, Attach. 4, *Tryer Dep. Tr.* 87:17-24, Attach. 5, *Haubrich Dep. Tr.* 117:23-118:6, Attach. 6, *Corse Dep. Tr.* 24:19-25:2 (Docket # 184).[4] The Plaintiffs also testified that they now know the health risks associated with smoking light cigarettes. *Good Dep. Tr.* 96:24-97:2; *Thibodeau Dep. Tr.* 14:18-15:1; *Spellman Dep. Tr.* 19:11-20:24; *Tyrer Dep. Tr.* 52:22-53:9; *Haubrich Dep. Tr.* 89:24-90:06; *Corse Dep. Tr.* 74:9-11. Despite their actual knowledge of the health risks of light cigarettes, each Plaintiff admitted that he or she continued to smoke light cigarettes up to the date of their depositions. *Good Dep. Tr.* 99:4-13; *Spellman Dep. Tr.* 21:15-18; *Thibodeau Dep. Tr.* 62:22-63:7; *Corse Dep. Tr.* 10:4-5; *Haubrich Dep. Tr.* 22:6-14; *Tyrer Dep. Tr.* 10:18-23. The Plaintiffs admit that they are currently addicted to nicotine. *Good Dep. Tr.* 78:7-8, 146:3-10; *Spellman Dep. Tr.* 145:2; *Thibodeau Dep.*

---

California Business and Professions Code, §§ 17200 *et seq.* (UCL), False Advertising Law, California Business and Professions Code, §§ 17500 *et seq.* (FAL), and Consumers Legal Remedies Act, Cal. Civil Code, §§ 1750 *et seq.* (CLRA). *Tyrer Compl.* ¶ 4.

[4] Ms. Good's testimony does not assert her reliance as clearly as the five other Plaintiffs. On examination by PM, Ms. Good testified that she thinks that by smoking Marlboro Lights she is at less of a risk of getting disease, *Good Dep. Tr.* 71:7-15, and that she thought Marlboro Lights were "healthier" than full flavor cigarettes when she began smoking. *Id.* 123:12-17. Later in her deposition, however, she admitted that before and after becoming involved in this suit, she thought all cigarettes were "equally unhealthy." *Id.* 73:13-74:1. On examination by her own counsel, Ms. Good stated that PM's branding of Marlboro Lights as lower in tar and nicotine was a "factor" in her decision to smoke light cigarettes. *Id.* 141:17-142:12. Although Ms. Good's testimony is somewhat conflicted, it is not directly contradictory and the Court does not distinguish Ms. Good's testimony from other Plaintiffs.

*Tr.* 62:22-63:1; *Corse Dep. Tr.* 16:20-21, 31:13-19; *Haubrich Dep. Tr.* 117:21-22; *Tyrer Dep. Tr.* 57:20-21.[5]

On March 29, 2010, PM moved for summary judgment against these six Plaintiffs. *PM's Mot. for Summ. J. on Pls.' Claims for Lack of Causation* (Docket # 183) (*PM's Mot.*). On May 3, 2010, the Plaintiffs responded. *Pls.' Resp. to PM's Mot. for Summ. J. on Pls.' Claims for Lack of Causation* (Docket # 206) (*Pls.' Resp.*). On June 17, 2010, PM replied to the Plaintiffs' response. *PM's Reply in Support of its Mot. for Summ. J.* (Docket # 219) (*PM's Reply*). The Court held oral argument on July 21, 2010.

## II. DISCUSSION

### A. The Parties' Positions

#### 1. PM

PM makes a three-part argument for why as a matter of law the Plaintiffs' continued purchases of light cigarettes preclude their claims. First, PM asserts that because causation is an element of the Plaintiffs' state causes of action, they must show they relied on PM's misrepresentations. *PM's Mot.* at 3-6 (summarizing how causation is an element of each state cause of action at issue). PM separately argues that Mr. Tyrer does not have standing to be a class representative because the California UCL and FAL require class representatives to show "actual reliance

---

[5] At oral argument, PM contested whether the Plaintiffs are in fact addicted to cigarettes. *Tr.* 30:6-20 (Docket # 231) (*Tr.*). The Plaintiffs testified that they are addicted and at summary judgment, the Court accepts their statements as true. *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006) (explaining that courts view the facts in the light most favorable to the non-movant on summary judgment).

