UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IN RE: LIGHT CIGARETTES   )
MARKETING SALES PRACTICES  )  1:09-md-02068-JAW
LITIGATION         )

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

Because the Plaintiffs' Second Amended Class Action Complaint relates back to their original complaints, which were filed before the passage of the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005) (CAFA), the Court concludes that CAFA does not apply and grants Plaintiffs' Motion to Remand (Docket # 245) (*Pls.' Mot.*).

## I. STATEMENT OF FACTS

### A. Procedural History[1]

On April 18, 2003, Loretta Lawson filed a complaint in Circuit Court, Pulaski County, Arkansas against Philip Morris Companies, Inc. and Philip Morris Incorporated. *Pls.' Mot.* Attach 4 (Docket # 245) (*Compl.*). Just over one month later, Ms. Lawson filed her First Amended Class Action Complaint, adding Lisa Watson as a named plaintiff. *Pls.' Mot.* Attach 5 (Docket # 245) (*First. Am. Class Action Compl.*). Ms. Lawson and Ms. Watson filed the First Amended Class Action Complaint "on behalf of themselves and all other similarly situated." *Id.* at 1. On July 2, 2003, the Defendants removed the case to federal court. *Pls.' Mot.* Attach 6 (Docket # 245) (*First Notice of Removal*). On August 1, 2003, the Plaintiffs moved to

---

[1] The Court does not have access to the state court record. Since the Defendants do not object to the Plaintiffs' characterization of the procedural history or provide their own, the Court reconstructs the procedural history based on the Plaintiffs' description and the available documents.

remand the case back to state court. *Pls.' Mot.* Attach 7 (Docket # 245) (*First Mot. for Remand*). For the next several years, the parties litigated this jurisdictional dispute in federal court. *See Pls.' Revised Mem. in Support of Remand to State Court* at 3-4 (Docket # 247) (*Pls.' Revised Mem.*) (detailing the jurisdictional litigation). The underlying action was delayed or stayed until December 15, 2008. *Id.* at 4.

On April 15, 2010, Plaintiff Watson filed a Second Amended Class Action Complaint in Pulaski County Circuit Court, adding Wayne Miner and James Easley as parties.[2] On May 13, 2010, the Defendants filed their Second Notice of Removal. *See Pls.' Revised Mem.* at 5. On October 18, 2010, the United States Judicial Panel on Multidistrict Litigation transferred the action to the District of Maine for inclusion in MDL No. 2068. *MDL Transfer Order* (Docket # 244). The Order advised the Plaintiffs that they could "present their remand motion to the transferee judge." *Id.* That same day, the Plaintiffs filed their Motion to Remand, *Pls.' Mot.*, and the Defendants filed their Response in Opposition to the Motion to Remand. *Defs.' Resp. in Opp'n to Mot to Remand* (Docket # 246) (*Defs.' Opp'n.*). On October 27, 2010, the Plaintiffs filed a Revised Memorandum. *Pls.' Revised Mem.* On November 3, 2010, the Defendants filed a response. *Defs.' Resp. in Opp'n. to Pls.' Revised Mem.* (Docket # 249).

### B. The Parties' Positions

#### 1. The Plaintiffs

---

[2] Plaintiffs assert that on December 29, 2004, Wayne Miner filed a "virtually identical class action lawsuit" to Ms. Watson's. *Pls. Revised Mem.* at 4. There is no suggestion that James Easley had previously been involved in any similar litigation.

The Plaintiffs argue that CAFA, the sole ground upon which the Defendants base removal, does not apply. Citing CAFA, the Plaintiffs assert that it applies only to civil actions commenced on or after CAFA's enactment on February 18, 2005. *Pls.' Revised Mem.* at 1. They note that when they filed their Second Amended Class Action Complaint, they did not add a class representative to an already existing class action nor did they name a defendant they failed to previously serve. Accordingly, they contend that, in filing their Second Amended Class Action Complaint, they did not commence a new action.

### a. Addition of New Plaintiffs

The Plaintiffs cite several cases to support their assertion that the addition of class representatives does not commence a new action. They rely most heavily on *Plubell v. Merck & Co.*, 434 F.3d 1070 (8th Cir. 2006). *Pls.' Revised Mem.* at 6. They argue that *Plubell* is directly on point because it decided whether an amended complaint that replaced a previous class representative with a new one commenced a new action for purposes of CAFA. They read *Plubell* as holding that an amended complaint only commences a new action if it does not relate back to a previous complaint. Plaintiffs urge this Court to follow *Plubell*'s analysis by determining whether their Second Amended Class Action Complaint relates back to the Complaints filed before February 18, 2005. Additionally invoking the Seventh Circuit case of *Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006), the Plaintiffs argue that *Plubell* and *Phillips* establish that the substitution of a named plaintiff in a class action "'is a common and normally an unexceptional . . . feature

of class action litigation' that relates back to the original pleading." *Pls.' Revised Mem.* at 7 (quoting *Phillips*, 435 F.3d at 787-88).

Plaintiffs further argue that the Second Amended Class Action Complaint relates back under Arkansas law. They assert that, under Arkansas law, "a plaintiff's 'amended complaint relates back to his original complaint if the claims asserted in [the] amended complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in his original complaint.'" *Pls.' Revised Mem.* at 7 (alteration in original) (quoting *Whitehead v. The Nautilus Group, Inc.*, 428 F. Supp. 2d 923, 928 (W.D. Ark. 2006)). The Plaintiffs argue that this standard is met because "the allegations in Plaintiffs' Second Amended Class Action Complaint do not change the substance of Plaintiffs' claims whatsoever," but merely add class representatives "who were already members of the putative class." *Id.*

The Plaintiffs distinguish the Arkansas cases relied upon by the Defendants. Acknowledging that the Defendants cite cases in which the Arkansas Supreme Court held that amendments adding plaintiffs did not relate back, the Plaintiffs argue that those cases are distinguishable because, in each case, the plaintiff who filed the original complaint lacked standing. *Id.* at 8 (citing *Bibbs v. Cmty Bank of Benton*, 289, S.W.3d 393 (Ark. 2008), and *Bryant v. Hendrix*, 289 S.W.3d 402 (Ark. 2008)). In contrast, Plaintiffs argue that Lisa Watson was a proper plaintiff with standing when the original complaints were filed and remains so today. *Id.* Therefore, Plaintiffs contend that *Bibbs* and *Bryant* do not apply.

