| | | |
|---|---|---|
| IN RE: LIGHT CIGARETTES | ) | 1:09-md-02068-JAW |
| MARKETING SALES PRACTICES | ) | ALL CASES |
| LITIGATION | ) | |

## ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The Plaintiffs have brought a class action on behalf of purchasers of light[1] cigarettes manufactured by Philip Morris USA, Inc. and Altria Group, Inc. (the Defendants). In this initial motion, the Plaintiffs seek certification for classes of smokers in the states of California, Illinois, and Maine as well as the District of Columbia.[2] The Court concludes that common issues do not predominate and denies class certification for all four classes.

## I.    STATEMENT OF FACTS

On March 29, 2010, the Plaintiffs moved for class certification in California, Illinois, Maine, and the District of Columbia. *Pls.' Mot. to Certify Class* (Docket # 186) (*Pls.' Mot.*). On May 3, 2010, the Defendants responded. *Defs'. Resp. in Opp'n to Mot. to Certify Class* (Docket # 204) (*Defs.' Resp*). On June 17, 2010, the Plaintiffs replied to the Defendants' response. *Pls.' Reply to Resp. in Opp'n to Mot. to Certify Class* (Docket # 222) (*Pls.' Reply*). The Court held oral argument on July 21, 2010.

---

[1] "Light" cigarettes refer to all light and low tar cigarettes marketed by Philip Morris and Altria. *Defs.' Resp. in Opp'n to Mot. to Certify Class* at 1 n.1 (Docket # 204) (*Defs.' Resp.*).

[2] On October 21, 2009, the Court and the parties agreed that each party would select two exemplar states for class certification. *Minute Entry* (Docket # 28). On November 3, 2009, the Court held a telephone conference with counsel and it was agreed that the Plaintiffs would select their two by November 13, 2009 and the Defendants would select theirs by December 30, 2009. *Report of Conference Clarifying Aspects of Procedural Order and Order* (Docket # 43). On November 16, 2009, the Plaintiffs picked California and Washington D.C. *Notice/Correspondence* (Docket # 47); on December 30, 2009, the Defendants picked Illinois and Maine. *Notice/Correspondence* (Docket # 108).

On August 20, 2010, Plaintiffs filed a proffer of evidence to be presented at trial. *Pls.' Proffer of Evidence to be Presented at Trial* (Docket #234) (*Pls.' Proffer*). On September 20, 2010, Defendants responded. *Defs.' Resp. to Pls.' Proffer of Evidence to be Presented at Trial*. (Docket #238) (*Defs.' Resp. Proffer*).[3]

A.    **The Classes**

1.    **California**

Miles Tyrer, a California resident, sues the Defendants individually and on behalf of other California purchasers of light cigarettes manufactured by the Defendants. *Tyrer's Second Am. Compl.* (Docket # 132). The proposed class consists of

> [a]ll persons residing in the State of California who purchased for personal use and not for resale Defendants' cigarettes that are labeled "Light" and/or "Ultra Light" and/or purport to have lower tar and nicotine than conventional, full flavor cigarettes ("Light Cigarettes"), during the Class Period, through the present.

*Id*. ¶ 102. The class period for the UCL claim runs from January 13, 2005 to January 13, 2009, and the class period for the CLRA claim runs from January 13, 2006 to January 13, 2009. *Pls.' Mot.* at 7 n.4.

Mr. Tyrer alleges that the Defendants misrepresented the health risks of light cigarettes in violation of California's Unfair Competition Law (UCL), Bus. & Prof. Code, § 17200, *et. seq.*; California's False Advertising Act (FAL), Bus. & Prof.

---

[3] On September 29, 2010, the Defendants requested further oral argument on the pending motion for class certification and on September 30, 2010, the Plaintiffs objected. Letter from H. Peter Del Bianco, Jr. to Hon. John A. Woodcock, Jr. (Sept. 29, 2010) (Docket # 240); Letter from Samuel W. Lanham, Jr. to Hon. John A. Woodcock, Jr. (Sept. 30, 3010) (Docket # 241). On October 1, 2010, the Court deferred ruling on the Defendants' request. Having reviewed the memoranda and having received oral argument on the pending motion, the Court has concluded that no further oral argument is in order and denies the Defendants' request.

Code, § 17500, *et. seq.*;[4] and California's Consumer Legal Remedies Act (CLRA), California Civil Code, § 1750, *et. seq. Id.* ¶ 113, 173, 1834.

The UCL prohibits unfair competition, which means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [§ 17500]." UCL § 17200. Section 17500 prohibits businesses from making false or misleading statements, defined as any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." UCL § 17500.

The CLRA allows private lawsuits by "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by [the CLRA, pursuant to] section 1770." CLRA § 1780(a). Section 1770 defines various unlawful misrepresentations, including "[r]epresenting that goods . . . have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have" and "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another." CLRA §§ 1770(a)(5), (7).

## 2. The District of Columbia Class

Aubrey Parsons and Alex Slater, the named Plaintiffs, are District of Columbia residents. *Parsons' Am. Class Action Compl.* ¶ 4, *Parsons v. Phillip*

---

[4] Although the Plaintiffs bring claims under both the UCL and FAL, the parties argue almost exclusively about the requirements of the UCL. *See, e.g., Pls.' Mot.* at 25-28 (exclusively describing the California's Class UCL claim without reference to the FAL). Because the UCL and FAL claims are based on the same cause of action, the Court addresses only the UCL standards.

*Morris USA, Inc.,* 10-cv-00074 (D. Me. Dec. 9, 2009) Attach 2 (Docket # 1) (*Parsons'*

*Compl.*); *Slater's Am. Class Action Compl.* ¶ 4, *Slater v. Phillip Morris USA, Inc.,*

09-cv-00639 (D. Me. Dec. 22, 2009), Attach 2 (Docket # 1) (*Slater's Compl.*).  The

proposed class is composed of

> [a]ll District of Columbia residents who from January 1, 2000, to the
> present, purchased, not for resale, Philip Morris USA Inc.'s and Altria
> Group Inc.'s cigarettes labeled as "Light," or "Ultra-Light".  The Class
> excludes all federal, state, and local governmental entities, and Philip
> Morris USA Inc.'s and Altria Group Inc.'s directors, officers, parent
> corporations, subsidiaries, and affiliates.

*Parsons' Compl.* ¶ 8; *Slater's Compl.* ¶ 8.

They contend that the Defendants have been unjustly enriched and that they

misrepresented the health benefits of light cigarettes in violation of the District of

Columbia Consumer Protection and Procedures Act (CPPA), § 28-3901, *et. seq.*

*Parsons' Compl.* ¶¶ 40, 50; *Slater's Compl.* ¶¶ 40, 50.  The CPPA makes it illegal for

businesses to "represent that goods . . . have . . .  characteristics, ingredients, uses,

benefits" if they do not; are of a "particular standard quality grade, style, or model"

if they are not; "misrepresent as to a material fact which has a tendency to

mislead"; and "fail to state a material fact if such failure tends to mislead."  CPPA

§§ 28-3904(a), (d)-(f).  The statute is violated "whether or not any consumer is in fact

misled, deceived or damaged thereby."  *Id.* § 28-3904.

Under District of Columbia law, a claim of unjust enrichment has three

elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant

retains the benefit; and (3) under the circumstances, the defendant's retention of

the benefit is unjust.  *See 4934, Inc. v. District of Columbia Dept. of Employment Services*, 605 A.2d 50, 55-56 (D.C. 1992).

### 3.     The Illinois Class

Leonardo   Biundo,   an   Illinois   resident,   sues   the   Defendants   for misrepresenting light cigarettes as healthier than regular cigarettes.  *Biundo's Second Am. Compl.* ¶¶ 1, 4 (Docket # 79).  The proposed class is composed of

> All Illinois residents who, from January 1, 2005, to the date of class certification, purchased, not for resale, Defendants' cigarettes labeled as "Light," or "Ultra-Light". The Class excludes all federal, state, and local governmental entities, and Philip Morris USA, Inc.'s, and Altria Group, Inc.'s, directors, officers, parent corporations, subsidiaries, and affiliates.

*Id.* ¶ 7.