3

on the allegedly deceptive or misleading statements." *Id.* at 5 (quoting *In re Tobacco II Cases*, 207 P.3d 20, 26 (Cal. 2009)).

Second, PM describes how courts recognize "that a plaintiff cannot establish the required causal link between the alleged misrepresentation or concealment and their injuries where they continued to purchase the product even after learning the 'truth.'" *Id.* at 7-9 (citing cases where courts found that continued use barred recovery). In a similar light cigarettes action, PM emphasizes how the Second Circuit found that the continued purchases of light cigarettes "indicated that the plaintiffs had other reasons to purchase light cigarettes independent of the alleged deception." *Id.* at 9 (citing *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 226 (2d Cir. 2008)).

Third, PM concludes that these principles preclude the Plaintiffs' claims because deposition testimony establishes that all six Plaintiffs "continued to choose to purchase and smoke light cigarettes after filing their lawsuits and after learning the 'truth' about light cigarettes." *PM's Mot.* at 9-11. Because the Plaintiffs "would have purchased light cigarettes even if there had been no alleged misrepresentations or concealment," PM concludes that each "plaintiff cannot show that he or she suffered injuries as a result of the alleged misconduct." *Id.* at 3.

Although acknowledging at oral argument that reliance is generally a question of fact, PM asserted that "on the record before the court" the issue is "ripe for summary judgment." *Oral Arg. Tr.* 26:24-27:3. Because it "put before the court evidence of an admission by conduct," PM asserts that "the plaintiff has to do more

4

than rest on its pleading" to avoid PM's motion for summary judgment. *Id*. 29:5-10. Instead, PM describes the statements by the Plaintiffs as "self-serving, conclusory testimony" that are "essentially no better than resting on the pleadings." *Id*. 29:9-11. Because the Plaintiffs' "admission by conduct . . . is absolutely unrebutted," PM contends that summary judgment is appropriate. *Id*. 39:13.

PM asserts that the Plaintiffs' alleged addiction to nicotine does not change this outcome. *PM's Reply* at 5. Because the Plaintiffs "seek[] recovery . . . based on their decision to purchase *a particular brand*—a light cigarette," PM argues that they cannot "invoke their alleged addiction to 'cigarettes in general, or the nicotine therein' to avoid the need to prove causation." *Id*. at 5-6 (quoting *Pls.' Resp*. at 3). PM proposes that the Plaintiffs' continued smoking of light cigarettes undermines their claims that "they were deceived by PM USA into buying light cigarettes in particular" because "they could switch to other brands" despite their addiction. *Id*.

Finally, PM distinguishes its causation argument from its separate voluntary payment doctrine affirmative defense. *Id*. at 1-2. Describing the voluntary payment doctrine as "barr[ing] recovery of payments voluntarily made with full knowledge of the facts," PM contends that the doctrine forecloses liability for those "purchases made by plaintiffs after they knew the alleged 'truth.'" *Id*. at 2 (quoting *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 38 (E.D.N.Y. 2008)). In contrast, PM emphasizes how failing to prove causation "bars plaintiffs' claims in their entirety." *Id*. at 2. Although both arguments focus on purchases made by the Plaintiffs after they learned the "truth," PM clarifies that its causation argument is

5

broader, precluding the Plaintiffs from claiming they relied on PM's misrepresentations even *before* learning the actual health risks of smoking light cigarettes. *Id.* at 2-3.