Finally, Plaintiffs cite extensively to other federal cases, which they argue hold that the addition of a class representative does not commence a new action. *Id.* at 9-13.

### b. Service of Altria Group, Inc.

The Plaintiffs next address the Defendants' contention that the Second Amended Class Action Complaint commenced a new action because it named Altria Group, Inc. (Altria) as a defendant without previously serving Altria or its predecessor corporation. *Id.* at 14. The Plaintiffs argue they served Altria's predecessor, Philip Morris Companies, Inc. on June 3, 2003. *Id.* They cite an Affidavit of Service on Philip Morris Companies, Inc. and Philip Morris Incorporated (now PM USA) in which the affiant states that "Philip Morris Companies, Inc. and Philip Morris Incorporated were properly served according to Rule 4 of the Arkansas Rules of Civil Procedure." *Id.; Pls.' Revised Mem* Attach 1 ¶ 3 (*Aff. of Service*). They assert that the Second Amended Class Action Complaint named exactly the same defendants as the earlier complaints and merely described Altria as the successor corporation to Philip Morris Companies, Inc. *Pls. Revised. Mem.* at 14.

The Plaintiffs argue that even if Philip Morris Companies, Inc. was never served, it has waived the defense of defective service. *Id.* Citing Arkansas Rule of Civil Procedure 12(h)(1), the Plaintiffs contend that Philip Morris waived the defense because it "has lingered in the trial without drawing its concerns about service to the attention of the court." *Id.* at 15. The Plaintiffs argue that such concerns should have been raised "promptly and diligently." *Id.* (quoting *Pender v.*

*McKee*, 582 S.W.2d 929, 937-38 (Ark. 1979)). The Plaintiffs point out that the Defendants' trial documents referred to Defendants in the plural; thus suggesting both PM USA and Altria were participating in the litigation. *Id.* at 14. The Plaintiffs accuse the Defendants of failing to raise this defense earlier "precisely so that [they] could remove immediately upon the filing of an amended complaint." *Id.* at 16.

Finally, the Plaintiffs contend that the Second Amended Class Action Complaint could not have commenced a new action with respect to Altria because Altria was not served with the Second Amended Class Action Complaint. *Id.* On this point, the Plaintiffs seek to exploit the Defendants' own logic by arguing that, in Arkansas, "failure to comply with the service requirements of Rule 4(i) results in failure to commence the action." *Id.* (quoting *McCoy v. Montgomery*, 259 S.W.3d 430, 434 (Ark. 2007)). Plaintiffs argue that, because they did not comply with Rule 4(i) by serving Altria within 120 days of filing the Second Amended Class Action Complaint, no new action commenced against Altria. *Id.* (citing ARK. R. CIV. P. 4(i)). The Plaintiffs seek fees and costs incident to remand under 28 U.S.C. § 1447(c) because they contend that the Defendants "lacked any objectively reasonable basis for removal." *Id.* at 17 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

## 2. The Defendants

The Defendants argue that federal courts have jurisdiction because CAFA applies. They contend that CAFA applies because the Second Amended Class

Action Complaint commenced a new action against the Defendants after the effective date of CAFA, which allows "removal of an action originally filed before CAFA's effective date." *Defs.' Opp'n.* at 1. They argue that the Second Amended Class Action Complaint commenced a new action for two reasons: first, because it named two new plaintiffs; and second, because it named a defendant that had not previously been served. *Id.* at 1-2.

### a. Addition of New Plaintiffs

The Defendants argue that the federal cases cited by the Plaintiffs for the proposition that amendments adding new plaintiffs relate back for purposes of CAFA are inapposite. Whereas those cases applied federal and various states' relation back doctrines, the Defendants contend that only Arkansas relation back doctrine is relevant. *Id.* at 3. They assert that "[s]tate law determines when a suit is commenced in state court." *Id.* (alteration in original) (quoting *Plubell*, 434 F.3d at 1071). The Defendants point out that the Sixth Circuit, applying Michigan's relation back doctrine, found that, in contrast to other states, Michigan's "relation back doctrine does not extend to the addition of new parties." *Id.* at 4 (quoting *Hall v. State Far. Mut. Auto Ins. Co.*, 215 F. App'x 423, 427 (6th Cir. 2007)).

The Defendants argue that "the Arkansas Supreme Court made clear that its relation-back law is like that of Michigan: the addition of plaintiffs does *not* relate back." *Id.* (citing *Bryant*, 289 S.W.3d 402). They contend that, contrary to the Plaintiffs' assertion, the *Bryant* court did not base its holding on the original plaintiff's lack of standing. They argue that instead, *Bryant* broadly held that

Arkansas relation back principles "do *not* apply to additions or changes to *plaintiffs*." *Id.* They further contend that the *Bryant* holding does not distinguish between "substituting and adding plaintiffs" "but rather 'decline[d]' to apply Rule 15's relation-back principles 'to allow *amendments or changes* to plaintiffs.'" *Id.* at 5 (emphasis added by Defendants) (quoting *Bryant*, 289 S.W.3d at 405))