Mr.  Biundo  alleges  that  the  marketing  practices  violated  the  Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 I.L.C.S. § 505 and unjustly enriched the Defendants.  *Id.* ¶¶ 31-55.  The ICFA makes it unlawful for a business to use or employ "any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission."  815 ILCS § 505/2.  Although the statute states that such actions are unlawful "whether any person has in fact been misled, deceived or damaged thereby," *id.*, subsequent Illinois case law has clarified that plaintiffs in a class action must prove that "each and  every  consumer  who  seeks  redress  actually  saw  and  was  deceived  by  the statements in question."  *De Bouse v. Bayer*, 922 N.E.2d 309, 315-16 (Ill. 2009) (internal quotations omitted).

In Illinois, a claim of unjust enrichment has two elements: "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 679 (Ill. 1989). Illinois courts interpret the requirement that the benefit be retained "to the plaintiff's detriment" as "requir[ing] a plaintiff to establish she was harmed." *Cleary v. Philip Morris USA, Inc.*, No. 09 C 1596, 2010 WL 431670, at *3 (N.D. Ill. Feb. 1, 2010) (citing *Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 447-48 (Ill. 2004)).

### 4. The Maine Class

Maine residents Stephanie Good, Lori A. Spellman, and Allain L. Thibodeau sue the Defendants individually and on behalf of other Maine purchasers of light cigarettes manufactured by the Defendants. *Maine Plaintiffs' Second Am. Compl.* ¶¶ 1, 7-9 (Docket # 91). The proposed class consists of

> [a]ll persons residing in the State of Maine who purchased for personal use Defendants' cigarettes labeled as "Light," or "Ultra-Light" ("Light Cigarettes"), during the Class Period, through the present.

*Id.* ¶ 39. The Class period is from August 12, 1999 to August 12, 2005. *Id.* ¶ 40.

The named Plaintiffs move for class certification solely on their allegation that the Defendants were unjustly enriched. *Id.* ¶¶ 50-62.[5] Under Maine law, a claim for unjust enrichment has three elements:

---

[5] Although individually alleging that the Defendants violated Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et. seq.*, the class representatives do not seek class certification on these claims. *Pls.' Mot.* at 11 n.10.

[One] a benefit conferred upon the defendant by the plaintiff; [two] an appreciation or knowledge by the defendant of the benefit; and [three] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Aladdin Elec. Assoc. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994) (brackets in the original).

## II.   DISCUSSION

### A.   The Parties' Positions

#### 1.   The Plaintiffs

The Plaintiffs argue that class certification is appropriate because the critical liability elements - the Defendants' knowledge, misrepresentations, and magnitude of profit - are common to all Plaintiffs.  *Pls.' Mot.* at 15.  The Plaintiffs begin by outlining how the proposed classes satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy.  The Plaintiffs argue that numerosity is met because each class "include[s] thousands of members," making joinder impractical.  *Id.* at 16 (citing *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (stating that numerosity is generally met if the potential number of plaintiffs exceeds 40)).  Emphasizing that commonality is a "low bar," the Plaintiffs assert that this requirement is satisfied because factual questions surrounding the actions of the Defendants are common to all class members.  *Id.* at 16-17.  The Plaintiffs argue that typicality is met because the class representatives' claims are identical to the claims of the class members: all the Plaintiffs allege harm caused by the "Defendants' uniform practice of misrepresenting their light cigarettes as

healthier to smoke than regular cigarettes of the same brand." *Id*. at 18. Finally, the Plaintiffs contend that adequacy is satisfied because the class representatives have the same interests and claims as the class members and the class counsel "are well-qualified, have substantial experience litigating consumer class actions, and are able to vigorously conduct the proposed litigation." *Id*. at 19 (citing the two-part test from *In re Boston Scientific Corp. Secs. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009)). Because "the doctrine of claim splitting generally does not apply to class actions," the Plaintiffs contend that the prohibition does not bar a finding of adequacy. *Pls.' Reply* at 34 (quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597-98 (N.D. Ill. 2009)).[6]

Turning to the predominance of common issues and the superiority of class treatment under Rule 23(b)(3), the Plaintiffs begin by placing their proposed classes in context. The Plaintiffs argue that because the "purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation," courts look favorably on consumer classes such as the ones proposed here. *Pls.' Mot.* at 23 (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003)). The Plaintiffs specify that predominance "demands only a predominance of common questions, not exclusivity or unanimity of them." *Id*. at 24.

---

[6] The Plaintiffs also separately argue that Mr. Tyrer is an adequate class representative because he meets the "unique class representative standing requirements" found in California's UCL. *Pls.' Mot.* at 20. The Defendants respond that the issue is addressed in Philip Morris USA, Inc.'s Motion for Summary Judgment on the Plaintiffs' Claims for Lack of Causation. *Defs.' Resp.* at 31 n.28. Having concluded that standing is a fact question in its Order addressing the Defendants' motion, the Court need not readdress the issue. *Order Denying Philip Morris USA, Inc's Motion for Summary Judgment on the Plaintiffs' Claims for Lack of Causation* at 15 n.13. (Docket # ss).

The Plaintiffs' arguments for why common questions predominate vary depending on the requirements of the state causes of action.[7] However, for every cause of action, the Plaintiffs emphasize that the inquiry should focus on the Defendants' conduct. The Plaintiffs have proffered evidence to demonstrate how they intended to prove the elements of each cause of action on a common basis. The proffered evidence varies little from state to state, and all of it focuses on the Defendants' conduct. The Plaintiffs intend to introduce expert testimony that will demonstrate the Defendants' knowledge of the harm of light cigarettes and smoker compensation, the deceptive nature of Defendants' light cigarettes marketing practices, and revenue from light cigarettes sales. *Pls. Proffer* at 5-9. The proffer reflects the Plaintiffs' assertion that "the interposition of individualized defenses does not destroy predominance: the overarching common question remains, was it a common defect that caused the harm." *Id.* at 20.

The Plaintiffs argue that liability under the California UCL, the Washington CPPA, and unjust enrichment in Maine and Washington D.C. turns exclusively on "the defendants conduct," eliminating the need for class members to prove "reliance, injury and causation." *Id.* at 25-27 (California UCL), 32-33 Washington D.C. CPPA), 42-44 (Maine unjust enrichment). Acknowledging that class representatives must prove individual standing, the Plaintiffs contend that there is no requirement that all "class members must *individually show* they have the same standing." *Pls.' Reply* at 11-12 (emphasis added by the Plaintiffs) (quoting *In re*

---

[7] The Plaintiffs address the requirements of each cause of action separately by state. *See*, *e.g.*, *Pls.' Mot.* at 25. The Court groups the common arguments together for summarizing purposes.

*Tobacco II Cases* (*Tobacco II*), 207 P.3d 20, 34 (Cal. 2009)).  They argue that, "as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied.  *Pls.' Proffer* at 3 (citing *Kohen v. Pacific Management Co.*, 571 F.3d 672, 676-77 (7th Cir. 2009).

The Plaintiffs recognize that causes of action under California CLRA, Illinois ICFA, and Illinois unjust enrichment require damage and reliance but contend these elements can be established on a class-wide basis.  *Pls.' Reply* at 16 (California CLRA), 24-25 (Illinois ICFA), 28 (Illinois unjust enrichment).  The Plaintiffs argue that they can establish reliance under the California CLRA because an "inference of reliance" arises "when a defendant omits facts that would have been material to any reasonable person contemplating purchase of the defendant's product."  *Id.* at 16.  The Plaintiffs further argue they can establish proximate causation under the Illinois ICFA and unjust enrichment causes of action by proving that they "suffered an injury that would not have occurred absent the defendant's unfair or deceptive practices."  *Id.* at 25.  By defining their injury as the "defendant's failure to disclose material facts in conjunction with material and misleading statements," the Plaintiffs conclude that they can demonstrate proximate cause on a class-wide basis.  *Id.* at 25-26 (Illinois ICFA), 28 (Illinois unjust enrichment).  Further, the Plaintiffs contend that the California CLRA, Illinois ICFA, and Illinois unjust enrichment defined harm broadly as "any damage," and therefore whether the Plaintiffs "suffered harm, hurt, or loss as a result of purchasing cigarettes labeled and advertised as being light and healthier

to smoke than regular cigarettes, but which were not, is a question common" to all class members. *Id.* at 24 (Illinois ICFA), 18 (California CLRA), 28 (Illinois unjust enrichment).