### 2. The Plaintiffs

The Plaintiffs respond that their continued purchases of light cigarettes do not bar their claims as a matter of law. The Plaintiffs contend that public policy considerations should prevent PM from benefiting from the Plaintiffs' addiction. *Pls.' Resp.* at 3-4 (citing cases where courts found public policy prevented a litigant from benefiting from a problem it created). Because PM "successfully addicted these Plaintiffs to cigarettes by lying about how healthy Light cigarettes are," the Plaintiffs assert that the Court cannot now let PM avoid liability "by virtue of the fact that Plaintiffs cannot stop smoking." *Id.* at 3. The Plaintiffs conclude that because no safer cigarette exists, it "is absurd" to require the Plaintiffs to switch brands to preserve their claims. *Id.* Rather, PM's continued-use defense, according to the Plaintiffs, is a veiled attempt to invoke the voluntary payment doctrine against its intended purpose of leveling "the playing field between litigants." *Id.* at 4-8 (citing cases not recognizing or restricting the doctrine to avoid violating its purpose). The Plaintiffs argue that not only do some of their states not recognize the defense, *id.* at 4, but also that their addiction prevents their continued use from violating the doctrine, which only "bars recovery of payments voluntarily made with full knowledge of the facts." *Id.* (quoting *Dupler*, 249 F.R.D. at 38). Because their

6

addiction makes them "dependent on Defendant's products," the Plaintiffs contend that their continued use is not voluntary. *Id*. at 6.

Furthermore, the Plaintiffs argue that PM is "wrong that the laws of the various states at issue require a showing of reliance and causation that would be negated by Plaintiffs' continued use of light cigarettes." *Id*. at 2. Instead, the Plaintiffs posit that because causation is not an element of unjust enrichment, the Plaintiffs need not show reliance to state a claim. *Id*. at 8-10 (citing unjust enrichment cases from Maine, Pennsylvania, and Tennessee). Although they concede that Mr. Tyrer must show reliance to establish standing to assert a California UCL claim, the Plaintiffs emphasize that he need not show that PM's alleged misrepresentations were the "sole *or even predominant or decisive factor* influencing his conduct." *Id*. at 10-11 (emphasis added by Plaintiffs) (quoting *In re Tobacco II Cases*, 207 P.3d at 39).[6]

Regardless of the elements of their different causes of action, the Plaintiffs conclude that the Plaintiffs' deposition testimony raises a question of fact as to whether they "began smoking Light cigarettes because of the misrepresentations." *Id*. at 12-13. At oral argument, the Plaintiffs stressed that the crux of the issue, whether the Plaintiffs' "reliance was reasonable," is a jury question. *Oral Arg. Tr*. 34:1-3. Moreover, the Plaintiffs contend that the addictive and harmful nature of nicotine and PM's extensive brand marketing adds to the factual nature of the question: a jury could conclude that the continued smoking of light cigarettes

---

[6] The Plaintiffs do not respond to PM's assertion that the Maine MUTPA implicitly requires a showing of reliance.

7

reflects little on the Plaintiffs' reliance because of their addiction, the lack of a safer nicotine product, and PM's extensive marketing efforts. *Id.* 34:3-16.[7]

B.     **Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008). "A dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'" *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992)). "A fact is material if it 'carries with it the potential to affect the outcome of the suit under the applicable law.'" *One Nat'l Bank v. Antonellis*, 80 F.3d 606, 608 (1st Cir. 1996) (quoting *Nereida-González v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993)). Although the Court draws "all reasonable inferences in favor of the nonmoving party, that party must respond to a properly supported motion with sufficient evidence to allow a reasonable jury to find in its favor 'with respect to each issue on which [it] has the burden of proof.'" *Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*, 405 F.3d 36, 39 (1st Cir. 2005) (alteration in original) (internal citation omitted) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)).

---

[7] Finally, if the Court should decide to grant the motion as to any one of the class representatives, the Plaintiffs ask the Court "that they be permitted to replace the proposed class representative within sixty days of the Court's order." *Pls.' Resp.* at 15. Because the Court denies the motion, the Court does not reach the issue of substitution.