The Defendants then distinguish Arkansas federal district court cases cited by the Plaintiffs that allowed relation back. They argue that *Whitehead v. The Nautilus Group, Inc.*, 428 F. Supp.3d 923 (W.D. Ark. 2006), is not on point because it dealt with an amended complaint that "added factual allegations and bases for recovery," not new plaintiffs. *Defs.' Opp'n.* at 7. Furthermore, they assert that the three other Arkansas cases cited by the Plaintiffs are no longer good law. *Id.* The Defendants observe that each of those cases was decided before *Plubell* and held that an amended complaint can never commence a new action. *Id.* The Defendants argue that *Plubell* overruled those broad holdings when it held that "an amendment commences a new action where it would not relate back under the applicable state law" *Id.*

### b.   Service of Altria

The Defendants argue that the Plaintiffs commenced a new action against Altria in the Second Amended Class Action Complaint by naming it as a defendant. *Id.* at 8. The Defendants contend that Arkansas law requires both the filing and service of a complaint to validly commence an action. *Id.* at 9. They argue that "[w]here an action is commenced as to a defendant for purposes of the relevant state

law after the effective date of CAFA, that action is properly removed to federal court, even if the action commenced as to other defendants prior to the effective date of CAFA." *Id.*

The Defendants contend that the "Plaintiffs' argument that they formally served Altria [in 2003] is demonstrably wrong." *Id.* The Defendants note that they stated in their First Notice of Removal on July 2, 2003 that "[t]he only other named Defendant, Philip Morris Companies, Inc. (now known as 'Altria Group, Inc.'), has not been served with the complaint." *Id.* (citing *First Notice of Removal* ¶ 1). They argue that the Plaintiffs admitted as much in their First Motion for Remand.[3] Furthermore, the Defendants point out that the Arkansas Secretary of State certified that CT Corporation—the registered agent to whom the Plaintiffs served the complaint in 2003—has never been the registered agent for Altria and that Altria has never had a registered agent in Arkansas. *Id.* at 10 (citing *Defs.' Resp. in Opp'n to Mot to Remand* Attach 4). Moreover, they argue that, even if CT Corporation was authorized to receive process on behalf of Altria, the affidavit of Vice President and Representation Services Advisor at CT Corporation demonstrates that CT Corporation never received service of a summons directed to Altria. *Id.* at 11 (citing *Defs.' Resp. in Opp'n to Mot to Remand* Attach 5 (*Declaration of Kenneth J. UVA*)). Defendants further provide the affidavit of Sallie Leys, Litigation Support Manager at Altria Client Services, Inc. (ALCS), which they contend "demonstrates that Altria has no record of Altria being served in this case."

---

[3] The Court is unable to verify this claim because the Defendants did not attach this document and it is not in the MDL record.

*Id.* at 11-12 (citing *Defs.' Resp. in Opp'n to Mot to Remand* Attach 6 (*Declaration of Sallie A. Leys*)).

The Defendants also deny that Altria waived service. *Id.* at 12. Emphasizing that PM USA and Altria are distinct entities, the Defendants acknowledge that PM USA was served and argue that "it is the only defendant participating in this litigation." *Id.* The Defendants argue that one defendant is not required to raise objections on behalf of the other. *Id.* Likewise, they argue that "Altria had no obligation to come into court for the sole purpose of complaining that it was not served." *Id.* at 13 (citing *Posey v. St. Bernard's Healthcare, Inc.*, 226 S.W.3d 757, 765 (Ark. 2006)). They deny that Altria had any participation in the litigation prior to the filing of the Second Amended Class Action Complaint, and assert that any prior references to Defendants in the plural in their filings are typographical errors. *Id.* n.13.

Finally, the Defendants respond to the Plaintiffs' argument that, because the Plaintiffs did not serve Altria in compliance with 4(i), the Second Amended Class Action Complaint could not have commenced a new action against Altria. The Defendants argue that the Court must look at whether federal jurisdiction existed at the time their Second Notice of Removal was filed. *Defs.' Resp. in Opp'n. to Pls.' Revised Mem.* at 1 (citing *Mass. v. V & M Mgmt., Inc.*, 929 F.2d 830, 834 (1st Cir. 1991). They posit that once jurisdiction exists, subsequent events cannot destroy that jurisdiction. *Id.* at 2. The Defendants cite *Dinkel v. General Motors Corp.*, 400 F. Supp. 2d 289 (D. Me. 2005) as authoritative. *Id.* at 3. There, they argue, "several

defendants in a multi-defendant action removed a putative class action to federal court on the grounds that they had not been served until after the effective date of CAFA" in a state where an action commenced upon service. *Id.* (citing *Dinkel*, 400 F. Supp. 2d at 291). They explain that in *Dinkel*, the plaintiff sought remand after voluntarily dismissing those defendants, leaving only the defendants served prior to CAFA's effective date. *Id.* The Defendants argue that the trial court held that the case was properly removed because the dismissal of defendants could not oust the federal court of jurisdiction; "[i]t is the 'action' that is removable, not claims against particular defendants." *Id.* at 4 (quoting *Dinkel*, 400 F. Supp. 2d at 294). The Defendants contend that in Arkansas, unlike Kansas, "an action is commenced not upon service, but 'by filing a complaint with the clerk of the court.'" *Id.* (quoting ARK. R. CIV. P. 3(a)). The Defendants reason that the Plaintiffs commenced an action against Altria by naming Altria in the Second Amended Class Action Complaint, thus providing Altria a basis to remove under CAFA. *Id.* The Plaintiffs' later failure to serve Altria, Defendants argue, is immaterial. *Id.*

## II.    DISCUSSION

The Defendants' sole basis for removal is that CAFA provides federal jurisdiction. The parties do not dispute that CAFA's plain language provides that CAFA only applies to civil actions commenced on or after CAFA's effective date of February 18, 2005. Pub. L. No. 109-2 § 9 (2005). *Id.* To determine whether removal was proper, the Court must determine when this action commenced for purposes of CAFA.

The First Circuit uses the law of the state of the initial filing to determine when an action commences for purposes of CAFA. *Natale v. Pfizer, Inc.,* 424 F.3d 43, 44 (1st Cir. 2005); *accord Plubell v. Merck & Co., Inc.,* 434 F.3d 1070, 1071 (8th Cir. 2006); *Pfizer, Inc. v. Lott*, 417 F.3d 725, 726 (7th Cir. 2005). Since the Plaintiffs' filed their complaints in Arkansas, the Court applies Arkansas law.