Finally, the Plaintiffs argue that affirmative defenses "do[] not alter that common issues predominate in this litigation." *Id.* at 31 (quoting *Smilow*, 323 F.3d at 39-40). The Plaintiffs assert that courts are reluctant "to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Id.* Furthermore, the Plaintiffs contend that both affirmative defenses focus on common questions. First, the Plaintiffs argue that the statute of limitations defense is a common issue to all plaintiffs, and that in each state, when the statute of limitations is a defense to a fraud action, the relevant time period begins when the wronged party knew or should have known about the fraud or wrongdoing. *Pls.' Proffer* at 24 (California), 28-29 (Washington D.C.), 34 (Illinois), and 36-37 (Maine). They assert that when someone should have known of the Defendants' misrepresentations is a common question. They further contend that, even if voluntary payment is a defense to fraud in the various states,[8] proving voluntary payment is a common issue. The Plaintiffs say that expert testimony will show that no class member was ever fully informed as to the nature of the misrepresentation, thus making it a common question. *Pls. Proffer* at 25 (stating that Dr. Burns will testify that the "intentionally designed pharmacological and

---

[8] The Plaintiffs question whether voluntary payment is an available defense under either the UCL or CLRA, *Pls.' Proffer* at 24, assert that its use is "particularly disfavored in cases involving intentional and/or fraudulent misconduct" in D.C., *Id.* at 28, and contend that the doctrine is inapplicable to this action in Illinois because the claims sound in fraud and misrepresentation, *Id.* at 34.

physiological mechanism of the Lights product itself" was a uniformly concealed and misrepresented fact).

The Plaintiffs assert that a class action is superior to other means of resolution because a "class action is the only efficient and realistic means for Class members to pursue this litigation." *Pls.' Mot.* at 45. Comparing the Defendants, "multi-billion dollar companies that have a history of vigorously litigating matters related to their tobacco products," with the minimal damages to each class member, the Plaintiffs argue that, absent class certification, "individual Class members have very little interest in prosecuting or controlling this matter." *Id.* at 45-46. The Plaintiffs suggest that the classes are manageable because the certification is by state and "upon completion of the pretrial proceedings, the underlying actions will be returned to the transferor districts for trial and a decision on the merits." *Id.* at 46.

The Plaintiffs separately assert that certification of the California class is also proper under Rule 23(b)(2). *Id.* Describing Rule 23(b)(2) as allowing class injunctive relief when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," the Plaintiffs argue the California Class meets the standard because the "Defendants acted in precisely the same manner towards every California Class member." *Id.* The Plaintiffs contend "the threat of injury to the California Class continues" because of the "Defendants' blatant failure to comply with Judge Kessler's findings in the DOJ case." *Id.* at 47 (referring to *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006)).

At oral argument, the Plaintiffs reframed their argument. The Plaintiffs emphasized the overall framework of class certification is to protect consumers from deep-pocketed businesses. They argue that the states passed the underlying laws to provide consumers with procedures to redress deception in the marketplace. Therefore, these states allow claimants to prove that the misrepresentation was objectively material. Hence, Plaintiffs argue that, while still requiring reliance, the states found it to be a common issue that should not depend on whether a specific individual actually relied. The Plaintiffs find that this situation is particularly amenable to such treatment: because the Defendants consciously manipulated the ideas of smokers, their testimony as to why they began smoking is unreliable. Plaintiffs note that Defendants have changed the focus of their advertising in recent years to deemphasize the health benefits and the Plaintiffs assert that Defendants should not benefit from their ruse.

Furthermore, the Plaintiffs contend that compensation is a common injury.[9] First, the Plaintiffs suggest that compensation is more prevalent than the Defendants suggest. Second, the Plaintiffs contend the extent of individual compensation is untriable because it occurs subconsciously. In other words, testimony from smokers about how they smoke is not useful because people do not

---

[9] Defendants' experts assert that compensation is the act of changing how one smokes in order to receive as much tar and nicotine from lower yield cigarettes as one would from higher yield cigarettes. It can be accomplished by, for example, smoking a lower yield cigarette more intensely or smoking more lower yield cigarettes than higher yield cigarettes. One who compensates to the extent that he or she receives the same levels of tar and nicotine smoking lower yield cigarettes as he or she would receive smoking higher yield cigarettes is said to compensate completely, or 100 percent. *See Def's. Reply* at 6-8; *see also generally, Peter A. Valberg Decl.* Attach. 10 (Docket # 204), *Errol Zeiger Decl.* Attach. 24 (Docket # 204), *and Eric M. Kaplan Decl.* Attach. 26 (Docket # 204)

necessarily realize that they are compensating. Third, the Plaintiffs argue that the Court should ignore the multiple cases that have previously dealt with this issue. Declaring that *United States v. Philip Morris USA, Inc.* demonstrates that the subconscious nature of compensation makes it a common issue, the Plaintiffs contend that the old way of thinking about the issue is not relevant. Finally, the Plaintiffs suggest that balancing is not a linear progression. Hence, even if individual trials are required on some issues, because the bulk of the trial—the fraudulent activity by Defendants—is common, class treatment is still superior.

## 2. The Defendants

The Defendants respond by emphasizing the differences among the individual class members. *Defs.' Resp.* at 2. Working backwards, the Defendants argue that neither Rule 23(b)(3) requirement is met. They contend that there is no predominance of common issues because four issues critical to establishing liability require individual proof.

First, the Defendants argue that liability hinges on the Plaintiffs establishing "that defendants' alleged representations were not true—that he or she failed to receive what was allegedly promised." *Id.* at 18. Citing data from their expert, Peter A. Valberg, Ph.D., and testimony from other smokers, the Defendants assert that not every light cigarettes smoker fully compensated. *Id.* at 25-27. In addition, the Defendants contend that because they are not liable for intentional compensation, individual trials are necessary to determine whether the class members took such steps as purposefully blocking ventilation holes or consciously

14

smoking more frequently. *Id*. at 27-28. Furthermore, addressing the Plaintiffs' theories that light cigarette smokers subconsciously compensated, the Defendants say that these theories require an individual determination as to whether the smoker was addicted and whether the smoker had previously smoked regular cigarettes. *Id*. at 28-29 (citing *Price*, 848 N.E.2d at 53) ("[W]e question whether the members of the class who never smoked prior to smoking Marlboro Lights would have felt the need to compensate when they lacked a prior habit to compensate for."). Finally, because the Plaintiffs have not produced evidence that asserts every smoker fully compensated or a theory for how compensation could be proven on a class-wide basis, the Defendants argue that the Plaintiffs failed to meet "their burden of establishing a class-wide means of proving this critical element." *Id*. at 25. Accordingly, because individual proof is required "to determine which smokers failed to receive what was allegedly promised," the Defendants conclude that class certification must fail. *Id*. at 24.

Second, the Defendants contend that the Plaintiffs cannot prove injury on a class-wide basis. *Id*. at 29-39. They assert that each of the Plaintiffs' causes of actions require proof of injury. *Id*. at 30 (Illinois ICFA and California CLRA), 31-33 (California UCL), 36-37 (Washington D.C. CPPA), 39 (unjust enrichment in Illinois, Washington D.C., and Maine). In the alternative, the Defendants assert that Article III "dooms plaintiffs' 'no injury' theory." *Id*. at 34 (California UCL), 37 (Washington D.C. CPPA). The Defendants argue that to establish injury on a class-wide basis, the Plaintiffs must prove two things: first, a way of showing that the

class members "did not receive what was allegedly promised (less tar and nicotine)" and second, a way of showing that the class members suffered an 'economic injury' when both cigarettes cost the same." *Id*. at 40-41 (citing *In re New Motor Vehicles Canadian Export Antitrust Litig*., 522 F.3d 6, 27-28 (1st Cir. 2008). For the first prong, the Defendants refer to its argument on misrepresentation: the class members must provide a class-wide method to show that the class "did not receive what it paid for—the same proof that is also required to prove a misrepresentation." *Id*. at 40. Turning to the second prong, the Defendants argue that the Plaintiffs "have failed to provide any class-wide means" to prove 'that the class paid an overcharge—*i.e.*, it bought light cigarettes that were worth less than their purchase price." *Id*. at 41. The Plaintiffs argue that both damage models devised by Dr. Harris are legally insufficient: neither the "*full purchase price*" that class members spent on cigarettes nor the "*amount of profits*" that the Defendants earned from the sale of light cigarettes measures the "difference between the price paid by the consumer and the price they would have paid, but for the alleged misconduct." *Id*. at 42. The Defendants conclude that the Plaintiffs cannot meet their burden because "the evidence is undisputed that light and full-flavored cigarettes *have always been priced the same*." *Id*. at 41.