8

## C. Reliance and the Continued Purchase of Light Cigarettes[8]

Once plaintiffs allege reliance, whether they actually relied is generally a question for the fact finder. *Alliance Mortgage Co. v. Rothwell*, 900 P.2d 601, 609 (Cal. 1995) (stating that reliance is a factual question); *Wildes v. Ocean Nat'l Bank of Kennebunk*, 498 A.2d 601, 602 (Me. 1985) (same); *Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 840 (Pa. Super. Ct. 2005) (same); *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996) (same).[9] Here, all the Plaintiffs testified that they relied on PM's alleged misrepresentations. *Corse Dep. Tr.* 24:19-25:2; *Spellman Dep. Tr.* 87:14-19; *Good Dep. Tr.* 141:17-142:12; *Thibodeau Dep. Tr.* 32:21-33:13; *Haubrich Dep. Tr.* 116:21-118:5; *Tyrer Dep. Tr.* 96:1-3. Accordingly, as PM conceded at oral argument, whether the Plaintiffs in fact relied normally would not be a matter for dispositive motion. *Tr.* 26:14-27:1 (agreeing that "the question is a fact question" for the Plaintiffs).

Despite this admission, PM insists that the record before the Court makes summary judgment appropriate as to these specific Plaintiffs. *Oral Arg. Tr.* 27:1-3. PM contends that "the record here is an admission by conduct that is absolutely unrebutted. The plaintiff did not come forward with any evidence other than self-

---

[8] Although PM framed its motion in relation to causation, the parties dispute the issue in relation to reliance. *See PM's Mot.* at 3; *Pls.' Resp.* at 2. The two terms are related: reliance is one way the Plaintiffs can prove causation. *See Restatement (Second) of Torts* § 546 (*Restatement*) (identifying reliance as one way of showing causation); *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639 (2008) (stating that reliance is a means of proving causation but is not itself an element of the cause of action). The Plaintiffs can survive summary judgment if causation is not an element of their pleaded causes of action, they identify another way of showing causation, or they raise a factual question as to whether they relied on PM's misrepresentations. Because the Court finds that whether the Plaintiffs relied on PM's misrepresentations is a factual issue, the Court does not reach whether causation is an element of the Plaintiffs' state causes of action.

[9] A federal court sitting in diversity applies state law to questions of substantive law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 79 (1938).

serving, conclusory testimony." *Id.* 39:9-15. PM's argument has two parts. First, by continuing to smoke light cigarettes after learning about the health risks, the Plaintiffs' actions raise the inference that they did not rely on PM's misrepresentations. *Id.* Second, because the Plaintiffs' deposition statements are "essentially no better than resting on the pleadings," the Plaintiffs have provided no evidence to rebut the inference raised by their continued purchases. *Id* 29:2-14. Put simply, PM contends that the Plaintiffs' actions speak louder than their words.

Taking these arguments in inverse order, the Court does not agree that the testimony in the Plaintiffs' depositions is so self-serving and conclusory that it should be disregarded for summary judgment purposes. Federal Rule of Civil Procedure 56(e) obligates a party to do more than "rely merely on allegations or denials in its own pleading[s]" to oppose a summary judgment motion. Fed. R. Civ. P. 56(e)(2). Testimony and affidavits that "merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge," are insufficient to meet this requirement. *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000); *see also Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir. 2000) (granting summary judgment because only evidence of discrimination was contained in affidavit that merely reiterated legal arguments). However, as long as specific factual information is included, self-serving testimony can defeat a summary judgment motion. *See, e.g., Velazquez-Garcia v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 18 (1st Cir. 2007) (denying summary judgment because self-serving deposition

testimony presented specific examples of alleged discrimination); *Santiago-Ramos*, 217 F.3d at 52 (denying summary judgment because plaintiff's self-serving affidavit "provides specific factual information based upon her personal knowledge"). Here, in their deposition testimony, the Plaintiffs provided their personal reasons for purchasing light cigarettes.[10] *See, e.g.*, Corse *Dep. Tr.* 24:19-25:2 (testifying that she started to smoke Marlboro Lights because the advertisements made her believe that "it's a healthier, lighter cigarette, less tar, less nicotine"). No more is required.