The "burden of showing federal jurisdiction is on the defendant removing under CAFA." *Amoche v. Guarantee Trust Life Ins. Co.* 556 F.3d 41, 48 (1st Cir. 2009). At this early stage, the removing defendant must demonstrate a "reasonable probability" that removal is proper. *Id.* at 50. This standard is similar to the "preponderance of the evidence" standard. *Id.* Therefore, while the Court does not view all of the facts in the light most favorable to the Plaintiffs, *see Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 294 n.9 (D. Mass. 2009), a factual dispute with evidence evenly balanced on either side must be resolved in favor of the Plaintiffs.

## A. Did Adding Class Representatives in the Second Amended Class Action Complaint Commence A New Action?

The Arkansas Supreme Court has held that an action is commenced by filing a complaint and completing service upon a defendant in accordance with Rules 3 and 4(i) of the Arkansas Rules of Civil Procedure. *Green v. Wiggins,* 803 S.W.2d 536, 538 (Ark. 1991). Although commencement is subject to the completion of service, the date of commencement is based on the date the complaint is filed. *Id.* There were four complaints filed relating to this action: Ms. Lawson's original Complaint on April 18, 2003; her First Amended Class Action Complaint, adding

Ms. Watson just over one month later; Mr. Miner's original Complaint on December 29, 2004; and the Second Amended Class Action Complaint, which added Wayne Miner and James Easley to Ms. Watson's action on October 18, 2010. Only the Second Amended Class Action Complaint was filed after CAFA's effective date. The question becomes whether the Second Amended Class Action Complaint commenced a new action or continued the original one.

Arkansas relation back doctrine answers the question. *See Plubell,* 434 F.3d at 1071-72 (applying Missouri relation back doctrine to determine whether an amended complaint filed in Missouri state court after the enactment of CAFA commenced a new action); *Phillips v. Ford Motor Co.*, 435 F.3d 785, 788-89 (7th Cir. 2006) (applying Illinois relation back doctrine to determine whether an amended complaint that added plaintiffs to a class action commenced a new action); *Moniz v. Bayer A.G.*, 447 F. Supp. 2d 31, 35 (D. Mass. 2006) (observing that "[a]lmost every court that has reviewed cases similar to the one at bar has applied relation-back analysis in the context of CAFA commencement issues").

Proper application of Arkansas relation-back doctrine is the heart of the parties' dispute. The parties do not cite, nor could the Court find, a case applying Arkansas relation-back doctrine to a situation in which an amended complaint added named plaintiffs to a class action. Nevertheless, the Arkansas Supreme Court's analysis of Arkansas relation back doctrine convinces the Court that— consistent with interpretations of similarly-worded relation back doctrines by other

courts—an amended complaint that merely adds plaintiffs to a class action relates back to the original complaint.

Arkansas relation back rule is expressed in Arkansas Rule of Civil Procedure 15(c):

> An amendment of a pleading relates back to the date of the original pleading when:
>
> (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (2) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (1) is satisfied and, within the period provided by Rule 4(i) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

ARK. R. CIV. P. 15(c). Like the Missouri and Illinois rules in *Plubell* and *Phillips*, Arkansas Rule 15(c) closely tracks the language of Federal Rule of Civil Procedure 15(c). *Compare id.*, *with* FED. R. CIV. P. 15(c). Indeed, the Arkansas Supreme Court has acknowledged that the Arkansas Rules of Civil Procedure are so similar to the Federal Rules that it accords "the interpretation of [the federal] rules by federal courts . . . significant precedential value" to the interpretation of its own rules. *Smith v. Washington*, 10 S.W.3d 877, 880 (Ark. 2000).

Nevertheless, as the Defendants correctly point out, the Arkansas Supreme Court does not necessarily follow federal precedent in applying its relation back doctrine. *See, e.g.*, *Bryant v. Hendrix*, 289 S.W.3d 402, 406 (Ark. 2008). The

Defendants rely on *Bryant* to argue that Arkansas relation back doctrine is less permissive than federal and other state rules. In *Bryant*, the plaintiffs filed suit individually, alleging trespass and encroachment against an adjoining landowner. *Id.* at 403. The trial court granted summary judgment to the defendant on the grounds that the plaintiffs were not the proper parties in interest because the land they claimed to own was actually owned by a family trust. *Id.* at 404. The trial court further stated that the statute of limitations had run on all claims because, even though plaintiffs had filed an amended complaint naming the family trust as plaintiff, relation back did not apply to the substitution of the family trust for the original plaintiffs. *Id.* Affirming the trial court's order, the Arkansas Supreme Court declined to extend the mistaken-defendant provision of Rule 15(c)(2)(B) to amendments or changes to plaintiffs. *Id.* at 405. That provision allows an amended complaint "chang[ing] the party or the naming of the party against whom a claim is asserted" to relate back if the party added by amendment "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." *Id.* (citing Ark. R. Civ. P. 15(c)(2)). In its reasoning, the *Bryant* Court cited a number of cases that held relation back did not apply when an amended complaint substituted a proper plaintiff for an original plaintiff who was either non-existent or lacked standing. *Bryant*, 289 S.W.3d at 405-06.