Third, the Defendants contend that the Plaintiffs cannot prove on a class-wide basis that they purchased the product as a result of "being deceived by the alleged misrepresentations." *Id*. at 44. The Defendants argue that class members must prove reliance to recover under the pending claims. *Id*. at 45 (Illinois IFCA),

46 (California CLRA), 47-48 (California UCL), 49-50 (Washington D.C. CPPA), 50-51 (unjust enrichment in Illinois, Washington D.C., and Maine). The Defendants separately argue that the "inference of reliance" under California CLRA does not apply where, as here, "the record demonstrates that consumers have different beliefs about or reasons for purchasing the product." *Id*. at 46 (citing, for example, *In re Vioxx Class Cases* (*Vioxx*), 103 Cal. Rptr. 3d 83, 98-99 (Ct. App. 2009)). Citing deposition testimony of light cigarette smokers, *id*. at 53-56, evidence showing no correlation between increases in information about health risks and decreases in light cigarettes smoking, *id*. at 56, and survey data, *id*. at 57, the Defendants argue that smokers in the proposed classes "have widely varying beliefs about and reasons for purchasing light cigarettes." *Id*. at 51. Finally, the Defendants argue "this variability is heightened" because "plaintiffs base their claims on numerous different cigarette brands." *Id*. at 57. According to the Defendants, differences in marketing schemes among brands mean that the Plaintiffs' claims are based on "many different alleged misrepresentations," creating "additional reasons why class members' beliefs and motivations are neither universal nor otherwise amenable to class-wide resolution." *Id*. at 58.

Fourth, the Defendants contend that their affirmative defenses of statute of limitations and the voluntary payment doctrine cannot be resolved on a class-wide basis. The Defendants describe how the health risks associated with smoking light cigarettes began to be publicly disseminated in the 1970s and are now widespread. *Id*. at 9-10 (providing a condensed timeline of public information about the health

risks of smoking light cigarettes). Because the statute of limitations period for the Plaintiffs' claims begins "once the cause of action first accrues for a light claimant," the Defendants argue that there would need to be an individual trial for each Plaintiff to determine when he or she first learned about the health risks. *Id*. at 63. The Defendants contend that limiting the class periods to the statue of limitations periods does not circumvent the problem because the classes would include Plaintiffs whose cause of action had long since accrued. *Id*. at 62-63. Similarly, the Defendants say that the voluntary payment doctrine is an affirmative defense to those Plaintiffs who continued to purchase cigarettes with the knowledge of the alleged fraud. *Id*. at 64-65. Because Defendants are entitled to assert the defense in at least three of the four states, the Defendants claim individual inquiries are required. *Id*. at 65.

The Defendants argue that the predominance of individual issues also undermines the superiority of a class action: "determination of these [individual issues] would inevitably devolve into 'extensive individualized proceedings,' defeating any efficiencies of class-wide treatment." *Id*. at 66 (quoting *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 586-87 (N.D. Ill. 2005)). According to the Defendants, individual issues related to class composition and damages make the class action unmanageable. *Id*. at 66-67. Because the classes are composed solely of purchasers of light cigarettes and damages are calculated in relation to purchased packs, the Defendants argue that each Plaintiff will have to establish whether, how many, and at what price they purchased light cigarettes. *Id*. at 67-68.

The Defendants argue that this will be difficult because the inexpensiveness of the product and the frequency of the purchases make the class members "unlikely to possess any objective proof of purchasing history." *Id*. at 67. With no documentary proof of purchase, the Defendants argue that mini-trials will be required to establish both class members and actual damages. *Id*. at 67-68. Furthermore, the Defendants argue that the Plaintiffs' failure to provide any detailed "trial-plan" leads to the conclusion that Plaintiffs "could not formulate a manageable way to try these claims on a class-wide basis." *Id*. at 69. Finally, the Defendants discount the Plaintiffs' argument that policy considerations make class action superior. The Defendants contend that policy arguments do not eclipse manageability issues and argue that the possibility of separate government actions based on the same alleged conduct undermines the superiority argument. *Id*. at 70-72.

The Defendants additionally attack two of the four Rule 23(a) requirements. In a footnote, the Defendants contend that the predominance of individual issues means that "the proposed class representatives also fail to meet the Rule 23(a)(3)'s typicality requirement." *Id*. at 65 n.55. Because of the substantial differences among class members, the Defendants argue that there cannot "be any 'typical' plaintiff to assert lights claims." *Id*. (Citing *Cleary v. Philip Morris*, 265 F.R.D. 289, 292 (N.D. Ill. 2010)).

The Defendants also argue that class representatives are inadequate under Rule 23(a)(4). *Id*. at 72. The Defendants argue that the principles of *res judicata* and claim splitting bar "potentially more lucrative" future personal injury lawsuits

because consumer fraud and personal injury claims are based on the same "nucleus or operative fact." *Id*. at 73 (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000)). The Defendants conclude that the willingness of the class representatives to split the claims of absent class members "renders them inadequate." *Id*. (citing, for example, *Small*, 679 N.Y.S.2d at 600-01 (rejecting certification in part because "[s]hould these plaintiffs prevail, they will preclude all New York smokers' chances of bringing more lucrative damages claims for personal injury and emotional distress from nicotine addiction").

Finally, the Defendants argue that individual issues also defeat class certification under Rule 23(b)(2). *Id*. at 17 n.17. Describing how Rule 23(b)(2) requires that the class be "cohesive," the Defendants contend it is "an even more demanding standard than predominance." *Id*. (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998)). The Defendants further write that a June 2010 congressional ban has rendered moot "any request for an injunction prohibiting the use of descriptors such as 'lights'." *Id*. The Plaintiffs conclude that there is no need for a 23(b)(2) class "because the 'same relief' would benefit the proposed class if sought instead by an individual plaintiff." *Id*. (citing *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985).

## B. Class Certification and Light Cigarettes Litigation

This is not the first attempt at certification of a class of purchasers of light cigarettes. *Cleary v. Philip Morris USA, Inc.*, 265 F.R.D. 289 (N.D. Ill. 2010); *Stern v. Philip Morris USA Inc.*, MID-L-2584-03 (N. J. Super. Ct. Law Div. Nov. 16, 2007)

(order denying class certification); *Mulford v. Altria Group, Inc.*, 506 F. Supp. 2d 733 (D.N.M. 2007); *Davies v. Philip Morris U.S.A., Inc.*, No. 04-2-08174-2 SEA, 2006 WL 1600067 (Wash. Super. May 26, 2006); *Craft v. Philip Morris Co., Inc.*, 190 S.W.3d 368 (Mp. App. E.D. 2005); *Aspinall v. Philip Morris Co., Inc.*, 813 N.E.2d 476 (Mass. 2004); *Curtis v. Philip Morris Co., Inc.*, No. PI 01-018042, 2004 WL 2776228 (Minn. Dist. Ct. 2004); *Philip Morris USA Inc. v. Hines*, 883 So. 2d 292 (Fla. Dist. Ct. App. 2003); *Oliver v. RJ Reynolds Tobacco Co.*, No. 9803-0268, 2000 WL 33598654 (Pa. Commw. Ct. Dec. 19, 2000); *Benedict v. Altria Group, Inc.*, 241 F.R.D. 668 (D. Kan. 2007); *Pearson v. Philip Morris, Inc.*, No. 0211-11819, 2006 WL 663004 (Or. Ct. App. Feb. 23, 2006); *Huntsberry v. R.J. Reynolds Tobacco Co.*, No. 04-2-08173-4SEA (Wash. Super. May 31 2006) (order denying class certification); *Cocca v. Philip Morris Inc.*, No. CV 1999-008532, 2001 WL 34090200 (Ariz. Super. 2001).[10]  Eleven of the thirteen denied class certification; two granted it.