PM's "admission by conduct" argument fares no better. PM argues that when plaintiffs continue "to purchase the product with knowledge of the truth," courts carve out an exception to the general rule that reliance is a factual question. *PM's Mot.* at 7-9 (citing cases from a variety of jurisdictions). Applying this exception here, PM claims that the Plaintiffs' continued purchases of light cigarettes indicate that they "had other reasons to purchase light cigarettes independent of the alleged deception" that preclude them as a matter of law from proving causation. *Id.*

Although PM identifies cases that have precluded plaintiffs' claims based on continued use of a product, these cases are distinguishable. First, the majority addresses the issue in a different procedural context. Some found that the continued use by some plaintiffs defeats class certification. *McLaughlin*, 522 F.3d at 222-23 (reversing class certification order); *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76 (Tex. App. 2005) (same); *Gary Plastic Packaging Corp. v. Merrill Lynch,*

---

[10] Because the reason each Plaintiff started purchasing light cigarettes is uniquely within his or her personal knowledge, it is hard to understand what better evidence of this question the Plaintiffs could produce than their own testimony. If – as PM urges – the testimony of the Plaintiffs on this subject is wholly discounted, the law suits would fail because the Plaintiffs were not allowed to testify about themselves, a result which hardly seems justifiable.

11

*Pierce, Fenner, Smith, Inc.*, 119 F.R.D. 344 ( S.D.N.Y 1988) (same); *Solomon v. Bell Atl. Corp*, 777 N.Y.S.2d 50 (N.Y. App. Div. 2004) (same); *In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003) (same). In *McLaughlin*, for example, the Second Circuit denied class certification because the continued purchase of light cigarettes by some plaintiffs suggested "the influence of some other motivation," raising individual factual issues about causation. 522 F.3d at 226. Finding that reliance is too individual and fact-intensive a question for class certification cuts against granting PM's motion at summary judgment.

Others decided the issue at a later stage in the proceedings. *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 56-57 (Ill. 2005) (reversing verdict based on preemption but also questioning appropriateness of class certification order). In *Price*, a light cigarettes action brought by smokers in Illinois state court, Judge Karmeier stated that the plaintiffs "cannot be said to have sustained any actual damages as a result of the misrepresentations made by PM USA" when they continued to smoke light cigarettes after the litigation informed them of the truth. 848 N.E.2d at 56-57 (Karmeier, J., concurring). Not only is the case factually distinct because the majority decided the case on preemption grounds, but also Judge Karmeier was writing at the end of trial and basing his opinion on the plaintiffs' trial testimony. *Id.* At summary judgment, the Court may not assess the credibility of the Plaintiffs' claims and cannot resolve any inference that might be raised by the Plaintiffs' continued smoking. *See Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st

12

Cir. 1995) ("[n]o credibility assessment may be resolved in favor of the party seeking summary judgment").[11]

The only case to grant a similar motion, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007), involved a much different product. In *Prohias*, the Court found that the plaintiffs' continued purchase of the cholesterol drug Lipitor defeated their claim that they "did not get the 'benefit of their bargain.'" *Id.* In granting a motion to dismiss, the Court stated that because the plaintiffs were still paying for the drug even though they learned the truth, "[it] must conclude that these plaintiffs purchased Lipitor for its cholesterol-reduction benefits or other health benefits, which they have received and continue to receive." *Id.* It is unclear from the opinion whether the Court found that the plaintiffs' continued purchases necessarily precluded their claims or whether the Court was identifying the plaintiffs' failure to allege a plausible explanation for their continued purchases.

Regardless whether the plaintiffs in *Prohias* could not or did not allege a plausible reason for their continued purchases, the six Plaintiffs in this case have: they assert that they have continued to purchase light cigarettes because they are

---

[11] The other cases cited by PM are even more inapplicable. Many deal with a formulation of the voluntary payment doctrine. *See, e.g., Solomon*, 777 N.Y.S.2d at 56; *Gen. Motors Corp.*, 179 S.W.3d at 83; *Whalen v. Pfizer, Inc.*, No. 600125/05, 2005 WL 2875291, at *4 (N.Y. Sup. Ct. Sept. 22, 2005). However, PM itself acknowledged that the doctrine is irrelevant to this motion. *PM's Reply* at 1-2.