The other authority the Defendants cite for the proposition that amendments adding plaintiffs do not relate back similarly focus on amendments to invalid

complaints. For example, in *Dachs v. Hendrix*, 2009 Ark. 542, 2009 WL 5449216, the Arkansas Supreme Court held that a proper plaintiff's time-barred survival and wrongful death claim could not relate back to a previous complaint filed by a plaintiff who lacked standing to assert survival and wrongful death claims. The Defendants interpret this holding more broadly, citing it for the assertion that "relation back principles . . . do *not* apply to additions or changes to *plaintiffs*. *Def.'s Opp'n.* at 4-5. However, like *Bryant* the holding in *Dachs* cannot be divorced from the underlying fact that the original complaint was filed by plaintiffs without standing. The *Dachs* Court noted:

> in the specific context of claims for wrongful death and survival, this court has held that an original complaint that asserts wrongful-death and survival claims and is filed by a party without standing is a nullity and provides nothing to which an amended complaint could relate back. . . . [A]n amended complaint that substitutes the original plaintiffs and replaces them with entirely new plaintiffs does not constitute an amendment to the original complaint but rather is the filing of a new lawsuit.

*Dachs*, 2009 WL 5449216, at *9.

*Bibbs v. Cmty. Bank of Benton*, 375 Ark. 150, 289 S.W.3d 393 (Ark. 2008), was decided on similar grounds as *Bryant* and *Dachs*. There, the original plaintiffs were company shareholders who lacked standing. *Id.* at 157-161. The Arkansas Supreme Court held that, because the original plaintiffs lacked standing, their initial complaint was a nullity. *Id.* at 161. The original plaintiffs tried to remedy this defect by filing an amended complaint, joining the proper plaintiffs. However, the *Bibbs* Court held that, "for the relation-back doctrine to apply there must be valid pleadings to amend." *Id.* Because the original complaint was a nullity, "there

16

was not a valid original complaint to amend and, thus, nothing to which the amended complaint could relate back." *Id.*

The facts here are highly distinguishable from *Bryant*, *Dachs*, and *Bibbs*. There is no allegation in this case that the plaintiffs who filed the pre-CAFA complaints lacked standing. Furthermore, the Second Amended Class Action Complaint does not replace the original plaintiffs with entirely new plaintiffs, but merely joins additional plaintiffs. A different analysis is needed.

The relation back analysis here is not governed by Arkansas Rule 15(c)(2). That provision expressly deals with amending the name of a party against whom a claim is asserted after mistaking that party's identity in the original complaint. Presumably, the *Bryant* Court relied on the 15(c)(2) analysis because the plaintiffs argued that the mistaken identification of plaintiffs in the original complaint was analogous to a mistaken identification of defendants in an original complaint. Here, in contrast, the Second Amended Class Action Complaint does not correct a mistaken identification of plaintiffs in the original complaint; it merely joins two plaintiffs in the interest of judicial efficiency. Therefore, an analysis under 15(c)(2) would be inconsistent with both the plain language of the rule and *Bryant*. Instead, since 15(c) provides for relation back under either 15(c)(1) *or* 15(c)(2), an analysis under 15(c)(1) alone is appropriate.

Rule 15(c)(1) provides that an amendment of a pleading relates back when "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original

pleading." Ark. R. Civ. P. 15(c)(1). The Court of Appeals of Arkansas analyzed this provision in the context of a substituted plaintiff in *Looney v. Raby*, 268 S.W.3d 345 (2007). In that case, a judgment creditor's assignee moved to amend a writ of execution to substitute herself as the real party in interest. *Id.* at 347. Finding her substitution related back to the original writ, the *Looney* court noted that "[a]t the time [the assignee] moved to substitute herself as the real party in interest, she did not change the nature of her claim; she was pursuing execution of the same judgment that was the subject of the [original] writ." *Id.* at 349. Therefore, the *Looney* Court reasoned that "her efforts . . . arose out of the same 'conduct, transaction, or occurrence' that existed when the original writ of execution was issued," so her amended complaint related back to the original.[4] *Id.*

Looney appears to be the most analogous Arkansas authority to the facts here, and federal courts facing similar facts have applied relation back provisions in a manner consistent with *Looney*. For example, the Seventh Circuit in *Phillips* applied an Illinois relation back rule, which was nearly identical to the language in both the federal and the Arkansas rules. The Illinois rule stated that "an amendment relates back when it arises out of the 'same transaction or occurrence set up in the original pleading.'" *Phillips*, 435 F.3d at 788 (quoting 735 ILCS 5/2-616(b)). There, like here, the original complaints were filed before the effective date of CAFA, but the amendments, which added plaintiffs to the class

---

[4] The *Looney* Court also noted that "Rule 15(c)(2) contains a provision concerning relation back when the names of parties are changed, but that provision applies to a change in the name of a party *against* whom a claim is asserted." *Looney*, 100 Ark. App. at 349 n.3. *Looney*, therefore, did not apply that provision. This is consistent with the Court's conclusion that application of 15(c)(2) is not appropriate in this case.

action, were filed after. *Id.* at 786. The *Phillips* Court held that remand was required because the addition of plaintiffs did not commence a new suit under Illinois law. *Id.* at 788.[5] Although Illinois had a provision similar to Arkansas Rule 15(c)(2), *Phillips* did not apply that provision. *See* 735 ILCS 5/2 616(d).

In 1998, a United States District Court in Arkansas applied Federal Rule 15(c)(1)(B)[6]—the federal analogue to Arkansas Rule 15(c)(1)—to similar facts. *See Carson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. Civ. 97-5147, 1998 WL 34076402 (W.D. Ark. March 30, 1998). The *Carson* Court expressly refused to apply the federal analogue to Arkansas Rule 15(c)(2) to an amended complaint

---

[5] While *Phillips* is not controlling here, its comments regarding the importance of relation back in class actions are instructive:

> Relation back to add named plaintiffs in a class action suit is of particular importance because of the interests of the unnamed members of the class. Suppose Mr. X files a class action and after the statute of limitations has run the defendant settles with X. If a named plaintiff cannot be substituted for X with relation back to the date of the filing of the original complaint, the class will be barred from relief.

*Id. Phillips* further noted that both its analysis of Illinois law and the underlying policies are consistent with federal law. It cites *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), which states that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. The Supreme Court further held that "[n]ot until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case." *Id.* at 552. The Supreme Court later clarified that this protection applies not only to intervenors in a case, but to all putative class members. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 351-54 (1983). The *Crown* Court further noted that, upon commencement of a class action, "[t]he defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise . . . ." *Id.* at 353.