The courts that denied certification adopted the Defendants' framework. Emphasizing differences among smoker compensation, beliefs, and motivations behind smoking, these courts concluded that the existence of these individual issues defeated commonality, *Oliver*, 2000 WL 33598654, at *6-7; typicality, *Cleary*, 265 F.R.D. at 292-93; predominance of common issues, *Benedict*, 241 F.R.D. at 680; and superiority of class treatment, *Pearson*, 2006 WL 663004 at *12.

### C.    Class Certification

---

[10] Another case, *Price v. Philip Morris, Inc.*, No. 00-L-112, 2003 WL 22597608 (Ill. Cir. Ct. March. 21, 2003), initially granted class certification.  On appeal, the Illinois Supreme Court vacated the judgment on other grounds but suggested that it did not agree with the outcome. *Price v. Philip Morris, Inc.*, 848 N.E. 2d 1 (Ill. 2005).  .

Before certifying a class, the Court must review whether the Plaintiffs have met their burden to prove each Rule 23(a) factor and one Rule 23(b) requirement. *Smilow*, 323 F.3d at 38; *Makuc v. Am. Honda Motor Co.*, 835 F.2d 389, 394 (1st Cir. 1987) (stating that the Plaintiffs have "the burden of showing that all the prerequisites for a class action have been met"). When the legal and factual premises of a case are disputed, "the court may 'probe behind the pleadings,' to 'formulate some prediction as to how specific issues will play out' in order to assess whether the proposed class meets the legal requirements for certification." *Canadian Export*, 522 F.3d at 17 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 298, 293 (1st Cir. 2000)). Nevertheless, courts must not allow "the defendant to turn the class-certification proceeding into an *unwieldy* trial on the merits." *In re PolyMedica Corp. Securities Litig.*, 432 F.3d 1, 17 (1st Cir. 2005).

## D. Rule 23(a) Factors

The Defendants only contest typicality and adequacy, appearing to concede that the Plaintiffs meet the Rule 23(a) requirements of numerosity and commonality. Nevertheless, because the First Circuit directs district courts to undertake a "rigorous analysis," the Court addresses each requirement. *Smilow*, 323 F.3d at 38; *see also Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 10 (D. Mass. 2010) (assessing all requirements even though all four were conceded).

### 1. Numerosity

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The Plaintiffs estimate that each class includes "thousands of members." *Pls.' Mot.* at 16. Although the Plaintiffs do not provide record evidence to support their estimate, common sense suggests that the number of people who purchased light cigarettes from the Defendants during the class period in each class state would be in the thousands. *Accord García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009) (concluding that the proposed class of motor vehicle owners who paid duplicate insurance premiums met the numerosity requirement based on comparing the relatively low cost of duplicate premiums with the high reimbursement figures). In *Garcia-Rubiera*, the First Circuit quoted the Third Circuit's statement in *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* By any reckoning, the potential number of plaintiffs vastly exceeds 40. Joinder is clearly impractical.

### 2. Commonality

Commonality requires only that the plaintiffs show that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality is a "low bar." *Canadian Export*, 522 F.3d at 19. Here, the Plaintiffs assert several common issues of fact, including whether the Defendants knew about the health risks associated with light cigarettes, intended to mislead the public, designed light

cigarettes to enable smoker compensation, and portrayed light cigarettes as less harmful than regular cigarettes. *Pls.' Mot.* at 17. Although the Defendants dispute whether other issues of fact are common, such as whether class members were damaged and whether light cigarettes were no less healthy than full-flavored cigarettes to all class members, the issues pertaining solely to the Defendants' conduct are common to the entire class. The Plaintiffs have met the commonality requirement.

### 3. Typicality

The class representative's claims are "typical" under Rule 23(a)(3) when "Plaintiffs' claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *García-Rubiera*, 570 F.3d at 460 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (internal quotations omitted); *Falcon*, 457 U.S. at 156 (stating that to meet typicality, class representatives must be "part of the class and 'possess the same interest and suffer the same injury' as the class members"). Here, the Plaintiffs contend that the class representatives "and all other Class members purchased Defendants' light cigarettes and, contrary to Defendants' representations, did not receive light cigarettes that were healthier to smoke than regular cigarettes." *Pls.' Mot.* at 18. To the extent the class representatives assert the same legal theory as the class members, their claims are typical.[11]

[11] The Defendants contend that the predominance of individual issues means there cannot "be any 'typical' plaintiff to assert lights claims." *Defs.' Resp.* at 65 n.55. (Citing *Cleary*, 2010 WL 680957, at *3-4). The Court recognizes that typicality and predominance are related. *Canadian Export*, 522 F.3d at 20-21 (noting the overlap between typicality and predominance). The Court addresses under

4. **Adequacy**

Adequacy requires that the class representatives "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Plaintiffs must make a two-part showing: first, "that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Here, the Plaintiffs' attorneys are "qualified, experienced and able to vigorously conduct the proposed litigation." *Id.*

The Defendants' contend that the class representatives are inadequate because they "have waived potentially more lucrative personal injury claims" on behalf of absent class members. *Defs.' Resp.* at 72-73. It is true that *res judicata* precludes parties "from relitigating claims that were raised or could have been raised" in a previous action that has received final judgment on the merits. *Apparel Art Intern., Inc. v. Amertex Enters. Ltd*, 48 F.3d 576, 583 (1st Cir. 2008). In other words, a party "cannot split his claim by first seeking one type of remedy in one action and later asking for another type of relief in a second action." *Roy v. City of Augusta, Me.*, 712 F.2d 1517, 1521 (1st Cir. 1983) (citing Restatement (Second) of Judgments §§ 24 & 25 (*Restatement*)). Applying *res judicata* to class actions, the First Circuit states that "a class action judgment . . . binds the class members as to matters actually litigated but does not resolve any claim based on individual

---

predominance whether individual proof is necessary to prove the elements of the state causes of action.

25

circumstances that was not addressed in the class action." *Cameron v. Tomes*, 990 F.2d 14, 17 (1st Cir. 1993) (citing *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 880 (1984)).[12]

Here, the proposed class actions would leave class members' personal injury claims unresolved. The Plaintiffs' unjust enrichment and statutory consumer protection claims allege economic injury without regard to whether the misrepresentations caused physical harm. Personal injury claims would most likely require individualized presentation of evidence, rendering class certification questionable. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment"); *Benedict v. Altria Group, Inc.*, 241 F.R.D. 668, 675 (D. Kan. 2007) (adequacy not defeated when class representative brought claims for consumer protection and unjust enrichment, foregoing personal injury claim, "which would likely inject individual issues defeating class certification"); *Craft v. Phillip Morris Cos., Inc.*, 190 S.W.3d 368, 380 (Mo. Ct. App. 2005) (same).

In addition, the Defendants have not demonstrated that any of the proposed class representatives currently have a claim for personal injury. "To defeat the adequacy requirement of Rule 23, a conflict must be more than merely speculative

---

[12] Some courts hold that a class action "is one of the recognized exceptions to the rule against claim-splitting." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) (quoting 18 *Moore's Federal Practice* § 131.40[3][e][iii] [2002]); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (D. Ill. 2009); *see also Crowder v. Lash*, 687 F.2d 996 (7th Cir. 1982) (signaling that the Seventh Circuit recognizes the exception in at least some circumstances). The First Circuit has not yet followed this exception.

or hypothetical." *Coffin v. Bowater, Inc.*, 228 F.R.D. 397, 405 (D. Me. 2005) (quoting *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 430 (4th Cir. 2003) (internal quotations omitted)). The Court will not speculate about undeveloped claims for personal injury.

Finally, Rule 23(c)(2)'s notice requirement softens the impact of *res judicata* on these proceedings. A class member can preserve personal injury claims by opting out. FED. R. CIV. P. 23(c)(2)(v) (stating that "the court will exclude from the class any member who requests exclusion"); *see Gunnells*, 348 F.3d at 432 (saying that Rule 23(c)(2) mitigates the effect of claim-splitting resulting from class certification). The Court concludes that the class representatives meet the adequacy requirement.