PM cites two other cases, *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*, 51 Cal. Rptr. 3d 144 (Cal. Ct. App. 2006) and *Linda Coal & Supply Co. v. Tasa Coal Co.*, 204 A.2d 451 (Pa. 1964), that deal with waiver. Not only is waiver generally a question of fact but it is also predicated on a renegotiated contract with more favorable terms. *See Oakland Raiders*, 51 Cal. Rptr. 3d at 151-52; *Linda Coal*, 204 A.2d at 453-54. Here, the Plaintiffs received the same product for the same price, and there is no suggestion they could have negotiated with PM about terms.

In a final case, *Heindel v. Pfizer*, 381 F. Supp. 2d 364, 379-81 (D.N.J. 2004), the district court described how the plaintiffs admitted at length that they had benefited from a particular medication. The Court found that the one remaining injury—that the price was inflated because of the misrepresentations—could not be proven with a "fraud on the market" theory because the market was not efficient. *Id.* at 380.

addicted to them. *See, e.g., Haubrich Dep. Tr.* 117:21-22. Such testimony prevents the Court from concluding that as a matter of law the Plaintiffs received the benefit of their bargain.

PM responds that because the Plaintiffs could have switched to other brands of cigarettes, their continued smoking of light cigarettes suggests non-health related reasons for their purchases. *PM's Reply* at 6-7. However, as PM conceded at oral argument, reliance on the misrepresentations need only be a "substantial factor," not the only factor. *See In re Tobacco II Cases*, 207 P.3d at 39; *Tr.* 110:1-8 (conceding that PM is not "debating the substantial cause, contributing cause requirement").[12] As long as the Plaintiffs allege causation and a plausible reason for their continued smoking, the substantial nature of their claim remains a question of fact. Furthermore, although PM is correct that smokers are addicted to nicotine and not to a brand, PM's argument is undermined by the lack of a safer nicotine product. If such a product existed, the fact the Plaintiffs are addicted to nicotine might not distinguish light cigarettes from Lipitor. Because no safe alternative exists that satisfies their craving for nicotine, the Plaintiffs' continued smoking of light cigarettes is less significant than the continued use of other

---

[12] The Court is unsure if the district judge in *Prohias* applied this standard. In *Prohias*, the Court's sole discussion of the standard occurred in a discussion it held with the plaintiffs' counsel in which the attorney agreed with the Court that if a person took Lipitor "*only* for the purpose of reducing cholesterol," the person could not recover damages. 485 F. Supp. 2d at 1335 (emphasis added). However, the Court later appeared to adopt a stricter standard: because their continued use meant that the plaintiffs received cholesterol benefits, their purchases before they learned of the health effects could not have also been based on believing the misrepresentations. Regardless whether the Court applied a different standard or the plaintiffs failed to allege that their belief in the misrepresentations was a "substantial" reason for their purchases, the plaintiffs here have.

14

products. *See, e.g.*, *Corse Dep. Tr.* 75:16-76:5 (testifying she is addicted to cigarettes and does not switch brands because there is no healthier option).

Whether the Plaintiffs' continued purchases of light cigarettes will undermine their ability at trial to prove reliance on PM's alleged misrepresentations is a question of fact. *See Benedict v. Altria Group, Inc.*, 241 F.R.D. 668, 682-83 (D. Kan. 2007) (denying summary judgment because plaintiff asserted that she started smoking Marlboro Lights based on misrepresentations about health benefits, even though she continued to smoke Marlboro Lights).[13]

## III. CONCLUSION

The Court DENIES Philip Morris USA, Inc.'s Motion for Summary Judgment on Plaintiffs' Claims for Lack of Causation (Docket # 183).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 16th day of September, 2010

---

[13] Although addressed separately by the parties, whether Mr. Tyrer has standing is a factual question for the same reasons that causation is a question of fact. Although the UCL and FAL require class representatives to show reliance, the standard is no different than the reliance needed to prove causation. *See In re Tobacco II Cases*, 207 P.3d at 39 (citation omitted) (stating that a defendant's misrepresentations need not be the "sole or even the predominant or decisive factor" in the decision to purchase a product as long as they were a "substantial part" of the decision).

15