This Court notes that the policies underlying those holdings are consistent with those relating to the time of commencement for CAFA purposes. Philip Morris was on notice that it would have to defend this class action as soon as the First Amended Class Action Complaint was filed in May, 2003 – over a year and a half before CAFA went into effect. Since that Complaint was filed "individually and on behalf of all others similarly situated," Philip Morris should have known that others would be in the class. Therefore, naming of new class members does not prejudice its defense.

[6] The *Carson* Court refers to this rule as Rule 15(c)(2). This discrepancy reflects a change in enumeration, not a relevant change to the rule. For consistency, the Court refers to the Federal Rules in their current codification.

substituting one lead plaintiff for another in a class action. *Id.* at *12. The *Carson* Court reasoned that, because the original complaint put defendants on notice that there were other members of the class who were asserting the same claim, the Court need only determine whether the amended claims arose out of the same conduct, transaction, or occurrence as did the original claims. *Id.* The Court held that the amendment related back because it changed nothing but the named plaintiffs. *Id.*

Similarly, *Plubell* applied a Missouri relation back rule that said "[a]n amended pleading relates back to the date of the original petition '[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . .'" *Plubell*, 434 F.3d 1070, 1071-72 (quoting MO. R. CIV. P. 55.33(c)). In that case, CAFA was passed between the filing of the original complaint and the filing of an amendment, substituting a new class representative. The *Plubell* Court held that the amendment related back because both the original and the amended pleadings set forth exactly the same conduct by the defendant, with the only difference being the class representative. *Id.* at 1073

While the cases analyzing non-Arkansas relation back doctrine are not controlling, the Court notes that the language of the Arkansas Rule is consistent with federal and state versions, that the Arkansas Supreme Court accords federal judicial interpretations of Federal Rules "significant precedential value," *Smith*, 10 S.W.3d at 880, and that the only Arkansas authority on point—*Looney*—is

consistent with these analyses. Therefore, the Court applies Arkansas Rule 15(c)(1) as interpreted by other courts.

Having established the proper standard, the analysis is straightforward. Neither party alleges that the Second Amended Class Action Complaint changed anything other than the named parties in the class action. The First Amended Class Action Complaint was filed well before CAFA's enactment on February 18, 2005, and the Defendants were on notice of the claims against which they would have to defend themselves. Neither party alleges that the First Amended Class Action Complaint was a nullity.[7] Rather, the Defendants argue that naming additional class members in a validly-filed class action commenced a new suit. However, amending a valid complaint simply to add named plaintiffs to a class action does not change the underlying conduct, transaction, or occurrence that gave rise to the claim. Therefore, the Second Amended Class Action Complaint did not commence a new action for purposes of CAFA.

**B.    Did Naming Altria as a Defendant in the Second Amended Class Action Complaint Commence a New Action?**

Because federal courts apply the law of the state of filing to determine when an action commenced for purposes of CAFA, Arkansas law on commencement again governs the Court's analysis.

Generally, to commence a suit in Arkansas, a plaintiff must comply with Arkansas service requirements. The parties do not dispute that a suit is

---

[7] The Defendants argue that Plaintiffs never initiated a valid claim against Altria. The Court deals with that assertion *infra*. However, the parties do not dispute that the original complaint asserted a valid complaint at least against Phillip Morris USA, Inc.

commenced by filing a complaint with the clerk of the proper court. ARK. R. CIV. P. 3; *McCoy v. Montgomery*, 259 S.W.3d 430, 433 (Ark. 2007); *see also Def.'s Opp'n.* at 8 *and Pl.'s Revised Mem.* at 16. However, commencement by filing is not valid until service is completed in compliance with Arkansas Rule 4(i). ARK. R. CIV. P. 4(i); *McCoy*, 259 S.W.3d at 433 (stating that "failure to comply with the service requirements of Rule 4(i) results in a failure to commence the action"); *see also Mitchell v. State*, 229 S.W.3d 583, 587 (Ark. App. 2006) (stating that "the action was not commenced because the complaint was not properly served within 120 days"); *and Long v. Bonds*, 200 S.W.3d 922, 923 (Ark. App. 2005) ("An action is commenced by filing a complaint with the clerk of the proper court and completing service within the 120-day period following the filing of the complaint."). The parties dispute whether Altria, or its predecessor, Phillip Morris Companies, Inc., was ever properly served

As an initial matter, Arkansas law clearly establishes that the Second Amended Class Action Complaint did not commence a new action against Altria if Altria was not served in compliance with Rule 4(i), and the parties agree that Altria was not served with the Second Amended Class Action Complaint. *Pls.' Revised Mem. in Support of Mot. to Remand* at 16; *Defs' Resp. in Opp'n to Pls.' Revised Mem.* at 1. Nevertheless, the Defendants argue that the Second Amended Class Action Complaint commenced a new action against Altria. In a confounding approach, the Defendants argue that the Plaintiffs' pre-CAFA complaints failed to commence an action against Altria because of lack of service but the Second Amended Class

Action Complaint commenced a new action against Altria despite lack of service. *Defs.' Resp. in Opp'n to Pls.' Revised Mem.* at 4. In support of the latter point, the Defendants cite a Tenth Circuit case for the proposition that some states consider a suit commenced upon the filing of a complaint. *Id.* (citing *Pritchett v. Office Depot, Inc.* 420 F.3d 1090, 1094 (10th Cir. 2005). However, that authority is inapposite, and unpersuasive in this case. *Pritchett* never mentions Arkansas law, and it was decided before the Arkansas courts clarified that service is required to validly commence a suit.[8] Furthermore, the Defendants fail to explain how lack of service can be fatal to commencement in one instance and irrelevant to commencement in the next. Since Arkansas law requires proper service for an action to properly commence and since the parties agree that Altria was not served with the Second Amended Class Action Complaint, the Court finds that the Second Amended Class Action Complaint did not commence an action against Altria.