### E. Rule 23(b)(3)

Rule 23(b)(3) requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) class treatment "is superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule gives a non-exhaustive list of factors that may be relevant in evaluating these requirements:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor* (*Amchem*), 521 U.S. 591, 616 (1997) (listing the Rule 23(b)(3) considerations).

## 1.    Predominance

To establish predominance under Rule 23(b)(3), the plaintiffs must demonstrate that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The heart of the predominance inquiry is whether the "uncommon questions" outweigh the commonalities. *Amchem*, 521 U.S. at 624. "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39. Put another way, there must be a "sufficient constellation of common issues bind[ing] class members together." *Mowbray*, 208 F.3d at 296. In order to make this determination, "a district court must formulate some prediction as to how specific issues will play out." *Id.* at 298.

### a.    Injury and Causation

Whether the class members were damaged because of the Defendants' misrepresentations is an individual inquiry that cannot be proven on a class-wide basis. The record contains unrefuted evidence that many light cigarettes smokers do not fully compensate when they smoke and that the extent of their compensation can only be predicted by assessing their individual smoking habits. *Peter A. Valberg Decl.* Attach. 10 ¶¶ 4, 60-78 (Docket # 204) (*Valberg Decl.*) (summarizing his conclusions that not all smokers fully compensate); *Errol Zeiger Decl.* Attach. 24 ¶¶ 5, 61-66 (Docket # 204) (same); *Eric M. Kaplan Decl.* Attach. 26 ¶¶ 9, 22-56 (Docket # 204) (giving expert testimony on the connection between addiction and compensation and how not every class representative was addicted); *Valberg Decl.* ¶

30 (giving expert testimony on the correlation between compensation and switching from regular cigarettes to lights).  If smokers did not fully compensate, they were not injured by the misrepresentations because they received lower levels of tar and nicotine.  There is also significant record evidence that many smokers did not believe the Defendants' claims that light cigarettes had lower tar and nicotine and smoked light cigarettes for reasons unrelated to the alleged health benefits.  *See Charles R. Taylor Decl.* Attach. 42 (Docket # 204) (giving expert testimony on different beliefs and reasons for smoking light cigarettes); *Tyrer Dep.* Attach 4 at 81:16-82:5 (Docket #184) (stating that he prefers the flavor of light cigarettes and continues to smoke them even after knowing the health risks associated with them); *Peter C. English Decl.* Attach. 9 (Docket # 204) (*English Decl.*) (describing the public disclosures of the health risks associated with light cigarettes); *Aff. of Brendan McCormick* Attach. 21 (Docket # 204) (*McCormick Aff.*) (detailing the disclosures of the health risks of light cigarettes made by the Defendants).  For these smokers, there is no causal connection between the misrepresentations and the purchases of light cigarettes.

The Plaintiffs give two reasons why none of the causes of action requires the Plaintiffs to individually prove that they were damaged by the Defendants' misrepresentations.  First, the Plaintiffs contend that the causes of action that require proof of injury and causation, the Illinois ICFA, unjust enrichment in Illinois, and the California CRLA, can be satisfied through class-wide proof.  The Plaintiffs acknowledge that to establish a cause of action under the Illinois ICFA,

the Plaintiffs must show, in part, "(4) actual damage to the plaintiff that is (5) proximately caused by the unfair conduct or deceptive practice." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). Similarly, they acknowledge that to show a cause of action for unjust enrichment in Illinois they must show "detriment or injury" but argue that they can "through the presentment of evidence common to all Illinois Class members," "as discussed [in relation to the ICFA] above." *Pls.' Reply* at 28. However, in simply asserting that "[w]hether Illinois Class members suffered harm, hurt, or loss . . . is a question common to all Illinois Class members," the Plaintiffs ignore the lack of complete compensation by every smoker. *Id*. at 24. The Plaintiffs cite *Connick v. Suzuki Motor, Company*, 675 N.E.2d 584, 595 (Ill. 1996), as support for their conclusion that individual reliance does not require individual proof. *Pls.' Reply* at 25. However, in *Connick*, the Court observed that "plaintiffs alleged that the safety problems of the Samurai were a material fact in that they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety risk." *Id*. Thus, the *Connick* Court assumed that the allegedly misrepresented safety information impacted every plaintiff's decision to purchase the product. In contrast, the record here indicates that many smokers did not believe the misrepresentations and bought light cigarettes without relying on them. *See, e.g.*, *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (holding that "to maintain an action under the [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant"); *Cleary*, 265 F.R.D. at 293 (finding that

neither class representative nor class members proved the required detriment and causation).

The Plaintiffs also acknowledge that a cause of action under the California CLRA is only available to a "consumer who suffers any damage as a result of [the misrepresentations]" of a company. *Pls.' Mot*. at 28-29 (quoting CAL. CIV. CODE 1780(d)). The Plaintiffs contend the "any damage" requirement in the CLRA is broader than "actual damages," but they do not specify how the "California Class members were harmed as the result of purchasing Defendant's light cigarettes." *Pls.' Reply* at 18 (quoting *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 156). The California Supreme Court recognizes this distinction between "any" and "actual" damages but has explicitly stated that "not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299 (Cal. 2009). The Plaintiffs have not specified resultant damages suffered by all California Class members.

In addition, although the Plaintiffs are correct that courts infer reliance "when a defendant omits facts that would have been material to any reasonable person contemplating purchase," *Pls.' Mot*. at 29, this inference is not automatic. Instead, California courts find an inference of reliance inappropriate when "class members were provided such a variety of information that a single determination as to materiality is not possible." *Mass. Mut. Life Ins. Co. v. Superior Court*, 119 Cal. Rptr. 2d 190, 198 n.5 (Cal. App. 4 Dist. 2002). Here, light cigarettes smokers were provided with a variety of information: there was significant information in the

media about the health risks associated with smoking light cigarettes, *see generally English Decl.*, and the Defendants have increasingly disclosed the health risks of smoking light cigarettes. *See generally McCormick Aff.*; *see also Caro v. Procter & Gamble Co.*, 22 Cal. Rptr. 2d 419, 433 (Cal. App. 4 Dist. 1993) (finding no presumption of reliance where both truth and misrepresentation was stated on product); *Mass. Mut. Life Ins. Co.*, 119 Cal. Rptr. 2d at 199 (distinguishing *Caro* because here "there is no evidence any significant part of the class had access to all the information the plaintiffs believe they needed before purchasing [the product]"). The Plaintiffs have not established how they can prove the elements of injury and causation on a class-wide basis under the Illinois ICFA, the California CRLA, and unjust enrichment in Illinois.

Second, the Plaintiffs contend that injury and causation are not elements of claims for unjust enrichment in Maine and Washington D.C. or claims under the California UCL and the Washington D.C. CPPA. The critical element to a claim for unjust enrichment in both Maine and Washington D.C. is whether "the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222-23 (D.C. 2005); *accord Maine Eye Care Assocs. P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712 (discussing the "justifiable reliance" element of a fraudulent misrepresentation claim). The Plaintiffs contend the element is subject to common proof because "the focus is on Defendants' conduct, not Plaintiffs' conduct." *Pls.' Mot.* at 42 (Maine), 35 (Washington D.C.). However, the Plaintiffs do not explain why it is unjust for the Defendants to retain the money from someone

who did not believe their misrepresentations when purchasing, did not purchase because of their misrepresentations, or received the benefit promised. *See Everest v. Leviton Mfg. Co.*, No. CV-04-612, 2006 WL 381832, at *4 (Me. Super. Jan. 13, 2006) (stating that "[a] manufacturer may sell a dangerous or defective product to a consumer and justly retain the pecuniary benefits of that sale so long as the consumer who purchased the product knew of its dangers or defects, and received what he bargained for"). Indeed, the Plaintiffs appear to acknowledge that such elements are part of their claims for unjust enrichment. *See*, *e.g*, *Pls.' Mot.* at 35 (describing how the Washington D.C. class unjustly enriched the Defendants by spending money "on Defendants' light cigarettes *as a result of* Defendants' concealments") (emphasis added); *Pls.' Mot.* at 43 (describing the claim for unjust enrichment in Maine as "the Maine Class did not get what they paid for when they purchased Defendants' light cigarettes—a safer, healthier cigarette that would result in receiving less tar and nicotine than regular cigarettes"). Although the Plaintiffs are correct that injury and causation are not elements of claims for unjust enrichment in Maine and Washington D.C., they have not established why, absent injury and causation, the Defendants' "retention of the benefit is unjust."