This does not end the analysis. The question remains whether Altria was a party to the pre-CAFA complaints such that it will remain a party to the litigation despite not being served with the Second Amended Class Action Complaint.[9] As earlier noted, courts use state relation back doctrines to determine when an action commenced for the purposes of CAFA. The Arkansas relation back doctrine expressly provides that amendments adding new defendants may relate back to

---

[8] There are exceptions to the service requirement in Arkansas, which will be discussed below. However, the Defendants cite none of these exceptions in arguing that filing of the Second Amended Complaint commenced a new action against Altria.

[9] The parties dispute whether Altria was ever properly served a complaint. *Pls.' Revised Mem. in Support of Mot. to Remand* at 14 (arguing that the Plaintiffs properly served Altria in June, 2003); *Defs.' Opp'n to Pls.' Mot. to Remand* at 9-10 (arguing that the Plaintiffs properly served PM USA's agent for service of process, but not Altria's). The Court need not resolve this disputed factual issue to conclude that suit was commenced against Altria prior to CAFA's effective date.

prior complaints in certain limited circumstances. *See* ARK. R. CIV. P. 15(c)(2) and discussion *supra* Part II.A. In *Southwestern Bell Telephone Co. v. Blastech, Inc.*, 852 S.W.2d 813 (Ark. 1993), the Arkansas Supreme Court dealt with precisely this issue. There, a plaintiff mistakenly sued Blastech instead of Blastech Drilling, Inc. (Blastech Drilling). *Id.* at 814. Blastech and Blastech Drilling were sister companies with the same president and majority shareholder, Adrian Blood. *Id.* After the original statute of limitations expired, the plaintiff sought to amend the complaint to name Blastech Drilling as a defendant. *Id.* The Arkansas Supreme Court conducted a relation back analysis under Rule 15(c)(2) to determine whether the amended complaint could relate back to the original. *Id.* at 815.

The *Blastech* Court's relation back analysis focused on whether, within the prescribed limitations period, Blastech Drilling had sufficient notice to preclude unfair prejudice and knew or should have known that but for a mistake concerning identity, the action would have been brought against it. *See id* at 814-15. On the notice issue, the Court noted that Blood was the agent for service of process for both companies, that he knew Blastech Drilling had performed the allegedly negligent conduct giving rise to the suit, and that he had signed the subcontract forming the basis of the suit on behalf of Blastech Drilling. *Id.* at 815. In the face of this evidence of notice, the Arkansas Supreme Court held that it became "incumbent upon Blastech Drilling to show how it might be prejudiced in maintaining a defense." *Id.* Since Blastech Drilling failed to do so, the Court held that Blastech Drilling had notice sufficient to preclude unfair prejudice.

On the mistaken identity issue, the *Blastech* Court focused on whether the plaintiff "made a deliberate strategical decision at the outset not to sue the party later added or whether the failure was caused by mistake in identifying the proper defendant." *Id.* (citing *Harvill v. Cmty. Methodist Hosp. Ass'n.*, 786 S.W.2d 577 (Ark. 1990)). Observing that there was no evidence of a strategic purpose for not suing Blastech Drilling at the outset, the Arkansas Supreme Court concluded that the plaintiff had no notice when it filed the complaint that Blastech Drilling had caused the alleged damages. *Id.* Because the elements of 15(c) were met, the *Blastech* Court held that the amended complaint naming Blastech Drilling related back to the complaint naming Blastech.

In contrast, the Arkansas Supreme Court did not allow relation back in *Bennett v. Spaight*, 277 S.W.3d 182 (Ark. 2008). There, the son of a car owner rear-ended the plaintiff and the initial complaint named as the defendant his mother, the car owner, not the operator son. *Id.* at 183. By the time the plaintiff learned that the son was driving the motor vehicle, the limitations period had lapsed. *Id.* at 184. Nevertheless, the plaintiff filed an amended complaint naming the son as defendant and she argued that the amended complaint related back to the original complaint, which was filed within the limitations period. *Id.* The *Bennett* Court held that the son's living in the same residence where service was completed was not sufficient evidence of notice. *Id.* at 188. The Court refused to "presume that because two persons live together or may be related that one's knowledge of an action has been conveyed in some fashion to the other." *Id.* at 189. The Court

distinguished this situation from *Blastech*, in which the two defendants were related companies. *Id.* at 189 (citing *Blastech*, 852 S.W.3d at. 815).

Here, the facts are more like *Blastech* than *Bennett*. The Court has already concluded that the first element, 15(c)(1), has been met because the claim asserted in each of the complaints "arose out of the conduct, transaction, or occurrence, set forth or attempted to be set forth in the original pleading." ARK. R. CIV. P. 15(c)(1). Therefore, resolution comes down to whether, within the time period provided by 4(i), Altria received such notice of the institution of the action that it will not be prejudiced in maintaining a defense on the merits and that it knew or should have known that but for a mistake concerning its identity, the action would have been brought against it. *See* ARK. R. CIV. P. 15(c)(2).

An examination of the information made known to and acknowledged by Altria within the period provided by Rule 4(i) confirms that Altria had notice of the suit such that it will not be prejudiced in its defense. Altria cannot use Plaintiffs' service upon the wrong agent in 2003 to deny notice. The Complaint that was properly served upon PM USA's agent for service of process in June 2003 named Philip Morris Companies, Inc. as a defendant. *First Am. Class Action Compl.* The Defendants acknowledge Altria Group, Inc. is the new name for what used to be Philip Morris Companies, Inc. *First Notice of Removal*.[10] Furthermore, PM USA and Philip Morris Companies, Inc. share a legal services entity called Altria Client Services, Inc. (ALCS). *Defs.' Opp'n.* at 12 n.12. ALCS, a subsidiary of Altria Group,

---

[10] Following the Defendants' lead, the Court uses Phillip Morris Companies, Inc. and Altria interchangeably in this discussion.