The Plaintiffs are right that, like unjust enrichment in Maine and Washington D.C., injury and causation are not required under either the Washington D.C. CPPA or the California UCL. The Washington D.C. CPPA was amended in 2000 to read that it could be violated by misrepresentation "whether or not any consumer is in fact misled, deceived or damaged thereby." CPPA § 28-3904.

The Defendants contend that one federal court has required reliance notwithstanding the CPPA's explicit language. *Defs.' Resp.* at 49 (citing *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003)). *Williams*, however, explicitly limited its reference to "claims that pre-date the October 19, 2000[] amendment to the CPPA." *Williams*, 297 F. Supp. 2d at 176. By its plain meaning, the CPPA "as amended[,] eliminates [the] requirements of injury in fact and causation." *Wells v. Allstate Ins. Co*., 210 F.R.D. 1, 8 (D.D.C. 2002).

The California UCL requires class representatives to prove injury and reliance but excuses the requirement for class members. After Proposition 64 was approved in 2004, class representatives have standing under the UCL only if they "have suffered injury in fact and [have] lost money or property as a result of such unfair competition." UCL § 17204, as amended by Prop. 64, § 3. However, because class members are still entitled to recover money "which *may have been acquired* by means of the unfair practice," class members have standing under the UCL "without individualized proof of deception, reliance and injury." *Tobacco II*, 207 P.3d at 35 (internal quotations and citations omitted); *Vioxx*, 103 Cal. Rptr. 3d at 99 n.19 (noting that it is clear that "recovery in a UCL action is available in the absence of individual proof of deception, reliance, and injury"). In other words, the Plaintiffs accurately describe the economic harm the UCL and CPPA are designed to prevent and redress as deception in the marketplace.

Regardless of the specific requirements of the California UCL and Washington D.C. CPPA, however, this Court's jurisdiction is limited by Article III

standing.  *See, e.g.*, *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28 (D.D.C. 2007) (dismissing plaintiff's CPPA claim for lack of standing, although acknowledging that the terms of the statute would allow suit without claim of injury).  To bring suit in federal court, a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted).  The filing of suit as a class action does not relax this standing requirement.  *See Allen v. Wright*, 468 U.S. 737, 750 (1984).

The Plaintiffs contend that federal courts require "that only the *named plaintiff* must demonstrate standing."  *Pls.' Reply* at 14.  Because the class representatives "purchased light cigarettes as the result of seeing and believing Defendants' labeling and advertising" and "did not receive what they were promised," the Plaintiffs conclude that the Article III standing requirements are met.  *Pls.' Reply* at 20.  The Plaintiffs are correct that the Court must assess standing in relation to named class representatives; class members "need not make individual showings of standing."  *Rozema v. The Marshfield Clinic*, 174 F.R.D. 425, 444 (W.D. Wis. 1997); *see, e.g., Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) ("We do not require that each member of a class submit evidence of personal standing"); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (stating that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the [Article III] requirements").

However, federal courts cannot certify a class "that contains members lacking Article III standing." *Denney*, 443 F.3d at 264; *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (same); *Allen v. Holiday Universal*, 249 F.R.D. 166, 171 (E.D. Pa. 2008) (same); *see also Reno v. Catholic Social Servs. Inc.*, 509 U.S. 43, 66-67 (1993) (remanding so evidence could be provided as to which class members were subject to the contested policy "[b]ecause only those class members (if any) who were front-desked have ripe claims over which the District Courts should exercise jurisdiction"); 7 AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FED. PRAC. & PROC. CIV. 3d § 1785.1 (2005) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention."). The Plaintiffs correctly observe that a class will often include persons who have not been injured by the defendant's conduct. *See Pls. Proffer* at 3 (citing *Kohen v. Pacific Inv. Management Co.*, 571 F.3d 672, 677 (7th Cir 2009)). The inevitability of over-inclusion can be an accidental result of the difficulty of precisely tailoring a class, but Article III still does not give individuals without standing a right to sue.

The tension between the injury requirement and the practicalities of class action litigation is well described in *Kohen*. The *Kohen* Court conceded that "a class will often include persons who have not been injured by the defendant's conduct; indeed, this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown." *Id*. *Kohen* says that the possibility that some

persons in the class may not have been injured by defendants' conduct "does not preclude class certification." *Id.* At this stage, the focus is on "the class definition; if the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad."[13] *Id.*

Here, the proposed classes include class members without standing. Each state's class effectively includes everyone who purchased light cigarettes in the respective limitations periods, and this group necessarily includes class members who knew light cigarettes were not healthier than other cigarettes, notwithstanding Defendants alleged representations to the contrary. Those class members were not injured by the Defendants' misconduct and thus do not have standing. Furthermore, in view of the proliferation of information decrying the health risks of all cigarettes, there is no telling how many potential class members are similarly situated.

The Plaintiffs' stronger argument, although not raised by the Plaintiffs in the context of Article III, is that by treating purchase of a misrepresented product as injury, state legislatures have created a legal right that confers standing. *See*

---

[13] Courts insert standing into the class certification requirements by either implying a prerequisite or through typicality. Some federal courts assess whether a proposed class is defined so that it is "reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief." *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the denial of a plaintiff class based on over broad class definition); *see, e.g., Denney*, 443 F.3d at 264 (stating that a proposed class "must therefore be defined in such a way that anyone within it would have standing); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005) (finding class overbroad because would include class members who lacked standing); *Pagan v. Dubois*, 884 F. Supp. 25, 28 (D. Mass. 1995) (same). Other courts find there is no typicality when some of the class members have not suffered any injury whereas the class representative has. *See, e.g., In re New Motor Vehicles Canadian Export*, No. MDL 1532, 2006 WL 623591, at *3 (D. Me. Mar. 10, 2006) *rev'd on other grounds*, 522 F.3d 6, 27-28 (1st Cir. 2008) (assessing standing under typicality); *O'Neill v. Gourmet Sys. of Minnesota, Inc.*, 219 F.R.D. 445, 453 (W.D. Wis. 2002) (recognizing that there is no typicality when the class representative had standing but many of the proposed class members suffered no injury).

*Vioxx*, 103 Cal. Rptr. 3d at 99 (stating how the district court imagined "a scenario where a jury is permitted to place a value on the indignity an individual suffers when he or she is exposed to false advertising"). State legislatures may be able to expand definitions of injury for Article III purposes. In *Defenders of Wildlife*, the Supreme Court specified that "Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing." 504 U.S.at 578 (1992) (quoting *Warth v. Seldin*, 422 U.S.490, 500 (1975)). Although not yet recognized by the First Circuit, the Ninth and Seventh Circuits have applied this rule to the states, holding that "state law can create interests that support standing in federal courts." *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001); *FMC Corp. v. Boesky*, 852 F.2d 981, 992 (7th Cir. 1988).

The state statutes at issue here, however, purport to excuse injury, not redefine it. *See* CPPA § 28-3904 (stating that the statute is violated "whether or not any consumer is in fact misled, deceived or damaged thereby"); *Tobacco II*, 207 P.3d at 35 (stating that class members are excused from providing "individualized proof of deception, reliance and injury"). In contrast, statutes recognizing a new definition of injury have expanded injury, not eliminated it. *See*, *e.g.*, *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 208 (1972) (describing how the anti-discriminatory housing statute broadly defined injury as "any person who claims to have been injured by a discriminatory housing practice"). The Court is leery of recognizing a novel definition of injury not based on "de facto injuries that were previously inadequate in law," especially without explicit intent by the state

legislature. *Defenders of Wildlife*, 504 U.S.at 578 (1992); *Doe v. National Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) (stating that "[a]lthough Congress can expand standing by enacting a law enabling someone to sue on what was already a de facto injury to that person, it cannot confer standing by statute alone").