Inc., *id.,* received the June, 2003 Complaint. *Id.* at 11. While ALCS's agents deny that Altria was served, its own records unequivocally demonstrate they were aware that Philip Morris Companies, Inc. was named in the Complaint. *See Declaration of Sallie A. Leys* (including attached complaint naming Philip Morris Companies, Inc. as defendant) *and Declaration of Kenneth J. UVA).* From those records, the Court infers that ALCS understood Altria to be a defendant in the suit. *See Declaration of Sallie A. Leys and Declaration of Kenneth J. UVA* (including Matter Info Sheet naming Altria Group Inc. as defendant, and Service of Process Transmittal Form naming Philip Morris Companies, Inc. as defendant). Defendants provide further evidence of unity of agency between PM USA and Philip Morris Companies, Inc. in their First Notice of Removal where they assert that "[t]he only other named defendant, Philip Morris Companies, Inc. (now known as "Altria Group, Inc."), has not been served with the complaint." *First Notice of Removal* ¶ 1. To make this assertion, the Defendants must have been privy to information shared between PM USA and Altria regarding service upon Altria.

Altria's notice is analogous to Blood's in *Blastech*. Like Blood, ALCS served as agent for both properly-served and improperly-served parties. The Complaint naming Philip Morris Companies, Inc. as a defendant is similar to the subcontract naming Blastech Drilling because both did or should have put their respective agents on notice of the intended defendants in the litigation. Indeed, the Complaint naming Philip Morris Companies, Inc. as a defendant is stronger evidence of notice than the subcontract in *Blastech* because the Complaint compels the conclusion that

the plaintiffs intended to name Philip Morris Companies, Inc. as a defendant. In contrast to *Bennett*, where a mother and son's relationship and co-habitation were insufficient to raise a presumption of notice, Altria and its subsidiaries actually shared information and centralized their handling of legal matters.[11]

Altria's notice is further evidenced by the Defendants' actions in defending the suit. As far back as July 2, 2003—within the 120 day period provided in Rule 4(i)—the Defendants named both PM USA and Phillip Morris Companies, Inc. in the captions of their court filings. *See e.g. First Notice of Removal*. The Defendants also identified themselves in the plural as "Defendants," indicating that they understood more than the single entity PM USA to be defending the suit. *Id.*; *see also Pls. Mot.* Attach 3 (Docket # 245) (*Defs.' Supplemental Mem. of Additional Authority*) (Defendants' November 18, 2003, filing, naming defendants as "Altria Group, Inc. et. al." in caption and referring to defendants in plural).

The Defendants argue that this is a mere typographical error. *Defs.' Opp'n to Pls.' Mot. to Remand* at 13 n.13. The Court notes that the Defendants refer to themselves in the plural in both the caption and the title of that document as well as in the caption of their First Notice of Removal. Although not inconceivable, in

---

[11] Although not expressly contemplated by Arkansas' relation back doctrine, the Court notes that the relationships between the companies both here and in *Blastech* are consistent with the concept of identity of interest. Federal courts have recognized that notice can be imputed to the added or substituted defendant in a relation back analysis when that defendant shares an identity of interest with the initial defendant. *See Young v. Lepone*, 305 F.3d 1, 14-15 (1st Cir. 2002); *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 197-98 (3rd Cir. 2001); *Jacobsen v Osborne*, 133 F.3d 315, 320 (5th Cir. 1998); *Norton v. International Harvester Co.*, 627 F.2d 18, 21-22 (7th Cir. 1980). "The identity of interest typically means that parties are 'so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.'" Courts frequently find identity of interest when the original and added plaintiffs are a parent corporation and a wholly-owned subsidiary. *Young*, 305, F.3d at 15; *International Harvester*, 627 F.2d at 21.

view of the care and professionalism defense counsel have otherwise demonstrated throughout this case, the Court is skeptical about their claim that they repeated a typographical error.[12]

Furthermore, Altria should have known that but for a mistake concerning its identity, the action would have been brought against it. As the Court noted, the Arkansas mistaken identity analysis focuses on whether the plaintiffs "made a deliberate strategical decision at the outset not to sue the party later added or whether the failure was caused by mistake in identifying the proper defendant." *Blastech*, 852 S.W.2d at 815-16. There is no evidence that the Plaintiffs made a deliberate, strategic decision here, and it is difficult to posit an advantage the Plaintiffs could have gained by not naming Altria. To the contrary, the Plaintiffs' reference to their Affidavit of Service indicates that they intended to sue and serve Philip Morris Companies, Inc. and thought they had successfully done so. *Pl.'s Revised Mem.* at 14 (citing *Affidavit of Service*). Regardless of whether it was formally served, Altria had notice of the action and should have known that, but for this mistake, it was an intended defendant.

Because the Plaintiffs' Second Amended Class Action Complaint relates back to the First Amended Complaint, which was filed before CAFA's effective date, CAFA does not apply to the Second Amended Class Action Complaint. The Court

---

[12] Although the relation back analysis resolves the commencement issue and relieves the Court from having to determine whether the Defendants' waived their defense of defective service, the Court finds that the facts demonstrate such a unity of interest between PM USA and Altria and a failure to distinguish between the two in their court filings that Altria failed to bear the burden of showing to a "reasonable probability," *Amoche*, 556 F.3d at 48-50 that they have not participated in the litigation prior to the filing of the Second Amended Complaint. Therefore, even if the Second Amended Class Action Complaint did not relate back, Altria waived the defense of defective service.

concludes that the Defendants have not provided a valid basis for removal and the case must be remanded to Arkansas State court.

## III.     CONCLUSION

The Court GRANTS the Plaintiffs' Motion to Remand to State Court (Docket # 245).

SO ORDERED

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 22nd Day of November, 2010