Even assuming that the California UCL and the Washington D.C. CPPA recognize an injury "for having been exposed to misrepresentations," the Plaintiffs still must prove that each class member bought a misrepresented product. *Vioxx*, 103 Cal. Rptr. 3d at 100 (describing how the trial court accepted the plaintiffs' theory of UCL injury based on misrepresentation but found class certification inappropriate because misrepresentation required individual proof). In the context of this case, the Court cannot conclude that the Plaintiffs are able do so with common proof. Standing prevents plaintiffs from suing based on misrepresentations made to others.[14] If no misrepresentation was made to an individual smoker, that smoker did not buy a misrepresented product as to them and did not suffer a "concrete and particularized" injury within the meaning of Article III. *Defenders of Wildlife*, 504 U.S. at 560.[15]

---

[14] Although plaintiffs can sometimes raise the rights of others, those circumstances are not present here. *Playboy Enterprises, Inc. v. Public Service Com'n of Puerto Rico*, 906 F.2d 25, 37 (1st Cir. 1990) (describing the situations as when a special relationship exists between the parties or "practical obstacles prevent a party from asserting rights on behalf of itself").

[15] The Defendants argue that *Canadian Export* requires that the Plaintiffs "provide a sufficient record of '*how*' they would establish class-wide injury to enable the Court 'to test the viability of' plaintiffs" theory." *Defs.' Resp.* at 41 (quoting *Canadian Export*, 522 F.3d at 29). In *Canadian Export*, however, the First Circuit found that the plaintiffs had attempted to "use their damages model to prove both fact of damages and the measure of those damages." *Canadian Export*, 522 F.3d at 28. Although recognizing that "[p]redominance is not defeated by individual damages questions," the First Circuit found that class certification was inappropriate because the plaintiffs failed to provide sufficient evidence for the court to "evaluate preliminarily whether the proposed model will be able to establish, without need for individual determination for the many millions of potential class members, which consumers were [injured] and which were not." *Id.* In contrast, the Plaintiffs

### b. Affirmative Defenses

Affirmative defenses also cannot be decided on a class-wide basis. The Plaintiffs argue that any individual issues raised by the affirmative defenses "do[] not alter that common issues predominate in this litigation." *Pls.' Reply* at 31. The Plaintiffs are correct that "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Smilow*, 323 F.3d at 39. However, the First Circuit also recognizes that "affirmative defenses should be considered in making class certification decisions," although not as a per se bar. *Mowbray*, 208 F.3d at 295-96. As the Plaintiffs bear the burden to show compliance with Rule 23, they also bear the burden to demonstrate "that resolution of the statute of limitations defense on its merits may be accomplished on a class-wide basis." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321-22 (4th Cir. 2006).

Here, both the statute of limitation and the voluntary payment doctrine are individual inquiries. The crux of the Plaintiffs' arguments for commonality on both issues is that these defenses depend on class members' knowledge of the alleged misrepresentations, which Defendants uniformly concealed. However, regardless of the Defendants' actions, individual motivations for purchasing light cigarettes, perceptions of the health consequences of light cigarettes, and the accuracy of Defendants' marketing schemes may have differed greatly among class members. The Plaintiffs argue that the relevant question in considering when a cause of

---

claim they were injured by the Defendants' misrepresentations, an injury unrelated to the *amount* of harm suffered.

action accrued for statute of limitations purposes is when a class member *should have* known of the alleged misrepresentations. Yet, as the Defendants point out and the statutory language makes clear, the relevant question is when a class member *knew or* should have known. Certain class members may have actually known the truth about light cigarettes well before other class members reasonably should have known it. Furthermore, even if the statutes are read as the Plaintiffs' construe them, when a class member should have known of the alleged misrepresentations is an individual question given the varying ages, levels of sophistication, and other specific circumstances of the individual class members. Therefore, while the affirmative defenses alone may not bar class certification, the individual inquiries they raise weigh against the predominance of commonality.

### 2. Superiority

Superiority exists where "there is a real question whether the putative class members could sensibly litigate on their own for these amounts of damages, especially with the prospect of expert testimony required." *Gintis v. Bouchard Transp. Co., Inc.,* 596 F.3d 64, 68 (1st Cir. 2010) (Souter, J.). The Court recognizes that the Plaintiffs' claims are at the heart of Rule 23(b)(3)'s purpose of "vindicat[ing] the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." *Smilow*, 323 F.3d at 41 (stating that "class certification prerequisites should be construed in light of the underlying objectives of class actions"); *see also Amchem*, 521 U.S. at 615 ("Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2)

situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable.").

Despite this strong policy in favor of certification, individual issues of injury, causation, and affirmative defenses defeat the superiority of class treatment. Individual issues surrounding who qualifies as a class member and the damages each member is owed further undermine the superiority of class certification. Because cigarettes are inexpensive and purchased frequently, it is unlikely that class members will have receipts or other ways of objectively proving purchase history. *See Ludke v. Philip Morris Cos. Inc.*, 2001 WL 1673791, at *3 (Minn. Dist. Ct. 2001) (warning that certification of a class of cigarette purchasers would lead to fraud because of the difficulty in proving damages); *Tyrer's Supp. Resp. to Defs.' Request for Prod. of Docs. Numbers 1, 7 and 8 for Purposes of Class Cert*. Attach. 43 at 3 (Docket # 204) (the only class representative to produce a receipt and producing only one). The Plaintiffs have not proposed a plan for how the Court should deal with these fact-intensive inquiries.

## F.     Rule 23(b)(2) Factors

A class action may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Mr. Tyrer seeks both a preliminary and permanent injunction compelling Defendants to refrain from any use of the terms "low tar," "light," "mild," "medium," and "ultra light" in any of its marketing materials, "or to engage in any

promotional campaigns[] that portray 'light' and 'low tar' cigarettes as less harmful than full-flavor cigarettes." *Tyrer's Second Am. Compl.* ¶ 5.[16]

However, in the summer of 2009, Congress passed the Family Smoking Prevention and Tobacco Control Act, prohibiting descriptors that imply a tobacco product is "less harmful" than other tobacco products or has a "reduced level[,] . . . presents a reduced exposure to[,] . . . or is free of a substance" unless specifically approved by the Secretary. 21 U.S.C. § 387k(a)-(b). Article III's "case or controversy" requirement requires that "[a] case must be dismissed as moot if, at some time after the institution of the action, the parties no longer have a legally cognizable stake in the outcome." *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 73 (1st Cir. 2006) (internal quotation marks and citation omitted). In other words, Mr. Tyrer's claim for injunctive relief is moot if the Court "cannot grant any 'effectual relief'" by ordering the injunction. *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). The new Act is fatal to Mr. Tyrer's claim for injunctive relief because Congress' prohibition is broader than the relief he seeks. The prohibition encompasses more products than "'light' and 'low tar'" cigarettes and is not limited to the use of the descriptors "low tar," "light," "mild," "medium, and "ultra light." *Compare Tyrer's Second Am. Compl.* ¶ 5, *with* 21 U.S.C. § 387k(a)-(b).

---

[16] "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Without argument or support, seemingly as an afterthought, the Plaintiffs claim that class certification is also appropriate under Rule 23(b)(2).

The fact that Mr. Tyrer also seeks monetary damages does not cure the defect. *Tyrer's Second Am. Compl.* ¶ 5. Although it is true that "a claim for damages may prevent a case from becoming moot where injunctive relief no longer presents a live controversy," *Cnty. Motors, Inc. v. Gen. Motors Corp.*, 278 F.3d 40, 43 (1st Cir. 2002), Rule 23(b)(2) does not extend "to cases in which the appropriate final relief relates exclusively or predominately to money damages." FED. R. CIV. P. 23(b)(2) Advisory Committee Notes (1966 Rule Amendment). Because Mr. Tyrer's claims for injunctive relief have been mooted, his remaining claims are exclusively for money damages and certification under Rule 23(b)(2) is inappropriate.

Because none of the four classes has met any of the requirements under 23(b), class certification is inappropriate.

## III. CONCLUSION

The Court DENIES the Plaintiffs' Motion for Class Certification (Docket # 186).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of November, 2010